Attorneys for Plaintiff
Meghan Dutton, Esq.
Utah State Bar No. 14440
Meghan Dutton Law PLLC
299 South Main Street #1300
Salt Lake City, Utah 84111
(801) 673-2300
meghan@megduttonlaw.com

Reed Zars, Esq.
Attorney at Law
910 Kearney Street
Laramie, WY 82070
(307) 760-6268
reed@zarslaw.com
*Pro hac vice application pending*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DISTRICT

| | |
|---|---|
| Utah Physicians for a Healthy Environment, Inc. )<br><br>v. )<br><br>DIESELSellerz.com LLC, Diesel Power Gear LLC, )<br>4X4 Anything LLC, Sparks Motors LLC, )<br>David W. Sparks ("Heavy D"), David Kiley )<br>("Diesel Dave"), Joshua Stuart ("Redbeard") )<br>and Keaton Hoskins ("The Muscle") )<br>————————————————————————) | Case No. 2:17-cv-00032-BCW |

## COMPLAINT

### I.  STATEMENT OF THE CASE, JURISDICTION AND VENUE

1.      This is a federal Clean Air Act citizen enforcement action brought by Plaintiff

Utah Physicians for a Healthy Environment, Inc., against Defendants DIESELSellerz.com LLC,

Diesel Power Gear LLC, 4X4 Anything LLC, Sparks Motors LLC, David W. Sparks ("Heavy

D"), David Kiley ("Diesel Dave"), Joshua Stuart ("Redbeard") and Keaton Hoskins ("The

Muscle") (individually and collectively, "Diesel Brothers" or "Defendants") to address Diesel

Brothers' significant, repeated and ongoing violations of the Clean Air Act by removing and defeating emission control systems on diesel vehicles, advertising and selling such vehicles, and selling parts with the same purpose, at the expense of the health and well-being of all Utahns. Diesel Brothers' actions have caused diesel vehicles operating in Utah to exceed their federal emission standards by thirty times or more, increasing the discharge of harmful pollutants in a region already plagued by unhealthy air.

2.      This complaint seeks declaratory and injunctive relief and the imposition of civil penalties (payable to the federal Treasury) under the federal Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 through 7671q.

3.      This court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 42 U.S.C. § 7604(a) (citizen suit provision of the CAA), 28 U.S.C. § 1331 (federal question statute), and 28 U.S.C. § 1355 (recovery of penalties).  Jurisdiction additionally exists under 28 U.S.C. § 1331 because this action is brought to address Defendants' violations of federal law, including 42 U.S.C. § 7522 (motor vehicle tampering and defeat device prohibitions) and 40 C.F.R. § 52.2320(c)(59), Utah Admin. Code R307-201-2 (Utah motor vehicle emissions systems requirements).  The relief requested is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 (declaratory judgment), and 42 U.S.C. § 7413 (CAA civil penalties), § 7524 (CAA mobile source civil penalties) and § 7604 (CAA citizen suit injunctive relief and civil penalties).

4.      Pursuant to 28 U.S.C. §§ 1391(b) and (c), venue lies in the District of Utah because all Defendants reside in Utah, and the actions giving rise to the claims herein have taken place, and continue to take place, in Utah.  Plaintiff resides in Salt Lake County, therefore this matter is filed in the Central District of the Utah Federal District Court.

5.      To the extent required by CAA Section 304(b)(1)(A), 42 U.S.C. § 7604(b)(1)(A), on July 27, 2016, Plaintiff notified in writing by certified mail the Administrator of the EPA, the Governor of Utah, the Utah Department of Environmental Quality ("UDEQ"), and the Defendants of the alleged violations set forth in this Complaint and Plaintiff's intent to sue.  A true and accurate copy of Plaintiff's July 27, 2016 notice letter is attached hereto as **Attachment 1**.[1]

6.      On October 3, 2016, Plaintiff supplemented its July 27, 2016 notice letter to add claims pursuant to Utah Admin. Code R307-201-2, 40 C.F.R. § 52.2320(c)(59), and to identify an increase in applicable civil penalties pursuant to 42 U.S.C. § 7524(a), 42 U.S.C. § 7604(a), and 42 U.S.C. § 7413(e).  Plaintiff's supplemental notice letter was served by certified mail on October 3, 2016 to the Administrator of the EPA, the Governor of Utah, UDEQ, and the Defendants.  Defendants Diesel Power Gear LLC, 4X4 Anything LLC, Sparks Motors LLC, David W. Sparks, David Kiley, Joshua Stuart and Keaton Hoskins were also served Plaintiff's supplemental notice letter by hand.  A true and accurate copy of Plaintiff's October 3, 2016 supplemental notice letter is attached hereto as **Attachment 2**.

7.      More than sixty days have passed since Plaintiff's July 27, 2016 and October 3, 2016 notice letters were served.  Defendants have repeatedly violated, and remain in violation of, the Clean Air Act.

8.      Neither the State of Utah nor EPA has commenced or diligently prosecuted a court action to require Diesel Brothers' compliance with the violations alleged herein.

---

[1] The non-video exhibits to the July 27, 2016 notice letter are attached to this Complaint and served on CD.  The video exhibits to the July 27, 2016 notice letter have been conventionally filed with the Court and served on CD.

## II. PARTIES

9.     Plaintiff Utah Physicians for a Healthy Environment ("UPHE" or "Plaintiff") is one of the largest civic organizations of health care professionals in the Western U.S., with approximately 400 physician members, and over 2,000 other members who are health care professionals, biologists, toxicologists, engineers, air quality specialists and other concerned individuals.  UPHE is concerned about the demonstrated health risks posed by environmental pollutants associated with a wide array of acute and chronic diseases.  UPHE is particularly concerned with the significant contribution of diesel exhaust to elevated levels of respirable particulate matter and ozone in the airshed of the Wasatch Front, and the negative impact that these pollutants have on the public's health.  UPHE is dedicated to protecting the health and well-being of Utah's citizens through action and the promotion of science-based education, to obtain measurable improvements to human health and the environment.

10.     UPHE works on behalf of its members to protect and enhance the air quality in Utah, including the airshed of the Wasatch Front in Utah that is particularly affected by the excessive emission of harmful pollutants from diesel vehicles that UPHE alleges have been illegally modified by Diesel Brothers, or that are using parts that UPHE alleges have been illegally installed and/or sold by Diesel Brothers.  UPHE brings this action on behalf of its adversely affected members.

11.     The health, environmental and aesthetic interests of UPHE and its members have been, are being and, unless this Court grants the requested relief herein, will continue to be adversely affected by Diesel Brothers' alleged repeated and ongoing violations of the Clean Air Act.

12.     The ambient air in at least seven Utah counties fails to meet the federal, health-

based standard for particulate matter ("PM") that is less than 2.5 microns in size ("PM$_{2.5}$").  (A micron is one millionth of a meter, approximately 50 times smaller than the diameter of a human hair.)  The counties that do not meet the 24-hour, 35 micrograms per cubic meter PM$_{2.5}$ standard are shown in the map below, acquired from the UDEQ website at:

*http://www.deq.utah.gov/ProgramsServices/programs/air/emissionsinventories/docs/2013/03Mar/NONATTAINMENT_MAP.pdf*



13.     The ambient air in parts or all of at least seven Utah counties also fails to meet the federal, health-based limit for ozone.  The counties that do not meet the 8-hour, 0.070 parts per million ozone standard are shown in the map below, acquired from the UDEQ website at:

*http://deq.utah.gov/Pollutants/O/ozone/docs/2016-10-Utah-Governor-Ozone-Area-Recommendation.pdf.*

**Map of recommended Nonattainment Areas in Utah**



14.     "Diesel engines emit nitrous oxides ("NO$_x$"), non-methane hydrocarbons, and particulate matter ("PM"), all of which are harmful to the environment and human health." *National Petrochemical & Refiners Ass'n v. E.P.A.*, 287 F.3d 1130, 1134 (D.C. Cir. 2002). NO$_x$ is also a significant contributor to PM$_{2.5}$ and ozone after it is discharged into the atmosphere and reacts with other gases. The U.S. EPA has also found that diesel exhaust is "likely to be carcinogenic to humans." U.S. EPA, 2002. Health Assessment Document for Diesel Engine Exhaust, *https://cfpub.epa.gov/si/si_public_record_report.cfm?dirEntryId=29060&simple Search=1&searchAll=diesel.*

15.     According to a 2015 modeling analysis by the Utah Division of Air Quality ("DAQ"), although only 13 percent of the vehicles registered in Weber County in 2011 had diesel engines, those vehicles emitted 44 percent of all on-road NO$_x$ emissions in the County.





