## DECLARATION OF KIRTLY PARKER JONES
*UPHE v. Diesel Power Gear et al.*, 2:17-cv-00032-RJS-DBP

I, Kirtly Parker Jones, M.D., declare that the following statements are true and correct to the best of my knowledge.

1. I am a resident of Salt Lake County, Utah, and a Board member of Utah Physicians for a Healthy Environment (UPHE). I joined the volunteer Board of UPHE in August of 2016. I have been a member of UPHE since 2013. UPHE represents my interests in a healthy environment, including healthy air.

2. I am a professor emerita in the Department of Obstetrics and Gynecology at the University of Utah. I recently retired after a 32 year career as a reproductive endocrinologist and educator in the Department of Obstetrics and Gynecology at the University of Utah. I continue to consult on the clinical care of infertile patients and teach reproductive medicine.

3. I have a reactive airways response to an acute air quality insult (I cough when exposed to diesel smoke, wood smoke, and other smoke). I also have corneal irritation – burning eyes – when exposed to an air quality insult such as a local plume of diesel exhaust. When this happens my visual acuity is limited temporarily. It is well established that air pollution increases tear production and causes eye inflammation. When exposed to a visible cloud of diesel exhaust while driving, I cough, tear, and become distracted. I am adversely affected by this kind of diesel exhaust on a monthly basis in the Wasatch Front.

4. Recently, while driving north on I-15 through Utah County, a diesel pickup truck in the lane next to me accelerated and emitted a black cloud of smoke from its tail pipe. Immediately, I coughed and teared up, while driving 70 miles per hour. I tried to change lanes to move away from the offending vehicle, but felt it wasn't safe for me or other drivers for me to change lanes suddenly. These kinds of emissions are not just a hazard to my health, but also a hazard to my immediate safety and the safety of those around me.

5. The visible air pollution in the Wasatch Front concerns me because I am aware of the long term and immediate short term effects of this pollution on myself, and on all adults, children, fetuses, and future children. The air in the Wasatch Front is a hazard to my health at many times, and especially when it exceeds federal health standards for ozone and for particulate matter smaller than 2.5 microns ($PM_{2.5}$). Diesel exhaust contributes to our unhealthy air because it contains $PM_{2.5}$, and nitrogen oxides that are transformed into $PM_{2.5}$ and ozone in the atmosphere.

6. I understand that the defendants in this case, located in Woods Cross, have removed pollution control equipment from diesel vehicles, such as catalytic converters and diesel particulate filters. I also understand that these modified

diesel vehicles emit more pollution than they did before their pollution control equipment was removed. When these modified vehicles are driven along the Wasatch Front this additional pollution, including PM$_{2.5}$ and nitrogen oxides, worsens the quality of air we all breathe. My health and well-being is harmed by this pollution.

7. I understand that the defendants have sold parts, including exhaust gas recirculation (EGR) delete kits and hollow exhaust pipes, which are used to render inoperative pollution control equipment on diesel vehicles. I also understand that when these parts are installed on diesel vehicles, the modified vehicles emit more pollution than they did before the parts were installed. When vehicles with these parts installed are driven along the Wasatch Front their additional pollution worsens the quality of air we all breathe. I am very concerned that my health is being compromised by this pollution.

8. The additional pollution emitted by diesel vehicles after their pollution control equipment has been removed creates an additional, unnecessary risk to my health and to the health of all Wasatch Front residents and visitors. I believe my rights to a healthy life are being injured by those that remove their vehicle's pollution control equipment.

9. Because of air pollution's threat to my health, I am forced to limit my time outdoors particularly when levels of PM$_{2.5}$ and ozone exceed federal health standards. In other words, my freedom to travel and enjoy our beautiful state is being infringed upon when air quality is poor.

10. I am also harmed by air pollution when members of my community are being harmed. It is for that reason that I feel I have a responsibility to protect my community from pollution harmful to reproductive health – specifically pollution that can adversely affect fertility, pregnancy, and early fetal development.

11. In my field it is well known that high levels of air pollution and diesel exhaust affect the quality of murine and human sperm. (Decreased Sperm Motility Is Associated with Air Pollution in Salt Lake City, *Fertility and Sterility*, 2010;93(6); 1875-9), abstract available at: https://www.ncbi.nlm.nih.gov/pubmed/19217100.

12. We have shown that the sperm quality of men in the Wasatch Front decreases after an episode of high levels of particulate pollution. We also know that poor air quality is associated with increased rates of miscarriage. Even short term exposure in utero has an adverse effect on the developing child. This has been proven in laboratory animals as well as humans. My efforts to improve the chances of women to have children, and for those children to be healthy, are being harmed by high levels of air pollution in the Wasatch Front.

13. Similar to Volkswagen, the defendants should be: (a) stopped permanently from removing pollution control equipment on diesel vehicles, (b)

stopped from selling parts that bypass pollution control equipment, (c) required to recall and fix the vehicles they have improperly modified and to recall all the improper parts they have sold, and (d) required to pay a significant penalty for what they have done.

Signed under the penalties of perjury,

Dated: 8/3/17

Kirtly Parker Jones, M.D.