Attorney for Plaintiff

Reed Zars
Utah State Bar No. 16351
Attorney at Law
910 Kearney Street
Laramie, WY  82070
(307) 760-6268
reed@zarslaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DISTRICT

| | | |
|---|---|---|
| Utah Physicians for a Healthy Environment, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Diesel Power Gear LLC, 4X4 Anything LLC, | ) | Case No. 2:17-cv-32-RJS-DBP |
| B&W Auto LLC d/b/a Sparks Motors LLC, | ) | |
| David W. Sparks, David Kiley, Joshua Stuart, | ) | |
| and Keaton Hoskins, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PHYSICIANS' COMBINED MOTION AND MEMORANDUM FOR
PARTIAL SUMMARY JUDGMENT TO ESTABLISH DEFENDANT B&W
AUTO LLC AND DEFENDANT DAVID SPARKS' LIABILITY FOR
REPEATED AND ONGOING CLEAN AIR ACT VIOLATIONS**

### I.  INTRODUCTION

Plaintiff Utah Physicians for a Healthy Environment ("Physicians") respectfully

move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure, and Rule 56-1 of the Local Rules, to establish Defendant B&W Auto LLC and

Defendant David Sparks' liability for violating Utah's federally-approved State

Implementation Plan ("SIP") and Clean Air Act Section 203 by: (1) removing pollution

control devices from federally-certified vehicles, (2) installing aftermarket emission control

defeat parts in federally-certified vehicles, and (3) offering to sell and selling aftermarket

emission control defeat parts as part of federally-certified vehicles.

Physicians assert there are no material facts in dispute regarding the 17 vehicles subject to this motion.  Additional vehicles modified and sold by B&W Auto and David Sparks may be more amenable to trial.

## II. <u>STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS</u>

The applicable elements of law and undisputed facts related to Physicians' Clean Air Act ("CAA") causes of action that are the subject of this motion are set forth below.  Those causes of action, alleging Defendants B&W Auto and David Sparks have engaged in various forms of prohibited tampering of pollution regulated vehicles, are brought under CAA Section 304.  CAA Section 304 provides federal court jurisdiction to hear an enforcement action brought by a citizen against "any person who is alleged to have violated (if there is evidence that alleged violation has been repeated) or to be in violation of . . . an emission standard or limitation under this chapter."  42 U.S.C § 7604(a).[1]

### A. <u>The Definition of "Person."</u>

CAA Section 304(a) allows citizens to sue "any person" for CAA violations.  42 U.S.C. § 7604(a).  CAA Section 302(e) defines the term "person" as including "an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof."  42 U.S.C. § 7602(e).  The term "person" in the Utah SIP includes an "individual, trust, firm, estate, company, corporation, partnership, association, state, state or federal agency or entity, municipality, commission, or political subdivision of a state."  Utah Admin. Code R307-101-2, 40 C.F.R. § 52.2320(c)(67), (83); 73 Fed. Reg.

---

[1] Physicians' standing to bring this action is the subject of a separate motion for partial summary judgment, filed by Physicians on September 26, 2017, Dkt. 58.

51222 (September 2, 2008), 81 Fed. Reg. 4959 (January 1, 2016).

<u>Statement of Undisputed Material Facts that Demonstrate B&W Auto and David Sparks are "Persons" as Defined in the Clean Air Act and Utah SIP.</u>

1.      Defendant B&W Auto LLC ("B&W Auto") is a Utah limited liability company. Plaintiff's Motion for Leave to Add B&W Auto LLC as a Defendant, Attachments 1 and 2 thereto. Dkt. 43.  B&W Auto LLC does business under the fictitious name Sparks Motors LLC.  *Id*.

2.      Defendant David Sparks is an individual.  David Sparks is also the Chief Executive Officer and sole manager of B&W Auto, and the holder of 100 percent of B&W Auto's ownership and voting interests.  Sparks Dep. 14:24-25, 14:1-7, **Exhibit A.**

3.      As a consequence of his absolute control over B&W Auto, David Sparks has been, and continues to be, the sole cause of all of B&W Auto's actions and inactions.  *Id*. David Sparks agrees he is the "general" of B&W Auto, is fully knowledgeable about the trucks B&W has bought, modified and sold, and used his absolute authority to cause B&W Auto to take – rather than to prevent B&W Auto from taking – the prohibited actions attributed to B&W Auto below.  Sparks Dep. 14:24-25, 15:1-7, 25:13-25, 26:1-4; Sparks Dep. generally.

**B.  The Prohibition Against Removing Emission Control Devices as Set Forth in Physicians' First and Fifth Causes of Action.**

Utah SIP Regulation R307-201-2, 40 C.F.R. § 52.2320(c)(59) provides, in pertinent part,

> No person shall remove or make inoperable within the State of Utah the system or device [for the control of crankcase emissions or exhaust emissions in compliance with the Federal motor vehicle rules] or any part thereof, except for the purpose of installing another system or device, or part thereof, which is equally or more effective in reducing emissions from the vehicle to the atmosphere.

