Attorney for Plaintiff

Reed Zars
Utah State Bar No. 16351
Attorney at Law
910 Kearney Street
Laramie, WY  82070
(307) 760-6268
reed@zarslaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DISTRICT

| | |
|---|---|
| Utah Physicians for a Healthy Environment, Inc., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> Diesel Power Gear LLC, 4X4 Anything LLC, ) <br> B&W Auto LLC d/b/a Sparks Motors LLC, ) <br> David W. Sparks, David Kiley, Joshua Stuart, ) <br> and Keaton Hoskins, ) <br> ) <br> Defendants. ) <br> ) | Case No. 2:17-cv-32-RJS-DBP |

### PHYSICIANS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON STANDING

Plaintiff Utah Physicians for a Healthy Environment ("Physicians") respectfully reply to Defendants' November 14, 2017 Opposition to Physicians' motion for partial summary judgment on standing.  Dkt. 65.  Because Defendants' Opposition raises no genuine dispute of any material fact, and because Physicians are entitled to judgment as a matter of law, Physician's urge the Court to grant their motion for partial summary judgment on standing forthwith.

### I. Introduction

Physicians' opening motion set forth the applicable elements of standing: injury, causation and redressability, and satisfied each element with undisputed, admissible facts. Physicians' members showed through uncontested declarations that they are injured by

the air pollution that plagues the Wasatch Front. Physicians' members showed that their injuries are fairly traceable to the excessive pollution caused by Defendants' prohibited actions. Finally, Physicians' members showed that their injuries could be redressed, at least in part, by the injunctive and civil penalty relief that is sought in their complaint. Defendants' Opposition does not disturb these demonstrations.

## II. Reply to Defendants' Statements of Elements and Facts

A.  Reply Regarding Physicians' Organizational Standing

Representational Standing Facts 1-3, 6. Defendants admit that Physicians' purpose is to advocate for clean air, that it has 3,000 newsletter subscribers, that it is particularly concerned about $PM_{2.5}$ and ozone pollution along the Wasatch Front that exceeds federal health standards, that diesel exhaust contributes to both of these pollutants in the ambient air and that none of Physicians' members assert claims for monetary damages or particularized relief.  Def. Resp. p. 7.

Representational Standing Fact 4. Defendants do not dispute that this matter is germane to Physicians' purpose, but rather argue it is a legal conclusion to state Physicians seek to reduce harmful levels of $PM_{2.5}$ and ozone in the air of the Wasatch Front by reducing the emissions of these pollutants from illegally modified diesel vehicles. This is not a legal conclusion regarding whether the vehicles are illegal, but a statement of fact that it is germane to Physicians' purpose to bring this case to court and have the merits of the case decided by the court.

Representational Standing Fact 5. Defendants are correct to point out that the facts supporting the proposition that Physicians' members have standing to sue in their own right are not set forth in this section. They are set forth by declaration and other facts in

the succeeding sections regarding the elements of injury, causation and standing. If those three elements of standing are satisfied, as Physicians' demonstrate, by necessary implication this element of representational standing has been satisfied.

B.  <u>Reply Regarding Defendants' Statement of Additional Elements and Facts Regarding Personal Liability.</u>

Defendants mischaracterize their corporate shield defense as a standing issue. Def. Resp. p. 8-10. Regardless of how it is characterized, however, the issue of whether individuals can be held personally liable for Clean Air Act violations has been fully briefed through Defendants' Motion to Dismiss, Dkt. 54 and related responses and is not addressed here.

C.  <u>Reply Regarding Defendants' Agreement that the Injury Element of Standing has Been Met.</u>

Defendants do not dispute, and therefore admit all 19 of Physicians' numbered statements of fact that identify the many ways Physicians' members are injured by air pollution in general, and diesel exhaust in particular. Def. Resp. p. 10. Defendants admit that unhealthy concentrations of ultra-fine particulate matter and ozone along the Wasatch Front cause Physicians' members to experience shortness of breath, heart rate reduction, and impaired vision. Defendants admit that Physicians' members are forced to limit their outdoor activities due to air pollution, and employ special pollution filtration devices at their homes to protect the health of themselves and their families. Dkt. 58, Phys. Mot., pp. 4-9, ¶¶ B. 1-9, 12-13, 15-16.

