Attorney for Plaintiff

Reed Zars
Utah State Bar No. 16351
Attorney at Law
910 Kearney Street
Laramie, WY  82070
(307) 760-6268
reed@zarslaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DISTRICT**

| | |
|---|---|
| Utah Physicians for a Healthy Environment, Inc., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> Diesel Power Gear LLC, 4X4 Anything LLC, ) <br> B&W Auto LLC d/b/a Sparks Motors LLC, ) <br> David W. Sparks, David Kiley, Joshua Stuart, ) <br> and Keaton Hoskins, ) <br> ) <br> Defendants. ) <br> ) | Case No. 2:17-cv-32-RJS-DBP |

**PHYSICIANS' COMBINED MOTION AND MEMORANDUM FOR
PARTIAL SUMMARY JUDGMENT TO ESTABLISH DEFENDANTS
DIESEL POWER GEAR LLC, 4X4 ANYTHING LLC,
DAVID SPARKS AND JOSHUA STUART'S LIABILITY FOR
REPEATEDLY SELLING DEFEAT PARTS
IN VIOLATION OF THE CLEAN AIR ACT**

**I.  INTRODUCTION AND RELIEF SOUGHT**

Plaintiff Utah Physicians for a Healthy Environment ("Physicians") respectfully move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Rule 56-1 of the Local Rules, to establish Defendants Diesel Power Gear, 4X4 Anything, David Sparks and Joshua Stuart ("Defendant Parts Sellers") liable for violating Clean Air Act Section 203 by selling aftermarket emission control defeat parts. This motion applies to Physicians' causes of action 9-12 in their first amended complaint.

Physicians demonstrate below that there are no material facts in dispute regarding the aftermarket defeat parts subject to this motion, and that Defendant Parts Sellers sold them in violation of the Clean Air Act. These conclusions are reinforced by the fact that Defendants have failed to answer Physicians' July 20, 2017 first amended complaint within 14 days of withdrawing their meritless motion to dismiss on January 23, 2018, Fed. R. Civ. P. 12(a)(4)(A), and thus are in default and the allegations in the complaint deemed true.

Physicians therefore respectfully request the court find that each defeat part sold by these defendants constitutes a separate violation of CAA Section 203 as a matter of law.

If the court finds Defendant Parts Sellers liable for selling defeat parts, Physicians intend to request the court address defendants' violations through injunctive and civil penalty relief, unless resolved through settlement. In particular, and consistent with their first amended complaint, Physicians intend to request the court: (1) issue a permanent injunction prohibiting these defendants from selling defeat parts in the future, (2) issue a remedial injunction requiring the defendants to remove the defeat parts from vehicles within their control, and (3) assess a substantial civil penalty against the defendants for their violations. Further, to address the ongoing, illegal emissions caused by the defeat parts the defendants have sold to third parties, Physicians intend to request remedial relief to offset those emissions, which relief could be subject to reduction based on the degree to which the defendants cause such parts to be removed from the third-party vehicles.

## II. STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

The applicable elements of law and undisputed facts related to Physicians' Clean Air Act ("CAA") causes of action 9-12 that are the subject of this motion are set forth below. Those causes of action allege that defendant Diesel Power Gear LLC and its d/b/a 4X4 Anything LLC[1] (herein "DPG"), and defendants David Sparks and Joshua Stuart, have sold aftermarket defeat parts in violation of CAA Section 203. Dkt. 49, pp. 90-103. "Defeat

---
[1] Defendants concede that 4X4 Anything LLC is a "d/b/a of DPG." Dkt. 65, p. 1, n.2.

parts" for the purposes of this motion include: (1) exhaust gas recirculation ("EGR") delete kits, and (2) hollow exhaust systems called "straight pipes" or "delete pipes" that effect the removal of emission control devices such as catalytic converters and diesel particulate filters.

### A. The Definition of "Person."

CAA Section 304(a) allows citizens to sue "any person" for CAA violations. 42 U.S.C. § 7604(a). CAA Section 302(e) defines the term "person" as including "an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof." 42 U.S.C. § 7602(e). Limited liability companies, their participating officers and employees, and individuals are all "persons" within the meaning of the CAA.

