**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | | |
|---|---|---|
| Utah Physicians for a Healthy Environment, Inc., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:17-cv-32-RJS-DBP |
| Diesel Power Gear LLC, 4X4 Anything LLC, B&W Auto LLC d/b/a Sparks Motors LLC, David W. Sparks, Joshua Stuart, and Keaton Hoskins, | ) ) ) ) ) | Chief Judge Robert J. Shelby |
| Defendants. | ) ) | |

_____

**[Proposed Joint] Pretrial Order**

_____

     This matter having come before the court on October 7, 2019, at a pretrial conference held before the Honorable Chief Judge Robert J. Shelby, pursuant to Fed. R. Civ. P. 16; and Reed Zars and George Hays having appeared as counsel for plaintiff, and Cole Cannon and Janet Conway having appeared as counsel for the defendants, the following action was taken:

     1.    JURISDICTION.  This is an action for injunctive relief and civil penalties under the federal Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 through 7671q.  Jurisdiction of the court is invoked under 42 U.S.C. § 7604(a) (citizen suit provision of the CAA), 28 U.S.C. § 1331 (federal question statute), and 28 U.S.C. § 1355 (recovery of penalties).  Jurisdiction additionally exists under 28 U.S.C. § 1331 (federal question), including 42 U.S.C. § 7522 (motor vehicle tampering and defeat device prohibitions) and 40 C.F.R. § 52.2320(c)(59), Utah Admin. Code R307-201-2 (federally-enforceable Utah motor vehicle emissions systems requirements).  The jurisdiction of the court is not disputed and is hereby determined to be present.

     VENUE.  Venue was determined by the court to be proper pursuant to 28 U.S.C. §§ 1391(b) and (c).  Venue is laid in the Central Division of the District of Utah.

2.     GENERAL NATURE OF THE CLAIMS OF THE PARTIES

(a)     Plaintiff's claims:  Plaintiff's amended complaint alleges defendants David Sparks ("Heavy D"), Joshua Stuart ("Redbeard") and Keaton Hoskins ("The Muscle"), and their related limited liability companies including B&W Auto LLC and Diesel Power Gear LLC ("DPG"), violated Clean Air Act Section 203(a)(3)(A) and (B), 42 U.S.C. § 7522(a)(3)(A) and (B), and Utah SIP Regulation R307-201-2, 40 C.F.R. § 52.2320(c)(59), by removing pollution control devices from diesel vehicles, selling and installing pollution control defeat parts, and selling defeat parts installed in vehicles.  Plaintiff's amended complaint also alleges defendants DPG, David Sparks and Keaton Hoskins violated Utah SIP Regulation R307-201-2 by owning and/or operating vehicles in Utah (registered or that should have been registered) without their required pollution control equipment installed and operational.

(b)     Defendant's claims:  *Briefly summarize.*

For liability phase, Defendants claim Dave Sparks is not personally liable for B&W Auto's violations, and neither Dave Sparks nor Joshua Stuart are personally liable for Diesel Power Gear's violations relating to giveaway trucks. Further, Defendants claim DPG did not sell any additional parts, other than the 88 parts specifically determined at summary judgment, in violation of the Clean Air Act.

For penalty phase, Defendants claim Plaintiff lacks standing to pursue mandatory injunctive relief. Defendants claim that the 17 trucks and 88 parts found to violate the Clean Air Act at summary judgment constitute very few total violations, with most sales going to out-of-state customers, and Plaintiffs have no evidence to show that Defendants' small fraction of total emissions along the Wasatch Front has caused the level of harm for extraordinary relief. Defendants claim that penalties and other relief granted to Plaintiff should be based on considerations of overall lack of harm to Plaintiff, Defendants' efforts to curtail violations, and Defendants' ability to pay and continue to operate their businesses.

3.     UNCONTROVERTED FACTS.  The following facts are established by admissions in the pleadings, by order pursuant to Fed. R. Civ. P. 56(d), or by stipulation of counsel:

<u>Plaintiff's material facts that are not at issue:</u>

1.    The Court has subject matter jurisdiction over the claims in the amended complaint pursuant to 42 U.S.C. § 7604(a) and (f).  Answer, ¶2; *Utah Physicians for a Healthy Env't v. Diesel Power Gear LLC*, 374 F. Supp. 3d 1124, 1130 (D. Utah Mar. 12, 2019).

2.    Plaintiff has standing to bring this action.  374 F. Supp. 3d at 1137.

3.    Plaintiff's members suffer adverse health effects from elevated air pollution in the Wasatch Front and exposure to diesel exhaust. 374 F. Supp. 3d at 1132.

4.    Some of Plaintiff's members are deterred from engaging in outdoor recreational activities due their concerns about fine particulate matter pollution.  374 F. Supp. 3d at 1132.

5.    Plaintiff's members suffer from elevated, unhealthful levels of ozone.  Answer, ¶16.

6.    Defendants' excess emissions contribute nitrous oxides (NOx) and particulate matter (PM) into the air in the Wasatch Front, and NOx and PM pollution contributes to the types of injuries suffered by its Plaintiff's members in the Wasatch Front.  374 F. Supp. 3d at 1132.

7.    Plaintiff and Defendants are "persons" within the meaning of 42 U.S.C. § 7602(e).

8.    Defendant B&W Auto LLC, including B&W Auto LLC doing business as Sparks Motors LLC ("B&W Auto"), is a registered Utah limited liability company.  Defendant David Sparks is the Chief Executive Officer ("CEO") and sole manager of B&W Auto.  Mr. Sparks holds a majority ownership interest in B&W Auto.  Answer, ¶19.

9.     Defendant Diesel Power Gear LLC ("DPG") is a registered Utah limited liability company.  The sole manager and CEO of DPG is Mr. Sparks.  According to the Operating Agreement for DPG, Mr. Sparks holds 100 percent of the voting interest in DPG.  DPG has purchase and credit agreements with suppliers of aftermarket defeat parts.  Answer, ¶21.

10.   Defendant David Sparks, who also goes by the name Heavy D, controls the activities of the defendant LLCs named above.  Answer, ¶23.

11.   Defendant Joshua Stuart, who also goes by the name Redbeard, is the Chief Financial Officer and Chief Operations Officer ("CFO/COO") of DPG.  Joshua Stuart has an ownership interest in DPG.  Answer, ¶25.

12. At summary judgment the Court found B&W Auto and DPG to have violated the Clean Air Act with respect to 17 diesel vehicles set forth in Appendix A hereto.

13. B&W Auto admits it removed emission control devices from the following certified diesel vehicles in the last five years. Answer, ¶38.

   • 2012 Dodge Ram, "Built Diesel 1, the OG," black, 4 door.

   • 2013 Ford F250, "Built Diesel 2," white with black top, 4 door.

   • 2006 Chevy Duramax 2500, "Built Diesel 3" (2nd place), army camo, 2-door.

   • 2009 Ford F250, "Built Diesel 5" (1st place), red, 6-door. (Owned by Keaton Hoskins at the time the emissions devices were rendered inoperable by Industrial Injection.)

   • 2007 Chevy C4500, Built Diesel 6 (1st place), "Kodiak Monster," black, 4-door.

   • 2008 Dodge Ram 2500, "Built Diesel 6" (2nd place), tan, single-cab.

   • 2004 Chevy Silverado 2500 HD, "US Duramax," army tan, 2-door.

   • 2012 Dodge Ram 2500, "Mega Ram," silver, 6-door.

   •  2011 Ford F350, "Bro-Dozer," yellow, 4-door.

   • 2008 Chevy 2500, "Hercules," silver, 4-door.

14. B&W Auto's removal of emission control devices from certified diesel vehicles has caused such vehicles to emit more pollution into the air of Utah than the vehicles emitted before the removal of such devices. Answer, ¶39.

15. B&W Auto's removal of emission control devices from certified diesel vehicles diminished such vehicles' ability to reduce the emission of pollutants on a continuous basis. Answer, ¶39.