See, *http://www.standard.net/Environment/2016/02/11/Utah-air-quality-officials-push-for-diesel-emissions-testing-in-Weber-County.*

16.    An August 2013 study conducted by Davis County and the University of Utah, showed that an increase in opacity of emissions (density of smoke) from diesels is directly correlated to a significant jump in fine particulate matter.  For diesel vehicles that did not pass the Davis County opacity test, for example, the emission of particulate matter in the 1.0 - 2.0 micron range was 100 times that of the diesel vehicles that passed the test.  **Attachment 3**.

17.    According to the California Air Resources Board ("CARB"), "[a]lmost all of the diesel particle mass [in diesel exhaust] is in the fine particle range of 10 microns or less in diameter ($PM_{10}$). Approximately 94 percent of the mass of these particles are less than 2.5 microns in diameter. Because of their small size, these particles can be inhaled and a portion will eventually become trapped within the small airways and alveolar regions of the lung." CARB Report on Diesel Exhaust, April 22, 1998, available at:

*http://www.arb.ca.gov/toxics/dieseltac/de-fnds.htm*

18.    UPHE members necessarily breathe the air of the Wasatch Front at home, at work, on roads and highways, and during outdoor pursuits and other activities.  Excessive PM

and $NO_x$ emitted by diesel vehicles that UPHE alleges have been modified by Diesel Brothers enter the air of central Utah. These pollutants contribute to and exacerbate central Utah's unhealthy levels of $PM_{2.5}$ and ozone. These pollutants enter the lungs of UPHE members, and pose a significant risk to the health and well-being of UPHE members. Exposure to diesel exhaust triggers serious diseases that range from short-term increased rates of heart attacks, strokes and death, to long-term neurodegenerative diseases like Alzheimer's.

19. UPHE members suffer from elevated, unhealthful levels of $PM_{2.5}$ in many other ways, including experiencing vision impairment, reduction of lung capacity, sinus irritation, coughing spells and foul smells. Diesel vehicles that exceed their emission standards due to Diesel Brothers' activities contribute to these adverse effects.

20. UPHE members suffer from elevated, unhealthful levels of ozone. According to UDEQ, "Ozone affects the lungs and respiratory system in many ways. Exposure can lead to increased school or work absences, visits to doctors and emergency rooms, and hospital admissions. Research also indicates that ozone exposure can increase the risk of premature death from heart or lung disease." See, *http://www.deq.utah.gov/Pollutants/O/ozone/ozonehealth.htm.*

21. UPHE members suffer from a reduced enjoyment of life when they are forced to avoid activities such as traveling, walking, running, hiking, skiing, and biking, or are unable to see with clarity the beautiful scenery that once was visible, due to high pollution levels. Again, diesel vehicles that exceed their emission standards due to Diesel Brothers' activities contribute to these adverse effects.

22. Plaintiff's members could bring this action in their individual capacity. None of the claims asserted or relief requested, however, requires that Plaintiff's members bring such an action in their individual capacity.

23.     Defendant DIESELSellerz.com LLC is a registered Utah limited liability company, with an address of 976 West 850 South, Woods Cross, UT 84087.  The Registered Agent of DIESELSellerz.com LLC is the Cannon Law Group, 53 South 600 East, Salt Lake City, UT 84102.  The two managers of DIESELSellerz.com LLC are Defendants David Sparks and Joshua Stuart, with an address listed with the State of Utah in Woods Cross, UT 84087.  DIESELSellerz.com LLC has engaged in the activities alleged in this Complaint to be violations of the CAA.  DIESELSellerz.com LLC is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

24.     Defendant Diesel Power Gear LLC is a registered Utah limited liability company.  The Registered Agent of Diesel Power Gear LLC is Defendant David Sparks, with an address listed with the State of Utah in Bountiful, UT 84010.  The manager of Diesel Power Gear LLC is Defendant David Sparks, Bountiful, UT 84010.  Diesel Power Gear LLC has engaged in the activities alleged in this Complaint to be violations of the CAA.  Diesel Power Gear LLC is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

25.     Defendant 4X4 Anything LLC is a registered Utah limited liability company, with an address of 1955 South 1800 West, Woods Cross, UT 84087.  The Registered Agent of 4X4 Anything LLC is David Sparks, 1955 South 1800 West, Woods Cross, UT 84087.  The two managers of 4X4 Anything LLC are Defendants David Sparks and Joshua Stuart, with an address listed with the State of Utah in Woods Cross, UT 84087.  4X4 Anything LLC has engaged in the activities alleged in this Complaint to be violations of the CAA.  4X4 Anything LLC is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

26.     Defendant Sparks Motors LLC is a registered Utah limited liability company, with an address of 1955 South 1800 West #2, Woods Cross, UT 84087.  The Registered Agent of

Sparks Motors LLC is B&W Auto LLC, 1955 South 1800 West #2, Woods Cross, UT 84087.

The Registered Agent of B&W Auto LLC is Defendant David Sparks, with an address listed

with the State of Utah in Bountiful, UT 84010.  Sparks Motors LLC has engaged in the activities

alleged in this Complaint to be violations of the CAA.  Sparks Motors LLC is a "person" within

the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

27.     Defendant David Sparks, who also goes by the name Heavy D, is a custom

vehicle builder, licensed auto dealer, and social media and television personality.  According to

his "bio" at *http://www.discovery.com/tv-shows/diesel-brothers/bios/heavy-d/*, Mr. Sparks "has

always pushed the mechanical limits of vehicles."  **Attachment 4.**  David Sparks' place of

business is at the DIESELSellerz.com complex, 1955 South 1800 West, Woods Cross, UT

84087.  David Sparks resides within commuting distance of the dieselsellerz.com complex in

Woods Cross.  David Sparks has engaged in the activities alleged in this complaint to be

violations of the CAA.  David Sparks is a "person" within the meaning of CAA Section 302(e),

42 U.S.C. § 7602(e).

28.     Defendant David Kiley, who also goes by the name Diesel Dave, builds and sells

diesel vehicles trucks at Dieselsellerz.com.  According to his "bio" at

*http://www.discovery.com/tv-shows/diesel-brothers/bios/diesel-dave/*, Mr. Kiley "wants nothing

more than to put the hammer down and spread torque, horsepower, and diesel joy to all people

through the land -- letting Diesel freedom ring!"  **Attachment 4.**  David Kiley's place of

business is at the DIESELSellerz.com complex, 1955 South 1800 West, Woods Cross, UT

84087.  David Kiley resides within commuting distance of the dieselsellerz.com complex in

Woods Cross.  David Kiley has engaged in the activities alleged in this complaint to be

violations of the CAA.  David Kiley is a "person" within the meaning of CAA Section 302(e), 42

U.S.C. § 7602(e).

29.     Defendant Joshua Stuart, who also goes by the name Redbeard, is a manager of

DIESELSellerz.com LLC and 4X4 Anything LLC.  According to his "bio" at

*http://www.discovery.com/tv-shows/diesel-brothers/bios/redbeard/*, Mr. Stuart was hired by

Defendant David Sparks "to help organize and grow the business."  **Attachment 4.**  Joshua

Stuart's place of business is at the DIESELSellerz.com complex, 1955 South 1800 West, Woods

Cross, UT 84087.  Joshua Stuart resides within commuting distance of the dieselsellerz.com

complex in Woods Cross.  Joshua Stuart has engaged in the activities alleged in this complaint to

be violations of the CAA.   Joshua Stuart is a "person" within the meaning of CAA Section

302(e), 42 U.S.C. § 7602(e).

30.     Defendant Keaton Hoskins, who also goes by the name The Muscle, builds and

sells diesel vehicles at Dieselsellerz.com.  According to his "bio" at

*http://www.discovery.com/tv-shows/diesel-brothers/bios/the-muscle/*, "The second he drove a

diesel truck he fell in love and has been building them ever since."  **Attachment 4.**  Keaton

Hoskins' place of business is at the DIESELSellerz.com complex, 1955 South 1800 West,

Woods Cross, UT 84087.  Keaton Hoskins resides within commuting distance of the

dieselsellerz.com complex in Woods Cross.  Keaton Hoskins has engaged in the activities

alleged in this complaint to be violations of the CAA.  Keaton Hoskins is a "person" within the

meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

### III.  LEGAL FRAMEWORK

A.     <u>Mobile Source Emission Standards</u>

31.     The Environmental Protection Agency ("EPA") promulgates air pollution

emission standards for all new vehicles offered for sale in the United States to protect public health and welfare, pursuant to CAA Section 202(a), 42 U.S.C. § 7521(a).  As set forth at 42 U.S.C. § 7521(a)(1):

> The Administrator shall by regulation prescribe (and from time to time revise) in accordance with the provisions of this section, standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare.