Section 203(a)(3)(A) of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(A) provides, in pertinent part,

(a)  The following acts and the causing thereof are prohibited,

(3)(A) for any person knowingly to remove or render inoperative any . . . device or element of design [installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter] after [the vehicle's] sale and delivery to the ultimate purchaser.

<u>Statement of Undisputed Material Facts that Demonstrate B&W Auto Removed and/or Caused to be Removed Emission Control Devices.</u>

B&W Auto admits it removed or rendered inoperative, or caused to be removed or rendered inoperative, federally-required emission control systems and devices from the vehicles identified in the numbered paragraphs below.[2]

4.      Truck No. 1.  In 2013, B&W Auto knowingly caused Industrial Injection Services, Inc. ("Industrial Injection"), a diesel performance shop located in Salt Lake City, to remove the pollution control devices, including the diesel particulate filter ("DPF"), in the exhaust system of a 2012 diesel Dodge Ram 2500 pickup truck known as "Built Diesel 1." RRP ("RRP") ¶ 8, No. 1, **Exhibit C**; Sparks Dep. 33:2-8; Sparks Exhibit 3.  B&W Auto caused Industrial Injection to replace the truck's entire exhaust pipe, including its diesel particulate filter and all other pollution control devices connected to that pipe, with a hollow tube called a "straight pipe."  B&W Auto also caused Industrial Injection to defeat the truck's computerized emissions monitoring and management system by

---

[2] A summary of these vehicles, and the vehicles B&W Auto offered to sell and/or sold with defeat devices, is found in **Exhibit B**.

reprogramming the truck's engine control module or "ECM."[3]  Sparks Dep. 33:9-12, 36:2-10.  A video showing an agent of B&W Auto driving this truck on East Capitol St. in Salt Lake City is identified as V#1 in Exhibit H to Physicians' Motion for Summary Judgment on Standing, Dkt. 58-8, 59.

5.      Truck No. 2.  In 2013, B&W Auto purchased a new 2013 diesel Ford F-250 truck (called "Built Diesel 2") and knowingly caused the pollution control devices in the truck's exhaust system, including the DPF and any other filter or catalytic converter in the truck's exhaust system, to be removed and replaced by a straight pipe.  B&W also caused the truck's ECM to be reprogrammed with a delete tune.  RRP ¶ 8, No. 2; Sparks Dep. 35:12-25, 36:1-24; Sparks Exhibit 4.  A video showing David Sparks driving this truck up Parley's Canyon on I-80 is identified as V#2 in Exhibit H to Physicians' Motion for Summary Judgment on Standing, Dkt. 58-8, 59.

6.      Truck No. 3.  In 2014, B&W Auto knowingly caused Industrial Injection to remove the catalytic converter in the exhaust system of a 2006 diesel GMC Silverado 2500 (called "Built Diesel 3, second place") and replace it with an aftermarket exhaust system.  B&W also caused Industrial Injection to reprogram the truck's ECM with a delete tune.  RRP ¶ 8, No. 4; Sparks Dep. 38:8-25, 39:1-20; Sparks Exhibit 6.  A video showing an agent of

---

[3] Once a monitored pollution control device is removed or "deleted," a diesel truck's ECM will activate a malfunction light on the dash and significantly reduce the truck's power output (called "limp mode").  However, these protective functions of the ECM can be defeated by reprogramming or "tuning" the settings of the ECM to allow the truck to continue to operate without its pollution control devices (hereinafter, "delete tune").  Sparks Dep. 35:11-25, 36:1-24.  At the time B&W Auto and David Sparks installed, caused to be installed or sold "delete tunes" or "delete tuners" in the vehicles described in this motion they knew the tunes and tuners were outlawed.  Sparks Dep. 135:2-4.

B&W Auto driving this truck in Salt Lake City is identified as V#3 in Exhibit H to Physicians'

Motion for Summary Judgment on Standing, Dkt. 58-8, 59.

7.     Truck No. 4.  In 2015, B&W Auto knowingly removed the catalytic converter

in the exhaust system of a 2007 diesel GMC C4500 Kodiak truck (called "Built Diesel 6, first

place," or "Kodiak Monster") and replaced it with a straight pipe and vertical exhaust stack

through the truck's hood.  B&W also caused the truck's ECM to be reprogrammed with a

delete tune.  RRP ¶ 8, No. 6; Sparks Dep. 43:13-23, 44:2-12; Sparks Exhibit 9.

8.     Truck No. 5.  In 2015, B&W Auto knowingly removed the diesel particulate

filter in the exhaust system of a 2008 diesel Dodge Ram 2500 single cab truck (called "Built

Diesel 6, second place") and replaced it with a straight pipe.  B&W Auto also caused the

truck's ECM to be reprogrammed with an H&S Performance delete tune.[4]  RRP ¶ 8, No. 7;

Sparks Dep. 46:2-12; Sparks Exhibit 11.

9.     Truck No. 6.  In 2015, B&W Auto knowingly removed the catalytic converter

from the exhaust system in a 2007 diesel GMC Silverado (called the "US Duramax") and

replaced it with a straight pipe connected to two vertical "Octastackz" behind the cab.  B&W

Auto also caused the truck's ECM to be reprogrammed with an EFI Live delete tune.  RRP ¶

8, No. 11; Sparks Dep. 60:18-22, 61:5-6, 14-16; Sparks Exhibit 15; vertical stacks invoice,

Bates p. 11277, **Exhibit E**.  A video showing David Sparks driving this truck in West Valley,

Utah, is identified as V#7 in Exhibit H to Physicians' Motion for Summary Judgment on

Standing, Dkt. 58-8, 59.