D.  <u>Reply Regarding Defendants' Statement of Causation Element.</u>

Defendants suggest they can deprive Physicians of standing to address Physicians' injuries that are "fairly traceable" to Defendants' violations of the Clean Air Act by pointing

to similar injuries inflicted on Physicians by the purported "misconduct of some third party not before the court." Def. Resp. p. 11. This unmeritorious legal defense is addressed in the argument section below.

E.  <u>Reply Regarding Physicians' Injuries That Are "Fairly Traceable" to Defendants' Violations.</u>

Causation Fact 1. Defendants fail specifically to controvert with material facts, and therefore concede, that when they remove a pollution control device from a vehicle that vehicle emits more pollution into the air.

Causation Fact 2. Defendants fail specifically to controvert with material facts, and therefore concede, that the "DPF delete pipes" they have sold and installed effect the removal of a vehicle's diesel particulate filter and cause that vehicle to emit more diesel exhaust into the air. To the extent Defendants dispute the plain meaning of "delete," or the common sense conclusion that once a pollution control device is deleted from a vehicle that vehicle will emit more pollution, Defendants' dispute is futile. In addition to Ms. Pledger, defendant David Sparks admitted in his deposition that the delete pipes and EGR delete kits Defendants have sold and installed increase emissions. Sparks Dep., Dkt. 61-1, p. 36:2-10, p. 50:13-20, p. 133:23-25, p. 134:1-13.

Causation Fact 3. Defendants fail specifically to controvert with material facts, and therefore concede, that the 2012 Cummins Giveaway Truck in the referenced video was theirs, that the smoke from their truck is shown to harm the driver of the Prius, and that the event took place in downtown Salt Lake City.

Causation Fact 4. Defendant B&W Auto admits it has purchased and sold diesel vehicles with missing pollution control devices, and has removed pollution control devices from diesel vehicles.

-4-

Causation Fact 5.  Defendants fail specifically to controvert with material facts, and therefore concede, that B&W Auto offered for sale the 2013 Ford F250 "full DPF delete and H&S Tune," and that the referenced video shows the truck's ability to emit pollution.

Causation Facts 6-7.  Defendants admit that Physicians obtained, and tested the emissions from, the 2013 Ford F250, and that the truck's diesel oxidation catalyst, diesel particulate filter and selective catalytic reduction system had been replaced by a hollow straight pipe.

Causation Facts 8-9.  Defendants do not dispute, and therefore admit that emissions of $NO_x$ and PM from the 2013 Ford F250 exceed EPA limits by over 2,000 percent.[1]  Instead, Defendants assert the following unsupported objection: "States an expert's opinion, but Plaintiff has not designated this individual as an expert witness,[2] nor provided any expert reports.  Def. Resp., p. 17.

Defendants' one-sentence objection does not meet the requirements of DUCivR 56(c)(2)(B).  According to DUCivR 56, n. 9, parties raising an objection "may do so pursuant to DUCivR 7-1(b)(1)(B) and Fed. R. Civ. P. 56(c)(2)."  Fed. R. Civ. P. 56(c)(2) in turn allows an objection to facts "that cannot be presented in a form that would be admissible in evidence."

Defendants' objection appears to be that the emission testing results introduced through Dr. St. Denis are not admissible because the results have been provided in a sworn declaration rather than in an expert report.  This or any related procedural objection

---

[1] This fact provides supportive but not essential proof of Defendants' admissions and videos that concede and confirm the removal of pollution control equipment causes a vehicle to emit more pollution into the air that Physicians breathe.  These undisputed admissions and videos alone are sufficient to establish the causation prong of standing.
[2] Physicians identified Dr. St. Denis as a witness, including the subject matter of his expected testimony, in their April 12, 2017 Initial Disclosures.

should be overruled because Defendants have failed to demonstrate pursuant to Fed. R. Civ. P. 56(d), through affidavit or declaration, that they are unable to "present facts essential to justify [their] opposition" and need time to obtain declarations or take discovery. *Price ex rel. Price v. W. Res., Inc.,* 232 F.3d 779, 783 (10th Cir. 2000) ("Rule 56(f) [now Rule 56(d)] does not operate automatically. Its protections . . . can be applied only if a party satisfies certain requirements.")  Because Defendants have not come forward with facts to rebut the testing results introduced by Dr. St. Denis, or submitted an affidavit consistent with Rule 56(d) that explains what alterative facts they would hope to elicit through their own expert or through expert discovery, their objection should be overruled and Physicians' Causation Facts 8 and 9 should be deemed admitted.