Statement of Undisputed Material Facts that Demonstrate Diesel Power Gear, David Sparks and Joshua Stuart are "Persons" as Defined in the Clean Air Act.

1. Defendant DPG is a Utah limited liability company. Defendants' Motion to Dismiss, Dkt. 65, pp. 1, 4.

2. David Sparks created DPG in 2014 and installed himself as DPG's Chief Executive Officer. Mr. Sparks holds 100 percent of DPG's voting interests and 40 percent of its ownership interests. DPG Operating Agreement, Exhibit A, available in Appendix of Evidence ("AOE") **Exhibit 1**.

3. Mr. Sparks created a sweepstakes (or "giveaway") marketing plan to drive DPG's sales of defeat parts and other merchandise. "I have created some very successful aspects of the business. These are items that were thought of solely by me, they were carried out and made successful by my great team. These items include: . . . *DPG BuiltDiesel*

*Giveaway."* May 10, 2015 email, Bates 14347, **AOE Exhibit 2**.

4. Mr. Sparks' marketing plan consists of three basic elements: Defendant B&W Auto LLC (owned and controlled by Mr. Sparks) builds high performance "concept" or "monster" trucks with defeat parts which DPG advertises as sweepstakes prizes. Sparks Dep., 29:18-25, **AOE Exhibit 3**. Purchasers of DPG's parts and merchandise receive one entry to win a prize truck for every five dollars spent. https://dieselpowergear.com/pages/official-rules-thunder-lightning-giveaway. After the truck winner is selected, DPG remits the cost of the truck and defeat parts to B&W Auto from the sales generated by the sweepstakes and retains the remainder. Sparks Dep., 78:23-25, 79:1-25, 80:1-17; Stuart Dep., 46:5-15. **AOE Exhibits 3&4**.

5. Defendant Joshua Stuart is an individual. Mr. Sparks hired Mr. Stuart in mid-2014 as DPG's Chief Operating Officer and Chief Financial Officer to manage DPG's day-to-day parts sales and sweepstakes operations. Stuart Dep., 3:9-25, 4:1-25, 9:9-25, **AOE Exhibit 4**. Joshua Stuart is an employee of DPG and holds a 30 percent ownership interest in DPG. *Id.*

6. According to DPG's Warehouse Manager, Heather Pledger, Mr. Sparks and Mr. Stuart are at the top of DPG's management pyramid. Pledger Deposition, 23:10-15, available at **AOE Exhibit 5**.

7. Mr. Sparks and Mr. Stuart are named as the two "owners" of DPG in DPG's business license issued by the City of Woods Cross. **AOE Exhibit 6**.

8. Mr. Stuart navigates "all the red tape to legally run a sweepstakes" for DPG, and also makes sure all the necessary marketing steps are followed. Stuart Dep., 14:17-25, 15:1-5, **AOE Exhibit 4**.

9. Mr. Stuart confirms that his and Mr. Sparks' implementation of the sweepstakes marketing model causes consumers to purchase – and thus DPG to sell – more parts and other products during an active sweepstakes. Stuart Dep., 47:17-25, 48:1-16, **AOE Exhibit 4**.

10. David Sparks has personally caused DPG to order, and subsequently to sell, multiple delete pipes. **AOE Exhibit 7,** Bates pp. 14290-92, 23959-60, 25866-67, 32459, 32506, 32518-20.

11. Joshua Stuart is authorized to decide what vendors DPG will endorse, and what parts DPG will sell. Stuart Dep., 10:3-17, **AOE Exhibit 4**.

12. David Sparks guaranteed, with his personal credit card, all debts owed to Premier Performance LLC by DPG. Premier Performance has been a significant supplier of defeat parts sold by DPG. **AOE Exhibit 8,** and **AOE Exhibits 17-18**.

13. David Sparks is identified as DPG's "Pres./CEO" and "Person Authorized to Purchase" in DPG's vendor agreement with Transamerican Wholesale, a DPG supplier of defeat parts. **AOE Exhibit 9**.

14. David Sparks personally signed the credit application for DPG's vendor Thunder Diesel & Performance Co., another DPG supplier of defeat parts. **AOE Exhibit 10**, and **AOE Exhibits 15, 19**.

15. David Sparks is named as the owner of DPG in DPG's Dealer Application to Diesel Auto Power, another DPG supplier of defeat parts. **AOE Exhibit 11**.