16. B&W Auto did not replace the emission control devices that it removed from certified diesel vehicles with other devices that were equally or more effective in reducing emissions. Answer, ¶39.

17. B&W Auto knowingly removed diesel particulate filters ("DPFs") that were installed on certified diesel vehicles. DPFs are designed to reduce the emission of air pollutants on a continuous basis. B&W Auto's removal of DPFs on certified diesel vehicles caused such

vehicles to emit more pollution into the air of Utah than the vehicles emitted before the DPFs were removed. Answer, ¶41.

18. B&W Auto knowingly removed exhaust gas recirculation ("EGR") systems that were installed on certified diesel vehicles. EGR systems are designed to reduce the emission of air pollutants on a continuous basis. B&W Auto's removal of EGR systems on certified diesel vehicles caused such vehicles to emit more pollution into the air of Utah than the vehicles emitted before the EGR systems were removed. Answer, ¶43.

19. B&W Auto, on more than one occasion, knowingly removed a malfunction indicator light ("MIL") feature in certified diesel vehicles. The MIL feature is designed to warn of a missing or impaired emission control device. B&W Auto's removal of the MIL feature was performed by reprogramming the engine control module ("ECM") in certified diesel vehicles. B&W Auto also electronically removed the "limp mode" function of the ECM that is designed to prevent the full and continued operation of vehicles from which one or more emission control devices has been removed or impaired. B&W Auto's removal of such functions from the ECM in certified diesel vehicles has caused such vehicles to emit more pollution into the air of Utah than the vehicles emitted before these functions were removed from the ECM. Answer, ¶43.

20. Defendant David Sparks knew that Defendant B&W Auto was knowingly removing emission control devices from certified diesel vehicles. Mr. Sparks authorized such activities. Mr. Sparks supervised such activities. Mr. Sparks took no action to stop or curtail such activities. Answer, ¶49.

21. In 2013, Defendant David Sparks and Defendant B&W Auto obtained a "bone stock" 2012 Dodge Ram 2500 SLT, Cummins 6.7 liter diesel truck, Vehicle Identification Number ("VIN") 3C6UD5DL3CG229996. "Bone stock" or "stock" means a vehicle in its original, unmodified condition. The 2012 Dodge Ram was a certified diesel vehicle. The emission control devices connected to the stock exhaust pipe on this truck included a diesel oxidation catalyst ("DOC"), a $NO_x$ adsorption catalyst ("NAC"), a selective catalytic reduction system ("SCR"), and a diesel particulate filter ("DPF"). The DOC, NAC, SCR and DPF systems were all federally-required emission control devices on the 2012 Dodge Ram. The DOC, NAC, SCR and DPF systems were installed by the truck's

manufacturer to ensure compliance with its applicable Clean Air Act emission standards. Answer, ¶54.

22.     David Sparks and B&W Auto knowingly removed the 2012 Dodge Ram's stock exhaust pipe, including the attached DOC, NAC, SCR and DPF emission control devices, all of which are downstream of the turbocharger. Answer, ¶54.

23.     Mr. Sparks and B&W Auto also caused Industrial Injection, Inc. to defeat the truck's computerized emissions monitoring and management system by reprogramming the truck's ECM. Sparks Dep. 33:3-8.

24.     Once a monitored pollution control device is removed or "deleted," a diesel truck's ECM will activate a malfunction light on the dash and significantly reduce the truck's power output (called "limp mode"). However, these protective functions of the ECM can be defeated by reprogramming or "tuning" the settings of the ECM to allow the truck to continue to operate without its pollution control devices (hereinafter, "delete tune"). Sparks Dep. 35:11-25, 36:1-24.

25.     When Mr. Sparks and B&W Auto installed or caused to be installed "delete tunes" in vehicles, Mr. Sparks and B&W Auto  knew the delete tunes were outlawed. Sparks Dep. 135:2-4.

26.     Mr. Sparks and B&W Auto replaced the 2012 Dodge Ram's stock exhaust pipe and attached emission control devices and sensors with a five-inch diameter Diamond Eye "turbo-back" exhaust pipe. A "turbo-back" exhaust pipe means a hollow pipe (called a "straight pipe") from the turbocharger to the exhaust exit. Answer, ¶54.

27.     After replacing the vehicle's emission control devices with a straight pipe, and reprogramming its ECM, Defendants Sparks, B&W Auto and DPG advertised the 2012 Dodge Ram as "Built Diesel 1, the OG" ("deleted Built Diesel 1") as a sweepstakes prize through the DIESELSellerz.com website to entice consumers to purchase DPG's diesel performance parts and branded attire. Answer, ¶54.

28.     Particulate matter (PM) emissions from the deleted Built Diesel 1 were greater after removal of the stock DPF compared to particulate matter emissions before DPF removal. Answer, ¶56.

29. NOₓ emissions from the deleted Built Diesel 1 were greater after removal of the stock NAC, DOC and SCR than NOₓ emissions from the truck before NAC, DOC and SCR removal. Answer, ¶56.

30. Mr. Sparks and B&W Auto's removal of deleted Built Diesel 1's DPF, NAC, DOC and SCR eliminated the ability of these devices to reduce the emission of pollutants on a continuous basis. Answer, ¶56.

31. The deleted Built Diesel 1 was operated by Mr. Sparks and B&W Auto in Utah, and emitted elevated levels of pollutants into Utah's air. Answer, ¶58.

32. In August of 2013, B&W Auto conveyed the deleted Built Diesel 1 as a prize to a DPG sweepstakes contestant. When Mr. Sparks and B&W Auto conveyed deleted Built Diesel 1 the vehicle included parts and components that had the principal effect of defeating and bypassing emission control devices in the deleted Built Diesel 1, and David Sparks and B&W Auto knew those parts and components would be put to such use. Answer, ¶59.

33. Between 2012 and 2014, Defendant Keaton Hoskins became the owner of a 2009 Ford F250 diesel truck, VIN 1FTSW21R59EA81867. Answer, ¶68.

34. Mr. Hoskins' 2009 Ford F250 was a certified diesel vehicle. The original, stock emission control devices on the 2009 Ford F250 included but were not limited to an EGR system, an OC, and a DPF. The truck's manufacturer installed these controls to ensure compliance with the truck's COC and applicable CAA emission standards. Answer, ¶68.

35. Between 2012 and 2014, Mr. Hoskins knowingly caused to be removed two or more emission control devices on the 2009 Ford F250 identified above. Between 2012 and 2014, Mr. Hoskins knowingly caused to be removed the EGR system. Between 2012 and 2014, Mr. Hoskins knowingly caused to be removed the OC. Between 2012 and 2014, Mr. Hoskins knowingly caused to be removed the DPF. Answer, ¶68.

36. Keaton Hoskins knowingly caused to be removed the MIL feature in the 2009 Ford F250's ECM using a tuner or reprogrammer. Keaton Hoskins also electronically caused to be removed the "limp mode" function of the 2009 Ford F250's ECM that is designed to prevent the vehicle's full and continued operation after one or more emission control devices has been removed or become impaired. Answer, ¶68.

37.   During the period of time that Keaton Hoskins owned and operated the 2009 Ford F250 it was registered in Utah. During the period of time that Mr. Hoskins owned and operated the 2009 Ford F250 its emission control devices were not fully operational. Answer, ¶68.

38.   The exhaust parts that Keaton Hoskins caused to be installed on the 2009 Ford F250 were not the same as the truck's original, stock exhaust parts. The replacement straight pipe between the turbocharger and the exit did not include all of the original, stock emission control devices. The straight pipe that Mr. Hoskins caused to be installed was a defeat part. Mr. Hoskins did not replace the 2009 Ford F250's original emission control devices after the turbocharger that he caused to be removed with other exhaust parts that were equally or more effective in reducing emissions. Answer, ¶68.