32.     In accordance with CAA Section 202, EPA has promulgated emission standards for on- and off-road vehicles and motorcycles by model year, weight and fuel type.  40 C.F.R. Part 86.  Of particular relevance to this matter, EPA has promulgated emission standards for heavy-duty diesel vehicles at 40 C.F.R. § 86.099-11 (model year 1999 and later), § 86.004-11 (model year 2004 and later), and § 86.007-11 (model year 2007 and later).

33.     EPA has also promulgated emission standards for complete heavy-duty vehicles at 40 C.F.R. § 86.1816-05 (model year 2005 and later, 65 Fed.Reg. 59970, October 6, 2000), § 86.1816-08 (model year 2008 and later, 66 Fed.Reg. 5190, January 18, 2001), and § 86.1816-18 (model year 2018 and later, 79 Fed.Reg. 23721, April 28, 2014).

34.     Further, EPA has promulgated regulations pursuant to CAA Section 202(m), 42 U.S.C. § 7521(m), that require heavy duty diesel trucks to detect problems with a vehicle's emission-related systems; alert owners, repair shops and inspection agencies to these problems; and store malfunction information electronically.  These devices or elements of design are referred to as on-board diagnostic or "OBD systems."  40 C.F.R. § 86.1806-05, 65 Fed.Reg. 59,896, 59,900-59,901 (October 6, 2000).

35.     Vehicle manufacturers are prohibited under CAA Section 203(a)(1), 42 U.S.C. § 7522(a)(1), from selling a new motor vehicle or engine in the United States unless the vehicle

or engine is covered by a federal certificate of conformity ("COC").  EPA issues COCs to vehicle manufacturers pursuant to CAA Section 206(a), 42 U.S.C. § 7525(a), to certify that a particular class of motor vehicles or engines, with specified emission control equipment, meet all applicable emission standards at the time of original sale, and will continue to meet such standards during the useful life of such vehicles or engines as long as all emissions control equipment and systems remain operational.

B.    Emission Equipment Tampering and Defeat Device Prohibitions, and Emission Systems and Devices Operational and Maintenance Requirements

36.    To ensure continuous, lifetime compliance with CAA Section 202 emission standards, CAA Section 203 prohibits the aftermarket tampering or use of defeat devices to compromise or render inoperative emission control systems on COC certified vehicles.  The applicable provisions of CAA Section 203(a) are set forth below:

(a) Enumerated prohibitions.  The following acts and the causing thereof are prohibited—

(3)(A) . . . for any person knowingly[2] to remove or render inoperative any [] device or element of design [installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter] after [the vehicle's] sale and delivery to the ultimate purchaser; or

(3)(B) for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use.

---

[2] "Knowingly" in this context means "voluntarily and intentionally, and not by mistake or accident."  *United States v. Mac's Muffler Shop, Inc.*, 1986 U.S. Dist. LEXIS 18108; 25 ERC (BNA) 1369 (N.D. Ga. 1986); *United States v. Haney Chevrolet, Inc.,* 371 F.Supp. 381, 384 (M.D. Fla. 1974).

37.     EPA has promulgated regulations, applicable to diesel vehicles modified by Diesel Brothers, that repeat the same prohibited acts set forth in CAA Section 203.  40 C.F.R. § 86.1854-12(a)(3)(i) and (ii).

38.     The purpose of CAA Section 203(a)(3)(B) is "to assure that vehicle emission control systems will function as intended during the time the vehicle is in use." H.R. Rep. No. 95-294, 95th Cong., 1st Sess. at 297, *reprinted in* 2977 U.S. Code Cong. & Adm. News 1077, 1376.

39.     Utah has promulgated a complementary state regulation that, (a) requires any person owning or operating a motor vehicle registered in Utah to maintain all of the federally-required emission control systems or devices in that vehicle at all times, and (b) prohibits any person from removing or rendering inoperable any federally-required emission control system or device on any motor vehicle in Utah.  Utah Admin. Code R307-201-2 states:

**R307-201-2. Automobile Emission Control Devices.**

Any person owning or operating any motor vehicle or motor vehicle engine registered in the State of Utah on which is installed or incorporated a system or device for the control of crankcase emissions or exhaust emissions in compliance with the Federal motor vehicle rules, shall maintain the system or device in operable condition and shall use it at all times that the motor vehicle or motor vehicle engine is operated. No person shall remove or make inoperable within the State of Utah the system or device or any part thereof, except for the purpose of installing another system or device, or part thereof, which is equally or more effective in reducing emissions from the vehicle to the atmosphere.

*40.*     Utah Admin. Code R307-201-2 is a regulation that has been approved by EPA as part of Utah's State Implementation Plan ("SIP") to implement the Clean Air Act, and is

therefore federally-enforceable ("Utah SIP Regulation R307-201-2").[3]  40 C.F.R.

§ 52.2320(c)(59), 71 Fed.Reg. 7679 (February 14, 2006), *https://yosemite.epa.gov/R8/R8Sips. nsf/b2af5baa99cc429287256b5f0054df73/ca340b2cc972ff7d87257f1600552cf3!OpenDocument.*

41.    According to CAA Section 205(a), 42 U.S.C. § 7524(a), any person other than a manufacturer or dealer who violates CAA Section 203(a)(3)(A) or Section 203(a)(3)(B) on or after January 13, 2009, is subject to a civil penalty of up to $3,750 for each illegally modified vehicle or engine, or for each illegal part or component manufactured, advertised, sold or installed, and a civil penalty of up to $4,454 for each such violation of CAA Sections 203(a)(3)(A) and 203(a)(3)(B) occurring on or after November 2, 2015.  40 C.F.R. § 19.4; 81 Fed. Reg. 43,092, 43,095 (July 1, 2016).

42.    According to Utah SIP regulation R307-201-2, and CAA Sections 304(a) and 113(b), any person owning or operating a Utah registered vehicle in which any federally-required emissions system or device is not operable is subject to a civil penalty of up to $37,500 per day for each violation between January 12, 2009 and November 1, 2015, and up to $93,750 per day for each violation after November 2, 2015.  Similarly, any person who removes or makes inoperable any such emission system or device in a motor vehicle in Utah is subject to a civil penalty of up to $37,500 per day for each violation between January 12, 2009 and November 1, 2015, and up to $93,750 per day for each violation after November 2, 2015.  R307-201-2; CAA Sections 304(a) and 113(b); 81 Fed.Reg. 43,091, 43,095 (July 1, 2016).

---

[3] R307-201-2 was subsequently renumbered after its inclusion into the Utah SIP, and exists as a matter of state law at Utah Admin. Code R307-201-4.  See: *http://www.rules.utah.gov/publicat/code/r307/r307-201.htm#T4.*

43.     If any person intentionally removes or hollows out a diesel particulate filter ("DPF") from an EPA-certified diesel truck, such tampering amounts to a *per se* violation of the truck's tailpipe emission standards and therefore is prohibited by CAA Section 203(a)(3)(A), 40 C.F.R. § 86.1854-12(a)(3)(i), and Utah SIP Regulation R307-201-2.  Likewise, if any person intentionally replaces a truck's required DPF with a hollow straight pipe, and defeats the truck's OBD system that would trigger a malfunction or check engine light to warn the owner and emissions regulators of the DPF's absence, the installation of such defeat devices amount to *per se* violations of the truck's tailpipe emission standards and are prohibited by CAA Section 203(a)(3)(B), 40 C.F.R. § 86.1854-12(a)(3)(ii), and Utah SIP Regulation R307-201-2.

C.     <u>Citizen Enforcement</u>

44.     CAA Section 304(a), 42 U.S.C § 7604(a), authorizes any person to commence a civil action against any person "who is alleged to have violated (if there is evidence that alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter. . ."

45.     CAA Section 304(f)(1), 42 U.S.C § 7604(f)(1), defines "emission standard or limitation under this Act" to include, "a schedule or timetable of compliance, emission limitation, standard of performance or emission standard."  CAA Section 304(f)(4), 42 U.S.C § 7604(f)(4), additionally defines "emission standard or limitation under this Act" to include "any other standard, limitation, or schedule established . . . under any applicable State implementation plan approved by the Administrator."

46.     CAA Section 302(k), 42 U.S.C. § 7602(k), defines the terms "emission limitation" and "emission standard" as,

> a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any

requirement relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under this chapter.