---

[4] Three years earlier, the delete tunes sold by H&S Performance, LLC, based in St. George,
Utah, had been found by EPA to be in violation of the Clean Air Act.  EPA Notice of Violation
to H&S Performance, May 30, 2012, **Exhibit D**.

10.     Truck No. 7.  In 2015, B&W Auto knowingly removed the pollution control devices, including the DPF, in the exhaust system of a 2011 Ford F-350 diesel truck (called "Brodozer") and replaced them with a straight pipe and vertical stacks.  B&W also caused the truck's ECM to be reprogrammed with an H&S Performance delete tune.  RRP ¶ 8, No. 14; Sparks Dep. 67:20-25, 68:1-10, 118:11-25, 119:1-19; Sparks Exhibits 19, 41.  B&W Auto subsequently offered the Brodozer for sale in which the straight pipe and delete tune were included as a part of the vehicle.  Sparks Exhibit 19.  A video showing David Sparks driving this truck in downtown Moab, Utah, is identified as V#7 in Exhibit H to Physicians' Motion for Summary Judgment on Standing, Dkt. 58-8, 59.

### C.  The Prohibition Against Installing Emission Control Defeat Devices as Set Forth in Physicians' Thirteenth Cause of Action.

CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B) provides, in pertinent part,

(a) The following acts and the causing thereof are prohibited . . .

(3)(B) for any person to . . . install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being . . . installed for such use or put to such use.

Section 203(a)(3)(B) of the Clean Air Act is interpreted by the U.S. EPA to mean that if a person is in possession of a vehicle with an existing exhaust pipe that is missing a pollution control device such as a catalytic converter, that person is prohibited from installing a replacement pipe without replacing the missing pollution control device.  EPA Fact Sheet: Exhaust System Repair Guideline, March 31, 1991, p. 2, **Exhibit F**.

<u>Statement of Undisputed Material Facts that Demonstrate B&W Auto's Repeated
Installation of Emission Control Defeat Parts.</u>

As set forth below, B&W Auto admits it installed parts and components in federally-certified motor vehicles between 2013 and 2017 where a principal effect of such parts and/or components was to bypass, defeat, or render inoperative a device or element of design installed on or in such motor vehicles.  B&W Auto knew or should have known the parts and components it installed in these vehicles would be put to such use.

1.      B&W Auto installed, or caused to be installed, straight pipes and delete tunes in Trucks 1-7 the principal effect of which was to bypass, defeat, and/or render inoperative emission control devices originally installed in such trucks as described in Section B above. Those statements of undisputed facts are incorporated herein by reference.

2.       Truck No. 8.  In 2014, B&W Auto obtained a 1994 Dodge Ram 12-valve diesel truck (subsequently called the "US 12-valve") from which the catalytic converter had previously been removed and replaced by a straight pipe.  In 2014 B&W Auto replaced the horizontal straight pipe in the US 12-valve with two vertical and hollow exhaust stacks immediately behind the cab.  B&W Auto did not replace the truck's missing catalytic converter when it performed this work.  The principal effect of B&W Auto's installation of the dual stacks in the US 12-valve truck was to bypass, defeat, and/or render inoperative the catalytic converter originally installed in the exhaust system of the truck.  RRP ¶ 8, No. 3; Sparks Dep. 37:1-8; Sparks Exhibit 5; Sparks May 28, 2015 Instagram, **Exhibit G**.  A video showing Defendant David Kiley driving this truck in Salt Lake City is identified as V#4 in Exhibit H to Physicians' Motion for Summary Judgment on Standing, Dkt. 58-8, 59.

3.      Truck No. 9.  In 2015, B&W Auto obtained a 1997 Dodge Ram 2500 12-valve diesel truck (subsequently called the "Holy Grail") from which the catalytic converter previously had been removed.  In 2015 B&W Auto replaced the entire exhaust system (a "hodgepodge") in the Holy Grail with a "turbo back cat delete" straight pipe.  B&W Auto did not replace the truck's missing catalytic converter when it performed this work.  The principal effect of B&W Auto's installation of the straight pipe was to bypass, defeat, and/or render inoperative the catalytic converter originally installed in the exhaust system of the truck.  RRP ¶ 8, No. 9; Sparks Dep. 55:9-15, 119:23-25, 120:1-25, 122:1-2; Sparks Exhibits 13 and 42 .