   Causation Facts 10-16.  Defendants admit these seven numbered facts, including that defendant B&W Auto's deleted trucks have been, and continue to be, operated in both metropolitan and rural areas of Utah, that diesel exhaust is harmful to human health, that nitrogen oxides ($NO_x$) in diesel exhaust transform in the winter air of the Wasatch Front to ultra-fine particulate matter ($PM_{2.5}$) and in the summer to ozone, that diesel exhaust includes compounds known to have mutagenic and carcinogenic properties, that diesel vehicles failing the Davis County emissions test emitted $PM_{2.5}$ at concentrations 100 times greater than diesel vehicles that passed the test, and that these ultra-fine particles can be inhaled and become lodged within the small airways and alveolar regions of the lung.  Def. Resp. pp. 17-19.

F. <u>Reply Regarding Defendants' Statement of Additional Facts Regarding Causation.</u>

Additional Causation Facts 1-3.  Physicians do not dispute these facts, but object to them as irrelevant to the issue of whether pollution caused by Defendants' violations of the Clean Air Act is fairly traceable to Physicians' injuries.

Additional Causation Fact 4.  Physicians agree that the Utah DAQ has determined on-road mobile sources are responsible for 36% of the annual pollution along the Wasatch Front.  Physicians can also agree with Defendants' third sentence as long as the essential term "primary," that Defendants deleted from their representations of the pie chart titles on p. 27, is restored to identify the species of $PM_{2.5}$ and $PM_{10}$ being discussed.  Otherwise, Defendants' sentence reflecting those charts is incomplete and misleading.  According to the same 2016 DAQ Annual Report, particles that are emitted directly, as in dust from a dirt road, "are referred to as "primary" particulate.  Def. Resp. Exhibit F, Exhibit 7, p. 30.  Particles that form in the atmosphere from "precursor" gases such as $NO_x$ from diesel vehicles "are referred to as secondary particulate." *Id*.  This distinction is important because DAQ's 2016 Annual Report confirms that secondary particulate matter is responsible for most of the Wasatch Front's elevated concentrations of $PM_{2.5}$, not primary: "Secondary particulate is prominent during Utah's winter inversions."  *Id*.  Defendants' related exhibit from the Utah Department of Health concurs: "[t]he majority of $PM_{2.5}$ pollution is comprised of secondary particles, both nationally (EPA, 2013i) and within Utah (UDAQ, 2014h)."  Def. Resp. Exhibit F, Exhibit 9, p. 4.

Additional Causation Fact 5.  Physicians agree the term on-road mobile sources includes the vehicles described.

Additional Causation Fact 6.  Physicians can only agree with Defendants' summary of Mr. LaBaron's DAQ web posting  as long as the phrase "vehicle operation is not a

-7-

significant source of ozone, and" is stricken from the first sentence. There is no mention of vehicle operation in Mr. LaBaron's DAQ web post.

Additional Causation Fact 7. Defendants' reliance on the Utah Department of Health's report to support the proposition that "vehicle operation is not a significant source of either $PM_{2.5}$ or $PM_{10}$ pollutants" is improper. As with Defendants' Additional Fact 4, Defendants again delete the term "primary" in their introduction of $PM_{2.5}$ and $PM_{10}$ in the first sentence. Defendants also fail to advise the Court that on the same page from which they copied their primary PM data the following advisory provides: "Remember that this graph shows only primary particles, those released as particles directly from a source. Most $PM_{2.5}$ is made of secondary particles, those formed in the atmosphere from other pollutants." *Id.*

The real story is that the Utah Department of Health has found that vehicle operation is a significant – in fact the predominant – source of secondary $PM_{2.5}$ along the Wasatch Front. According to the agency's 2015 Air Pollution and Public Health report, mobile sources are identified as causing 57% of total wintertime $PM_{2.5}$ concentrations along the Wasatch Front. **Exhibit A**. Moreover, the Utah DAQ found in Weber County that 44% of all mobile source NOx emissions were caused by diesel vehicles that represent only 13% of all vehicles in the County. **Exhibit B**.

Additional Causation Facts 8-19. Physicians agree with the facts stated in these numbered paragraphs, with the exception of Fact 14 stated below. Physicians again object to all of these facts as irrelevant to the issue of whether pollution caused by Defendants' violations of the Clean Air Act is fairly traceable to Physicians' injuries.