16. Mr. Stuart used his personal credit card to guarantee payment of defeat parts from DPG's vendor Thunder Diesel & Performance Company. February 1, 2016 Credit Card Authorization Form, **AOE Exhibit 12**. Thunder Diesel has been a significant wholesale

supplier of delete pipes that DPG has sold both to consumers and to Defendant B&W Auto. **AOE Exhibits 15, 19**.

17. Mr. Sparks and Mr. Stuart have participated personally in advertising and promoting the sale of parts through DPG. Examples of videos published on the internet that feature Mr. Sparks ("Heavy D") and Mr. Stuart ("Redbeard") promoting DPG parts sales include: "Pugs Truck for a Buck Info and Winners Update" (esp. 3:40 to end), "Diesel Sellerz OBS 2.0 Giveaway" (3:44 – 5:00), "DPG Money, Indian Motorcycle, MegaRam Giveaway!" (0:00 – 1:00) and "MC HUMMER Bonus Prize from Rotella & New Giveaway Teaser" (0:00 – 1:25), **AOE Exhibit 13**.[2]

18. David Sparks, as CEO, has always had the authority to direct DPG not to offer to sell defeat parts, but has only used that authority once, after receiving Physicians' pre-suit notice letter. Sparks Dep., 136:21-25, 137:1-10, 138:8-15, **AOE Exhibit 3**.

19. Similarly, Joshua Stuart, as COO/CFO, has always had the authority to direct DPG not to offer to sell defeat parts, but has only used that authority once, after receiving Physicians' pre-suit notice letter. In addition, Mr. Stuart has not made any effort to recall the illegal parts DPG has sold. Stuart Dep., 36:12-25, 37:1-25, 38:1-25, 39:1-2, **AOE Exhibit 4**.

### B. The Prohibition Against Offering to Sell and Selling Emission Control Defeat Parts as Set Forth in Physicians' Ninth, Tenth, Eleventh and Twelfth Causes of Action.

Physicians' causes of action 9-12 allege that Defendant Parts Sellers have offered to sell and have sold defeat parts and components in violation of CAA Section 203(a)(3)(B).

---

[2] A DVD containing these videos has been conventionally filed with the court.

There are two elements to these types of CAA Section 203(a)(3)(B) violations, as the pertinent provisions of the statute demonstrate below:

> (a) The following acts and the causing thereof are prohibited . . .
>
> (3)(B) for any person to . . . sell . . . any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale . . . for such use or put to such use.

42 U.S.C. § 7522(a)(3)(B).

### Statement of Undisputed Material Facts that Demonstrate DPG Repeatedly Offered to Sell and Sold Emission Control Defeat Parts.

DPG repeatedly offered for sale and sold parts and components intended for use with federally-certified motor vehicles between 2013 and 2017, (1) where a principal effect of such parts and/or components was to bypass, defeat, or render inoperative a device or element of design installed on or in such motor vehicles, and (2) where DPG knew or should have known such parts were being offered for sale to be put to such use.

1. DPG has provided a spreadsheet of its on-line parts sales to third parties through multiple vendors between 2014 and mid-2017. **AOE Exhibit 14**.

2. DPG's multi-vendor spreadsheet shows that DPG sold at least 18 aftermarket exhaust pipes to customers, including customers in Utah, that have the principal effect of bypassing, defeating, or rendering inoperative pollution control devices on federally-certified motor vehicles ("delete pipes" or "straight pipes"). In addition, DPG provided at least seven (7) individual invoices that evidence DPG's sale of delete pipes. Because DPG's multi-vendor spreadsheet does not identify sale dates or locations of customers the extent to which there is any overlap between the delete pipes identified in the spreadsheet and

the invoices is unknown. The resulting 24 delete pipes sold by DPG are summarized in **AOE Exhibit 15**, which exhibit includes the applicable invoices.[3]

3. DPG also provided a spreadsheet of parts sold by DPG solely through wholesaler Premier Performance LLC between 2014 and mid-2017. **AOE Exhibit 16,** applicable excerpts.