39.   Particulate matter emissions from the 2009 Ford F250 were greater after removal of the stock DPF compared to particulate matter emissions before DPF removal. Answer, ¶68.

40.   $NO_x$ emissions from the 2009 Ford F250 were greater after removal of the stock OC compared to $NO_x$ emissions before OC removal. Answer, ¶68.

41.   Mr. Hoskins' removal of the 2009 Ford F250's DPF and OC eliminated the ability of these devices to reduce the emission of pollutants on a continuous basis. Answer, ¶68.

42.   Mr. Hoskins repeatedly operated his modified 2009 Ford F250 on public roads and on public lands in Utah, and on private roads and on private lands in Utah, and the 2009 Ford F250 emitted elevated levels of pollutants into Utah's air during these periods. Answer, ¶70.

43.   Prior to September 24, 2014, Mr. Hoskins sold his 2009 Ford F250 to B&W Auto. When Mr. Hoskins sold the 2009 Ford F250 to B&W Auto the vehicle included aftermarket defeat parts that had the principal effect of defeating and bypassing the vehicle's emission control devices, and he knew those parts and components would be put to such use. Answer, ¶70.

44.   Defendant DPG named the 2009 Ford F250 "Built Diesel 5." Built Diesel 5 became a sweepstakes prize to entice consumers to purchase DPG diesel performance parts and branded attire. Answer, ¶72.

45.   Defendant DPG has offered to sell and has sold aftermarket defeat parts, including EGR delete kits, straight pipes and delete tunes and tuners. Answer, ¶81.

46.	Aftermarket defeat parts that DPG has sold are currently in vehicles in Utah, and are causing those vehicles to emit more pollutants into the air of Utah than they would absent the sale, installation and use of such parts.  Answer, ¶84,

47.	David Sparks knew that DPG was offering to sell and selling aftermarket defeat parts, including EGR delete kits, straight pipes and delete tunes and tuners.  Mr. Sparks authorized such activities.  David Sparks took no action to stop or curtail such activities at least up to July 25, 2016.  Answer, ¶87.

48.	The installation and use of EGR delete kits sold by DPG adversely affects the emissions performance of vehicles in which they are installed.  EGR delete kits eliminate the ability of an EGR system installed in a certified vehicle from reducing the emission of pollutants on a continuous basis.  Answer, ¶104.

49.	EGR delete kits that DPG offered to sell and sold are currently in vehicles in Utah, and are causing those vehicles to emit more pollutants into the air of Utah than those vehicles would absent the installation and use of such EGR delete kits.   Answer, ¶105.

50.	DPG offered for sale and sold aftermarket exhaust pipes.  DPG offered to sell and sold aftermarket exhaust pipes through its website https://dieselpowergear.com until July 25, 2016.  Answer, ¶107.

51.	DPG offered for sale and sold straight pipes that had the principal effect of bypassing, defeating or rendering inoperative one or more emission control devices in a certified diesel vehicle's stock exhaust system, and DPG knew or should have known its straight pipes would be put to such use.   Answer, ¶110.

52.	The use of straight pipes sold by DPG adversely affects the emissions performance of vehicles in which they are installed.  Straight pipes eliminate the ability of emission control devices installed in certified diesel vehicles from reducing the emission of pollutants on a continuous basis.  Answer, ¶110.

53.	Straight pipes that DPG has sold are currently in vehicles operating in Utah, and are causing those vehicles to emit more pollutants into the air of Utah than those vehicles would emit absent the installation and use of such straight pipes.  Answer, ¶110.

54.	Defendant B&W Auto has installed aftermarket defeat devices in certified diesel vehicles, including but not limited to the installation of EGR delete kits, straight pipes

and reprogrammers or "tunes." The principal effect of these parts is to bypass, defeat or render inoperative emission control devices in certified diesel vehicles, and B&W Auto knew or should have known that by installing such parts those parts would be used as aftermarket defeat parts. Answer, ¶113.

55. Certified diesel vehicles in which B&W Auto installed aftermarket defeat parts are currently operating in Utah, and the aftermarket defeat parts in those vehicles are causing such vehicles to emit more pollutants into the air of Utah than they would absent the installation and use of such parts. Answer, ¶113.

56. B&W Auto has not retrieved the aftermarket defeat parts that it installed in certified diesel vehicles, or restored the original emission control systems in the certified diesel vehicles in which it installed aftermarket defeat parts. Answer, ¶113.

57. Defendant David Sparks knew that B&W Auto was installing aftermarket defeat parts, including straight pipes, EGR delete kits and delete tuners. David Sparks authorized such activities. David Sparks supervised such activities. David Sparks took no action to stop or curtail such activities. Answer, ¶116.

58. Defendant B&W Auto has installed exhaust parts including "CAT/DPF delete" and "turbo back" straight pipes. Answer, ¶128.

59. The straight pipes installed by B&W Auto described as "CAT/DPF delete" have been principally designed to bypass, defeat and/or render inoperative federally-required emission control devices such as DOCs, DPFs and SCR systems. The straight pipes installed by B&W Auto described as "turbo back," applicable to certified diesel vehicles with one or more emission control devices connected to the exhaust pipe such as DOCs, DPFs and SCR systems, have been principally designed to bypass, defeat and/or render inoperative such devices. Installation of the "turbo back" straight pipe designed for 2007.5 to 2010 Duramax 6.6 liter diesel trucks will effect the removal of both the OC and DPF in these vehicles and replace them with a hollow straight pipe. Answer, ¶128.

60. B&W Auto has installed straight pipes on multiple vehicles. B&W Auto knew or should have known that their installation of straight pipes would lead to their use as aftermarket defeat parts. Answer, ¶128.

61. The installation and use of straight pipes installed by B&W Auto adversely affects the emissions performance of certified diesel vehicles in which they are installed. Straight pipes eliminate the ability of emission control devices installed in certified diesel vehicles from reducing the emission of pollutants on a continuous basis. Answer, ¶128.

62. Straight pipes that B&W Auto has installed are currently in certified diesel vehicles operating in Utah, and are causing those vehicles to emit more pollutants into the air of Utah than those certified diesel vehicles would emit absent the installation and use of such straight pipes. Answer, ¶128.

63. Defendant B&W Auto has offered to sell and has sold certified diesel vehicles in which aftermarket defeat parts were a part of such vehicles, and where Defendant B&W Auto knew or should have known such parts would be put to use as aftermarket defeat parts in those vehicles. Answer, ¶131.

64. B&W Auto offered to sell and sold certified diesel vehicles in which aftermarket defeat parts, including straight pipes, EGR delete kits, and reprogrammers or "tunes" were a part of such vehicles. Answer, ¶131.

65. B&W Auto sold certified diesel vehicles in which aftermarket defeat parts were installed and put to use, and which currently are operating in Utah and other states. Such vehicles emit more pollutants into the air of Utah and other states than those vehicles would absent their use of such aftermarket defeat parts. Answer, ¶131.

66. B&W Auto has not removed the aftermarket defeat parts from the vehicles it sold, or restored the original emission control devices in the vehicles it sold with aftermarket defeat parts. Answer, ¶131.

67. David Sparks knew that B&W Auto was offering to sell and was selling certified vehicles in which aftermarket defeat parts were installed. David Sparks authorized such activities. David Sparks supervised such activities. David Sparks had the authority to stop such activities. David Sparks did not stop such activities. Answer, ¶137.

68. B&W Auto offered for sale and sold the deleted 2013 Ford F250 in which aftermarket defeat parts were installed, including a full DPF delete pipe and an H&S delete tune. Answer, ¶141.

69.   B&W Auto offered for sale and sold the 2009 Ford F250 (Built Diesel 5) in which aftermarket defeat parts were installed, including a DPF-delete straight pipe and delete tune.  Answer, ¶142.