47.     CAA Section 302(l), 42 U.S.C. § 7602(l), defines the term "standard of performance" as,

a requirement of continuous emission reduction, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction.

48.     Diesel Brothers' violations of the Clean Air Act's anti-tampering and anti-defeat provisions, set forth at CAA Section 203(a)(3)(A), U.S.C. § 7522(a)(3)(A), and Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), respectively, and the anti-tampering and anti-defeat regulations promulgated thereunder including 40 C.F.R. § 86.1854-12(a)(3), are enforceable by citizens because these provisions are emission standards or limitations as defined by CAA Section 304(a), 42 U.S.C § 7604(a).  The anti-tampering and anti-defeat prohibitions limit the quantity, rate, or concentration of emissions of air pollutants on a continuous basis by prohibiting persons from removing or defeating pollution control devices and elements of design that reduce emissions on a continuous basis and are required to remain operational in a vehicle at all times. The anti-tampering and anti-defeat prohibitions are also requirements relating to the operation or maintenance of vehicles to assure continuous emission reduction, and are design, equipment, work practice and operational standards.

49.     Diesel Brothers' violations of Utah SIP Regulation R307-201-2 also are enforceable by citizens because Utah SIP Regulation R307-201-2 is an emission standard or limitation as defined by CAA Section 304(a), 42 U.S.C § 7604(a).  Utah SIP Regulation R307-201-2 has been promulgated as a federal rule, 40 C.F.R. § 52.2320(c)(59), and relates to both the operation and maintenance of motor vehicles in Utah to assure continuous emission reductions.

## IV.  STATEMENT OF FACTS

50.     In each of the allegations set forth below, the term Diesel Brothers means each Defendant individually, all Defendants collectively, and any group of Defendants as may be applicable.  Plural terms should also be interpreted as singular, and vise versa.

51.     In each of the allegations set forth below, actions alleged to have been taken by Diesel Brothers include actions any of them caused to be taken, including but not limited to those taken by an agent, employee, independent contractor, customer, sponsor, donor, family member, friend or volunteer.

52.     In each of the allegations set forth below, actions alleged to have been taken knowingly by Diesel Brothers mean all actions taken voluntarily and intentionally, and not by mistake or accident.

53.     In each of the allegations set forth below, all of the actions alleged to have been taken by Diesel Brothers occurred in Utah between August 1, 2011, to the date of this Complaint.

54.     In each of the allegations set forth below, actions alleged to constitute the removal of any device or element of design include the deletion, the by-pass or the rendering inoperative of such device or element of design.

A.    Diesel Brothers' Removal of Pollution Control Equipment from Diesel Vehicles.

55.     Diesel Brothers have, on more than one occasion, knowingly removed emission control devices and/or elements of design installed in or on COC certified diesel vehicles.  Diesel Brothers' removal of such devices and/or elements of design has caused such vehicles to emit more pollution into Utah's air than the vehicles emitted before the removal of such devices and/or elements of design.  Diesel Brothers' removal of such devices and/or elements of design

has diminished such vehicles' ability to reduce the emission of pollutants on a continuous basis. Diesel Brothers did not replace the devices and/or elements of design that they removed from such vehicles with other devices and/or elements of design that were equally or more effective in reducing emissions.

56.     Diesel Brothers have, on more than one occasion, knowingly removed catalytic converters that were installed on COC certified diesel vehicles.  Catalytic converters are designed to reduce the emission of air pollutants on a continuous basis.  Diesel Brothers' removal of catalytic converters on COC certified diesel vehicles caused such vehicles to emit more pollution into Utah's air than the vehicles emitted before the catalytic converters were removed.

57.      Diesel Brothers have, on more than one occasion, knowingly removed diesel particulate filters that were installed on COC certified diesel vehicles.  Diesel particulate filters are designed to reduce the emission of air pollutants on a continuous basis.  Diesel Brothers' removal of diesel particulate filters on COC certified diesel vehicles caused such vehicles to emit more pollution into Utah's air than the vehicles emitted before the diesel particulate filters were removed.

58.     Diesel Brothers have, on more than one occasion, knowingly removed selective catalytic reduction systems that were installed on COC certified diesel vehicles.  Selective catalytic reduction systems are designed to reduce the emission of air pollutants on a continuous basis.  Diesel Brothers' removal of selective catalytic reduction systems on COC certified diesel vehicles caused such vehicles to emit more pollution into Utah's air than the vehicles emitted before the selective catalytic reduction systems were removed.

59.     Diesel Brothers have, on more than one occasion, knowingly removed exhaust gas recirculation systems that were installed on COC certified diesel vehicles.  Exhaust gas recirculation systems are designed to reduce the emission of air pollutants on a continuous basis.  Diesel Brothers' removal of exhaust gas recirculation systems on COC certified diesel vehicles caused such vehicles to emit more pollution into Utah's air than the vehicles emitted before the exhaust gas recirculation systems were removed.

60.     Diesel Brothers have, on more than one occasion, knowingly reprogrammed the on-board computer system in diesel vehicles to facilitate the operation of such vehicles after Diesel Brothers removed some or all of the vehicles' pollution control equipment.  Diesel Brothers' reprogramming of the on-board computer system on COC certified diesel vehicles has caused such vehicles to emit more pollution into Utah's air than the vehicles emitted before the on-board computer was reprogrammed.

61.     Diesel vehicles that Diesel Brothers have modified in one or more of the ways described in this Section IV.A. have been operated, and continue to be operated, in Utah.  More than one of the diesel vehicles that Diesel Brothers have modified in one or more of the ways described in this Section IV.A. have been registered in Utah.  More than one of the diesel vehicles that Diesel Brothers have modified in one or more of the ways described in this Section IV.A. have been registered in Utah and owned and/or operated by Diesel Brothers.

B.      Examples of Pollution Control Equipment Removed from Diesel Vehicles by Diesel Brothers.

62.     The following descriptions in this Section IV.B. represent examples of diesel vehicles in which Diesel Brothers have fully or partially removed COC certified (or "stock") pollution control equipment.  These examples do not include all diesel vehicles from which Diesel Brothers have fully or partially removed stock pollution control equipment.  These

-20-

examples represent a fraction of the vehicles from which Diesel Brothers have fully or partially removed stock pollution control equipment.  A true and accurate illustration of vehicles modified by Diesel Brothers in 2004 alone is set forth in **Exhibit A**.[4]

**Diesel Brothers' Modified 2013 Ford F250**

63.     In 2014, Diesel Brothers obtained a 2013 Ford F250 diesel truck, Vehicle Identification Number (VIN) 1FT7W2BT2DEA61696 ("2013 Ford F250").  Diesel Brothers knowingly removed the 2013 Ford F250's diesel oxidation catalyst ("DOC"), diesel particulate filter ("DPF") and selective catalytic reduction/urea injection system ("SCR"), and replaced those systems with a hollow exhaust pipe.

64.     The 2013 Ford F250 was a COC certified diesel vehicle and the DOC, DPF and SCR systems were all federally-required pollution control systems installed by the Ford Motor Company to ensure compliance with CAA emission standards consistent with the 2013 Ford F250's COC.

65.     In 2014, Diesel Brothers advertised the 2013 Ford F250 for sale as a "full DPF delete," meaning the DPF (and in fact all other post-combustion pollution equipment) had been removed.

66.     A true and accurate image of Diesel Brothers' ebay advertisement for the 2013 Ford F250 is set forth below:

---

[4] References to exhibits in this Complaint are to the same exhibits in Plaintiff's July 27, 2016 notice letter, and are identically lettered.



Shop by category

Search...

Back to home page   | Listed in category:   eBay Motors  >  Cars & Trucks  >  Ford  >  F-250

This listing has ended. The seller has relisted this item or one like this.

### 2013 Ford F-250

2013 Ford F-250 Powerstroke Lifted Monster Truck in Matte Military Green!

See original listing



| | |
|---|---|
| Item condition: | **Used** |
| | "*Very clean, excellent condition.*" |
| Ended: | Oct 01, 2014, 10:21AM |
| Price: | **US $48,000.00** |
| Shipping: | Will ship to United States. Read item description or contact seller for shipping options. |
| Item location: | North Salt Lake, Utah, United States |
| Seller: | **heavydsparks** (178    )   |  Seller's other items |

2013 Ford F-250
Powerstroke 6.7
30k miles
Leather
8" Lift
37" Toyo MT's
22" Fuel Hostage Wheels
54" DPG Roof Mount Light Bar
Full DPF Delete with H&S Tune
Full Tint Including Windshield
Soft Bed Cover
Full Olive Drab Green Wrap, White Factory Paint Under Wrap

67.    Diesel Brothers knowingly reprogrammed the 2013 Ford F250's electronic control module ("ECM") with an "H&S tune" to facilitate the truck's operation after its "full DPF delete."  The term "tune" in this context is a euphemism for an electronic hack that manipulated the software codes in the ECM so that the truck could continue to operate without its pollution control equipment.  When Diesel Brothers performed this work in 2014, the Utah company that developed the "tune," H&S Performance, had already been prosecuted by EPA for selling precisely this type of illegal software.  See paragraph 84 below.