4.      Truck No. 10.  In 2015, B&W Auto obtained a 2009 Ford F-250 diesel truck (subsequently called the "Ultimate Hunt Rig") from which the pollution control devices in the exhaust system, including the diesel particulate filter, previously had been removed and replaced with a straight pipe.  The truck's ECM also had been reprogrammed with a delete tune.  In 2015, B&W Auto replaced the horizontal straight pipe in the Ultimate Hunt Rig with two hollow vertical stacks behind the cab.  B&W Auto did not replace the truck's missing diesel particulate filter when it performed this work, apparently due to the additional cost of the filter, nor did it return the ECM to its original settings.  The principal effect of B&W Auto's installation of the vertical exhaust stacks was to bypass, defeat, and/or render inoperative the diesel particulate filter originally installed in the exhaust system of the truck.  RRP ¶ 8, No. 10; Sparks Dep. 56:18-25, 57:1-25, 58:1-25, 59:1-3; Sparks Exhibit 14.

5.      Truck No. 11.  In 2014, B&W Auto obtained a 2013 Ford F-250 diesel truck from which all of the pollution control devices in the exhaust system, including the diesel

particulate filter, previously had been removed and replaced with a straight pipe.  The

truck's ECM also had been reprogrammed with an H&S Performance delete tune.  In 2014

B&W Auto removed the horizontal straight pipe under the bed of the Ford F-250 and

replaced it with a vertical stack behind the cab.  B&W Auto did not replace the truck's

missing diesel particulate filter or other emission control devices when it performed this

work,  nor did it return the ECM to its original settings.  The principal effect of B&W Auto's

installation of the vertical exhaust stack was to bypass, defeat, and/or render inoperative

the diesel particulate filter and other emission control devices originally installed in the

exhaust system of the truck.  RRP ¶ 8, No. 12; Sparks Dep. 62:24-25, 63:1-24; Sparks

Exhibit 16.  A video showing David Sparks driving this truck in Woods Cross, Utah, is

identified as V#5 in Exhibit H to Physicians' Motion for Summary Judgment on Standing,

Dkt. 58-8, 59.  In 2014, B&W Auto subsequently offered for sale and sold the truck in which

the straight pipe, vertical stack and delete tune were included as a part of the truck.  Sparks

Exhibit 16.

        6.      Truck No. 12.  In 2014-2015, B&W Auto obtained a 2012 Dodge Ram 3500

diesel truck (subsequently called the "Mega Ram Runner") from which all of the truck's

pollution control devices in the exhaust system previously had been removed, including the

exhaust pipe itself.  In 2014-15 B&W Auto installed a straight pipe and vertical exhaust

stacks in the truck without replacing any of the original pollution control devices.  B&W

also caused a delete tune to be installed in the truck "to bypass" the need to replace such

devices.  The principal effect of B&W Auto's installation of the straight pipe, vertical

exhaust stacks and delete tune was to bypass, defeat, and/or render inoperative the diesel

particulate filter and the other pollution control devices originally installed in the exhaust

system of the truck.  RRP ¶ 8, No. 13; Sparks Dep. 64:3-25, 65:1-25, 66:1-24; Sparks Exhibit

17.  A video showing David Sparks driving this truck in Woods Cross in February, 2017, is

identified as V#10 in Exhibit H to Physicians' Motion for Summary Judgment on Standing,

Dkt. 58-8, 59.  A still photo showing this truck on 100 South in downtown Salt Lake City is

identified as V#9 in Exhibit H, Dkt. 58-8, 59.

7.      Truck No. 13.  In 2015-16, B&W Auto obtained a 2008 Ford F-550 diesel

truck (subsequently called the "Super Six") from which all of the truck's pollution control

devices in the exhaust system previously had been removed and replaced with a straight

pipe, and an H&S Performance delete tune installed in the ECM.  In 2015-16, B&W Auto

installed a new straight pipe and vertical exhaust stacks in the truck without replacing any

of the original pollution control devices or returning the ECM to its original settings.  The

principal effect of B&W Auto's installation of the straight pipe and vertical exhaust stacks

was to bypass, defeat, and/or render inoperative the diesel particulate filter and other

pollution control devices originally installed in the exhaust system of the truck.  RRP ¶ 8,

No. 16; Sparks Dep. 70:14-25, 71:1-16, 121:5-25, 122:1-3; Sparks Exhibits 21 & 43.

### D.  The Prohibition Against Offering To Sell and/or Selling Defeat Parts as Part of Certified Vehicles as Set Forth in Physicians' Seventeenth Cause Of Action.

CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), provides, in pertinent part,

(a) The following acts and the causing thereof are prohibited . . .

(3)(B) for any person to . . . sell, or offer to sell . . . any part or component
intended for use with, or as part of, any motor vehicle or motor vehicle
engine, where a principal effect of the part or component is to bypass, defeat,
or render inoperative any device or element of design installed on or in a
motor vehicle or motor vehicle engine in compliance with regulations under
this subchapter, and where the person knows or should know that such part
or component is being offered for sale . . . for such use or put to such use.

<u>Statement of Undisputed Material Facts that Demonstrate B&W Auto's Repeated
Advertisement and Sale of Emission Control Defeat Parts as Part of
Federally Certified Vehicles.</u>

As set forth below, B&W Auto has repeatedly offered for sale and has sold, and continues to offer for sale and sell, defeat parts and components as part of federally certified motor vehicles between 2013 and 2017, where a principal effect of such parts and/or components is to bypass, defeat, or render inoperative a device or element of design installed on or in such motor vehicles.  B&W Auto knew or should have known the defeat parts and components in these vehicles would be put to such use.