Additional Causation Fact 14.  Defendants' suggestion that at an unidentified location in this 57-page "preliminary brief" there exists the fact that "significant reductions in $NO_x$ would result in zero visible difference in the haze along the Wasatch Front" is wholly without support.  Nowhere in this document is the Wasatch Front even mentioned, nor would it be since the Clean Air Act's regional haze visibility program that the preliminary brief addresses only protects mandatory Class I areas such as national parks and wilderness areas, not heavily polluted Class II metropolitan areas such as Salt Lake City.  The mandatory Class I area in Utah closest to Salt Lake City is Capitol Reef National Park, more than 200 miles to the south.  See, https://www.epa.gov/visibility/list-areas-protected-regional-haze-program.

Additional Causation Fact 20.  Physicians can agree to the facts set forth in the first sentence, if the phrase "a total of" is stricken and the following conditions are added.  First, the phrase "a total of" does not exist in the cited paragraph of the Sparks Declaration.  Second, the implication that B&W Auto has *only* owned "a total of" 16 diesel trucks with missing pollution control equipment is incorrect.  Third, B&W Auto admitted to 17 trucks with missing pollution controls in its initial discovery responses, Dkt. 64-3, and Mr. Sparks admitted to additional trucks in his deposition.  Sparks Dep., Dkt. 64-2, p. 76:23-25, p. 77:1-11, Sparks Exhibit 23; p. 78:10-22, Sparks Exhibit 24; p. 89:23-25, p. 90:1-5, p. 92:6-14, 24-24, p. 93:1-2, Sparks Exhibit 31; p. 109:9-25, p. 110:1-5, 16-18, Sparks Exhibits 36 & 39.  Fourth, in response to Plaintiff's Second Set of Interrogatories, Defendants did not deny the existence of other applicable vehicles, instead repeatedly claiming they were unable to identify all of the vehicles they have bought and sold with missing pollution control equipment and/or with defeat parts installed because "Defendants do not maintain those

type of records." **Exhibit C**.  The extent to which Defendants supplement their discovery responses to identify additional responsive vehicles remains to be seen.

Additional Causation Fact 21.  Physicians agree with these facts, based on Mr. Sparks' representations.

Additional Causation Fact 22.  Physicians agree with the first two sentences, based on Mr. Sparks' representations.  Physicians dispute that B&W Auto only performed "cosmetic" work on this 2013 Ford F250: Mr. Sparks testified to significantly modifying the truck's exhaust system.  Dkt. 64-2, p. 62:24-25, p. 63:1-24, Sparks Exhibit 16; Dkt. 58-8, Exhibit H, video V#5.

Additional Causation Fact 23.  Physicians do not agree the 2013 Ford F250 was sold to an out-of-state purchaser.  The sale documents provided by Defendants for this truck show it was purchased by a Utah resident in St. George.  **Exhibit D**.

G.    Reply Regarding Defendants' Response to Facts Regarding Redressability.

Redressability Facts 1-5.  The facts set forth in Physicians' paragraphs 1-5 identify the relief Physicians seek in their complaint that would redress their injuries.  Defendants have made a boilerplate objection to all five paragraphs that "[a]llegations in the Complaint do not constitute evidence."  Def. Resp., pp. 25-26.  This objection is not well taken.  The requests for relief in the complaint are not allegations, but rather requests for relief.  The requests for relief set forth in Physicians' complaint support Physicians' demonstration of redressability, and by themselves are evidence of same.

Redressability Facts 6-9.  The facts set forth in Physicians' paragraphs 6-9 identify the relief Physicians' members seek that they assert will work to redress the injuries caused by Defendants' violations.  Physicians' members make the common sense assertions

that if Defendants are ordered to stop removing pollution control equipment from vehicles, and recall and repair the vehicles they have consequently caused to pollute more, the air Physicians breathe will become cleaner.  Defendants do not dispute these facts.  Rather, Defendants object to these facts on the basis that they "[c]all for a legal conclusion without expert evidence to support statement that Wasatch Front's air quality would be enhanced."  Def. Resp., pp. 26-27.  However, to assert that reinstalling legally-required pollution controls into a vehicle will improve air quality by reducing the vehicle's emissions does not require expert testimony.  It is a fact established by regulation, 40 C.F.R. Part 86, and confirmed by common sense.

H.   <u>Reply Regarding Defendants' Statement of Additional Facts Regarding Redressability.</u>

Additional Redressability Facts 1-3.  Admitted.