4. DPG's Premier Performance spreadsheet shows that DPG sold at least 49 delete pipes to customers, including customers in Utah, that have the principal effect of bypassing, defeating, or rendering inoperative pollution control devices on federally-certified motor vehicles. These sales are summarized in **AOE Exhibit 17**.

5. DPG's Premier Performance spreadsheet shows that DPG sold at least 88 exhaust gas recirculation ("EGR") delete kits to customers, including customers in Utah, that have the principal effect of bypassing, defeating, or rendering inoperative pollution control devices on federally-certified motor vehicles. These sales are summarized in **AOE Exhibit 18**.

6. DPG invoices show that DPG sold at least 26 delete pipes and EGR delete kits to Defendant B&W Auto that have the principal effect of bypassing, defeating, or rendering inoperative pollution control devices on federally-certified motor vehicles. These sales are summarized in **AOE Exhibit 19**, which exhibit includes the applicable invoices.

---

[3] Physicians' summary tables include a column titled "CARB EO." This stands for California Air Resources Board Executive Order. If an add-on or modified aftermarket part has received a CARB EO number it is presumed not to cause an increase in emissions. Conversely, if the part has no CARB EO it is presumed to cause an increase in emissions and is therefore unlawful. See, https://www.arb.ca.gov/msprog/aftermkt/devices/amquery-091517.php.

7. Between 2014 and March 2017 DPG sold at least 187 parts and components intended for use with federally-certified motor vehicles, where a principal effect of such parts and/or components was to bypass, defeat, or render inoperative a device or element of design installed on or in such motor vehicles. These sales are summarized below:

| Parts Sold by DPG | Amount | Appx. of Evidence |
|---|---|---|
| | | |
| Delete Pipes sold through multiple vendors | 24 | Exhibit 15 |
| Delete Pipes sold through Premier | 49 | Exhibit 17 |
| EGR Delete Kits sold through Premier | 88 | Exhibit 18 |
| Delete Pipes and EGR Delete Kits sold to B&W Auto | 26 | Exhibit 19 |
| | | |
| **Total Parts** | **187** | |

**AOE Exhibits 14-19**.

<u>Statement of Undisputed Material Facts that Demonstrate Defendant Parts Sellers Knew or Should Have Known the Defeat Parts It Offered to Sell and Sold Would Be Put to Such Use.</u>

8. The names of the defeat parts alone that Defendant Parts Sellers sold were sufficient to inform these defendants of the use to which such parts would be put. A "DPF delete pipe" admits of no meaning other than it is to be used to remove a vehicle's diesel particulate filter. Similarly, an "EGR delete kit" is obviously intended to be used to remove a vehicle's exhaust gas recirculation system. **AOE Exhibits 15, 17-19**.

9. DPG admits it knew or should have known that the delete pipes and EGR delete kits it offered to sell and sold would be used to bypass, defeat, or render inoperative a device or element of design installed on or in a regulated motor vehicle. DPG's CEO David Sparks conceded in his response to Physicians' motion for partial summary judgment with respect to the sale of vehicles with defeat parts installed, that delete pipes were used to bypass, defeat, or render inoperative a device or element of design installed on or in a

regulated motor vehicle.  Dkt. 64, pp. 11-13; Dkt. 75, p. 9.  Because David Sparks is DPG's CEO, his concessions are imputable to DPG.  Sparks Dep. 6:13-25, 14:1-13, **AOE Exhibit 3**.

      10.      Mr. Sparks confirmed the obvious that a "full delete exhaust kit" is sold to a consumer for the purpose of removing all of the emission control devices installed in a vehicle's exhaust system:

> Q. (BY MR. ZARS) Can you identify Exhibit-41? This is an e-mail from Heather Pledger to you; is that correct? Or a series of e-mails.
>
> A. Yeah. It looks like it.
>
> Q. Beginning on page 3, it looks like you initiated the conversation on August 19th. Can you explain what you were up to there about needing the cheapest full delete exhaust kits?
>
> A. So on 2011 F-250, that would be the Bro-Dozer.
>
> Q. And 2012 short cab?
>
> A. I don't know. The only thing I can think of is it would be an auction truck that we bought incomplete, because it's a cab and chassis. Cab and chassis refers to a truck that's an incomplete truck.
>
> Q. Okay. And correct to assume that when you asked her to apparently purchase or obtain the cheapest full delete exhaust kits that you knew what that was -- that meant, that is, that would exclude the emissions devices that were, obviously, being deleted?
>
> A. Uh-huh.
>
> Q. Is that a "yes"?
>
> A. Yeah.