70.   In 2015, B&W offered for sale and sold the deleted Hunting Rig in which aftermarket defeat parts were installed, including an EGR delete kit, a straight pipe and vertical stacks that removed the catalyst and DPF, and a delete tune.  Answer, ¶143.

71.   In 2015-2016, B&W offered for sale and sold "for a buck" the "Holy Grail," a 1996 Dodge Ram 2500, described in Section IV.A.1. above.  Aftermarket defeat parts were a part of the Holy Grail.  Answer, ¶145.

72.   In 2015, B&W Auto offered for sale and sold "for a buck" the "US Duramax," a 2004 Chevy Silverado 2500 HD described in Section IV.A.1. above.  Aftermarket defeat parts were a part of the US Duramax.  Answer, ¶146.

73.   As CEO of B&W Auto, David Sparks knew that B&W Auto was knowingly removing emission control devices from certified diesel vehicles.  David Sparks authorized such activities.  David Sparks participated in such activities.  Answer, ¶154.

74.   Between January 12, 2012 and January 10, 2017, Defendant B&W Auto repeatedly and knowingly caused the removal and/or the rendering inoperative of devices or elements of design, installed on or in motor vehicles or motor vehicle engines in compliance with EPA regulations, after such vehicles were sold and delivered to the ultimate purchaser. The purpose of such devices or elements of design was to reduce the emission of pollutants on a continuous basis.  Answer, ¶164.

75.   Between January 12, 2012 and July 25, 2016, Defendant DPG repeatedly caused the offering for sale and/or sale of parts and/or components intended for use with, or as part of, motor vehicles or motor vehicle engines, where a principal effect of such parts and/or components was to bypass, defeat, or render inoperative a device or element of design installed on or in such motor vehicles or motor vehicle engines in compliance with EPA regulations, and DPG knew, or should have known, that such parts and/or components were being offered for sale and/or sold for such use or put to such use.  The purpose of each device or element of design bypassed, defeated or rendered inoperative by such

parts and/or components, was to reduce the emission of pollutants on a continuous basis. Answer, ¶178.

76. As CEO of DPG, David Sparks knew that DPG was offering for sale and selling aftermarket defeat parts. David Sparks authorized such activities. David Sparks participated in such activities. Answer, ¶189.

77. As CEO of B&W Auto, David Sparks knew that B&W Auto was installing aftermarket defeat parts in certified diesel vehicles. David Sparks authorized such activities. David Sparks supervised such activities. Answer, ¶202.

78. Between January 12, 2012 and January 10, 2017, Defendant B&W Auto repeatedly caused the offering for sale and/or sale of parts and/or components as part of motor vehicles where a principal effect of such parts and/or components was to bypass, defeat, or render inoperative a device or element of design installed on or in such motor vehicles in compliance with EPA regulations, and B&W Auto knew, or should have known, that such parts and/or components in vehicles were being offered for sale and/or sold for such use or put to such use. The purpose of each device or element of design bypassed, defeated or rendered inoperative by such parts and/or components, was to reduce the emission of pollutants on a continuous basis.

79. Between January 12, 2012 and January 10, 2017, Defendant B&W Auto repeatedly owned and/or operated motor vehicles registered in Utah, or that should have been registered in Utah, without maintaining in operable condition all of the federally-required emission control systems or devices in such vehicles at all times. Answer, ¶223.

80. Between January 12, 2012 and January 10, 2017, Defendant Keaton Hoskins repeatedly owned and/or operated motor vehicles registered in Utah, or that should have been registered in Utah, without maintaining in operable condition all of the federally-required emission control systems or devices in such vehicles at all times. Answer, ¶238.

Defendants' material facts that are not at issue:

81. B&W Auto modified 17 trucks in violation of the Clean Air Act, as identified in summary judgment ruling.

82. Diesel Power Gear sold 88 automotive parts that violate the Clean Air Act, as identified in summary judgment ruling.

83. Hoskins personally owned, operated, and thereafter sold two trucks that violated the Clean Air Act, as identified in summary judgment ruling

84. Diesel Power Gear is liable for "sale" of 10 giveaway trucks out of the 17 B&W Auto trucks that were in violation of the Clean Air Act, as identified in summary judgment ruling.

85. Diesel Power Gear is not liable for B&W Auto's violations.

86. Sparks and Stuart are both personally liable for Diesel Power Gear's violations relating to the 88 parts sales, as identified in summary judgment ruling.

87. EPA formal policies regarding calculating penalty amount include: EPA's ability to pay policy (https://www.epa.gov/enforcement/guidance-evaluating-ability-pay-civil-penalty-administrative-enforcement-actions); EPA penalty and financial models (https://www.epa.gov/enforcement/penalty-and-financial-models); EPA's policy on mitigation (https://www.epa.gov/enforcement/securing-mitigation-injunctive-relief-certain-civil-enforcement-settlements-2nd-edition); EPA's policy on supplemental environmental projects (https://www.epa.gov/enforcement/supplemental-environmental-projects-seps).

[Plaintiff does not share defendants' opinion that these EPA policies are properly characterized as uncontroverted jurisdictional or material facts.]

4. CONTESTED ISSUES OF FACT. The contested issues of fact remaining for decision are:.

Plaintiff's Contested Issues of Fact.

1. The extent to which Defendants David Sparks, Joshua Stuart and DPG are liable for offering to sell and selling aftermarket EGR delete kits.

2. The extent to which Defendants David Sparks and DPG are liable for offering to sell and selling aftermarket exhaust pipes (so-called "straight pipes") that enable the removal of emission control devices.

3. The extent to which Defendants David Sparks, B&W Auto and DPG are liable for owning and/or operating vehicles registered in Utah, or which should have been registered in Utah, in which pollution control devices had been removed or were inoperable.

4. The extent to which the provisions of the preliminary injunction should be carried over to a permanent injunction.  Dkt. 104; Request for Relief F.1 and 2.

5. The extent to which Defendants David Sparks, Keaton Hoskins, and B&W Auto should be permanently enjoined from owning or operating motor vehicles registered in Utah without all of their emission control devices and elements of design present and operational.  Request for Relief, F.3.

6. The extent to which Defendants David Sparks, B&W Auto and DPG should be required to restore the tampered vehicles they have in their possession.  Request for Relief, F.5.

7. The extent to which Defendants David Sparks, Joshua Stuart, Keaton Hoskins, B&W Auto and DPG should be required to finance a Tampered Diesel Truck Restoration Program, to be administered by the Davis County Health Department as set forth in Plaintiff's Exhibit 70, to compensate for the excess, illegal pollution caused by Defendants' activities.  Request for Relief, F.7.

8. The maximum statutory penalty for Defendants' violations.  Requests for Relief G, H and I.

9. The extent to which the court should "take into account" the following factors in CAA Section 205, 42 U.S.C. § 7524, and CAA Section 113, 42 U.S.C. § 7413, to reduce the maximum statutory penalty:

    • the gravity of the violation

    • the economic benefit or savings (if any) resulting from the violation

    • the size of the violator's business

    • the violator's history of compliance with this subchapter

    • action taken to remedy the violation

    • the effect of the penalty on the violator's ability to continue in business, and

    • such other matters as justice may require.

10. The extent to which a portion of any penalty assessed against any Defendant, up to $100,000, should be earmarked for the Tampered Diesel Truck Restoration Program, to be administered by the Davis County Health Department as set forth in Plaintiff's Exhibit 70, as a beneficial mitigation project pursuant to 42 U.S.C. § 7604(g)(2).  Request for Relief, J.

Defendants' Contested Issues of Fact

    11. Whether David Sparks is personally liable for B&W Auto violations.

    12. Whether David Sparks is personally liable for DPG giveaway trucks violations.

    13. Whether Josh Stuart is personally liable for DPG giveaway trucks violations.

    14. Whether B&W Auto's modifications of 17 trucks constitute more than 17 violations, notwithstanding the ultimate sale of modified vehicle constitutes a separate violation.