68.     Diesel Brothers' "H&S tune" on the 2013 Ford F250 also prevented the activation of a dashboard malfunction indication lamp (MIL) or check engine light related to the full DPF delete.

69.     The exhaust system that Diesel Brothers installed on the 2013 Ford F250 after performing the "full DPF delete" was not the same as the truck's original, stock exhaust system. The exhaust pipe between the turbocharger and stack exit was hollow.  Diesel Brothers did not replace the truck's original, stock exhaust system that they removed with another exhaust system that was equally or more effective in reducing emissions.

70.     Diesel Brothers have no evidence that their performance of a "full DPF delete" on the 2013 Ford F250 would not adversely affect the truck's emissions performance.

71.     Diesel Brothers' performance of a "full DPF delete with H&S tune" adversely affected the 2013 Ford F250's emissions performance.

72.      Particulate matter emissions were greater after Diesel Brothers removed the stock DPF from the 2013 Ford F250 than the truck's particulate matter emissions before DPF removal.

73.     $NO_x$ emissions were greater after Diesel Brothers removed the stock SCR from the 2013 Ford F250 than the truck's $NO_x$ emissions before SCR removal.

74.     Diesel Brothers' removal of the 2013 Ford F250's DOC, DPF and SCR eliminated the ability of this equipment to reduce the emission of pollutants on a continuous basis.

75.     Emissions of PM and $NO_x$ from the 2013 Ford F250 with Diesel Brothers' "full DPF delete with H&S tune" exceed the truck's federal COC emission standards.  Emissions from the 2013 Ford F250 with "full DPF delete with H&S tune" exceed the truck's federal COC PM

emission limit from between four to ten times, and the truck's federal COC NO$_x$ limit from 20 to over 30 times.

76.     A true and accurate copy of a video posted on Facebook by Heavy D on September 18, 2014, showing the 2013 Ford F250 being driven in Woods Cross, Utah, is attached as **Exhibit B**.   Posted under the title, "Having a bad day?  Watch this and I guarantee you'll feel better," the video shows Heavy D displaying the ability of the 2013 Ford F250 to discharge a plume of carcinogenic black smoke – "rolling coal" – into the Woods Cross neighborhood after Diesel Brothers' removal of the truck's pollution control equipment.

77.     The 2013 Ford F250 was sold by Diesel Brothers in 2014 to a Utah customer. After such sale, the 2013 Ford F250 was registered in the state of Utah.  After such sale, the 2013 Ford F250 was operated in Utah, and emitted pollutants into Utah's air.

**Diesel Brothers' modified 2012 Dodge Ram**

78.     In 2013, Diesel Brothers obtained a "bone stock" 2012 Dodge Ram 2500 SLT, Cummins 6.7 liter diesel truck.  Diesel Brothers' called the truck "Built Diesel 1, the OG" ("2012 Dodge Ram").  Diesel Brothers knowingly removed the 2012 Dodge Ram's post-combustion pollution control equipment.  Diesel Brothers advertised the truck as a sweepstakes prize available to purchasers of their diesel performance parts and branded attire.

79.     Diesel Brothers knowingly modified the 2012 Dodge Ram's original exhaust system using a five-inch diameter Diamond Eye "turbo-back" exhaust pipe.  A "turbo-back" exhaust pipe means a hollow pipe from the turbocharger to the exhaust exit.  To install the turbo-back exhaust pipe, Diesel Brothers first removed the truck's stock exhaust pipe and the emission control devices that were connected to the exhaust pipe.  The emission control devices connected

to the stock exhaust pipe on this truck included a DOC, NO$_x$ adsorption catalyst ("NAC"), and DPF.  Diesel Brothers removed the DOC, NAC, and DPF, and replaced them with a hollow pipe.

80.     The 2012 Dodge Ram was a COC certified diesel vehicle.  The DOC, NAC and DPF systems were all federally-required pollution control systems on the 2012 Dodge Ram.  The DOC, NAC and DPF systems were installed by the truck's manufacturer to ensure compliance with its COC and the applicable CAA emission standards.

81.     A true and accurate image of the 2012 Dodge Ram is set forth below.  This image is available at *http://dieselgiveawayz.com/bd1.html*.  Below this image is a second true and accurate image of an excerpt of the description of the 2012 Dodge Ram.  This image is also available at *http://dieselgiveawayz.com/bd1.html*.



82.     Diesel Brothers knowingly reprogrammed the 2012 Dodge Ram's engine control module using an "H&S Mini Maxx" reprogrammer to facilitate the truck's operation after its pollution control equipment had been replaced with the Diamond Eye turbo-back exhaust pipe.

83.     Diesel Brothers' use of the "H&S Mini Maxx" reprogrammer on the 2012 Dodge Ram also prevented the activation of a dashboard MIL or check engine light related to the Diamond Eye turbo-back exhaust pipe.

84.     The previous year, on May 30, 2012, EPA served H&S Performance (located in St. George, Utah) with a Notice of Violation for selling the Mini Maxx reprogrammer as an illegal defeat device. **Exhibit C**. EPA's action was widely reported in the trade press. **Exhibit D**. Nevertheless, Diesel Brothers installed the unlawful H&S Mini Maxx defeat device in the 2012 Dodge Ram. At the time Diesel Brothers installed the Mini Maxx device in the 2012 Dodge Ram it knew of EPA's enforcement action against H&S Performance. Diesel Brothers represented the H&S Mini Maxx as "hands down one of the best you can get." **Exhibit E**.

85.     The exhaust system that Diesel Brothers installed on the 2012 Dodge Ram was not the same as the truck's original, stock exhaust system. The Diamond Eye exhaust pipe was hollow from the turbocharger to the tip. Diesel Brothers did not replace the 2012 Dodge Ram's original, stock exhaust system that they removed with another exhaust system that was equally or more effective in reducing emissions.

86.     Diesel Brothers have no evidence from the parts manufacturer or an environmental control agency that Diesel Brothers' replacement of the pollution control equipment on the 2012 Dodge Ram with the Diamond Eye exhaust pipe would not adversely affect the truck's emissions performance.

87.    Diesel Brothers' installation of the Diamond Eye exhaust pipe on the 2012 Dodge Ram adversely affected the truck's emissions performance.

88.    PM emissions from the 2012 Dodge Ram were greater after removal of the stock DPF than particulate matter emissions before DPF removal.

89.    $NO_x$ emissions from the 2012 Dodge Ram were greater after removal of the stock NAC and SCR than $NO_x$ emissions before NAC and SCR removal.

90.    Diesel Brothers' removal of the 2012 Dodge Ram's DPF, NAC and SCR eliminated the ability of this equipment to reduce the emission of pollutants on a continuous basis.

91.    Emissions of PM and $NO_x$ from the 2012 Dodge Ram, after Diesel Brothers' installation of the Diamond Eye exhaust pipe, exceeded the truck's federal COC emission standards.

92.    A true and accurate copy of a video posted by Diesel Brothers on YouTube showing the 2012 Dodge Ram "rolling coal" near the Utah State Capitol and emitting pollutants into the airshed of the Wasatch Front, is attached as **Exhibit F**.  Diesel Brothers titled this video, "2012 Cummins Giveaway Truck Smokes Out Prius Paul."  This video was removed from public view on YouTube shortly after UPHE issued its pre-suit notice letter in this matter on July 27, 2016. *https://www.youtube.com/watch?v=R9poJWSwchU.*

93.    Diesel Brothers' modified 2012 Dodge Ram was operated by Diesel Brothers in Utah, and emitted pollutants into Utah's air.  In August of 2013, Diesel Brothers awarded the 2012 Dodge Ram as a prize to a Diesel Power Gear sweepstakes contestant.

**Diesel Brothers' modified 2013 GMC Denali**

94.    In 2015-2016 Diesel Brothers knowingly "fully deleted" the pollution control equipment on a 2013 GMC Denali 2500 HD diesel truck ("2013 GMC Denali").

95.    The 2013 GMC Denali was a COC certified diesel vehicle. The original, stock pollution control equipment on the 2013 GMC Denali included a DPF and SCR.  The DPF and SCR were installed by the truck's manufacturer to ensure compliance with its COC and applicable CAA emission standards.