1.      B&W Auto offered to sell and/or sold straight pipes and vertical stacks in Trucks Nos. 7 (Brodozer) and 11 (2013 Ford F-250), the principal effect of which was to bypass, defeat, and/or render inoperative emission control devices originally installed in such trucks as described in Sections B and C above.  Those statements of undisputed facts are incorporated herein by reference.

2.      Truck 14.  In 2016, B&W Auto offered for sale and sold to Maverik Country Stores a 2012 diesel GMC 2500 truck in which a straight pipe and delete tune were included as part of the truck.  Maverik, a Utah company located in Salt Lake City, called the vehicle "Truck Norris" and used it in a promotional sweepstakes featuring actor Chuck Norris.  The principal effect of the straight pipe and delete tune is to bypass, defeat, or render inoperative the diesel particulate filter originally installed in the truck.  Sparks Dep. 109:9-25, 110:1-5, 16-18; Sparks Exhibits 36 & 39.  In September of this year, Maverik transferred Truck Norris to an individual located in Utah.

https://www.youtube.com/watch?v=UJUrCs5aN1g.  **Exhibit H**.

3.      Truck 15.  In 2016, B&W Auto offered for sale a 2011 diesel GMC 2500 Denali truck in which a straight pipe was included as part of the truck.  The principal effect of the straight pipe was to bypass, defeat, or render inoperative the diesel particulate filter originally installed in the truck.  Sparks Dep. 89:23-25, 90:1-5, 92:6-14, 24-24, 93:1-2, Sparks Exhibit 31.

4.      Truck 16.   B&W Auto currently is offering for sale a 2011 diesel Dodge Ram 2500 called "the Raptor," in which a straight pipe and an H&S Performance delete tune are included as a part of the vehicle.  Sparks Dep. 78:10-22; Sparks Exhibit 24; http://usedcarsbox.com/ford-search/134804-lifted-2011-ford-f250.html, **Exhibit I**.  The principal effect of the truck's straight pipe and H&S Performance delete tune is to bypass, defeat, or render inoperative the pollution control devices originally installed in the exhaust pipe of the truck.

5.      Truck 17.  B&W Auto currently is offering for sale a 2005 diesel Dodge Ram 2500, called "Tucker Snowcat," in which a straight pipe is included as a part of the vehicle. The principal effect of the straight pipe is to bypass, defeat, or render inoperative the catalytic converter originally installed in the truck.  Sparks Dep. 76:23-25, 77:1-11; Sparks Exhibit 23.

6.      B&W Auto knew, or should have known, that the use of such parts and/or components in the vehicles it offered for sale and/or sold was to bypass, defeat, or render inoperative a device or element of design installed on or in such motor vehicles.  Mr. Sparks' deposition testimony indicates he knew the straight pipes he sold in vehicles would be used to bypass, defeat and render inoperative the pollution control devices originally installed in an exhaust pipe, and that the "tunes" in those trucks would suppress the check

engine light and prevent the vehicle from going into "limp mode."  Sparks Dep. 35:11-25, 36:1-24.  Mr. Sparks also knew the tunes in these trucks were illegal.  Sparks Dep. 135:2-4.

### III.  ARGUMENT

The applicable elements of Utah SIP and Clean Air Act liability, and the undisputed facts recited above that meet each element, demonstrate that Physicians' motion for partial summary judgment and permanent injunction regarding Defendant B&W Auto's repeated and ongoing violations of the Clean Air Act should be granted as a matter of law.

### A.  Summary Judgment Standard.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). *See also Celotex Corp.  v. Catrett*, 477 U.S. 317 (1986); *Reynolds v. School Dist. No. 1, Denver, Colo.,* 69 F.3d 1523, 1531 (10th Cir. 1995).  A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party' on the issue.  *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  Summary judgment is not "a disfavored procedural shortcut, but an integral part of the Federal Rules as a whole which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex*, 477 U.S. at 327, citing Fed. R. Civ. P. 1.

### B.  First & Fifth Causes of Action.  It is Undisputed that B&W Auto Has Repeatedly Removed Pollution Control Devices from Federally-Certified Vehicles and therefore has Repeatedly Violated the Utah SIP and Clean Air Act as a Matter of Law.

B&W Auto has repeatedly violated Utah SIP R307-201-2 and Clean Air Act Section 203(a)(3)(A) by removing pollution control devices from multiple federally-certified vehicles since 2013.  The material facts not being in dispute, B&W Auto should be found liable for such violations as a matter of law as alleged in Physicians' 1st and 5th causes of action.

-14-

Utah's SIP provides, in pertinent part,

No person shall remove or make inoperable within the State of Utah the system or device [for the control of crankcase emissions or exhaust emissions in compliance with the Federal motor vehicle rules] or any part thereof, except for the purpose of installing another system or device, or part thereof, which is equally or more effective in reducing emissions from the vehicle to the atmosphere.

40 C.F.R. § 52.2320(c)(59), Utah Admin. Code R307-201-2.[5]

Section 203(a)(3)(A) of the Clean Air Act states, in pertinent part,

(a)  The following acts and the causing thereof are prohibited,

(3)(A) for any person knowingly to remove or render inoperative any [] device or element of design [installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter] after [the vehicle's] sale and delivery to the ultimate purchaser.