Additional Redressability Fact 4.  Admitted that parts sold by 4X4 Anything and DPG were drop-shipped to purchasers through vendors.  Dkt. 64-1, pp. 136-136.  Disputed that DPG had no reason to believe that any of the parts it sold would violate the Clean Air Act.  David Sparks, CEO of DPG, knew that the EGR delete kits and delete tuners he sold and installed were illegal when he started business in 2012, and certainly when EPA shut down H&S Performance.  Dkt. 64-1, pp. 134-135, p. 48.  Further, the name of many parts sold by 4X4 Anything and DPG that identified a pollution control device that would be "deleted" by the part being sold sufficiently informed these entities of its illegal function.  Objection: DPG's ignorance of the law is no defense to Physicians' claims, and is irrelevant to Physicians' demonstration of redressability.

Additional Redressability Fact 5-6.  Admitted that the EGR delete kits, delete pipes and delete tuners were removed from the DPG website and have not reappeared as of this

date. Many other non-CARB or EPA approved parts remain for sale on the DPG website, including oversized injectors, turbochargers and fuel pumps.

https://dieselpowergear.com/pages/4x4anything

### III. Argument

#### A. Physicians' Injuries are Fairly Traceable to Defendants' Alleged Violations.

Defendants' opening argument that Physicians' admitted injuries are not "fairly traceable" to their alleged Clean Air Act violations should be rejected. Significantly, Defendants do not dispute, and therefore admit that diesel vehicles discharging plumes of exhaust in the Salt Lake Valley cause Physicians' members to choke, tear up, and take evasive measures to avoid. Phys. Mot., pp. 7-10, ¶¶ B. 10, 11, 14, 17, 18; Def. Resp., p. 10. Moreover, Defendants admit they have been marketing illegal parts, removing pollution control devices, selling illegally modified diesel vehicles, and broadcasting videos that show they cause those same undisputed injuries of which Physicians complain. Def. Resp., p. 15-18, ¶¶ 4, 10-16. These admissions alone are sufficient to establish that Physicians' injuries are "fairly traceable" to Defendants' misconduct.

Defendants additionally admit that diesel exhaust contributes to elevated levels of $PM_{2.5}$ and ozone in Utah's air, Def. Resp. pp. 7-8, and that diesel vehicles with missing pollution control devices and aftermarket defeat parts discharge more diesel exhaust into the air. Def. Resp. p. 13. These admissions and the other undisputed facts described in Section II.E. above are similarly sufficient to satisfy the causation element of standing.

Finally, it can not be overlooked that Defendants' adverse impact on air quality has a ripple effect well beyond their shop in Woods Cross. Defendants' distribution of deleted diesel trucks through sales and sweepstakes prizes, and their leadership role using social

and traditional media to promote pollution enhancing parts and practices, only tends to enlarge their impact.[3]

Defendants nevertheless suggest that because the harmful pollution resulting from their misconduct is dwarfed by the pollution resulting from the "misconduct of some third party not before the court," *Washington Environmental Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013), Physicians injuries to which Defendants contribute are somehow non-justiciable. Def. Resp., p. 30-35. Defendants' "third party" defense is inapplicable as a matter of law, and, even if applicable, unsupported as a matter of fact.

First, "[w]hen multiple sources contribute to the pollution at issue," including particulate matter from leaf burning and highway traffic, in a Clean Air Act enforcement case "plaintiffs are not required to show 'to a scientific certainty that defendant's [emissions], and defendant's [emissions] alone, caused the precise harm suffered by the plaintiff.'" *Natural Resources Defense Council v. Illinois Power Resources, LLC.*, 202 F.Supp.3d 859, 872-73 (C.D. Ill. 2016), citing *P.I.R.G. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 72 (3d Cir. 1990). The obvious corollary to this rule is that "[p]laintiffs need not sue every discharger in one action, since the pollution of any one may be shown to cause some part of the injury suffered." *Powell Duffryn* at 72, n. 8.