Sparks Dep., 118:11-25, 119:1-7, **AOE Exhibit 3**; and **AOE Exhibit 7** (Bates 14290-92).

      11.      Mr. Stuart confirmed that the purpose of a "DPF delete pipe" is to remove a diesel particulate filter: "So when the exhaust runs through the system, essentially there's a

filter that filters out the particulates and then cleans it up, spits it out, and I assume [the DPF delete pipe] deletes that." Stuart Dep., 40:12-16, **AOE Exhibit 4**.

    12.    Mr. Sparks also testified that EGR devices are pollution control devices, and that EGR delete kits are used to remove EGR devices.

> Q.  The -- in Heather Pledger's deposition, she was unclear when I asked her what an EGR delete did.
>
> A. Uh-huh.
>
> Q. Could you explain that?
>
> A. Yeah. It's basically a cap. You remove the EGR cooler. Pull it off. You put a cap in its place. And the reason for that is because you don't want that nasty -- it's basically taking your exhaust gas and sending it back through the engine and gumming it up —
>
> Q. Sure.
>
> A. -- so that's the reason why it has to do it.
>
> Q. Sure. Yeah. It's a method of detuning -- essentially putting expired, very low-oxygen gas back in so it doesn't burn as hot so it doesn't create as much nitrogen oxide.
>
> A. Yeah. It turns it into tar.

Sparks Dep., 133:23-25, 134:1-13, **AOE Exhibit 3**.

### III.  ARGUMENT

The applicable elements of Clean Air Act liability, and the undisputed facts recited above that meet each element, demonstrate that Physicians' motion for partial summary judgment regarding Defendants DPG, David Sparks and Joshua Stuart's repeated and ongoing violations of the Clean Air Act should be granted as a matter of law.

A.  **<u>Summary Judgment Standard.</u>**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Reynolds v. School Dist. No. 1, Denver, Colo.,* 69 F.3d 1523, 1531 (10th Cir. 1995). A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party' on the issue. *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Summary judgment is not "a disfavored procedural shortcut, but an integral part of the Federal Rules as a whole which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, citing Fed. R. Civ. P. 1.

B.  **Ninth & Tenth Causes of Action.  It is Undisputed that DPG Has Repeatedly Sold Pollution Control Defeat Parts In Violation of the Clean Air Act as a Matter of Law.**

DPG has repeatedly violated Clean Air Act Section 203(a)(3)(B) by selling over 180 pollution control defeat parts since 2014.[4]  The material facts not being in dispute, DPG should be found liable for such violations as a matter of law as alleged in Physicians' 9th and 10th causes of action.

CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), provides, in pertinent part,

(a) The following acts and the causing thereof are prohibited . . .

(3)(B) for any person to . . . sell, or offer to sell . . . any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under

---

[4] Defendants no longer represent to the court, as they did in their first motion to dismiss, that "DPG operates an online store that sells only clothing and apparel." Dkt. 23, p. 15.

this subchapter, and where the person knows or should know that such part
or component is being offered for sale . . . for such use or put to such use.

DPG admits that it has sold at least 187 pollution control defeat parts since 2014 as set forth in Section II.B., ¶¶ 1-7 above. DPG admits that a principal effect of these parts was to bypass, defeat, or render inoperative emission control devices and element of designs in motor vehicles. *Id*. DPG also admits that it knew or should have known such parts were being sold for the purpose of bypassing, defeating or rendering inoperative emission control devices and elements of design. Section II.B., ¶¶ 8-12. Consequently, Physicians respectfully request the court find DPG liable for selling the emission control defeat parts identified in **AOE Exhibits 15, 17-19**.

> **C.** **Eleventh and Twelfth Causes of Action. It is Undisputed that David Sparks and Joshua Stuart Have Personally and Repeatedly Participated in the Sale of Defeat Parts and Therefore have Repeatedly Violated Section 203(a)(3)(B) of the Clean Air Act as a Matter of Law.**

Defendants David Sparks and Joshua Stuart have repeatedly violated Clean Air Act Section 203(a)(3)(B) by personally participating in the marketing and sale of defeat parts, by participating as corporate officers to cause DPG to sell defeat parts, and by failing to use their authority as corporate officers to stop DPG from selling defeat parts. The material facts not being in dispute, Messrs. Sparks and Stuart should be found jointly and severally liable with DPG for the sale of defeat parts as set forth in Section II.B above.