    15. Whether B&W Auto modified additional trucks in violation of Clean Air Act, identified in Plaintiff's complaint, but not previously identified at summary judgment.

    16. Whether DPG is liable for more than 88 parts sales, when Plaintiff failed to establish the alleged identified additional parts violate the Clean Air Act at summary judgment.

    17. Determination of total number of violations for Hoskins' two trucks.

    5.      CONTESTED ISSUES OF LAW.  The contested issues of law, in addition to those implicit in the foregoing issues of fact, are:  *Either set forth each issue or indicate that no special issues of law other than those implicit in the foregoing issues of fact were reserved.*

    Plaintiff's Contested Issues of Law

Injunctive Relief

    To obtain a permanent injunction, a plaintiff that has prevailed on the merits must show an injunction is necessary to prevent irreparable harm, that the balance of equities favors an injunction, and that an injunction is in the public interest.  *Winter v. NRDC*, 555 U.S. 7, 31 (2008); *Amoco Production v. Village of Gambell*, 480 U.S. 531 (1987).

    As in the *U.S. v. Volkwagen* matter, Case 3:15-md-02672-CRB (N.D. Calif.), mitigation of defendants' past and ongoing excess emissions from tampered vehicles in Utah is an appropriate form of injunctive relief.  https://www.cand.uscourts.gov/crb/vwmdl/settlement-documents-2-liter.  It is also consistent with EPA's 2012 policy "Securing Mitigation as Injunctive Relief in Certain Civil Enforcement Settlements (2d edition)" available at: https://www.epa.gov/sites/production/files/2016-08/documents/2ndeditionsecuringmitigationemo.pdf

Penalty Assessment

Clean Air Act Section 205(b), 42 U.S.C. § 7524(b), provides the factors the Court is to "take into account" in the assessment of a civil penalty for CAA Section 203, 42 U.S.C. § 7522 violations.

> . . . the court shall take into account the gravity of the violation, the economic benefit or savings (if any) resulting from the violation, the size of the violator's business, the violator's history of compliance with this subchapter, action taken to remedy the violation, the effect of the penalty on the violator's ability to continue in business, and such other matters as justice may require.

Clean Air Act Section 113, 42 U.S.C. § 7413(e), requires similar considerations, along with the duration of the violation, in assessing penalties for violation of the Utah SIP.

According to the Tenth Circuit, in assessing penalties under the Clean Air Act, courts "generally presume that the maximum penalty should be imposed." *Pound v. Airosol Company, Inc.*, 498 F.3d 1089, 1095 (2007). Courts then use the statutory factors cited above to determine "what degree of mitigation, if any, is proper." *Id.* Moreover, the burden of showing that a civil penalty would have a detrimental effect on the violator's business rests with the violator. *See, e.g., Pub. Int. Res. Grp. of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 720 F. Supp. 1158, 1166 (D.N.J. 1989)*, aff'd in part and rev'd in part,* 913 F.2d 64 (3rd Cir.1990) (([CWA case] concluding that defendant had 'failed to demonstrate that assessing a severe penalty would jeopardize defendant's continued operation').

Defendants' Contested Issues of Law

Plaintiff take the position that the lower the volume of violations, the higher the penalty amount per violation should be. Plaintiff also base the gravity of harm on social media marketing and video recordings, as well as the celebrity status of the individuals, not on actual pollutants discharged into the Wasatch Front. Plaintiff disregard calculating the economic benefit to Defendants resulting from violation, including the lack of financial profit from violations, especially with regard to Diesel Power Gear and Hoskins. Defendants claim any calculations for penalty amount should be based on Defendants' ability to pay and continue business operations, and have produced Defendants' prior three years of financial records and complete sale history for Diesel Power Gear, showing Defendants generate a modest income, based largely on clothing apparel sales, their television show, and media appearances. Any relief granted to Plaintiff

should be based on consideration for lack of actual harm to the Wasatch Front, a disgorgement of profits resulting from violations, and Defendants' ability to pay and continue to operate their businesses.

6.    EXHIBITS.  The following were received in evidence or were identified and offered:  *List individually, indicating whether received or identified.*

(a)    Plaintiff's exhibits:

Exhibit 1.    DPG Exhaust kits for sale.pdf

Exhibit 2.    Exhibit 2 DPG EGR Deletes for sale.pdf

Exhibit 3.    Exhibit 3 DPG all vendors parts Bates 1-12, and parts Bates 28489, 28491, 31668, 31752 and 31851.pdf

Exhibit 4.    DPG/4X4 Anything Premier spreadsheet Bates 1019-1021, 1058-1061.pdf

Exhibit 5.    Flo-Pro instructions and screen shots.pdf

Exhibit 6.    Diamond Eye instructions and screen shots.pdf

Exhibit 7.    MBRP instructions and screenshots.pdf

Exhibit 8.    2017 Mitchell1 Emission Control Application Guide.pdf

Exhibit 9.    2007 Dodge Ram 2500 2014 7-20 ad Bates 12144.pdf

Exhibit 10.    2008 Chevy Hercules & Megaram 2017 in SLC.pdf

Exhibit 11.    2008 Chevy Hercules Sparks Exhibit 20.pdf

Exhibit 12.    2008 Chevy Hercules video.mp4

Exhibit 13.    2008 Ford F350 2014 10-22 ad Bates 11872.pdf

Exhibit 14.    2009 Ford F350 2015 2-13 ad Bates 12691.pdf

Exhibit 15.    2010 Dodge Ram 2015 3-19 ad Bates 11798-11799.pdf

Exhibit 16.    2011 Dodge Ram 2500 Bates 2030 - 2035.pdf

Exhibit 17.    2011 Dodge Ram Tune Files Bates 11090- 11117.pdf

Exhibit 18.    2011 F350 Box Truck 2016 6-28 Sparks Motors ad VIN 8905.pdf

Exhibit 19.    2011 F350 Box Truck 2017 5-26 sale to Mikel Longfellow Bates 26348-

26349.pdf

Exhibit 20.  2011 Ford F250 2015 1-26 ad Bates 12692.pdf

Exhibit 21.  2013 Denali Sparks Exhibit 32.pdf

Exhibit 22.  2013 Dodge Ram 5500 ad *sparks Motors* autowix.com.pdf

Exhibit 23.  2013 Dodge Ram 5500 the Rock ad Sellerz.pdf

Exhibit 24.  2014 Mini Megaram Sparks Exhibit 29.pdf

Exhibit 25.  2014 MiniMegaRam 3.0L PPEI tuned.pdf

Exhibit 26.  2014 MiniMegaRam Exhibit D Hofer Decl 95-4.pdf

Exhibit 27.  2014 MiniMegaRam Exhibit E Van Der Brink Depo 95-5.pdf

Exhibit 28.  2015 GMC Cheyenne Lord 2017 11-6 signed declaration.pdf

Exhibit 29.  2015 GMC Cheyenne Lord Sparks Exhibit 34.pdf

Exhibit 30.  White Knight 2014 7-8 ad Bates 12183 - 12188.pdf

Exhibit 31.  2013 F250 DPF CAT SCR diagram.pdf

Exhibit 32.  2013 Ford F250 2014 9-18 HeavyD facebook video.mp4

Exhibit 33.  2013 Ford F250 2019 6-17 Kenley Ford repair receipt.pdf

Exhibit 34.  2013 Ford F250 St Denis Expert Report and attachments.pdf

Exhibit 35.  2017 11-9 Gee Declaration exhibits.pdf

Exhibit 36.  2017 11-13 Matheson Declaration exhibits.pdf

Exhibit 37.  2015 DaRezz LLC form 1065 and K1s.pdf

Exhibit 38.  2015 DPG 1065 and K1s.pdf

Exhibit 39.  2015 Sparks federal and state tax returns.pdf

Exhibit 40.  2016 B & W Auto LLC 2016 1120S Amended (Clt).pdf

Exhibit 41.  2016 DaRezz balance sheet Jan - Dec 2016.pdf

Exhibit 42.  2016 DaRezz profit and loss Jan - Dec 2016.pdf

Exhibit 43.  2016 Diesel Power Gear, LLC_2016_1065_ArchiveTaxReturn_US.pdf

Exhibit 44.   2016 DPG balance sheet as of Dec 2016.pdf

Exhibit 45.   2016 DPG profit and loss Jan - Dec 2016.pdf

Exhibit 46.   2016 Sparks tax returns 2016 1040 (Clt).pdf

Exhibit 47.   2017 B&W Auto 2017 Tax Return Documents.pdf

Exhibit 48.   2017 DPG - 12-31-2017 Prepared Financial Statements.pdf

Exhibit 49.   2017 Sparks Tax Return Documents.pdf

Exhibit 50.   2018 DPG 2018 Profit and Loss.pdf

Exhibit 51.   2007 Utah recommendations PM25_Area_Designations_2006.pdf

Exhibit 52.   2009 10-8 EPA finalizes nonattainment designations for Utah counties.pdf