96.    Diesel Brothers' "fully deleted" 2013 GMC Denali was subsequently offered for sale by idriveutahtrucks.com. A true and accurate image of an advertisement offering the 2013 GMC Denali for sale was posted this year on Facebook at *https://th-th.facebook.com/idriveutahtrucks/,* and is set forth below.



97.    Diesel Brothers knowingly reprogrammed the 2013 GMC Denali's engine control module with "EFI Live Tuning" to facilitate the truck's operation after its pollution control equipment had been "fully deleted."

98.    Diesel Brothers' "EFI Live Tuning" on the 2013 GMC Denali also prevented the activation of a dashboard MIL or check engine light related to the truck's "fully deleted" status.

99.     The exhaust system that Diesel Brothers installed on the 2013 GMC Denali was not the same as the truck's original, stock exhaust system.  The replacement exhaust pipe between the turbocharger and the tip did not include all of the original, stock pollution control equipment.  Diesel Brothers did not replace the 2013 GMC Denali's original, stock exhaust system that they removed with another exhaust system that was equally or more effective in reducing emissions.

100.    Diesel Brothers have no evidence that their removal of the pollution control equipment on the 2013 GMC Denali did not adversely affect the truck's emissions performance.

101.    Diesel Brothers' removal of the pollution control equipment on the 2013 GMC Denali adversely affected the truck's emissions performance.

102.    PM emissions from the 2013 GMC Denali were greater after removal of the stock DPF than particulate matter emissions before DPF removal.

103.    $NO_x$ emissions from the 2013 GMC Denali were greater after removal of the stock SCR than $NO_x$ emissions before SCR removal.

104.    Diesel Brothers' removal of the 2013 GMC Denali's DPF and SCR eliminated the ability of this equipment to reduce the emission of pollutants on a continuous basis.

105.    Emissions of PM and $NO_x$ from the 2013 GMC Denali, after it was fully deleted and reprogrammed by Diesel Brothers, exceeded the truck's federal COC emission standards.

106.    Diesel Brothers' modified 2013 GMC Denali was operated by Diesel Brothers in Utah, and emitted pollutants into Utah's air.

C.      Diesel Brothers Have Manufactured, Sold, Offered to Sell, and/or Installed Aftermarket Defeat Devices and Aftermarket Exhaust Systems.

107.    Diesel Brothers have, on more than one occasion, knowingly manufactured parts and/or components that have the principal effect of bypassing, defeating or rendering inoperative

-29-

pollution control equipment on COC certified vehicles.  The parts and/or components, when installed, compromise or eliminate the ability of the by-passed or defeated pollution control equipment from reducing the emission of pollutants on a continuous basis.

108.    Diesel Brothers have, on more than one occasion, knowingly offered to sell parts and/or components that have the principal effect of bypassing, defeating or rendering inoperative pollution control equipment on COC certified vehicles.  The parts and/or components, when installed, compromise or eliminate the ability of the by-passed or defeated pollution control equipment from reducing the emission of pollutants on a continuous basis.

109.    Diesel Brothers have, on more than one occasion, knowingly sold parts and/or components that have the principal effect of bypassing, defeating or rendering inoperative pollution control equipment on COC certified vehicles.  The parts and/or components, when installed, compromise or eliminate the ability of the by-passed or defeated pollution control equipment from reducing the emission of pollutants on a continuous basis.

110.    Diesel Brothers have, on more than one occasion, knowingly installed parts and/or components that have the principal effect of bypassing, defeating or rendering inoperative pollution control equipment on COC certified vehicles.  The parts and/or components compromise or eliminate the ability of the by-passed or defeated pollution control equipment from reducing the emission of pollutants on a continuous basis.

111.    Diesel Brothers knew, or should have known, that the parts and/or components that they manufactured, offered to sell, sold and/or installed, as described above, would be used to by-pass, defeat or render inoperative pollution control equipment on COC certified vehicles.

112.    Diesel Brothers have installed straight pipes, EGR caps, and reprogrammers or "tunes," where Diesel Brothers knew or should have known the principal effect of the part or

component was to bypass, defeat or render inoperative pollution control equipment on COC certified vehicles.

113.    Parts and components of the types described above that Diesel Brothers have manufactured, sold, offered to sell and/or installed are currently in diesel vehicles in Utah, and are causing those vehicles to emit more pollutants into the air of Utah than they would absent the installation and use of such parts and components in these vehicles.

114.    The descriptions set forth in Sections IV.D. and E., below, represent examples of aftermarket parts and components that Diesel Brothers have sold and/or offered for sale that Diesel Brothers knew or should have known the principal effect of which would be to bypass, defeat or render inoperative a vehicle's pollution control equipment.  These examples do not include all of the aftermarket parts and components that Diesel Brothers have sold and/or offered for sale that Diesel Brothers knew or should have known the principal effect of which was to bypass, defeat or render inoperative a vehicle's pollution control equipment. These examples represent a fraction of the aftermarket parts and components that Diesel Brothers have sold and/or offered for sale that Diesel Brothers knew or should have known the principal effect of which was to bypass, defeat or render inoperative a vehicle's pollution control equipment.

D.    Examples of Aftermarket Defeat Devices Sold and/or Offered for Sale by Diesel Brothers.

115.    Diesel Brothers have offered for sale, and have sold, aftermarket exhaust gas recirculation ("EGR") delete kits on dieselpowergear.com.

116.    A true and accurate image reproduced from Diesel Brothers' 4X4ANYTHING.com, showing several aftermarket EGR delete kits offered for sale and sold by Diesel Brothers, is set forth below.  This image was acquired from

*http://dieselpowergear.com/collections/egr-deletes*.  This image was removed from this website shortly after UPHE issued its pre-suit notice letter in this matter on July 27, 2016.



117.    EGR is an emissions control device that returns a portion of exhaust gas back into the combustion chamber to reduce combustion temperatures and thus $NO_x$ emissions. Eliminating the EGR creates a hotter, more powerful engine -- and significantly higher emissions of lung-damaging $NO_x$.

118.    According to Diesel Brothers, some EGR delete kits "require the use of an EGR Delete Capable Programmer or Tuner."  The use of such a programmer or tuner is necessary, among other things, to suppress activation of the MIL or check engine light due to the absence of the EGR system.  A true and accurate copy of images acquired from Diesel Brothers' 4X4ANYTHING.com site explains one such EGR delete kit, as set forth below:



*http://dieselpowergear.com/collections/egr-deletes/products/drp87111-deluxe-egrcooler-delete-wcoolant-re-route-and-dip-stick-bracket-for-07-08-dodge-67l-cummins*.  Additional images of similar EGR delete kits advertised and sold by Diesel Brothers are shown in **Exhibit I**.  All of these images were removed from the dieselpowergear.com website shortly after UPHE issued its pre-suit notice letter in this matter on July 27, 2016.

119.    Diesel Brothers have offered to sell, on two or more days, EGR delete kits for diesel vehicles where Diesel Brothers knew or should have known the principal effect of the EGR delete kits would be to bypass, defeat or render inoperative the EGR system.

120.    Diesel Brothers have sold two or more EGR delete kits for diesel vehicles where Diesel Brothers knew or should have known the principal effect of the EGR delete kits would be to bypass, defeat or render inoperative the EGR system.

121.   Diesel Brothers have no evidence from the EGR delete kit manufacturers or an environmental control agency that the installation and use of such kits that they have advertised and sold will not adversely affect vehicle emissions performance.

122.   The installation and use of EGR delete kits sold by Diesel Brothers adversely affects the emissions performance of vehicles in which they are installed.  The EGR delete kits eliminate the ability of an EGR system installed in a COC certified vehicle from reducing the emission of pollutants on a continuous basis.

123.   EGR delete kits that Diesel Brothers have sold, offered to sell and/or installed are currently in diesel vehicles in Utah, and are causing those vehicles to emit more pollutants into the air of Utah than those vehicles would absent the installation and use of such EGR delete kits.

E.   Examples of Aftermarket Exhaust Systems that Diesel Brothers Have Sold and/or Offered to Sell.

124.   Diesel Brothers have offered for sale, and have sold, aftermarket exhaust systems. Diesel Brothers have advertised and sold such systems on dieselpowergear.com, 4X4ANYTHING.com, and through other outlets.