"Knowingly" as used in CAA Section 203(a)(3)(B) means "voluntarily and intentionally, and not by mistake or accident." *United States v. Mac's Muffler Shop, Inc.*, 1986 U.S. Dist. LEXIS 18108; 25 ERC (BNA) 1369 (N.D. Ga. 1986); *United States v. Haney Chevrolet, Inc.,* 371 F. Supp. 381, 384 (M.D. Fla. 1974).  According to the court in *United States v. Economy Muffler*, 762 F. Supp. 1242, 1245 (E.D. Va. 1991),

The term 'knowingly' modifies the verbs 'remove' and 'render' and applies not to the law but to the offensive act. Both the United States Supreme Court and the Fourth Circuit Court of Appeals have established that the inclusion of the term 'knowingly' in an environmental statute does not 'carve out an exception to the general rule that ignorance of the law is no excuse.'  *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 563, 91 S. Ct. 1697, 1700, 29 L. Ed. 2d 178 (1971); *United States v. Jones*, 735 F.2d 785, 790 (4th Cir.), *cert. den.* 469 U.S. 918, 83 L. Ed. 2d 232, 105 S. Ct. 297 (1984).

The undisputed facts, provided by B&W Auto, show that B&W Auto knowingly

---

[5] Available at:
https://yosemite.epa.gov/R8/R8Sips.nsf/b2af5baa99cc429287256b5f0054df73/ca340b2cc972ff7d87257f1600552cf3!OpenDocument

removed and rendered inoperative, or caused to be removed and rendered inoperative, pollution control devices in Truck Nos. 1-8, as set forth in Section II.B. above.  B&W did not undertake any of these removal actions involuntarily or accidentally.  Rather, B&W Auto acted deliberately and intentionally to remove pollution control devices from each of these vehicles, at separate times, between 2013 to the present.  Consequently, Physicians respectfully request the court find B&W Auto liable for removing and rendering inoperative pollution control devices from Trucks No. 1-7.

    **C.**    **Thirteenth Cause of Action.  It is Undisputed that B&W Auto Has Repeatedly Installed Defeat Parts in Federally-Certified Vehicles and Therefore has Repeatedly Violated Section 203(a)(3)(B) of the Clean Air Act as a Matter of Law.**

B&W Auto has repeatedly violated Clean Air Act Section 203(a)(3)(B) by installing pollution control defeat parts in multiple Federally-certified vehicles since 2013.  The material facts not being in dispute, B&W Auto should be found liable for such violations as a matter of law as alleged in Physicians' 13th cause of action.

CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B) provides, in pertinent part,

(a) The following acts and the causing thereof are prohibited . . .

(3)(B) for any person to . . . install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being . . . installed for such use or put to such use.

Catalytic converters, diesel particulate filters and ECM settings plainly are "devices or elements of design" within the meaning of Section 203(a)(3)(B) that are prohibited from being bypassed, defeated or rendered inoperative by the installation of any part or component.  *United States v. Economy Muffler and Tire Center, Inc.*, 762 F.Supp. 1242, 1244

(E.D. Va. 1991) (a three-way catalytic converter is a "device" or "element of design" that is rendered inoperative by the installation of a two-way catalytic converter); Mechanics: An Important Law that Affects You – Don't Tamper with Emissions Controls!, EPA document 420-F-93-003, September 1993, p. 2 (replacement of catalytic converters, sensors, and electronic controls with parts that are "not the same in design and function as the part that was originally on the vehicle" constitutes tampering in violation of the Clean Air Act.) **Exhibit J**.

In addition, Section 203(a)(3)(B) of the Clean Air Act is interpreted by EPA to mean that if a person is in possession of a vehicle with an existing exhaust pipe that is missing a pollution control device such as a catalytic converter, that person is prohibited from installing a replacement pipe without replacing the missing pollution control device.  EPA Fact Sheet: Exhaust System Repair Guideline, March 31, 1991, **Exhibit F**.[6]

The undisputed facts, provided by B&W Auto and set forth in Section II.C. above, show that B&W Auto installed aftermarket parts and components in Truck Nos. 1-14 that B&W Auto knew or should have known had the principal effect of bypassing, defeating or rendering inoperative pollution control devices and elements of design.  First, B&W surely

---

[6] "Question 4. If a vehicle is brought into a muffler shop with a missing converter and a replacement pipe already installed, is it tampering to install a new replacement pipe?

Answer 4. Yes. Section 203(a)(3)(B) makes it illegal for any person to sell or to install any part where a principal effect would be to bypass, defeat, or render inoperative any device or element of design of a vehicle's emission control system. A principal effect of a replacement pipe is to defeat or bypass the catalytic converter system as it was designed by the manufacturer. It is, therefore, a prohibited act to install a replacement pipe in any situation. It is also a prohibited act to replace the entire exhaust pipe without replacing the catalytic converter.  *Id.* at p. 2.

knew the straight pipes and vertical exhaust stacks that it repeatedly used to replace the catalytic converters and diesel particulate filters in Truck Nos. 1-7 had the principal – if not sole – purpose and effect of bypassing, defeating and rendering inoperative those removed devices.  None of the removed devices were re-installed or replaced by B&W Auto in the straight pipe and exhaust stack installation process.