Many other courts have rejected Defendants' third-party defense, finding, as in *Illinois Power* and *Powell Duffryn*, that a plaintiff has standing to sue a single polluter even

---

[3] Defendants point out in their response brief, without solicitation, that they not only have created a market for high-polluting diesel trucks, but they command an extensive media presence. Def. Resp., pp. 4-5. According to Defendant Sparks, one of their first videos showing two heavily smoking trucks in a tug of war garnered four million views on YouTube, and two million average viewers watch their "Diesel Brothers" television show on Discovery Channel. The tug of war video "1200 Horsepower Donuts," Exhibit 3 to the Kiley Deposition, is to be conventionally filed as **Exhibit E** with the court.

though many other pollution sources contribute to plaintiff's injuries. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 558 (5th Cir. 1996) ("Given the number of entities discharging chemicals into Galveston Bay, it would be virtually impossible for any of Sierra Club's members to trace his injuries to Cedar Point's discharge in particular. Rather, it is sufficient for Sierra Club to show that Cedar Point's discharge of produced water contributes to the pollution that impairs [plaintiff's] use of the bay."); *Friends of the Earth v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161-62 (4th Cir. 2000) ("Rather than pinpointing the origins of particular molecules, a plaintiff 'must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged' in the specific geographic area of concern."); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1280-81 (11th Cir. 2015) (agency's issuance of permit allowing pollutant discharges from coal mines into watersheds used by plaintiffs sufficient to establish causation, even though downstream impacts characterized as "minor"); *Natural Resources Defense Council v. Vilsack*, 2011 WL 3471011, *5 (D. Colo. 2011) (although air pollutant emissions from natural gas development project small in comparison to regional emissions, "the amount of environmental harm compared to other emissions sources has little relevance for standing purposes.").

Second, even if Defendants' restatement of the causation element is accepted, and Defendants are allowed to present evidence in an effort to demonstrate Physicians' injuries are "the result of misconduct of some third party not before the court," Def. Resp. p. 11,

*Bellon, supra*, Defendants' demonstration fails. This is simply because Defendants fail to demonstrate that all of Physicians' injuries are due to the misconduct of any third party.[4]

In their response, Defendants urge the court to overlook their air pollution violations and instead to focus on the many other sources of pollution along the Wasatch Front. This includes pollution from the 260 million registered motor vehicles in the United States, the three million motor vehicles in Utah, Asian sources of ozone, western state wildfires, Kennecott's Brigham Canyon Mine, PacifiCorp's central fleet of Utah power plants, and the five major refineries along the Wasatch Front. Def. Resp., pp. 20-24, ¶¶ 2, 3, 6-12, 15-19 and related exhibits. The trouble is, Defendants appear to be suggesting that Physicians hale these sources of pollution into court even though Defendants provide no evidence of any misconduct on the part of any of them. In fact Defendants' exhibits support the opposite conclusion: that these many sources are in compliance with all applicable air pollution statutes, regulations and permits.

In sum, Defendants' effort to deprive Physicians of standing by claiming Physicians' injuries are caused by the misconduct of other parties not before the court should be rejected.

### B. Physicians' Injuries are Redressable

Defendants also argue that Physicians injuries are not redressable and thus Physicians have no standing. First Defendants' claim that their unlawful emissions are merely a "single drop in the ocean" and therefore, even if Physicians prevail in this matter

---

[4] "[W]here a defendant has pointed to an alternative culprit that is responsible for all of the pollution at issue, the injury is not fairly traceable to the defendant." *Illinois Power Resources*, *supra* at 872.

Physicians' injuries will still persist. Def. Resp. p. 35. Because this argument is the flip side of Defendants' causation argument, Physicians refer the court to their causation reply above.

Second, Defendants argue that Physicians' illegal parts claims are wholly past and therefore Physicians' injuries can not be redressed. Def. Resp. p. 36-38. Defendants' argument here is simply a rehash of the same legal argument in their motion to dismiss, and Physicians respectfully refer the court to their response to that motion to satisfy their response here. Dkt. 55 pp. 14-22.

### C. Physicians Have Standing to Assert Claims Against the Individual Defendants.

Finally, Defendants argue that Physicians do not have standing to pursue CAA claims against the individual defendants. Because this is yet another rehash of Defendants' legal argument in their motion to dismiss, Physicians respectfully refer the court to their response to that motion to satisfy their response here. Dkt. 55 pp. 5-14.

### IV. CONCLUSION

As demonstrated above, there is no genuine dispute that Physicians are harmed by air pollution, that the types of air pollution harming Physicians are fairly traceable to Defendants' alleged violations of the CAA, and that Physicians' injuries can be redressed by injunctive and civil penalty relief. Therefore Physicians respectfully request their motion for partial summary judgment be granted forthwith.

DATED this 5th day of December, 2017.

                    Respectfully submitted,

                    /s Reed Zars
                    Reed Zars, Esq.
                    Utah State Bar No. 16351
                    Attorney at Law
                    910 Kearney Street
                    Laramie, WY  82070
                    (307) 760-6268
                    reed@zarslaw.com