CAA Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), provides, in pertinent part,

(a) The following acts and the causing thereof are prohibited . . .

(3)(B) for any person to . . . sell, or offer to sell . . . any part or component
intended for use with, or as part of, any motor vehicle or motor vehicle
engine, where a principal effect of the part or component is to bypass, defeat,
or render inoperative any device or element of design installed on or in a
motor vehicle or motor vehicle engine in compliance with regulations under
this subchapter, and where the person knows or should know that such part
or component is being offered for sale . . . for such use or put to such use.

Individuals can be held liable as "persons" for violating Section 203(a)(3)(B) if they participate personally in offering to sell and selling defeat parts. They can also be held liable as participating corporate officers by causing their corporation to offer to sell or sell defeat parts, or by failing to use their authority to prevent their corporation from offering to sell or selling defeat parts. *U.S. v. Brittain*, 931 F. 2d 1413, 1419 (10th Cir. 1991); *U.S. v. Mac's Muffler Shop, Inc. and Winston McKinney*, 1986 WL 15443 at *7 (N.D. Ga. 1986) (unpublished).

In its January 23, 2018 ruling, this court stated that the individual defendants in this matter can be held personally liable if they participated in the prohibited acts "regardless of their status as employees or members of an LLC," and that the "Utah LLC Act does not act here to shield the defendants from liability under federal statute." **AOE Exhibit 20**, pp. 22-24. In short, an individual's obligation to comply with the CAA is not checked at the door of his or her employer.

Both Mr. Sparks and Mr. Stuart have participated personally, profoundly and pervasively in the sale of defeat parts. Mr. Sparks personally designed DPG's marketing plan to boost DPG's sale of defeat parts by advertising trucks with those parts installed as "giveaway" sweepstakes prizes. Section II.A., ¶¶ 2-9. Since that time, Messrs. Sparks and Stuart have used their public personas ("Heavy D" and "Redbeard") to market DPG's defeat parts through the extensive use of DPG websites and social media, resulting in the sale of over 180 defeat parts. Section II.A, ¶ 17, Section II.B., ¶ 7.

Messrs. Sparks and Stuart also participated financially in DPG's operations. Mr. Sparks used his personal credit card to guarantee payment to Premier Performance LLC, a major supplier of DPG's defeat parts. Section II.A., ¶ 12. Mr. Stuart used his personal credit

card to guarantee payments to Thunder Diesel, another major supplier of DPG's defeat parts. Section II.A., ¶ 16. Mr. Sparks also personally caused DPG to sell defeat parts to Defendant B&W Auto. Section II.A., ¶ 10.

As corporate officers, Mr. Sparks and Mr. Stuart authorized the sale of defeat parts, and neither used their authority to stop DPG from offering to sell defeat parts until Physicians' notice letter exposed their illegal activities. Section II.A., ¶¶ 18-19. Both defendants knew the defeat parts they were causing to be sold would be used to defeat emissions control devices. Section II.B., ¶¶ 8-12.

In sum, it is undisputed that David Sparks and Joshua Stuart directly and repeatedly participated in, authorized, and failed to stop DPG's sale of defeat parts. Consequently, Physicians respectfully request the court find David Sparks and Joshua Stuart liable with DPG for selling such parts as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Physicians respectfully request the court find that each defeat part sold by Defendants DPG, David Sparks and Joshua Stuart, as demonstrated in Sections III.B & C above, constitutes a separate violation of CAA Section 203. If after such a finding the parties are unable to agree on the type and extent of relief necessary to address these violations, Physicians intend to present the issues of injunctive relief and civil penalties to the court for the court to decide.

DATED this 22nd day of February, 2018.

Respectfully submitted,

/s Reed Zars
Reed Zars, Esq.
Utah State Bar No. 16351
Attorney at Law
910 Kearney Street
Laramie, WY 82070
(307) 760-6268
reed@zarslaw.com