Exhibit 53.   2010 Decreased sperm motility -- air pollution in Salt Lake City NCBI.pdf

Exhibit 54.   2010 January Utah DAQ Emissions Flyer.pdf

Exhibit 55.   2011 6-6 UDEQ Wintertime PM powerpoint.pdf

Exhibit 56.   2015 Air Pollution and Public Health Utah Health Dept.pdf

Exhibit 57.   2015 DAQ Final_Annual_Report.pdf

Exhibit 58.   2015 U of Utah PM2.5 in Salt Lake Valley.pdf

Exhibit 59.   2016 2-10 Weber Morgan AQ Advisory Committee Minutes.pdf

Exhibit 60.   2016 6-27 Weber County Work-Group-Presentation.pdf

Exhibit 61.   2016 9-29 Utah-Governor-Ozone-Area-Recommendation.pdf

Exhibit 62.   2016 9-29 Utah-Ozone-Designation-Recommendation-Staff-Analysis.pdf

Exhibit 63.   2016 12-1 EPA serious PM2.5 designation fact sheet.pdf

Exhibit 64.   2017 May ICCT NOx Health Fact Sheet global 2post.pdf

Exhibit 65.   2019 8-22 Particulate Air Pollution and Mortality in 652 Cities NEJM.pdf

Exhibit 66.   2015 air pollution and infertility Nurses.pdf

Exhibit 67.   2017 Low level air pollution and death JAMA.pdf

Exhibit 68.   2018 Accute air pollution and pregnancy loss Salt Lake City.pdf

Exhibit 69.   2019 Association between air pollution and emphysema JAMA.pdf

Exhibit 70.   UPHE – Davis County Health Department Tampered Diesel Trucks
        Restoration Program Agreement.

Videos

Exhibit 71.   1200 HORSEPOWER DONUTS black GMC.mp4

Exhibit 72.   2007 Zeus Duramax burnouts video.mp4

Exhibit 73.   2013 Ford #BuiltDiesel PowerStroke Haul.mp4

Exhibit 74.   2014 Diesel Trucks Destroy a Prius - The PRIUSPOCALYPSE.mp4

Exhibit 75.   2014 Mega Cab Ram Runner - SEMA.mp4

Exhibit 76.   Brodozer Moab 2016 video.mp4

Exhibit 77.   BUILT DIESEL 3 Cummins Giveaway Truck Mods by Industrial Injection.mp4

Exhibit 78.   BUILT DIESEL 3_ 12-Valve Cummins Truck Modifications Kiley drives.mp4

Exhibit 79.   BUILT DIESEL 3_ 2006 Duramax First Runner Up Wins rolls coal in
        Sunnyside WA (6/19/14).mp4

Exhibit 80.   BUILT DIESEL 3_ OBS Powerstroke Truck Modifications.mp4

Exhibit 81.   BUILT DIESEL 3_ unmolested Duramax Truck Modifications.mp4

Exhibit 82.   BUILT DIESEL 4_ The DieselSellerz Crew Q&A Session no buy no
        giveaway.mp4

Exhibit 83.   Built Diesel 5 Giveaway.mp4

Exhibit 84.   Built Diesel 5 Keaton 2 yrs F250 Giveaway.mp4

Exhibit 85.   BUILT DIESEL 5 The Six-Door Powerstroke Muscle red.mp4

Exhibit 86.   BuiltDiesel Smokes Out Prius Paul.mp4

Exhibit 87.   Dodge Twin Turbo Cummins PRANK! #DieselDave Rolls Coal!.mp4

Exhibit 88.   EFI Tuning on the Duramax Built Diesel 3 Giveaway Truck.mp4

Exhibit 89.   Having a bad day- Watch this and I guarantee you'll feel better.mp4

Exhibit 90.   Megaram 2017 turnaround.mp4

Exhibit 91.   Mid July Madness and US Duramax Winner.mp4

Exhibit 92.   MTN OP Truck For a Buck! with Kiley time lapse 2-2-2015 tuned deleted.mp4

Exhibit 93.   Muscle doing burnout in Facebook video.mp4

Exhibit 94.   Pickup vs. Semi at Diesel Brothers.mp4

Exhibit 95.   Pugs Gear F-650 Truck for a Buck Winner Bunch Texas.mp4

Exhibit 96.   Pugs Truck for a Buck Info and Winners Update "buy for $".mp4

Exhibit 97.   SUPER SIX - 6x6x6 MONSTER Diesel!! 20000lb SEMA Patriot.mp4 mm

<u>Physical Evidence</u> --

Exhibit 98.   2013 Ford F250, VIN 1FT7W2BT2DEA61696, and related parts.

(b)      Defendants' exhibits:

Exhibit 37. 2015 DaRezz LLC form 1065 and K1s.

Exhibit 38. 2015 DPG 1065 and K1s

Exhibit 39. 2015 Sparks federal and state tax returns

Exhibit 40. 2016 B & W Auto LLC 2016 1120S Amended (Clt)

Exhibit 41. 2016 DaRezz balance sheet Jan - Dec 2016

Exhibit 42. 2016 DaRezz profit and loss Jan - Dec 2016

Exhibit 43. 2016 Diesel Power Gear, LLC 2016 1065 Archive Tax Return US

Exhibit 44. 2016 DPG balance sheet as of Dec 2016

Exhibit 45. 2016 DPG profit and loss Jan - Dec 2016

Exhibit 46. 2016 Sparks tax returns 2016 1040 (Clt)

Exhibit 47. 2017 B&W Auto 2017 Tax Return Documents

Exhibit 48. 2017 DPG - 12-31-2017 Prepared Financial Statements

Exhibit 49. 2017 Sparks Tax Return Documents

Exhibit 50. 2018 DPG 2018 Profit and Loss

Exhibit 1000 Shopify generated parts sales report

Exhibit 1001 Complete report of all historical automotive parts sales

Exhibit 1002 Summary report of parts sales (Bates 0001-0012).

Exhibit 1003 Distributor agreement with Premier Performance

Exhibit 1004 Distributor agreement with Diesel Auto Performance.

Exhibit 1005 Distributor agreement with Thunder Diesel.

Exhibit 1006 Distributor agreement with Transamerica Wholesale

Declaration of Janet M. Conway in support of Defendants' Opposition to Motion

for Partial Summary Judgment, Dkt #65-6, and exhibits thereto.

(c)     Exhibits of any third parties:

(d)     Exhibits received in evidence and placed in the custody of the clerk may be withdrawn from the clerk's office upon signing of receipts therefor by the respective parties offering them.  The exhibits shall be returned to the clerk's office within a reasonable time and in the meantime shall be available for inspection at the request of other parties.

(e)     Exhibits identified and offered that remain in the custody of the party offering them shall be made available for review by the offering party to any other party to the action that requests access to them in writing.