125.   A true and accurate image reproduced from Diesel Brothers' 4X4ANYTHING.com site, showing an aftermarket "turbo back" exhaust system offered for sale by Diesel Brothers, is set forth below.  This image was acquired from *http://dieselpowergear.com/collections/exhaust/products/ss834-flo-pro-4-turbo-back-075-10-duramax-66l*.  Additional images of similar exhaust systems advertised and sold by Diesel Brothers are shown in **Exhibit J**.  All of these images were removed from the dieselpowergear.com website shortly after UPHE issued its pre-suit notice letter in this matter on July 27, 2016.



126.    Diesel Brothers have offered to sell over 200 aftermarket exhaust systems.  The

exhaust systems offered for sale by Diesel Brothers as "turbo back" or "CAT/DPF delete," have

been principally designed to bypass, defeat and/or render inoperative federally-required emission

control devices such as catalytic converters, diesel particulate filters and selective catalytic

reduction systems.  Such exhaust systems are also designed to facilitate the removal of pollution

control equipment.  For example, Diesel Brothers advertised the "turbo back" exhaust system

above, designed for 2007.5 to 2010 Duramax 6.6 liter diesel trucks, as ready-made for those

seeking to delete both the catalytic converter and diesel particulate filter in these vehicles and

replace them with a hollow pipe.

127.    Diesel Brothers have offered to sell, on two or more days, aftermarket exhaust

systems for diesel vehicles where Diesel Brothers knew or should have known the principal

effect of such aftermarket exhaust systems was to bypass, defeat or render inoperative the

pollution control equipment in the stock exhaust system, including but not limited to DOC, DPF

and SCR devices.

128.    Diesel Brothers have sold two or more aftermarket exhaust systems for diesel

vehicles where Diesel Brothers knew or should have known the principal effect of such

aftermarket exhaust systems was to bypass, defeat or render inoperative the pollution control

Case 2:17-cv-00032-RJS-DBP   Document 2   Filed 01/10/17   PageID.38   Page 36 of 45

equipment installed in the stock exhaust system, including but not limited to DOC, DPF and SCR devices.

129.     Diesel Brothers have no evidence from the aftermarket exhaust system manufacturers or an environmental control agency that the installation and use of the exhaust systems they have advertised and sold, that bypass, defeat or render inoperative pollution control equipment, will not adversely affect the emissions performance of vehicles into which they are installed.

130.     The installation and use of aftermarket exhaust systems sold by Diesel Brothers that bypass, defeat or render inoperative pollution control equipment adversely affect the emissions performance of vehicles in which they are installed.  These aftermarket exhaust systems eliminate the ability of pollution control equipment installed in COC certified vehicles from reducing the emission of pollutants on a continuous basis.

131.     Aftermarket exhaust systems that Diesel Brothers have manufactured, sold, offered to sell and/or installed are currently in diesel vehicles in Utah, and are causing those vehicles to emit more pollutants into the air of Utah than they would absent the installation and use of such aftermarket exhaust systems.

## V.  CAUSES OF ACTION

132.     Plaintiff UPHE incorporates by reference and realleges the allegations contained in paragraphs 1 through 131 for all causes of action stated below.

-36-

## FIRST CAUSE OF ACTION

**Diesel Brothers are in violation of CAA Section 203(a)(3)(A), 42 U.S.C. § 7522(a)(3)(A), and 40 C.F.R. § 86.1854-12(a)(3)(i) by knowingly removing federally-required pollution control equipment on diesel vehicles and engines.**

133.     CAA Section 203(a)(3)(A), 42 U.S.C. § 7522(a)(3)(A), makes it illegal for any person knowingly to remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with EPA regulations after the vehicle's sale and delivery to the ultimate purchaser.

134.     CAA Section 203(a)(3)(A), 42 U.S.C. § 7522(a)(3)(A), has applied at all times to the allegations in this Complaint.  40 C.F.R. § 86.1854-12(a)(3)(i) has applied at all times to the allegations in this Compliant with respect to heavy duty diesel trucks.

135.     Between August 1, 2011 and the date of this Complaint, Diesel Brothers have repeatedly violated CAA Section 203(a)(3)(A), 42 U.S.C. § 7522(a)(3)(A), and 40 C.F.R. § 86.1854-12(a)(3)(i), by knowingly causing the removal and/or rendering inoperative of devices and/or elements of design, installed on or in motor vehicles or motor vehicle engines in compliance with EPA regulations, after such vehicles were sold and delivered to the ultimate purchaser.  The purpose of such devices and/or elements of design was to reduce the emission of pollutants on a continuous basis.

136.     Each vehicle and each engine from which Diesel Brothers caused the removal of required devices and/or elements of design, or that Diesel Brothers caused the rendering of such devices and/or elements of design to be inoperative, represents a separate violation of CAA Section 203(a)(3)(A), 42 U.S.C. § 7522(a)(3)(A), and 40 C.F.R. § 86.1854-12(a)(3)(i).

137.     Diesel Brothers continue to violate CAA Section 203(a)(3)(A), 42 U.S.C. § 7522(a)(3)(A), and 40 C.F.R. § 86.1854-12(a)(3)(i) by knowingly causing the removal and/or the

rendering inoperative of devices and/or elements of design installed on or in motor vehicles or motor vehicle engines in compliance with EPA regulations after such vehicles are sold and delivered to the ultimate purchaser.

138.    Pursuant to CAA Section 205(a), 42 U.S.C. § 7524(a), CAA Section 304(a), 42 U.S.C. § 7604(a) and CAA Section 113(e), 42 U.S.C. § 7413(e), Diesel Brothers are liable for injunctive relief, and for a civil penalty of up to $3,750 for each vehicle or engine modified in violation of CAA Section 203(a)(3)(A) on or after January 13, 2009, and a civil penalty of up to $4,454 for each such violation occurring on or after November 2, 2015.  40 C.F.R. § 19.4; 81 Fed. Reg. 43,092, 43,095 (July 1, 2016).

## SECOND CAUSE OF ACTION

**Diesel Brothers are in violation of CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), and 40 C.F.R. § 86.1854-12(a)(3)(ii) by manufacturing, selling, offering to sell and/or installing defeat devices and/or aftermarket exhaust systems in diesel vehicles and engines.**

139.    CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), and 40 C.F.R. § 86.1854-12(a)(3)(ii) make it illegal for any person to manufacture, sell, offer to sell and/or install any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with EPA regulations, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use.

140.    CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), has applied at all times applicable to the allegations in this Complaint.  40 C.F.R. § 86.1854-12(a)(3)(ii) has applied at all times to the allegations in this Compliant with respect to heavy duty diesel trucks.

141.    Between August 1, 2011 and the date of this Complaint, Diesel Brothers have repeatedly violated CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), and 40 C.F.R. § 86.1854-12(a)(3)(ii), by causing the manufacture, sale, offer to sell and/or installation of parts and/or components intended for use with, or as part of, motor vehicles or motor vehicle engines, where a principal effect of such parts and/or components was to bypass, defeat, or render inoperative a device or element of design installed on or in such motor vehicles or motor vehicle engines in compliance with EPA regulations, and where Diesel Brothers knew, or should have known, that such parts and/or components were being manufactured, offered for sale, sold or installed for such use or put to such use.  The purpose of such parts and/or components was to reduce the emission of pollutants on a continuous basis.

142.    Each part and each component that Diesel Brothers caused to be manufactured, sold, offered to sell and/or installed, that had the principal effect of bypassing, defeating, and/or rendering inoperative a required device or element of design of a motor vehicle or engine that Diesel Brothers knew, or should have known was being manufactured, offered for sale, sold and/or installed for such use or put to such use, represents a separate violation of CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), and 40 C.F.R. § 86.1854-12(a)(3)(ii).

143.    Diesel Brothers continue to violate CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), and 40 C.F.R. § 86.1854-12(a)(3)(ii) by causing the manufacture, sale, offer to sell and/or installation of parts and/or components intended for use with, or as part of, motor vehicles or motor vehicle engines, where a principal effect of such parts and/or components is to bypass, defeat, or render inoperative a device or element of design installed on or in such motor vehicles or motor vehicle engines in compliance with EPA regulations, and where Diesel

Brothers know, or should know, that such parts and/or components are being offered for sale or installed for such use or put to such use.

144.    Pursuant to CAA Section 205(a), 42 U.S.C. § 7524(a), CAA Section 304(a), 42 U.S.C. § 7604(a) and CAA Section 113(e), 42 U.S.C. § 7413(e), Diesel Brothers are liable for injunctive relief, and for a civil penalty of up to $3,750 for each part or component manufactured, sold, offered for sale or installed in violation of CAA Section 203(a)(3)(B) on or after January 13, 2009, and a civil penalty of up to $4,454 for each such violation occurring on or after November 2, 2015.  40 C.F.R. § 19.4; 81 Fed. Reg. 43,092, 43,095 (July 1, 2016).