Second, B&W Auto installed parts in Trucks Nos. 1-7 known as "delete pipe[] to delete DPF," "delete tuner[]," "full delete exhaust kit," and "turbo back cat delete."  The names of these parts alone are sufficient to impute their effect of bypassing pollution control devices to B&W Auto.  Sparks Exhibits 40-45.  And if that was not enough, B&W Auto and David Sparks knew when they were installing all of the delete tunes and tuners in the trucks described in this motion that those tunes and tuners were illegal.[7]

Third, B&W participated in, and prolonged the life of, previously installed prohibited parts and components in Trucks Nos. 8-13 by replacing and adding to them, in whole or in part, and by willfully choosing not to physically or electronically restore the pollution control devices such parts have been designed and installed to defeat.  As explained by Mr. Sparks, "in order to bring a truck [without a DPF] back to life, your options are try to track down a DPF or put a tuner on it to bypass it to make it start, which is probably what happened in this case."  Sparks Dep. 66:20-24, see also 121:15-29, 122:1-3.

In sum, it is undisputed that B&W Auto has installed, directly and indirectly, parts and components in each of Truck Nos. 1-13, at separate times, between 2013 and the

---

[7] "Our business started in 2012, 2013, which was at the peak of tuners being outlawed, the delete tuners."  Sparks Dep. 135:2-4.

present.  Consequently, Physicians respectfully request the court find B&W liable for

installing such parts and components in Truck Nos. 1-13 as a matter of law.

> **D.      Seventeenth Cause of Action.  It is Undisputed that B&W Auto Has Repeatedly Offered to Sell and Sold Defeat Parts Included in Federally-Certified Vehicles and Therefore has Repeatedly Violated Section 203(a)(3)(B) the Clean Air Act as a Matter of Law.**

Finally, B&W Auto has repeatedly violated Clean Air Act Section 203(a)(3)(B) by

offering to sell and selling defeat parts as part of federally-certified vehicles since 2013.

The material facts not being in dispute, B&W Auto should be found liable for such

violations as a matter of law as alleged in Physicians' 17th cause of action.

CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B) provides, in pertinent part,

> (a) The following acts and the causing thereof are prohibited . . .

> (3)(B) for any person to . . . sell, or offer to sell, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use.

The undisputed facts, provided by B&W Auto and set forth in Section II.D. above, show

that B&W Auto offered for sale and sold aftermarket parts and components as part of Truck Nos.

7, 11 and 14-17.  B&W Auto knew or should have known the parts and components in these

"turnkey" trucks, including straight pipes and delete tuners, had the principal effect of bypassing,

defeating or rendering inoperative pollution control devices and elements of design in such

trucks.  Although B&W Auto can be expected to argue its fingerprints are not on these trucks

because B&W Auto did not install such parts in them, B&W Auto's marketing and resale of the

defeat parts included in these trucks is prohibited by CAA Section 203(a)(3)(B).  The selling of a

defeat part alone or in a truck ultimately has the same negative impact on air quality.  CAA

Section 203(a)(3)(B) makes no distinction between the two types of sales and prohibits both.

In the promotional sales literature for its turnkey trucks, B&W Auto often identifies the individual defeat parts that are included in B&W Auto's offer to sell the truck.  By doing so, B&W Auto acknowledges that these parts are being individually advertised and sold and that B&W Auto is fully aware of their principal effect in defeating pollution control devices.  For example, B&W Auto's sales literature for Truck No. 11 describes the truck as including a "full DPF delete with H&S tune."  Sparks Exhibit 16.  Similarly, B&W Auto advertised Truck No. 15 as including a "full exhaust system and DPF delete," and Truck No. 16 with "full exhaust" and an "H&S tuner."  Sparks Exhibits 31 and 24.  The terms "full exhaust" and "full DPF delete" are code for an installed straight pipe.  Sparks Dep. 35:13-25, 36:1-10, 121:5-25, 122:1-3.

To conclude, it is undisputed that B&W Auto has offered to sell and has sold parts and components as part of Truck Nos. 7, 11, 14-17 that B&W Auto knew the principal effect of which was to bypass, defeat, or render inoperative pollution control devices in such trucks.  Consequently, Physicians respectfully request the court find B&W Auto liable as a matter of law for offering to sell and selling such parts and components as part of Truck Nos. 7, 11, 14-17.

**E.      Second, Sixth, Fourteenth and Nineteenth Causes of Action.  David Sparks, as CEO, as Holder of 100% of the Ownership and Voting Interests of B&W Auto, Is Jointly and Severally Liable for the Same Violations Asserted Against B&W Auto Described in Sections III.B-D Above.**

David Sparks, as B&W Auto's Chief Executive Officer, sole manager, and holder of 100 percent of B&W Auto's ownership and voting interests, alone caused B&W Auto to undertake the actions described in Sections III.B-D above and, regrettably, failed to use his controlling authority to prevent B&W Auto from taking such actions.  Therefore Mr. Sparks should be held jointly and severally liable for the same violations asserted against B&W Auto as a matter of law.