(f)     Except as otherwise indicated, the authenticity of received exhibits has been stipulated but they have been received subject to objections, if any, by an opposing party at the trial as to their relevancy and materiality.  If other exhibits are to be offered, the necessity for which reasonably cannot now be anticipated, they will be submitted to opposing counsel at least _____ days prior to trial.

7.    WITNESSES.

(a)    In the absence of reasonable notice to opposing counsel to the contrary:

   (i)    plaintiff <u>will</u> call as witnesses:

1.  Mr. David Sparks, 1955 S 1800 W, Woods Cross, UT 84087.  (385) 220-2900.  Mr. Sparks is expected to testify regarding (a) the advertising and sale of EGR delete kits, straight pipes and diesel vehicles with aftermarket defeat parts installed, (b) his personal and business-related income and finances, and (c) the appropriate remedies for CAA violations established.

2.  Mr. Keaton Hoskins, 1955 S 1800 W, Woods Cross, UT 84087.  (385) 220-2900.  Mr. Hoskins is expected to testify regarding his operation of diesel vehicles with aftermarket defeat parts installed.  He is also expected to testify regarding his personal and business-related income and finances.

3.  Mr. Joshua Stuart, 1955 S 1800 W, Woods Cross, UT 84087.  (385) 220-2900.  Mr. Stuart is expected to testify regarding the advertising and sale of EGR delete kits and straight pipes.  He is also expected to testify regarding his personal and business-related income and finances.

4.  Mr. Mark E. Elwood, CPA, Sadler, Gibb & Associates, LLC., 2455 E Parleys Way Ste. 320, Salt Lake City, UT 84109.  801-783-2950.  Mr. Elwood is expected to testify regarding the personal and business-related income and finances of the defendants.

5.  Mr. James F. Pound,  JK Tax & Accounting Services, Inc., 1919 South 830 West, Ste. D, Syracuse, UT 84075.  Mr. Pound is expected to testify regarding the personal and business-related income and finances of the defendants.

6. Mr. Darrin Matheson, 20 N 600 W, Kaysville, UT 84037. 801-546-8860. Mr. Matheson is expected to testify regarding his inspection of defendants' vehicles and the pollution control devices applicable to diesel vehicles.

7. Mr. Charles Gee, 20 N 600 W, Kaysville, UT 84037. 801-546-8860. Mr. Gee is expected to testify regarding his inspection of defendants' vehicles, the excess emissions related to tampered diesel vehicles, and the proposed Tampered Diesel Truck Restoration Program.

8. Dr. Michael St. Denis, 5732 Lonetree Blvd, Rocklin, CA 95765. 916-786-1006. Dr. St. Denis is expected to testify regarding the emission testing of the "full delete" 2013 Ford F250, and to provide a view of the truck and its pollution control equipment in the public parking lot immediately adjacent to the courthouse.

9. Dr. Kirtly Jones, 3798 East Sunnydale Lane, Salt Lake City UT 84108. 801- 864-2825. Dr. Jones is expected to testify regarding the impacts of poor air quality on her personal health and the health of her patients.

10. Dr. Howie Garber, 1623 Mt. Moran Rd., Driggs, Idaho 83422. 801-450-3770. Dr. Garber is expected to testify regarding the impacts of poor air quality on his personal health and the health of his patients.

(ii)    <u>Plaintiff may call as witnesses.</u>

1. Mr. Evan Nelson, 20 N 600 W, Kaysville, UT 84037. 801-546-8860. Mr. Nelson may testify regarding his inspection of a Dodge Ram 5500 on defendants' lot.

2.  Ms. Heather Pledger, 1955 S 1800 W, Woods Cross, UT 84087. (385) 220-2900. Ms. Pledger may testify regarding her purchase and sale of aftermarket defeat parts.

3. Mr. Cody Holley, Service Manager, Ed Kenley Ford, 1888 N. Main, Layton, UT 84041. 801-776-5691. Mr. Holley may testify regarding his dealership's restoration of the "full delete" 2013 Ford F250.

4. Mr. Nate Strand, Service Technician, Ed Kenley Ford, 1888 N. Main, Layton, UT 84041. 801-776-5691. Mr. Strand may testify regarding his dealership's restoration of the "full delete" 2013 Ford F250.

  (iii)    plaintiff may use the following depositions:

1. Hans Peterson, August 4, 2016.

2. Heather Pledger, August 4, 2016.

3. David Sparks, August 22, 2016.

4. David Kiley, August 23, 2016.

5. Joshua Stuart, August 23, 2016.

6. Keaton Hoskins, August 22, 2016.

7. Mr. Brett Van Der Brink, December 14, 2017.

8. Travis Hansen, December 7, 2017.


(b)      In the absence of reasonable notice to opposing counsel to the contrary:

(i)      Defendants <u>will</u> call as witnesses:

1. David Sparks

2. Keaton Hoskins

3. Joshua Stuart

4. Mark E. Elwood, CPA, Sadler, Gibb & Associates, LLC.

5. James F. Pound, JK Tax & Accounting Services, Inc.

(ii)      Defendants <u>may</u> call as witnesses:

1. Heather Pledger

2. Jim Anderson

3. Dr. Kirtly Jones

4. Dr. Howie Garber

(iii)     defendant will use the following depositions:  *None.*

(c)   In the event that witnesses other than those listed are to be called to testify at the trial, a statement of their names, addresses, and the general subject matter of their testimony will be served upon opposing counsel and filed with the court at least _____ days prior to trial.  This restriction shall not apply to rebuttal witnesses whose testimony, where required, cannot reasonably be anticipated before the time of trial.

8.     REQUESTS FOR INSTRUCTIONS.  If the case is to be tried before a jury, requests for instructions to the jury and special requests for voir dire examination of the jury shall be submitted to the court pursuant to DUCivR 51-1.  Counsel may supplement requested instructions during trial on matters that could not reasonably be anticipated prior to trial.

9.     AMENDMENTS TO PLEADINGS.  There were no requests to amend pleadings. *Or*  The following order was made regarding amendments to the pleadings:  *Set out*.

10.     DISCOVERY.  Discovery has been completed.

11.     TRIAL SETTING.

a.     The case was set for trial on without a jury to begin on November 5, 2019 at 9:00 o'clock a.m. in Salt Lake City.

12.     POSSIBILITY OF SETTLEMENT.  Possibility of settlement is considered ___ good     ___fair  X  poor.

13.     OBJECTIONS.

Plaintiff objects to defendants' untimely disclosure of witnesses that were submitted to plaintiff, without defendants seeking or obtaining an extension from the court, seven days late on September 23, 2019.  Plaintiff also objects to defendants' exchange of exhibits on September 23, 2019 that were not marked for identification as required, that include personal identifiers and are unredacted, and that were subsequently altered before being marked and belatedly provided to plaintiff on September 27, 2019.  Plaintiff further objects to defendants' designation in this pretrial order of 19 additional exhibits attached to defense

-27-

counsel's unsigned November 14, 2017 declaration filed in opposition to plaintiff's motion for summary judgment on the issue of standing.  Dkt. 65-6.


DATED: _____


BY THE COURT


_____
UNITED STATES DISTRICT JUDGE

The foregoing proposed pretrial order (prior to execution by the court) is hereby adopted this _____ day of _____, 20_____.