## THIRD CAUSE OF ACTION

**Diesel Brothers are in violation of Utah SIP Regulation R307-201-2 by owning and/or operating motor vehicles registered in Utah without maintaining all emission control systems and devices in operable condition, and by removing, and/or making inoperable, emission control systems or devices in motor vehicles in Utah.**

*145.*    Utah's SIP regulation R307-201-2 was promulgated as a federal rule in 2006 at 40 C.F.R. § 52.2320(c)(59), 71 Fed.Reg. 7679 (February 14, 2006), *https://yosemite.epa.gov/ R8/R8Sips.nsf/b2af5baa99cc429287256b5f0054df73/ca340b2cc972ff7d87257f1600552cf3! OpenDocument.*

146.    Utah SIP regulation R307-201-2 requires any person owning or operating a motor vehicle registered in Utah to maintain all of the federally-required emission control systems or devices in that vehicle at all times.

147.    Utah SIP regulation R307-201-2 prohibits any person from removing, or rendering inoperable, any the federally-required emission control system or device on any motor vehicle in Utah.

148.    Utah SIP regulation R307-201-2 has applied at all times applicable to the allegations in this Complaint.

149.    Between November 1, 2011 and the date of this Complaint, Diesel Brothers have repeatedly violated Utah SIP regulation R307-201-2 by owning and/or operating motor vehicles registered in Utah without maintaining in operable condition all of the federally-required emission control systems or devices in such vehicles at all times.

150.    Between November 1, 2011 and the date of this Complaint, Diesel Brothers have repeatedly violated Utah SIP regulation R307-201-2 by removing, or rendering inoperable, federally-required emission control systems and devices in motor vehicles in Utah.

151.    Pursuant to CAA Sections 304(a) and 113(b), Diesel Brothers are liable for injunctive relief, and for a civil penalty of up to $37,500 per day for each motor vehicle registered in Utah that they have owned and/or operated without maintaining in operable condition all of the federally-required emission control systems or devices in such vehicles in violation of Utah SIP regulation R307-201-2 between November 1, 2011 and November 1, 2015, and $93,750 per day for each such violation after November 2, 2015.  40 C.F.R. § 19.4; 81 Fed. Reg. 43,092, 43,095 (July 1, 2016).

152.    Pursuant to CAA Sections 304(a) and 113(b), Diesel Brothers are liable for injunctive relief, and for a civil penalty of up to $37,500 per day for removing or making inoperable federally-required emission control systems and devices in motor vehicles in Utah in violation of Utah SIP regulation R307-201-2 between November 1, 2011 and November 1, 2015, and up to $93,750 per day for each such violation after November 2, 2015.  40 C.F.R. § 19.4; 81 Fed. Reg. 43,092, 43,095 (July 1, 2016).

## VI.  REQUESTS FOR RELIEF

WHEREFORE, Plaintiff UPHE respectfully requests that this Court grant the following relief to correct Diesel Brothers' significant and ongoing violations of law:

A.      DECLARE that Defendants have violated and continue to violate Clean Air Act Section 203(a)(3)(A), 42 U.S.C. § 7522(a)(3)(A), and 40 C.F.R. § 86.1854-12(a)(3)(i) by removing pollution control equipment from COC certified diesel vehicles,

B.      DECLARE that Defendants have violated and continue to violate Clean Air Act Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), and 40 C.F.R. § 86.1854-12(a)(3)(ii) by offering to sell and selling defeat devices.

C.      DECLARE that Defendants have violated and continue to violate Utah SIP Regulation R307-201-2 by owning or operating motor vehicles registered in Utah without maintaining as operational all federally-required emission control systems or devices in such vehicles at all times, and by removing, or rendering inoperable, federally-required emission control systems and devices in motor vehicles in Utah.

D.      ISSUE A PERMANENT INJUNCTION enjoining Defendants:

1.      Permanently to stop deleting, removing or rendering inoperative any pollution control equipment, devices or elements of design on any COC certified vehicle or engine, and to stop using, advertising, selling, conveying as sweepstake prizes or transferring in any other manner any such vehicles or engines directly or indirectly;

2.      Permanently to stop using, manufacturing, selling, offering to sell or installing, any part or component intended for use with, or as part of, any COC certified vehicle or engine that has the principal effect of bypassing, defeating, or rendering inoperative any device or element of design of any vehicle or engine, including but not limited to Diesel Brothers' sale and installation of EGR delete kits, delete-ready exhaust systems, and delete-accommodating ECM defeat "tuner" or "reprogrammer" devices or software "tunes;"

3.      Permanently to stop owning or operating motor vehicles registered in Utah without maintaining as operational all federally-required emission control systems or devices in such vehicles at all times, and to stop removing, or rendering inoperable, federally-required emission control systems and devices in motor vehicles in Utah.

4.      Permanently to stop advertising, through dieselsellerz.com or any other forum or method, any vehicle that is not fully compliant with all federal emission requirements, and only to advertise those vehicles that are certified as fully compliant with all federal emission requirements;

5.      To identify, locate, recall, repurchase (if necessary) and return to fully compliant emissions status all vehicles and engines Defendants have illegally modified to address the violations described in subsections A and B of Section IV in this Complaint;

6.      To identify, locate, recall, repurchase and destroy all illegal parts Defendants have sold to address the violations described in subsections C and D of Section IV in this Complaint;

7.      To finance supplemental relief designed to reduce air pollution in Davis County and the other non-attainment areas in Utah to compensate for the excess, illegal pollution caused by Defendants' activities;

8.      To require the regular, certified submission to UPHE of all facts and reports necessary to ensure complete and continuing compliance with the requirements above, along with providing the opportunity for periodic inspections; and

E.      ORDER Defendants to pay to the federal Treasury a civil penalty pursuant to CAA Section 205(a), 42 U.S.C. § 7524(a), of up to $3,750 for each violation of CAA Sections 203(a)(3)(A) and 203(a)(3)(B) occurring on or after January 13, 2009, and a civil penalty of up

to $4,454 for each violation of CAA Sections 203(a)(3)(A) and 203(a)(3)(B) occurring on or after November 2, 2015. 40 C.F.R. § 19.4; 81 Fed. Reg. 43,092, 43,095 (July 1, 2016).  Pursuant to 42 U.S.C. § 7524(a), any violation of CAA Section 203(a)(3)(A) shall constitute a separate offense with respect to each motor vehicle or engine, and any violation of CAA Section 203(a)(3)(B) shall constitute a separate offense with respect to each part or component.  42 U.S.C. § 7604(a) and 42 U.S.C. § 7604(g)(1) provide that penalties are directed to finance EPA air compliance and enforcement activities;

F.      ORDER Defendants to pay a civil penalty of up to $37,500 per day for each motor vehicle registered in Utah that they have owned and/or operated without maintaining in operable condition all of the federally-required emission control systems or devices in each such vehicle in violation of Utah SIP regulation R307-201-2 between November 1, 2011 and November 1, 2015, and $93,750 per day for each such violation after November 2, 2015.

G.      ORDER Defendants to pay a civil penalty of up to $37,500 per day for removing or making inoperable federally-required emission control systems and devices in motor vehicles in Utah in violation of Utah SIP regulation R307-201-2 between November 1, 2011 and November 1, 2015, and $93,750 per day for each such violation after November 2, 2015.

H.      ORDER Defendants to pay up to $100,000 for beneficial mitigation projects, as provided for by 42 U.S.C. § 7604(g)(2), consistent with the purposes of the Clean Air Act;

I.      ORDER Defendants to pay Plaintiff its costs of litigation, including but not limited to reasonable attorney and expert witness fees, as authorized in CAA Section 304, 42 U.S.C. § 7604(d); and

J.      GRANT such other relief as the Court deems necessary and proper.


Dated this _____ 10TH _____ day of _____ JANUARY _____, _____ 2017 _____.


Meghan Dutton
Meghan Dutton Law PLLC
299 South Main Street #1300 ☐
Salt Lake City, Utah 84111
(801) 673-2300
meghan@megduttonlaw.com

Reed Zars
Attorney at Law
910 Kearney Street
Laramie, WY  82070
(307) 760-6268
reed@zarslaw.com
*Pro hac vice application pending*


Attachments:

Exhibits A, B, E & F, the video exhibits to UPHE's July 27, 2016 notice letter, have been conventionally filed on CD.

Exhibits C, D, G, H, I and J, the non-video exhibits to UPHE's July 27, 2016 notice letter, are attached hereto.