As explained more fully in Physicians' September 11, 2017 reply to Defendants' August 14, 2017 motion to dismiss, Dkt. 55 pp. 5-14, CAA Section 304(a) allows citizens to

sue "any person" for CAA violations.  42 U.S.C. §§ 7604(a) and 7602(e).  Particularly

relevant to this matter, the term "person" in the CAA, and other closely-related federal

environmental statutes, has been interpreted to include any individual who personally and

directly engages in prohibited acts, or who has the authority to prevent such acts and fails

to do so.

In *U.S. v. Mac's Muffler Shop, Inc. and Winston McKinney*, 1986 WL 15443 at *7 (N.D.

Ga. 1986) (unpublished), the manager of Mac's Muffler Shop was found personally liable

for his company's removal of catalytic converters from automobiles:

> Mr. McKinney, as president, sole owner and manager of Mac's, was in a
> position to prevent removals of catalytic converters by Mac's, and is
> therefore liable for the removals. Furthermore, even if Mr. McKinney were
> not liable in his capacity as a corporate official with the ability to prevent the
> removals, he is liable for his personal participation in the removals under the
> familiar principle that an officer of a corporation is liable for torts of the
> corporation which he participates in or authorizes. *L.C.L. Theatres, Inc. v.*
> *Columbia Pictures Industries, Inc*., 619 F.2d 455, 457 (5th Cir. 1980); *see also,*
> *Escude Cruz v. Ortho Pharmaceutical Corp*., 619 F.2d 902, 907 (1st Cir. 1980);
> *Rohm and Haas Co. v. Dawson Chemical Co., Inc.,* 557 F. Supp. 739, 818 (S.D.
> Tex. 1983); 3A Fletcher Cyc. Corp. § 1137 at 275 (1986).

The decision in *Mac's Muffler* is consistent with the legislative history of the CAA

amendments of 1977 and many subsequent cases that have held participating corporate

officers and employees personally liable in EPA and citizen civil enforcement actions under

the CAA and similar environmental statutes. *See Stillwater of Crown Point Homeowner's*

*Ass'n, Inc. v. Stiglich*, 999 F. Supp.2d 1111, 1132-33 and n.5 (N.D. Ind. 2014) (holding

corporate officer liable in Clean Water Act ("CWA") citizen action, citing with approval

*Mac's Muffler*); *City of Newburgh v. Sarna*, 690 F. Supp.2d 136, 160–162 (S.D.N.Y. 2010)

(finding responsible corporate officer doctrine applies in CWA citizen action, citing *Mac's*

*Muffler* with approval).

It is undisputed that David Sparks has absolute, unfettered control over B&W Auto. David Sparks is the Chief Executive Officer and sole manager of B&W Auto, and holds 100 percent of B&W Auto's ownership and voting interests.  Sparks Dep. 14:24-25, 14:1-7. David Sparks has been, and continues to be, the sole cause of all of B&W Auto's actions and inactions.  *Id.*  David Sparks agrees he is the "general" of B&W Auto, is fully knowledgeable about the trucks B&W Auto has bought, modified and sold, and used his absolute authority to cause B&W Auto to take – rather than to prevent B&W Auto from taking – the prohibited actions attributed to B&W Auto.  Sparks Dep. 14:24-25, 15:1-7, 25:13-25, 26:1-4; Sparks Dep. generally.  Consequently, applicable to Physicians' 2nd, 6th, 14th and 19th causes of action, Physicians respectfully request the court find David Sparks liable for the same violations asserted against B&W Auto in Sections III.B-D above as a matter of law.

### IV.  CONCLUSION

For the foregoing reasons, Physicians respectfully request the court enter partial summary judgment against Defendants B&W Auto and David Sparks for repeatedly violating the anti-tampering provisions of the Utah SIP and the Clean Air Act as described in Sections III.B-E.

DATED this  13th  day of November, 2017.

Respectfully submitted,

/s Reed Zars
Reed Zars, Esq.
Utah State Bar No. 16351
Attorney at Law
910 Kearney Street
Laramie, WY  82070
(307) 760-6268
reed@zarslaw.com

**LIST OF EXHIBITS**

A.   David Sparks Deposition Transcript and Exhibits.

B.   Summary Table of Diesel Vehicles Tampered and Trafficked by B&W Auto.

C.   Defendant Companies' Response to Requests for Production, excerpts.

D.   EPA Notice of Violation to H&S Performance, May 30, 2012.

E.   Truck #6: US Duramax vertical stacks invoice, Bates p. 11277.

F.   EPA Fact Sheet: Exhaust System Repair Guideline, March 31, 1991.

G.   Truck #8: US 12-Valve Sparks Instagram, May 28, 2015.

H.   Truck #14.  Screen shot, Maverik transferred Truck Norris to an individual located in Price, Utah.

I.   Truck #16: Raptor for sale, current advertisement screenshot.

J.   Mechanics: An Important Law that Affects You – Don't Tamper with Emissions Controls!, EPA document 420-F-93-003, September 1993.

K.   Declaration of Reed Zars.