Dated: September 30, 2019

For Plaintiff,

  s/  Reed Zars_____
Reed Zars, Utah Bar #16351
Attorney at Law
910 Kearney St.
Laramie, WY  82070
307-760-6268
reed@zarslaw.com

  /s George Hays_____
George Hays, admitted pro hac vice
Attorney at Law
P.O. Box 843
Bellevue, WA 98009
415-566-5414
georgehays@mindspring.com


_____

Address: _____


_____
Counsel for defendant

_____

Address:  _____

_____

# Diesel Vehicles Tampered and Trafficked by B&W Auto
## Summary Table

| Truck | VIN Number | Model Year | Make & Engine | Notes |
|---|---|---|---|---|
| | | | | |
| Truck No. 1<br><br>BD#1 The OG | 3C6UD5DL3CG229996 | 2012 | Dodge Ram 2500 6.7L | B&W caused Industrial Injection to remove pollution control devices, install straight pipe and install delete tune. RRP 8, #1; Sparks Dep. 33:2-10, 9-12, 36:2-10; Sparks Exhibit 3; video V#1 in Exhibit H, Dkt, 58-8. |
| Truck No. 2<br><br>BD#2 | Undisclosed | 2013 | Ford F250 6.7L | B&W bought new, removed pollution control devices, installed straight pipe and installed delete tune. RRP 8, #2; Sparks Dep. 35:12-25, 36:1-24; Sparks Exhibit 4; video V#2 in Exhibit H, Dkt, 58-8. |
| Truck No. 3<br><br>BD#3 -- 2nd place | Undisclosed | 2006 | GMC 2500 Duramax LBZ 7.3L Durmax | B&W caused Industrial Injection to remove catalytic converter, install straight pipe and install delete tune. RRP 8, #4; Sparks Dep. 38:8-25, 39:1-20; Sparks Exhibit 5; video V#3 in Exhibit H, Dkt, 58-8. |
| Truck No. 4<br><br>BD#6 – 1st place, Kodiak Monster | 1GBE4E1257F412479 | 2007 | GMC Kodiak C4500 LBZ Duramax 6.6L | B&W removed catalytic converter, installed straight pipe and vertical stack through hood, installed delete tune. RRP 8, #6; Sparks Dep. 43:13-23, 44:2-12, Sparks Exhibit 9. |
| Truck No. 5<br>BD#6 – 2nd place | 3D7KS26A28G154303 | 2008 | Dodge 2500 single cab 6.7L Cummins | B&W removed diesel particulate filter, installed straight pipe and installed delete tune. RRP 8, #7; Sparks Dep. 46:2-12; Sparks Exhibit 11. |
| Truck No. 6<br><br>US Duramax | 1GBHC24D77E133892 | 2007 | GMC Silverado 2500 6.6L Duramax | B&W removed catalytic converter, installed vertical stacks, installed EFI Live delete tune. RRP 8, #11; Sparks Dep. 60:18-22, 61:5-6, 14-16; Sparks Ex. 15; vertical stacks invoice, Bates 11277; video V#7 in Exhibit H, Dkt, 58-8. |
| Truck No. 7<br><br>Bro-Dozer | 1FT8W3BT0BEC15796 | 2011 | Ford F350 6.7 Powerstroke | B&W removed diesel particulate filter, installed straight pipe, installed H&S delete tune. Offered to sell with defeat parts. RRP 8, #14; Sparks Dep. 67:20-25, 68:1-10, 118:11-25, 119:1-19; Sparks Exhibits 19, 41; video V#8 in Exhibit H, Dkt, 58-8. |

| Truck | VIN Number | Model Year | Make & Engine | Notes |
|-------|-----------|------------|---------------|-------|
| Truck No. 8 BD#3 - 1st place US 12-valve | Undisclosed | 1994 | Dodge Ram 3500 12-valve 5.9 Cummins | **B&W bought straight piped with catalytic converter removed. B&W installed vertical stacks in place of horizontal straight pipe, did not replace catalytic converter. RRP 8, #3; Sparks Depo., p.37, lines 1-8; Sparks Ex. 5; Sparks May 28, 2015 Instagram; video V#4 in Exhibit H, Dkt, 58-8.** |
| Truck No. 9 Holy Grail | 3B7KF23D6VG790036 | 1997 | Dodge Ram 2500 SLT 5.9L 12-valve | **B&W bought with catalytic converter removed. B&W replaced entire exhaust system (a "hodgepodge") with straight pipe, did not replace catalytic converter. RRP 8, #9; Sparks Depo. p.55, lines 9-15, p.119, lines 23-25, p.120, lines 1-25, p.122, lines 1-2; Sparks Exhibits 13 and 42.** |
| Truck No. 10 MTN OPs Ultimate Hunting Rig | Undisclosed | 2009 | Ford F250 XLT 6.4L | **B&W bought with straight pipe and delete tune, missing diesel particulate filter. B&W installed vertical stacks in place of horizontal straight pipe, did not replace diesel particulate filter or return ECM to stock settings. RRP 8, #10; Sparks Depo. p.56, lines 18-25, p.57, lines 1-25; p.58, lines 1-25, p.59, lines 1-3; Sparks Exhibit 14.** |
| Truck No. 11 Ford F250 | 1FT7W2BT2DEA61696 | 2013 | Ford F250 | **B&W bought with straight pipe and H&S delete tune. B&W installed vertical stack in bed in place of horizontal straight pipe, did not replace diesel particulate filter or return ECM to stock settings. B&W offered to sell and sold with defeat parts. RRP 8, #12; Sparks Depo. p.62, lines 24-25, p.63, lines 1-24; Sparks Exhibit 16; video V#5 in Exhibit H, Dkt, 58-8.** |
| Truck No. 12 Megaram Runner | 3C6UD5NL1CG272747 | 2012 | Dodge Ram 3500 | **B&W bought with no exhaust pipe or integrated pollution control devices including the diesel particulate filter. B&W caused straight pipe and ECM delete tune to be installed rather than restore diesel particulate filter and other pollution control devices. RRP 8, #13; Sparks Depo., p.64, lines 3-25, p.65, lines 1-25, p.66, lines 1-24; Sparks Exhibit 17; video V#10, still picture V#9, in Exhibit H, Dkt, 58-8.** |
| Truck No. 13 Super Six | 1FDAW57R48EB95034 | 2008 | Ford F550 6.7L | **B&W bought straight piped with H&S delete tune, missing diesel particulate filter. B&W installed new straight pipe and vertical stacks, did not replace diesel particulate filter or restore ECM stock settings. RRP 8, #16; Sparks Depo., p.70, lines 14-25, p.71, lines 1-16, p.121, lines 5-25, p.122, lines 1-3; Sparks Exhibits 21 & 43.** |

Appendix A

| Truck | VIN Number | Model Year | Make & Engine | Notes |
|---|---|---|---|---|
| **Truck No. 14**<br><br>**Truck Norris** | **Undisclosed** | **2012** | **GMC 2500** | **B&W bought with diesel particulate filter removed and with H&S delete tune. B&W sold with defeat parts to Maverik Country Stores in 2016. Sparks Depo., p.109, lines 9-25, p.110, lines 1-5, 16-18; Sparks Exhibits 36 & 39.** |
| **Truck No. 15**<br><br>**GMC Denali** | **1GT125C86BF176354** | **2011** | **GMC Sierra 2500 HD Denali** | **B&W bought with straight pipe, diesel particulate filter removed. B&W sold with defeat parts in 2016 as a "turnkey" truck. Sparks Depo., p.89, lines 23-25, p.90, lines 1-5, p.92, lines 6-14, 24-24, p.93, lines 1-2, Sparks Exhibit 31.** |
| **Truck No. 16**<br><br>**The Raptor** | **1FT7W2BT4BEC07027** | **2011** | **Ford F250 6.7L Powerstroke** | **B&W bought straight piped with H&S delete tune. B&W offer to sell with defeat parts in June, 2017. Sparks Depo., p.78, lines 10-22; Sparks Exhibit 24; http://usedcarsbox.com/ford-search/134804-lifted-2011-ford-f250.html.** |
| **Truck No. 17 Tucker Snowcat** | **3D7KS28CX5G852362** | **2005** | **Dodge Ram 2500 5.9 Cummins** | **B&W bought with straight pipe, catalytic converter missing. B&W currently offering to sell with defeat parts. Sparks Depo., p.76, lines 23-25, p.77, lines 1-11; Sparks Exhibit 23.** |