IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> DIESEL POWER GEAR, LLC, et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR FEES AND BILL OF COSTS** <br><br> Case No. 2:17-cv-00032-RJS <br><br> Chief Judge Robert J. Shelby |

Following a four-day bench trial, the court entered judgment in favor of Plaintiff Physicians for a Healthy Environment, Inc. (UPHE) and against Defendants Diesel Power Gear, B&W Auto, David Sparks, Joshua Stuart, and Keaton Hoskins (collectively, Defendants).[1] UPHE has now filed a Motion for Costs and Fees[2] and a Bill of Costs.[3] For the reasons explained below, the court GRANTS IN PART the Motion[4] and Bill of Costs.[5]

## BACKGROUND

Before filing its Complaint, UPHE's attorneys conducted legal and factual research, including the purchase and emission testing of one of Defendants' illegally modified diesel trucks.[6] UPHE also sent Defendants two notice letters of the impending lawsuit.[7]

---

[1] *See* Dkt. 169 (Judgment).

[2] *See* Dkt. 176.

[3] *See* Dkt. 228.

[4] Dkt. 176.

[5] Dkt. 228.

[6] Dkt. 176 at 2.

[7] *Id.*

In January 2017, UPHE filed its Complaint, beginning its citizen suit to enforce the Clean Air Act's (CAA) emission standards for moving sources and Utah's state implementation plan (Utah's SIP).[8]  UPHE originally brought three causes of action[9] against Defendants but later amended its Complaint to include twenty-five causes of action.[10]  Those causes of action fit in two categories: CAA violations and Utah's SIP violations.[11]  Specifically, UPHE alleged Defendants violated the CAA by: (1) removing or rendering inoperative federally-required emission control systems in diesel trucks; (2) installing parts or components in diesel trucks that bypass, defeat, or render inoperative federally-required emission control systems; and (3) offering to sell or selling defeat parts.[12]  UPHE alleged Defendants violated Utah's SIP by: (1) removing or making inoperative the federally-required emission control system, device, or any part thereof; and (2) owning or operating vehicles with disabled emission-control systems.[13]  UPHE requested declaratory relief, injunctive relief, assessment of civil penalties, and attorney fees.[14]

The parties engaged in extensive discovery and motion practice throughout the litigation.[15]  UPHE conducted written discovery, a site inspection of Defendants' facilities, and depositions of each Defendant and several owners of Defendants' illegally modified diesel

---

[8] *See* Dkt. 2 (Complaint).

[9] *Id.* ¶¶ 133–152.

[10] Dkt. 49 (Amended Complaint) ¶¶ 321–527.

[11] *See* Dkt. 168 (Bench Trial Order) at 2.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *See* Dkt. 176 at 2.

trucks.[16]  Defendants filed two motions to dismiss and one motion for summary judgment.[17]

UPHE filed five motions for partial summary judgment and a motion for a preliminary

injunction.[18]  Although the parties stipulated to the resolution of some of these motions, many

were resolved after extensive briefing and argument.[19]  The parties also engaged in various

settlement discussions, formal and informal, throughout the litigation.[20]  When those settlement

attempts failed, the court held a four-day bench trial in November 2019.[21]

      On March 6, 2020, the court entered its Bench Trial Order, finding Defendants had

violated several provisions of the CAA and Utah's SIP.[22]  The court held Defendants liable for

those violations in the total amount of $851,451 and enjoined Defendants from further violating

the CAA and Utah's SIP.[23]  The court subsequently entered judgment in favor of UPHE

against Defendants consistent with the Bench Trial Order.[24]  Under the judgment, UPHE "is

entitled to costs of litigation, including reasonable attorney fees and expert witness fees under 42

U.S.C. § 7604(d)."[25]

---

[16] *Id.*

[17] Dkt. 168 (Bench Trial Order) at 3–4.

[18] *Id.*

[19] *Id.*

[20] Dkt. 176 at 2.

[21] *Id.*

[22] *See* Dkt. 168 (Bench Trial Order).

[23] *Id.* at 57–58.

[24] *See* Dkt. 169 (Judgment).

[25] *Id.* at 2.

UPHE filed its Motion for Costs and Fees in May 2020.[26]  After the court ordered it to do so,[27] UPHE filed its Bill of Costs in October 2020.[28]  In total, UPHE seeks an award of $1,460,766.85, consisting of $1,376,236.50 in attorney fees, $7,132.00 in paralegal fees, $67,910.35 in costs and expenses, and $9,487.50 for fees incurred obtaining an expert's opinion that the fees and costs are reasonable.[29]  Defendants oppose the Motion and the Bill of Costs.[30]

## LEGAL STANDARD

"It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees."[31]  Under § 7604(d) of the CAA, "[t]he court . . . may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."[32]  The Supreme Court instructs courts to apply this provision by "follow[ing] the principles and case law governing the award of such fees under 42 U.S.C. § 1988, which provides that . . . 'the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.'"[33]  Accordingly, the court has discretion to award UPHE its attorney fees and costs if (1) it is the prevailing party, and (2) the fees and costs are reasonable.[34]

---

[26] *See* Dkt. 176.

[27] *See* Dkt. 227.

[28] *See* Dkt. 228.

[29] Dkt. 176 at 9.

[30] *See* Dkt. 180.

[31] *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 (1978) (citation omitted).

[32] 42 U.S.C. § 7604(d).

[33] *Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 713 n.1 (1987) (citation omitted).

[34] *See Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) ("In any fee request under § 1988(b), a claimant must prove two elements: (1) that the claimant was the 'prevailing party' in the proceeding; and (2) that the claimant's fee request is 'reasonable.'") (citation omitted).

## ANALYSIS

The court limits its analysis to whether UPHE's requested fees and costs are reasonable because there is no dispute that UPHE is the prevailing party.[35]  For the reasons described below, the court awards UPHE $897,984.50 in attorney and paralegal[36] fees, and $30,617.73 in costs and expenses.

### I.      Attorney Fees and Paralegal Fees

Whether the court is awarding fees for attorneys or paralegals, the standard is the same: the fees must be reasonable.[37]  The court "determine[s] what fee is reasonable by first calculating the lodestar—the total number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust[s] the lodestar upward or downward to account for the particularities of the suit and its outcome."[38]  The prevailing party has the "burden of showing that the claimed rate and number of hours are reasonable."[39]  If that burden is met, "the resulting product is presumed to be the reasonable fee."[40]

The court's analysis below proceeds in two parts.  First, it calculates the lodestar.  Next, it determines whether an upward or downward adjustment of the lodestar is justified.

---

[35] *See* Dkt. 180.

[36] The court observes the parties do not define the term "paralegal."  UPHE's paralegals may more accurately be called "law clerks," but the court follows the parties' example and uses the term "paralegal" broadly in this Order.

[37] *See Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) ("[T]he fees for attorneys, law clerks, and legal assistants are all determined in the same fashion: multiplying reasonable hours by reasonable rates to reach a 'lodestar' amount.").

[38] *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (citation omitted).

[39] *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (citation omitted).

[40] *Id.* (citation omitted).

### a.  The Lodestar

#### i.  Reasonable Hours

"[T]he first step in calculating the lodestar [is to] determin[e] the number of hours reasonably spent by counsel for the party seeking fees."[41]  The prevailing party's counsel "has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[42]  The court may reduce an attorney's proffered hours if the "time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time."[43]

Next, the court "ensure[s] that the winning attorneys have exercised billing judgment."[44] Billing judgment is an "important part of determining the reasonableness of an attorney's fee"[45] and "consists of winnowing hours actually expended down to hours reasonably expended."[46]  In other words, "counsel . . . should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[47]  It generally requires the winning attorneys to exclude hours billed for non-compensable work, like conducting background research.[48]  Indeed, "[h]ours that are not properly billed to one's *client* also are not properly

---

[41] *Case*, 157 F.3d at 1250 (citation omitted).

[42] *Id.* (citation omitted).

[43] *Id.* (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995)).

[44] *Id.* (quotation marks and citation omitted).

[45] *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990).

[46] *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) (citation omitted).

[47] *Malloy*, 73 F.3d at 1018 (brackets, ellipses, and citation omitted).

[48] *See Case*, 157 F.3d at 1250; *see also N.M. Citizens for Clean Air and Water v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 835 (10th Cir. 1996) ("When a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable.") (brackets and citation omitted).

billed to one's *adversary*."[49]   If the prevailing party's attorneys fail to exercise proper billing judgment, the "court has a corresponding obligation to exclude hours not 'reasonably expended' from the calculation."[50]

Lastly, the court "look[s] at the hours expended on each [properly billed] task to determine if they are reasonable."[51]   The court "approach[es] this reasonableness inquiry much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients."[52]   It also considers the following factors: (1) "the complexity of the case," (2) "the number of reasonable strategies pursued," (3) "the responses necessitated by the maneuvering of the other side," and (4) "the potential duplication of services."[53]   The court may reduce the prevailing party's hours if they include "hours that were unnecessary, irrelevant and duplicative."[54]   Nevertheless, "the overriding consideration [is] whether the attorney's hours were 'necessary' under the circumstances."[55]

UPHE submits declarations from six attorneys that worked on this case[56] and a declaration from an expert[57] to support its requested fee award.  UPHE also submits its attorneys'

---

[49] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted).

[50] *Malloy*, 73 F.3d at 1018 (citation omitted).

[51] *Case*, 157 F.3d at 1250.

[52] *Robinson*, 160 F.3d at 1281 (quotation marks and citation omitted).

[53] *Case*, 157 F.3d at 1250 (citation omitted).

[54] *Id.* (citation omitted).

[55] *Robinson*, 160 F.3d at 1281.

[56] *See* Dkt. 176-1 (Zars Decl.), Dkt. 176-2 (Dutton Decl.), Dkt. 176-3 (Hays Decl.), Dkt. 176-4 (Melver Decl.), Dkt. 176-5 (Newman Decl.), Dkt. 176-6 (Barbanell Decl.).

[57] *See* Dkt. 176-7 (Haley Decl.).

résumés[58] and billing records,[59] and the billing records of two paralegals.[60]  In total, those attorneys and paralegals represent they worked a total of 3,307 hours on this case.[61]  UPHE argues these hours are reasonable and justified "by the quality of the work performed and by the results obtained."[62]

Defendants disagree, contending UPHE's proffered hours are unreasonable for various reasons.[63]  In short, Defendants' arguments undermine the adequacy of UPHE's billing records and UPHE's attorneys' billing judgment.  They also argue that a comparison of the hours billed by the parties shows UPHE's hours are unreasonable.  The court agrees with many of the issues Defendants raise and reduces UPHE's hours from 3,307 to 2,128 for the reasons explained below.

### 1.  The Adequacy of UPHE's Billing Records

Defendants argue UPHE's billing records are inadequate for two reasons: (1) the records include "block" billing, and (2) the records include incomplete and vague descriptions of the work billed.[64]  The court agrees and reduces UPHE's proffered hours accordingly.

### a.  Block Billing

"Block billing" refers to "attorneys recording large blocks of time for tasks without separating the tasks into individual blocks or elaborating on the amount of time each task

---

[58] *See* Dkt. 176-1 (Zars Decl.), Ex. 1; Dkt. 176-2 (Dutton Decl.), Ex. 1; Dkt. 176-3 (Hays Decl.), Ex. 1; Dkt. 176-4 (Melver Decl.), Ex. 1; Dkt. 176-5 (Newman Decl.), Ex. 1; Dkt. 176-6 (Barbanell Decl.), Ex. 1.

[59] *See* Dkt. 176-1 (Zars Decl.), Ex. 2; Dkt. 176-2 (Dutton Decl.), Ex. 2; Dkt. 176-3 (Hays Decl.), Ex. 2; Dkt. 176-4 (Melver Decl.), Ex. 2; Dkt. 176-5 (Newman Decl.), Ex. 2; Dkt. 176-6 (Barbanell Decl.), Ex. 2.

[60] *See* Dkt. 176-1 (Zars Decl.), Exs. 4, 5.

[61] Dkt. 176 at 7–8.

[62] *Id.* at 4.

[63] *See* Dkt. 180.

[64] *Id.* at 13–17.

took."[65]  The Tenth Circuit "admonishes attorneys who wish to recover attorneys' fees not to utilize the practice of block billing, because block billing does not precisely delineate how hours were allotted to specific tasks."[66]  Block billing "may be strong evidence that a claimed amount of fees is excessive."[67]  Nevertheless, "the decision whether block billing indicates an unreasonable claim . . . remain[s] with the district court who should . . . exercise its discretion accordingly."[68]

Defendants argue an "across-the-board reduction" of UPHE's proffered hours is justified because all but one of UPHE's attorneys submitted block-billed records.[69]  UPHE concedes many of its attorneys and paralegals block billed[70] but disagrees a reduction is warranted because, at least concerning Attorney Zars, "the total elapsed time is correct, as are his descriptions of the tasks he performed during that time period."[71]  UPHE also relies on its expert's opinion to support the reasonableness of its hours.[72]  The court agrees in part with Defendants.

The court has carefully reviewed all of UPHE's billing records and does not doubt the accuracy of the time and tasks represented.  But the block billing raises three serious concerns about the reasonableness of UPHE's proffered hours—particularly for Attorney Zars who block billed at $475 an hour.[73]  First, the court cannot determine if a reasonable amount of time was

---

[65] *Flying J Inc. v. Comdata Network, Inc.*, 322 F. App'x 610, 617 (10th Cir. 2009) (unpublished).

[66] *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (quotation marks, ellipses, and citation omitted).

[67] *Flying J*, 322 F. App'x at 617 (citation omitted).

[68] *Id.* (citation omitted).

[69] Dkt. 180 at 15–16.  Defendants are mistaken.  *Id.* at 15.  Rather, Paralegal Edwards, Attorney Melver, and Attorney Newman did not block bill.  *See* Dkt. 176-1 (Zars Decl.), Ex. 5; Dkt. 176-4 (Melver Decl.), Ex. 2; Dkt. 176-5 (Newman Decl.), Ex. 2.

[70] Dkt. 183 at 6–8.

[71] *Id.* at 7.

[72] *Id.* at 7–8.

[73] Dkt. 176 at 7.

spent performing certain tasks.  Second, it cannot succinctly exclude hours billed for tasks that should not have been billed.  Third, it cannot distinguish and credit time properly billed at senior attorney rates versus junior attorney rates.  That is, the court cannot determine how many hours Attorney Zars billed for tasks that should have been delegated to a junior attorney and therefore awarded at a junior attorney's hourly rate.

The court's concerns are not alleviated by UPHE's expert witness's opinion.[74]  UPHE hired respected local attorney, George Haley, to offer his opinion on the reasonableness of the fees.[75]  While the court agrees with Haley's opinion that "[t]his was a highly complex case dealing with obscure provisions of the [CAA] that was vigorously defended" and that it appears "the legal work that was billed was actually performed," it must part ways with his conclusion that "[t]he work performed was reasonable and necessary to adequately prosecute the case."[76]  Haley never addresses the block billing or how that practice creates the obvious problem of preventing an effective review of the amount of time spent on certain tasks.  He also never addresses the obvious problems of UPHE attorneys billing at senior-attorney rates for tasks better suited to paralegals or junior attorneys, or that should not have been billed at all.  As discussed in detail below, the court excludes a significant number of unreasonable hours from UPHE's request.

Although the court concludes the block billing is problematic, the court does not agree with Defendants that an "across-the-board reduction" of UPHE's proffered hours is justified. This is because some of UPHE's attorneys and paralegals did not block bill.[77]  Further, some of

---

[74] *See* Dkt. 176-7 (Haley Decl.).

[75] *Id.* at 2.

[76] *Id.* at 7.

[77] *See* Dkt. 176-1 (Zars Decl.), Ex. 5; Dkt. 176-4 (Melver Decl.), Ex. 2; Dkt. 176-5 (Newman Decl.), Ex. 2.

the block billing is not as problematic as others.  The most accurate way to account for the block

billing, therefore, is to consider it in context when reducing UPHE's proffered hours for the other

reasons explained in this Order.

### b.  Vague Records

Defendants argue UPHE's proffered hours should be reduced because its billing records

include vague entries that prevent the court from determining if the time billed for the tasks was

necessary and reasonable.[78]  UPHE maintains its records are "sufficiently detailed and

specific."[79]  Having reviewed UPHE's records, the court finds they are generally sufficient to

support the proffered hours because they include descriptions of the tasks performed and the

purpose for those tasks.[80]  The exception is Paralegal Gallick's records, which include some

inadequate entries.

The court reduces Paralegal Gallick's hours by 73.8 because they are not supported with

sufficient explanations.[81]  Specifically, he block billed 33.4 hours for "Legal research" over five

days.[82]  The court excludes these hours because it is unclear how it is reasonable for Paralegal

Gallick, a college student,[83] to bill legal research for this many hours without some explanation.

Next, he billed 30.7 hours for "social media analysis" over four days.[84]  While the court finds

---

[78] Dkt. 180 at 17.

[79] Dkt. 183 at 6.

[80] Some of the records, like Attorney Dutton's, would benefit from more precise descriptions.  *See* Dkt. 176-2 (Dutton Decl.), Ex. 2 at 8 ("Call with Reed and Ashley").  Surrounding entries, however, typically provide sufficient context to the deficient entries.  *See id.* ("Set up call with Reed and Ashley about location of vehicles").  The court does not exclude hours for these entries.

[81] *See* Dkt. 176-1 (Zars Decl.), Ex. 4.

[82] *Id.* at 67.  He billed these hours on the following dates: 6/13/2017, 6/14/2017, 6/28/2017, 6/29/2017, and 6/30/2017.  *Id.*  Although there are other tasks listed with these entries, the court excludes all hours because the block billing prevents a more precise accounting.  This practice continues throughout this Order.

[83] Dkt. 176-1 (Zars Decl.) ¶ 10.

[84] Dkt. 176-1 (Zars Decl.), Ex. 4 at 67.  He billed these hours on the following dates: 7/25/2017, 7/27/2017, 7/28/2017, and 7/31/2017.  *Id.*

this task likely was necessary, the description does not permit the court to determine whether the amount of time spent was reasonable.  These hours are therefore reduced by 50%, or 15.4.  Lastly, Paralegal Gallick billed 25 hours "studying depositions" over three days.[85]  The court excludes these hours because it cannot discern, based on the vague description, if this time was reasonably spent furthering the case.

In sum, as explained above, the court reduces UPHE's proffered hours because its billing records include some inadequacies.

### 2.  Billing Judgment

Attorney Zars testifies that his billing judgment consisted of removing the following: "the time [he] spent opposing Defendants' alternative motion for a more definite statement," "State and County anti-tampering training classes, the limited time [he] spent responding to calls from the media and, most recently, all of the time spent preparing [this Motion]."[86]  Defendants argue this is insufficient and that UPHE's attorneys did not exercise proper billing judgment.[87]  Specifically, Defendants identify five categories from UPHE's records they argue include excessive hours: (1) time billed before UPHE hired its attorneys (pre-recruitment work); (2) time billed before the Complaint was filed (pre-filing work); (3) time billed for legal research; (4) time billed drafting motions for summary judgment; and (5) time billed for traveling.[88]  As explained below, the court concludes that UPHE's hours should be reduced for the reasons Defendants identify as well as the court's own billing judgment.

---

[85] *Id.*  He billed these hours on the following dates: 8/7/2017, 8/8/2017, and 8/9/2017.  *Id.*

[86] Dkt. 176-1 (Zars Decl.) ¶ 7.

[87] Dkt. 180 at 18–23.

[88] *Id.*

### a. Pre-Recruitment Hours

"[T]ime spent and expenses incurred prior to client recruitment are generally not assessed to the client and, therefore, are not appropriately charged to the opposing party."[89]  There are exceptions to this rule, however, "such as when the litigation involves particularly difficult questions of standing, mootness, or ripeness," or when "attorneys have done pre-recruitment work with an advocacy group representing a class."[90]

Defendants argue the hours billed by UPHE's attorneys before they were retained are unreasonable.[91]  UPHE does not attempt to argue either of the exceptions described above apply and simply maintains its requested fees are reasonable.[92]  Absent a meaningful response from UPHE, the court agrees with Defendants and reduces Attorneys Zars's and Dutton's hours as follows.

According to Attorney Zars's records, UPHE first contacted him in March 2016.[93]  Two months later, he billed time "drafting [a] proposed UPHE retainer."[94]  During this period, Attorney Zars billed approximately 150 hours.[95]  It is clear some of this time was reasonable and necessary to further the litigation and, as such, could have been properly billed.[96]  It is unclear, however, if a retainer agreement had been signed, which would make this work the type

---

[89] *Case*, 157 F.3d at 1251 (brackets, quotation marks, and citation omitted).

[90] *Id.* (citation omitted).

[91] Dkt. 180 at 19.

[92] *See* Dkt. 176; Dkt. 183.

[93] *See* Dkt. 176-1 (Zars Decl.), Ex. 2 at 9 ("Contact from UPHE re: possible diesel defeat enforcement case").

[94] *Id.* at 11.  UPHE offers no additional details concerning when it hired Attorney Zars.

[95] Defendants repeatedly propose approximations for hours spent by UPHE's attorneys and paralegals for specific tasks or time periods—like 150 hours for pre-recruitment work.  *See* Dkt. 180 at 19–20.  The court adopts Defendants' approximations because UPHE never rebuts them and, based on the court's review of the billing records, they appear accurate.

[96] *See* Dkt. 176-1 (Zars Decl.), Ex. 2 at 9–11 (billing for time communicating with UPHE and performing pre-litigation tasks like preparing a litigation-strategy memo and locating local counsel).

ordinarily billed to a client.[97]  Further, many of the tasks Attorney Zars performed include background research or clerical tasks that are not appropriately billed at a senior-partner rate.[98] Indeed, some tasks should not have been billed at all—for example, time spent negotiating and drafting a retainer agreement for himself[99] and an assistant.[100]  He also billed a substantial amount of time purchasing, licensing, storing, and testing a diesel truck that Defendants had illegally modified.[101]  As explained in detail below, the court does not find hours billed and expenses incurred for most of these truck-related tasks to be reasonable and excludes them accordingly.  Thus, the court reduces Attorney Zars's pre-recruitment hours by 80%, or 120.

The court reduces Attorney Dutton's hours by 3.1 for similar reasons.  Specifically, her records show she billed .4 hours when she was first "[c]ontacted by Reed Zars, seeking Utah counsel in UPHE air pollution case," and an additional 2.7 hours negotiating, preparing, and editing her retainer agreement.[102]  These hours clearly represent work that is not appropriately billed because they precede any attorney-client relationship and thus would not normally be charged to a client or, by extension, an adversary.  Accordingly, these hours are excluded.

---

[97] See id. at 11 ("begin drafting retainer for UPHE"; "Continue drafting proposed UPHE retainer, no fees or costs to be paid, send to Brian and Tim with memo for their review").

[98] See id. at 9, 11 ("Research into tampering and removal actions"; "research web, collect links and send to UPHE with memo"; "Most of day researching CAA and CWA cases in law library re: jurisdiction, standing, relief, continuing violations").

[99] See id. at 11 ("begin drafting retainer for UPHE"; "Continue drafting proposed UPHE retainer").

[100] See id. at 10 ("draft CAA research questions for Brittany, send with acceptance of hourly rate").

[101] See id. at 9–10 ("Confer with Nat re: purchase and transit of truck"; "Continue working with Nat on purchase of truck; . . . t/c with Nat re: condition of truck, suggest added questions; confer with bank re: transfer of funds to Nat for purchase, best method for releasing lien and obtaining title, secure cashier's check for Nat; draft agreement between me and Nat"; "Discuss with Nat upcoming call with owner of truck"; "confer with Nat purchase of truck, conditions, costs"; "confer with Nat re: purchase of truck, payment of lien, temp plates"; "Travel GJ to St. George on bus 5 am start, . . . meet Nat after purchase of truck, travel to Hurricane for temp plates"; "Transfer title to truck in Laramie, secure insurance, get plates and registration; travel to SGS with Nat, leave off truck, return to Laramie; review Nat's invoice and respond; t/c with Brian re: truck purchase and testing, case update").

[102] Dkt. 176-2 (Dutton Decl.), Ex. 2 at 8.

### b. Pre-Filing Hours

Defendants argue Attorney Zars billed an excessive number of hours from the time he was hired to the time the Complaint was filed—approximately May 2016 to January 2017.[103] They also argue he billed an unreasonable amount drafting the Amended Complaint.[104]  UPHE offers no specific reply to Defendants' arguments.[105]  Nevertheless, the court disagrees with Defendants.

Attorney Zars billed approximately 369 hours from the time UPHE hired him to the time he filed the Complaint.[106]  Of those hours, 121 were spent preparing and drafting the Complaint, which Defendants argue is unreasonable.[107]  Specifically, Defendants contend the Complaint violates the mandate in Federal Rule of Civil Procedure 8 that pleadings be a "short plain statement of entitlement to relief" because it "is a . . . sociological discourse . . . about the state of the environment, what bad actors Defendants portray on television and social media to market products, and conclusory allegations."[108]  But Defendants mischaracterize the Complaint.

The Complaint is forty-five pages long, consists of over 152 paragraphs, and includes eleven exhibits.[109]  Although it contains some background facts concerning air pollution, the effects of air pollution on people's health, and diesel engines' contribution to air pollution, it is not a sociological discourse.  Rather, the Complaint included relevant background information

---

[103] Dkt. 180 at 19–20.

[104] *Id.*

[105] *See* Dkt. 183.

[106] Dkt. 180 at 19.  Defendants approximate Attorney Zars's "total hours charged between initial client contact and filing of complaint is in excess of 519 hours."  *Id.*  Because the court has addressed 150 of those hours, approximately 369 hours remain for the period between the hiring of Attorney Zars and the filing of the Complaint.

[107] *Id.*

[108] *Id.*

[109] *See* Dkt. 2 (Complaint).

and specific allegations concerning Defendants' violations of the CAA and Utah's SIP, none of which constitute an attempt to paint Defendants as "bad actors."[110]

More importantly, the pre-filing time UPHE's attorneys billed is generally justified for three reasons. First, this case involved discrete and complex issues under the CAA that appeared to present issues of first impression in this Circuit and nationwide.[111] Second, the large number of hours billed was caused, in significant part, by the extent of Defendants' wrongdoing. Indeed, UPHE alleged and then proved Defendants had committed hundreds of discrete CAA violations over several years.[112] Third, based on Defendants' conduct throughout the litigation, "there is persuasive evidence that [UPHE's] ability to gather information pre-filing may well have been easier and less expensive than it would have been post-filing."[113] Such evidence includes Defendants unreasonably resisting discovery[114] and engaging in questionable litigation tactics.[115]

For similar reasons, the court does not reduce the approximately 96 hours spent preparing and drafting the Amended Complaint.[116] The court ordered UPHE to amend its Complaint because it "improperly jumble[d] everyone and everything together" by making allegations against "Defendants" collectively rather than individually.[117] UPHE filed its Amended

---

[110] *See id.*

[111] *See* Dkt. 176-7 (Haley Decl.) at 7 ("The legal theory was novel. I believe it was the first of its kind, certainly in Utah, and probably the U.S.").

[112] *See* Dkt. 168 (Bench Trial Order) at 10–24.

[113] *David C. v. Leavitt*, 900 F. Supp. 1547, 1556–57 (D. Utah 1995).

[114] For example, after attempting to settle the dispute without court intervention, UPHE filed a motion to compel Defendants to supplement their responses to certain discovery requests. *See* Dkt. 86. Defendants then opposed the motion but later agreed to supplement their discovery responses. *See* Dkt. 89; Dkt. 91.

[115] *See* Dkt. 183 at 3–4 (identifying ineffective, but time consuming, litigation tactics employed by Defendants and various times when the court questioned the integrity of Defendants' arguments).

[116] *See* Dkt. 180 at 20.

[117] Dkt. 46 at 2.

Complaint, which spanned 137 pages, over 527 paragraphs, and nine exhibits.[118]  Despite its length, the Amended Complaint is not, as Defendants' contend, a "treatise."[119]  Instead, it specified the CAA and Utah's SIP violations each individual Defendant had committed.[120]  Its allegations were precise and addressed hundreds of violations that occurred over several years.  Accordingly, the court generally finds no fault with the time Attorney Zars billed preparing the Amended Complaint.

In sum, contrary to Defendants' arguments, no reduction of UPHE's pre-filing hours is justified based on the number of hours alone.  But, in reviewing UPHE's billing records for pre-filing work, it is evident that significant reductions are justified for block-billed entries, duplicate hours, and non-billable work.  The court accounts for these deficiencies below when it exercises its billing judgment to reduce UPHE's proffered hours.

### c.  Hours for Research

Defendants argue the court should exclude or substantially reduce the hours UPHE's attorneys and paralegals billed for factual and legal research.[121]  Specifically, they argue the sheer volume of time spent performing research by UPHE's attorneys and paralegals is unreasonable.[122]  To support their argument, Defendants contend UPHE's records show over 800 hours were billed for research-related tasks.[123]  They maintain 322 hours were billed by two paralegals and three attorneys who assisted Attorney Zars with the case, and over 500 hours were

---

[118] *See* Dkt. 49 (Amended Complaint).

[119] Dkt. 180 at 20.

[120] *See* Dkt. 49 (Amended Complaint).

[121] Dkt. 180 at 20–21.

[122] *Id.*

[123] *Id.* at 21.

billed by Attorney Zars.[124]  UPHE offers no rebuttal to Defendants' argument other than to generally maintain that its hours are reasonable.[125]  The court concludes that a reduction is necessary.

This case presented numerous novel legal issues and an overwhelming number of CAA violations by Defendants.  Much of the legal research appears to be directed at understanding these unique legal issues.  Further, UPHE's attorneys had to research, organize, and prove hundreds of CAA violations.  The volume of the violations UPHE proved at trial weighs in favor of the reasonableness of the hours spent researching and organizing this information for the court.  Nevertheless, the hours UPHE's legal team billed for research strikes the court as unreasonable.  Without any reductions, the total for this time equals $302,198.50.[126]  No reasonable attorney would submit such a bill to a client without reducing the amount for general inefficiencies and the specific deficiencies identified below.  Thus, while balancing the scope and complexity of this case, the court reduces UPHE's proffered hours as follows.

First, the court reduces Attorney Zars's 500 hours performing legal and factual research by 40%, or 200 hours.  His records show he billed time reviewing, discussing, and coordinating research with co-counsel and paralegals,[127] reporting to and coordinating research efforts with

---

[124] *Id.*

[125] *See* Dkt. 183.

[126] This total is based on 12.5 hours for Paralegal Edwards, 97.4 hours for Paralegal Gallick, 9 hours for Attorney Barbanell, 153.1 hours for Attorney Melver, 50.3 hours for Attorney Newman, and 500 hours for Attorney Zars. *See* Dkt. 180 at 20–21.

[127] *See* Dkt. 176-1 (Zars Decl.), Ex. 2 at 14 ("review emails re: law student Will Edwards providing legal research on case"); *See id.* at 16 ("review Will's request for equity recall research clarification"); *id.* at 17 ("research, draft and send SIP research memo to Will"); *id* at 18 ("draft and send research questions to Melissa re: suits against our defendants in state court"; "confer with researchers Melissa and Will"); *id.* at 39 ("Review intern research on standing, research separate Utah non-attainment airsheds, return thoughts to intern").

UPHE,[128] and performing research to gain a deeper understanding of the overall landscape of the lawsuit.[129]  Although some of this work was reasonable and necessary, some was duplicative and unnecessary.  Further, Attorney Zars—an experienced litigator—charged an hourly rate of $475 performing these research and research-related tasks.  The sheer volume of hours for these tasks at that rate is unreasonable and indicates overbilling on his part, particularly because he block-billed nearly all of his time entries.

Second, the court reduces Attorney Melver's 153.1 hours performing legal and factual research by 25%, or 38.3.  The volume of hours Attorney Melver billed for research-related tasks is unreasonable given her approximately seven years of experience with environmental law, including CAA litigation, and the issues she researched.[130]  For example, she billed forty-three hours researching and drafting a memo on "CAA case law on assessing penalty factors,"[131] which should not have taken that long for an attorney with her experience.

Third, the court reduces Paralegal Gallick's 88.2 hours[132] performing legal and factual research by 50%, or 44.1.  UPHE never reduces Paralegal Gallick's hours for general inefficiencies that are likely to result when utilizing someone inexperienced in legal research, like a college student.  Accordingly, half of the hours Paralegal Gallick spent conducting research are excluded because they are excessive for the type of research he conducted, which

---

[128] *See id.* at 17 ("Research diesel exhaust PM concentrations found, and correlated health impacts, send with email to UPHE for intern research").

[129] *See id.* at 28 ("research changes to CAA in law library, summarize for Glen"); *id.* at 32 ("work at law library researching CAA amendments"; "Return to law library for added research on CAA legis history, changes between 1970-77-90, review Senate, House, Joint Committee Reports").

[130] *See* Dkt. 176-4 (Melver Decl.), Ex. 1 at 5 (showing Attorney Melver has been employed as a "Public Interest Environmental Attorney at Law" since June 2012).

[131] Dkt. 176-4 (Melver Decl.), Ex. 2 at 8.

[132] After accounting for the deduction to Paralegal Gallick's hours based on his inadequate records, there remain approximately 88.2 hours he billed conducting research.  *See* Dkt. 176-1 (Zars Decl.), Ex. 4.

includes "[l]egal research on off road vehicles," "legal research on changes to CAA," "EPA tamper enforcement policy research," and "[l]egal research on legislative histories."[133]

Having reviewed the research-related hours for Attorney Barbanell, Attorney Newman, and Paralegal Edwards, the court concludes they are reasonable.

In sum, the court reduces UPHE's proffered hours by 282.4, which accounts for unreasonable and excessive hours billed for legal and factual research.

### d.  Hours Drafting Motions for Summary Judgment

Defendants argue Attorney Zars billed an unreasonable amount—approximately 300 hours—drafting and revising five separate motions for partial summary judgment and reply memoranda.[134]  Specifically, they argue "the matters should [have] been more efficiently addressed in a single motion . . . instead of five separate motions."[135]  Again, UPHE offers no specific response to Defendants' argument.[136]  The court disagrees that UPHE should have addressed the matters in a single motion, but concludes the total billed for the motions is excessive.

The court does not fault UPHE for submitting five separate motions for partial summary judgment because the motions were sufficiently distinct to justify their separate submissions.[137] UPHE's first motion addressed standing and relied on evidence of the injuries Defendants caused UPHE's members.[138]  The next three motions addressed individual Defendants' liability for

---

[133] *Id.*

[134] Dkt. 180 at 22.

[135] *Id.*

[136] *See* Dkt. 183.

[137] *See* Dkt. 58, Dkt. 64, Dkt. 81, Dkt. 108, Dkt. 109.

[138] *See* Dkt. 58.

violating the CAA and relied on evidence of specific violations unique to the Defendant.[139]  The final motion addressed the issue of joint liability for the violations between Defendants Diesel Power Gear and B&W Auto.[140]

Nevertheless, the court reduces Attorney Zars's hours by 100 because 300 hours is excessive absent some explanation from UPHE.  The last four motions involved legal issues or evidence that overlapped.  This should have reduced the number of hours required to prepare these motions even though they addressed novel legal issues.  By offering no explanation for its hours in light of the overlapping legal issues and evidence, UPHE has not met its burden to demonstrate these hours are reasonable.

### e.  Hours for Traveling

Attorney Zars is from Laramie, Wyoming, and thus had to travel to Salt Lake City, Utah to meet with his client, conduct discovery, and attend court.[141]  He also traveled to Utah and Colorado for activities related to purchasing, testing, and storing a diesel truck Defendants illegally modified.[142]  Defendants argue Attorney Zars's hours should be reduced because the trips he took to meet with his client and concerning the diesel truck were unnecessary.[143]  Specifically, they argue the seven trips Attorney Zars took during the pre-filing stage of litigation—approximately May 2016 to January 2017—were excessive.[144]  The court agrees that Attorney Zars's hours should be reduced by the time he spent traveling, but reduces those hours

---

[139] *See* Dkt. 64, Dkt. 81, Dkt. 108.

[140] *See* Dkt. 109.

[141] Dkt. 183 at 4–5; *see* Dkt. 176-1 (Zars Decl.), Ex. 1.

[142] Dkt. 180 at 22.

[143] *Id.* at 19, 22.

[144] *Id.* at 22.

under the Tenth Circuit's standard for excluding travel-related expenses.  The court also reduces

the hours for Attorney Hays—who is from Bellevue, Washington[145]—under the same standard.

In *Ramos v. Lamm*, the Tenth Circuit defined when it is appropriate to grant travel-related

fees under § 1988:

> Items that are normally itemized and billed in addition to the hourly rate should be
> included in fee allowances in civil rights cases if reasonable in amount.  However,
> because there is no need to employ counsel from outside the area in most cases, we
> do not think travel expenses for such counsel between their offices and the city in
> which the litigation is conducted should be reimbursed.  Departure from this rule
> should be made in unusual cases only.[146]

The court applies this standard to travel-related hours billed by out-of-state counsel because it is

unreasonable for a prevailing party that could have obtained in-state representation to charge its

opponent for time incurred strictly because they chose to hire out-of-state counsel.

Despite this being a novel and complex case, it is not "so unusual or requires such special

skills that it could not be handled by reasonably competent trial lawyers in [Salt Lake City]."[147]

Indeed, UPHE's expert testifies there are attorneys in Salt Lake City capable of trying this

case.[148]  Thus, the court excludes hours billed by Attorney Zars and Hays traveling from their

hometowns to Salt Lake City for this litigation.

After accounting for the hours already deducted from Attorney Zars above, the court

reduces his hours by an additional 5%, or 107.  Attorney Zars's billing records show he regularly

---

[145] *See* Dkt. 176-3 (Hays Decl.), Ex. 1.

[146] *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983), *overruled on other grounds*, *Pa. v. Del. Valley Citizens'
Council for Clean Air*, 483 U.S. 711, 725 (1987).

[147] *Id.* at 555.

[148] *See* Dkt. 176-7 (Haley Decl.) at 6 ("I conducted an informal survey of attorneys in my firm who are Clean Air
Act specialists and spoke with some of my colleagues in SLC who do Clean Air Act work."); *id.* at 7 ("There are
only a handful of lawyers in the SLC market who practice Clean Air Act law and even fewer who are willing to
litigate these difficult legal issues.").

traveled from Wyoming to Utah.[149]  For example, he traveled to Utah to meet with UPHE,[150] purchase and inspect the diesel truck,[151] conduct discovery,[152] file the Complaint and arrange for its service on Defendants,[153] meet with witnesses,[154] attend court hearings and trial,[155] and attend mediation and settlement discussions.[156]  Many of these activities were necessary, but the court excludes the time Attorney Zars billed for travel because it is not reasonable for Defendants to pay for this time when UPHE could have hired local counsel that would not have needed to bill these hours.

The court reduces Attorney Hays's hours for similar reasons.  Specifically, the court reduces Attorney Hays's hours by 4.7, which are the hours he spent traveling to Utah to participate in a pretrial conference and trial.[157]

### f.   The Court's Billing Judgment

As explained above, when a party's attorneys do not exercise proper billing judgment, the court is obligated to exclude unreasonable hours from the fee request.[158]  While reviewing the records from UPHE, it was evident that many of the proffered hours were for non-billable

---

[149] *See* Dkt. 176-1 (Zars Decl.), Ex. 2.

[150] *Id.* at 9, 14.

[151] *Id.* at 10, 12, 24, 35, 53, 55.

[152] *Id.* at 26, 31, 32, 35.

[153] *Id.* at 20.

[154] *Id.* at 53.

[155] *Id.* at 39, 43, 44, 48, 57, 58.

[156] *Id.* at 46, 50.

[157] Dkt. 176-3 (Hays Decl.), Ex. 2 at 12, 14.  Attorney Hays traveled to Utah two times for trial.  *See id.* at 13–14. The court does not reduce Attorney Hays's hours for the trip from Washington to Utah for the first part of trial because his records show he worked while he traveled.  *Id.* at 13 ("Travel to SLC, but while on plane and afterward, prepare HeavyD questioning; confer w/ RZ.").

[158] *Malloy*, 73 F.3d at 1018 (citation omitted).

activities, duplicative, or otherwise unreasonable.  Accordingly, the court exercises its own billing judgment to exclude the following unreasonable hours.

First, the court reduces Attorney Zars's hours that remain after the reductions addressed above (2,025.9) by 20%, or 405 hours, because Attorney Zars repeatedly billed for significant amounts of time that should not have been billed or are not properly billed at a senior-attorney rate.  For example, Attorney Zars improperly billed hours revising Attorney Dutton's retainer agreement;[159] responding to a request from Paralegal Edwards to assist with the case;[160] editing a UPHE newsletter;[161] formatting documents;[162] coordinating travel plans and preparing for travel;[163] general office tasks;[164] communicating with "interested parties";[165] and drafting a "long memo" to Attorney Dutton "thanking her for all her work and care."[166]  Examples of billable

---

[159] Dkt. 176-1 (Zars Decl.), Ex. 2 at 13 ("Review and revise MD retainer, payment of flat rate, virtual office, etc., confer with MD"; "Review and revise MD retainer, email to MD with memo; continue work on notice letter").

[160] *Id.* at 15 ("respond to request by law student (Will Edwards) to assist with legal research").

[161] *Id.* at 18 ("Review and correct facts on case in draft UPHE newsletter; complete first draft of complaint and send to MD for review").

[162] *See id.* at 13 ("Review, download and convert to pdf Ds illegal parts page"); *Id.* at 19 (". . . create pdf files . . ."); *Id.* at 24 (". . . format to pdf and serve on Janet in the evening").

[163] *See id.* at 25 ("arrange for travel and tasks for summer intern to work on discovery (Glen Gallick)"); *Id.* at 26 ("send background dox and memo to Glen, confirm his arrival to assist in discovery in SLC"; "pick up Glen at airport"); *Id.* at 46 (". . . prepare for travel to SLC; fly to SLC, check into motel . . ."); *Id.* at 56 ("load car with printer, fax, binders, office supplies, trial and motion binders, food cooler"); *Id.* at 58 ("Make SLC reservations for attorneys . . .").

[164] *See id.* at 59 ("Receive and pay transcript invoices"); *Id.* at 19 (". . . make copies . . ."); *Id.* at 20 ("Arrange service with constable, to federal court, file complaint, pro hac vice, receive summonses, scan all stamped dox to pdf, get to constable, confer with MD . . .").

[165] *Id.* at 43, 60.

[166] *Id.* at 29.

work Attorney Zars should have assigned to a junior attorney or paralegal include: checking case citations,[167] reviewing and scanning documents,[168] and organizing documents.[169]

In short, Attorney Zars's records show he indiscriminately billed for every minute he worked on this case from its inception and did not exercise proper billing judgment when he submitted his records for a fee award.  Because he also block-billed nearly all of his time, it is impossible for the court to determine whether the time he spent performing certain tasks was reasonable.  Accordingly, the court reduces his hours an additional 20%.

Second, the court reduces Attorney Dutton's hours that remain after the reductions addressed above (92) by 50%, or 46 hours.  The court does not reduce Attorney Dutton's hours because of her block billing, which is minimal.  Instead, this reduction is because UPHE has not shown Attorney Dutton's work was "actually necessary or essential to proper representation rather than merely comforting or helpful."[170]  UPHE offers no explanation for Attorney Dutton's necessity, leaving the court to make its assessment from her billing records alone.  Those records—and the court's docket—show she acted as local counsel, which the court credits her for.[171]  But the remainder of her work does not appear necessary without further explanation.

A majority of Attorney Dutton's time was billed for short calls or discussions with Attorney Zars about the case, indicating she acted primarily as a sounding-board.[172]  Because of the clear disparity in experience between the experienced Attorney Zars and the comparatively

---

[167] See id. at 22 (". . . check cites . . ."); Id. at 32 (". . . shepardize all cases, print out and review").

[168] See id. at 26 (". . . continue dox review and scanning . . .").

[169] See id. at 27 ("Work with Glen organizing OBD and visual inspection pictures and documents, multiple discussions with Chuck, review, work on organizing scans").

[170] Case, 157 F.3d at 1252 (citation omitted).

[171] See Dkt. 3; Dkt. 176-2 (Dutton Decl.), Ex. 2 at 8 ("Contacted by Reed Zars, seeking Utah counsel in UPHE air pollution case).

[172] See Dkt. 176-2 (Dutton Decl.), Ex. 2 at 8–10.

inexperienced Attorney Dutton, it was not necessary for Attorney Zars to utilize Attorney Dutton in this manner.  The rest of her time was billed reviewing various documents from Attorney Zars, coordinating meetings, organizing documents, and conducting some factual research.[173]  She also improperly billed hours discussing her need to withdraw from the case with Attorney Zars, and preparing and filing her notice of withdrawal.[174]  In short, the court reduces Attorney Dutton's hours because her records do not show her work was reasonably necessary, and she billed for non-compensable work.

Third, the court reduces Paralegal Gallick's hours that remain after the reductions addressed above (148.1) by 15%, or 37 hours.  This is because Paralegal Gallick block billed large periods of time, preventing the court from determining if the time spent on these activities was reasonable.  For example, he block billed eight hours "[r]ead[ing] through [the] amended complaint" and "work[ing] on [a] parts list."[175]  On another occasion, he billed just over ten hours for the following: "OCR for PDF files, managing and interpreting OBD data, legal research on off road vehicles."[176]  Later, he billed seven and a half hours "[r]ead[ing] through deposition notices" and "communicat[ing] with and prepar[ing] documents for Chuck."[177]

In sum, the court has reduced UPHE's proffered hours in the amounts described above because its attorneys did not exercise proper billing judgment.

---

[173] *See id.*

[174] *See id.* at 10 (billing for "call with Reed—new job, difficult to continue as counsel"; "work on notice of withdrawal of counsel"; and "Review notice of withdrawal from Reed, ok, filed with court").

[175] Dkt. 176-1 (Zars Decl.), Ex. 4 at 67.

[176] *Id.*

[177] *Id.*

### 3. Hours Comparison

"Evidence of the hours expended by opposing counsel may be helpful in determining whether time expended on a case was reasonable, but the opponent's time is not an 'immutable yardstick of reasonableness.'"[178]  Defendants argue UPHE's proffered hours of 3,307 are unreasonable when compared to the hours Defendants' attorneys billed, 1,348.93.[179]  UPHE maintains its attorneys' hours were reasonable because they "were driven by Defendants' rejected defenses and time-consuming tactics."[180]  The court agrees with UPHE.

"The Tenth Circuit has long accepted the proposition that one of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is the responses necessitated by the maneuvering of the other side."[181]  UPHE identifies multiple specific instances when Defendants engaged in unreasonable and unnecessary time-consuming tactics.[182]  One example warrants mentioning.  Before trial, Defendants' counsel refused to accept trial subpoenas on Defendant Sparks's behalf.[183]  UPHE then served Sparks with a subpoena to appear and testify at trial.[184]  Despite having been served with a subpoena, Sparks failed to appear and testify on November 5, 2019.[185]  Any competent attorney would have known this

---

[178] *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 543 (10th Cir. 2000) (quoting *Robinson*, 160 F.3d at 1284).

[179] *See* Dkt. 180 at 12.

[180] Dkt. 183 at 3.

[181] *Robinson*, 160 F.3d at 1284 (quotation marks and citation omitted).

[182] *See* Dkt. 183 at 3–4.

[183] *See* Dkt. 149.

[184] *See id.*

[185] *See id.*

kind of behavior results in higher fees for the opposing party, and Defendants cannot now complain about the consequences of their actions.[186]

In addition, the disparity in hours between UPHE and Defendants does not justify reducing UPHE's proffered hours because UPHE had the burden of proof as the plaintiff.[187] This required UPHE's legal team to identify and prove each of Defendants' violations, of which there were hundreds.  Defendants had no corresponding burden and were free to defend against UPHE's claims however they thought best.  "The fact that it cost more to win the day than it did to lose does not indicate that 'more' was either unreasonable or excessive."[188]  Rather, UPHE's success implies that it "correctly invested the necessary litigation resources."[189]

Lastly, Defendants do not support their hours with billing records so the court can compare the parties' work.[190]  Without this information, the court cannot determine whether the disparity in hours is justified.  Nevertheless, the court has considerably reduced UPHE's proffered hours for the reasons explained above, which reduces the difference between the parties' hours.  The record and the court's own involvement in this time-consuming and complicated case demonstrate UPHE's 2,128 remaining hours are reasonable.  Each of UPHE's allowable attorneys' and paralegals' hours are as follows:

---

[186] *See Henson v. Columbus Bank & Tr. Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985) ("While [defendant] is entitled to contest vigorously [plaintiff's] claims, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended.").

[187] *See Shaw*, 213 F.3d at 543 (concluding the district court did not abuse its discretion "in finding counsel's hours reasonable in spite of the contrast with defense counsel's time" when "[t]he district court had first-hand knowledge of the complexity of the case and the voluminous number of documents [plaintiff], who had the burden of proof, presented at trial.").

[188] *Baugh v. Allied Prof'ls Ins. Co.*, 2020 WL 1308681, at *3 (D. Utah Mar. 19, 2020) (citation omitted).

[189] *Id.* (citation omitted).

[190] *See* Dkt. 180.

| Name | Proffered Hours | Reduced Hours | Reasonable Hours |
|------|-----------------|---------------|------------------|
| Attorney Zars | 2,552.9 | 932 | 1,620.9 |
| Attorney Dutton | 95.1 | 49.1 | 46 |
| Attorney Newman | 50.3 | 0 | 50.3 |
| Attorney Hays | 168.1 | 4.7 | 163.4 |
| Attorney Melver | 153.1 | 38.3 | 114.8 |
| Attorney Barbanell | 9 | 0 | 9 |
| Paralegal Gallick | 266 | 154.9 | 111.1 |
| Paralegal Edwards | 12.5 | 0 | 12.5 |

### ii.  Reasonable Rates

Having determined the reasonable hours for UPHE's attorneys and paralegals, the court now turns to the issue of reasonable rates to finish calculating the lodestar.  "As mentioned above, the second half of calculating an appropriate fee award is multiplying the hours by a *reasonable rate*."[191]  The court has discretion in setting reasonable rates, but the rates "must reflect the prevailing market rates in the relevant community,"[192] which is the "area in which the court sits."[193]  In other words, "[a] reasonable rate is generally the going rate for an attorney of the same experience level, in the same community, for the same type of work."[194]  What is reasonable may be affected by certain factors, including "the lawyer's skill and experience," whether the attorney is working outside his or her field of expertise, and "[t]he quality of the lawyer's performance in the case."[195]  And like the burden of showing its hours are reasonable, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's

---

[191] *Malloy*, 73 F.3d at 1018.

[192] *Jane L.*, 61 F.3d at 1510 (quotation marks and citation omitted).

[193] *Ramos*, 713 F.2d at 555.

[194] *Parker v. CitiMortgage, Inc.*, 987 F. Supp. 2d 1224, 1229 (D. Utah 2013) (citation omitted).

[195] *Ramos*, 713 F.2d at 555.

own affidavits—that the requested rates are in line with those prevailing in the community for similar services."[196]

UPHE argues the reasonable rates for its attorneys and paralegals are:[197]

| Name | Proffered Hourly Rates |
|------|------------------------|
| Attorney Zars | $475 |
| Attorney Dutton | $240 |
| Attorney Newman | $225 |
| Attorney Hays | $475 |
| Attorney Melver | $305 |
| Attorney Barbanell | $325 |
| Paralegal Gallick | $20 |
| Paralegal Edwards | $145 |

It argues these rates are reasonable because they are consistent with legal rates in Salt Lake City as shown by its expert's testimony.[198]

Defendants argue UPHE's proffered rates are unreasonable because they are not consistent with Salt Lake City's prevailing market rates.[199]  Next, they argue the court should apply out-of-state rates to Attorney Zars.[200]  Lastly, they offer numerous reasons why the specific rates for each of UPHE's attorneys and paralegals are unreasonable.[201]  The court addresses each argument below.

### 1.  Prevailing Market Rates

While the court may substitute its own reasoning "when awarding *hours* to prevailing attorneys because it knows best the time which reasonably should have been spent on the case,"

---

[196] *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

[197] *See* Dkt. 176 at 7–8.

[198] *Id.* at 6–9.

[199] *See* Dkt. 180 at 23–25.

[200] *See id.* at 25.

[201] *See id.* at 25–26.

it may not do so when assigning reasonable rates.[202]  Rather, "in order to comply with precedent, the district court must award *rates* compatible with competent, trustworthy evidence of the market."[203]  When there is competent evidence submitted from both parties, the court may adopt one party's position, "arrive[] at a compromise," or "set the rates according to other competent market evidence."[204]  If the court has no adequate evidence before it, only then "may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate."[205]

Both parties have submitted evidence showing reasonable rates in Salt Lake City, and neither party objects to the other's evidence.  UPHE's expert testifies that he conducted an informal survey "of attorneys in [his] firm who are [CAA] specialists and . . . colleagues in SLC who do [CAA] work," and found their rates "range from $390/hour to $475/hour."[206]  He also opines that "the rates typically charged in the Salt Lake legal market . . . range from $200/hour to $650/hour" for complex commercial litigation.[207]  Specifically, he testifies that most "first chair lawyers" in "complex commercial litigation . . . charge between $500/hour and $550/hour,"[208] "young partners and associates doing support work for complex commercial litigation . . . range from $215/hour to $325/hour,"[209] and "[t]he rate charged for paralegals in this community for this type of work . . . ranges from $140/hour to $185/hour."[210]

---

[202] *Case*, 157 F.3d at 1256.

[203] *Id.*

[204] *Id.* at 1257.

[205] *Id.* (citation omitted).

[206] Dkt. 176-7 (Haley Decl.) at 6.

[207] *Id.*

[208] *Id.* at 8.

[209] *Id.* at 9.

[210] *Id.*

Defendants submit a declaration from one of their attorneys[211] and cite to various documents from local cases[212] to argue the legal rates in Salt Lake City range from $250 to $385 for senior attorneys, $150 to $200 for associates, and $50 to $60 for paralegals.[213]  Defendants recognize, however, that rates may be higher when prevailing attorneys "have demonstrated extensive experience in a needed area of law."[214]

Having carefully reviewed the evidence from the parties, the court finds the following ranges are reasonable.  A reasonable hourly range for a CAA specialist is between $390 and $475 because Defendants provide no evidence to contradict Haley's credible testimony that this is the going rate for CAA specialists in Salt Lake City.[215]  Concerning the other rates, the court is not convinced either party's evidence conclusively demonstrates a reasonable range.  Rather, the parties provide credible evidence that the hourly rate for senior attorneys ranges between $250 and $550.  They also demonstrate the hourly rate for junior attorneys ranges between $150 and $325, and the hourly rate for paralegals ranges between $50 and $185.  The court addresses UPHE's proffered rates in light of these reasonable ranges.

## 2. Salt Lake City Rates Apply

Defendants argue Laramie, Wyoming rates should apply to Attorney Zars.[216]  They support their argument with a case from the D.C. Circuit, *Davis County Solid Waste*

---

[211] Dkt. 1801-1 (Cannon Decl.).

[212] Defendants cite documents from *Cinemapub, L.L.C. v. Petilos*, Case No. 2:16-cv-00318-DN, and *Utah Republican Party v. Herbert*, Case No. 2:14-cv-00876-DN.  *See* Dkt. 180 at 24–25.

[213] *See* Dkt. 180 at 24; Dkt. 180-1 (Cannon Decl.) ¶ 5.

[214] *See* Dkt. 180 at 24–25 (discussing *Animal Legal Defense Fund v. Herbert*, Case No. 2:13-cv-00679-RJS, and *Plascencia v. City of St. George*, 2013 WL 4084099 (D. Utah Aug. 13, 2013)).

[215] *See Plascencia*, 2013 WL 4084099, at *2 (concluding a proffered rate was reasonable because it was supported with credible evidence, and the opposing party did "not present any evidence to the contrary.").

[216] Dkt. 180 at 25.

*Management and Energy Recovery Special Service District v. E.P.A.*[217]  But Defendants'

argument is meritless because they do not meet the standard outlined in *Davis County* and ignore

the governing Tenth Circuit standard.

In *Davis County*, the D.C. Circuit carved out an exception to the general rule "that the

location of the court deciding the case is normally the relevant market."[218]  That exception

permits courts to apply the out-of-state market rate "where the bulk of the work is done outside

the jurisdiction of the court *and* where there is a *very significant* difference in compensation

favoring [the local market]."[219]  Defendants do not cite a case from the Tenth Circuit adopting

this exception, and the court is not aware of one.  Assuming this standard applies, however,

Defendants' argument falls short because they offer no evidence concerning the differences—let

alone a very significant difference—between Salt Lake City rates and Laramie rates.

More importantly, the Tenth Circuit permits the court to apply out-of-state rates if "the

subject of the litigation is so unusual or requires such special skills that only an out-of-state

lawyer possesses."[220]  Defendants do not address or apply this standard.[221]  Further, the evidence

before the court demonstrates there are likely attorneys in Salt Lake City capable of handling this

case for UPHE.[222]  Accordingly, the court applies Salt Lake City rates to Attorney Zars.[223]

---

[217] 169 F.3d 755 (D.C. Cir. 1999).

[218] *Id.* at 758.

[219] *Id.*

[220] *Jane L.*, 61 F.3d at 1510 (quotation marks and citation omitted).

[221] *See* Dkt. 180 at 23–26.

[222] *See* Dkt. 176-7 (Haley Decl.) at 6 ("I conducted an informal survey of attorneys in my firm who are Clear Air Act specialists and spoke with some of my colleagues in SLC who do Clean Air Act work.").

[223] *See Lippoldt v. Cole*, 468 F.3d 1204, 1225–26 (10th Cir. 2006) (concluding a district court did not abuse its discretion by applying local rates when the "[p]laintiffs failed to establish that the subject of the litigation was so unusual that only an out-of-state attorney could present the case.").

### 3.   UPHE's Reasonable Rates

Defendants argue UPHE's proffered rates are unreasonable for reasons specific to each attorney and paralegal.  Before the court considers those specific arguments, it first addresses the common argument Defendants rely on to challenge UPHE's proffered rates: that attorneys who are "solo practitioners"—for no other reason—are not entitled to the same rates as attorneys working for law firms.[224]  The court "find[s] troubling [Defendants'] repeated insinuations . . . that [UPHE's attorneys'] hourly fee rate[s] should be reduced because . . . [they are] solo practitioner[s]," and rejects them.[225]

The court's duty is to ensure the hourly rates it awards UPHE "reflect the prevailing market rates in the relevant community."[226]  It is arguable that the "relevant community" could consist of attorneys who are solo practitioners or attorneys working at law firms.[227]  But Defendants make no attempt to offer a coherent reason why an attorney's status as a solo practitioner should impact the court's analysis.[228]  Nor do they offer evidence concerning solo practitioner rates in Utah or elsewhere.[229]  In short, the court rejects Defendants' argument as meritless.

The court now turns to the specific proffered rates for UPHE's attorneys and paralegals. Defendants argue Attorney Zars's rate of $475 an hour is unreasonable because "he has not built

---

[224] *See* Dkt. 180 at 23–26.

[225] *Porzig v. Dresdner*, 497 F.3d 133, 143 n.6 (2d Cir. 2007).

[226] *Jane L.*, 61 F.3d at 1510 (quotation marks and citation omitted).

[227] *See McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006) ("Working as a solo practitioner may be relevant to defining the market, . . . but it would be error to use an attorney's status as a solo practitioner as an automatic deduction or shortcut for determining the reasonable hourly rate.").

[228] *See* Dkt. 180.

[229] *See id.*

his practice as lead counsel for [CAA] citizen suits."[230]  UPHE disagrees with Defendants'

representation and maintains Attorney Zars's rate is reasonable because he has extensive CAA

experience and provided quality representation that resulted in the success of UPHE's claims.[231]

The court agrees with UPHE.

As stated above, the reasonable hourly rate for a CAA specialist in Salt Lake City ranges

from $390 to $475.  Attorney Zars is a CAA specialist who provided excellent work on behalf of

his client.  Specifically, Attorney Zars has practiced environmental law since 1986.[232]  In 1992,

he began practicing "as a solo practitioner, focusing on the enforcement of the [CAA] and other

laws in the public interest."[233]  His résumé shows he has extensive trial experience litigating

CAA cases and similar public-health interest cases.[234]  Further, the court agrees with UPHE's

expert that "[t]his case was a novel citizen's suit that was vigorously defended and Zars, Hays

and their team achieved a fabulous result for their clients."[235]  Indeed, Attorney Zars consistently

submitted high-quality work throughout the litigation.  Accordingly, the court awards him an

hourly rate of $475.

Next, Defendants argue Attorney Hays's rate is unreasonable because he "was brought in

as co-counsel for the bench trial to determine damages."[236]  Defendants do not challenge his

credentials as a CAA specialist or experienced attorney,[237] but UPHE justifies Attorney Hays's

---

[230] *Id.* at 25.

[231] *See* Dkt. 183 at 4–6.

[232] Dkt. 176-1 (Zars Decl.) ¶ 4.

[233] *Id.* ¶ 5.

[234] *See* Dkt. 176 (Zars Decl.), Ex. 1 at 6–7; *see also* Dkt. 183 at 5 ("The facts are that both Mr. Zars and Mr. Hays each have more than 30 years of air pollution litigation experience, including more than 20 separate [CAA] enforcement cases in which each was either lead or co-lead counsel.").

[235] Dkt. 176-7 (Hayes Decl.) at 10.

[236] Dkt. 180 at 25.

[237] *See id.*

rate by pointing to his credentials and experience.[238]  The court concludes Attorney Hays's rate should be at the low end of the CAA specialist range because both parties submit evidence showing "second" chair attorneys in Salt Lake City generally charge a lower rate than the "first" chair attorneys.[239]  Attorney Hays is indisputably a CAA specialist.[240]  But he was also a "second" chair attorney in this case, having begun work on the case during its final stages and participating in the trial.[241]  The court awards him a reduced hourly rate of $390.

Defendants argue Attorney Dutton's proffered hourly rate of $240 is unreasonable because she has "little litigation experience" and acted only as local counsel.[242]  But Defendants do not support their assertions with evidence that Attorney Dutton's rate is unreasonable when compared to the prevailing market rates for attorneys with similar experience performing similar work.[243]  UPHE's expert, however, testifies that "[t]he hourly rates charged for . . . support work for complex commercial litigation . . . range from $215/hour to $325/hour."[244]  The work Attorney Dutton performed was the type of necessary support work generally billed within that range.[245]  Further, she makes up for her apparent lack of litigation experience with knowledge of environmental laws and air pollution testing.[246]  Thus, the court awards her an hourly rate of $240.

---

[238] *See* Dkt. 183 at 5–6.

[239] *See* Dkt. 176-7 (Hayes Decl.) at 9; Dkt. 180-1 (Cannon Decl.) ¶ 5.

[240] *See* Dkt. 176-3 (Hays Decl.), Ex. 1; Dkt. 183 at 6 ("Mr. Hays has been attorney of record in at least 32 federal cases involving the [CAA].").

[241] *See* Dkt. 176-3 (Hays Decl.), Ex. 2.

[242] Dkt. 180 at 26.

[243] *See id.*

[244] Dkt. 176-7 (Haley Decl.) at 9.

[245] *See* Dkt. 176-2 (Dutton Decl.), Ex. 2.

[246] *See* Dkt. 176-2 (Dutton Decl.) at 5–6.

Defendants maintain Attorney Barbanell's proffered rate of $325 for legal research is "excessive."[247]  But they do not support their argument with reasons.  Rather, they recognize that Attorney Barbanell "fulfill[ed] an 'of counsel' or senior associate role, [has been] licensed since 1998, and has maintained a solo practice, primarily as an environmental consultant in regulatory affairs."[248]  Because of this extensive and relevant experience, the court awards her an hourly rate of $325.

Defendants argue Attorney Newman's "experience and qualifications do not justify" her proffered rate of $225.[249]  They do not identify why her experience and qualifications are insufficient to support her proffered rate.  The court, having reviewed her declaration and résumé, concludes her experience justifies her proffered rate and awards her an hourly rate of $225.

Next, Defendants argue Attorney Melver's proffered hourly rate of $305 "is excessive for the actual work performed."[250]  The court rejects this argument for the same reasons it rejected Defendants' arguments concerning Attorney Dutton's rate.  That is, Attorney Melver's proffered rate falls within the reasonable range for work of this kind, and her extensive experience with environmental law supports a higher rate.[251]  Thus, the court awards Attorney Melver an hourly rate of $305.[252]

---

[247] Dkt. 180 at 26.

[248] *Id.*

[249] *Id.*

[250] *Id.*

[251] *See* Dkt. 176-4 (Melver Decl.), Ex. 1.

[252] The court notes that the proffered and awarded rates for Attorneys Dutton, Barbanell, Newman, and Melver are also consistent with their years of experience.  Specifically, Attorney Barbanell began practicing law in 1998 and charges the highest rate of $325.  *See* Dkt. 176-6 (Barbanell Decl.), Ex. 1.  Attorney Melver began practicing law in 2005 and charges the next highest rate of $305.  *See* Dkt. 176-4 (Melver Decl.), Ex. 1.  Attorney Dutton began practicing law in 2012 and charges an hourly rate of $240.  *See* Dkt. 176-2 (Dutton Decl.), Ex. 1.  And Attorney Newman began practicing law in 2015 and charges an hourly rate of $225.  *See* Dkt. 176-5 (Newman Decl.), Ex. 1.

Lastly, Defendants argue the rates for Paralegals Gallick and Edwards are unreasonable because Paralegal Gallick "is a student in college" and "Edwards is a second-year law student."[253]  The court disagrees and awards both paralegals their proffered rates.[254]  The court awards Paralegal Gallick a rate of $20 an hour because it is well below the rates generally billed for paralegal services, and he provided necessary services to further this litigation, i.e., reviewing Defendants' documents.[255]  Similarly, the court awards Paralegal Edwards his proffered rate of $145 an hour, which is on the low end of the rates UPHE maintains is customary for this type of work in this legal community,[256] and which the court finds to be reasonable under the circumstances.

To conclude, the court recognizes "the rate charged by the losing counsel may be relevant in determining a reasonable hourly rate"[257] and the awarded rates are higher than the rates charged by Defendants' attorneys.[258]  This is because it is clear UPHE's attorneys have extensive experience with environmental law and CAA issues specifically.  Defendants, however, have submitted no evidence showing their attorneys have similar experience that would justify them charging higher rates within the ranges they maintain are reasonable.[259]  Therefore, the rates awarded above are reasonable.

---

[253] Dkt. 180 at 26.

[254] The court may award fees for "law clerk and paralegal services" if those services are not "normally part of the office overhead in the area."  *Ramos*, 713 F.2d at 558.  The court awards UPHE its paralegal fees because both parties submitted evidence showing these fees are customarily charged in Salt Lake City's legal community.  *See* Dkt. 176-7 (Haley Decl.) at 9 ("The rates charged by paralegals here are clearly on the low end of the rates customarily charged for this type of work in this legal community."); Dkt. 180-1 (Cannon Decl.) ¶ 5 ("[M]y paralegal's hourly rate[] [is] $55.").

[255] *See* Dkt. 176-1 (Zars Decl.), Ex. 4.

[256] Dkt. 176-7 (Haley Decl.) at 9.

[257] *Case*, 157 F.3d at 1257 (citation omitted).

[258] *See* Dkt. 180-1 (Cannon Decl.) ¶ 5.

[259] *See Case*, 157 F.3d at 1257 ("Lawyers working outside their fields of expertise may deserve an hourly fee lower than their normal billing rate because of their lack of experience in the [relevant] field.") (citation omitted).

Based on the foregoing, the lodestar in this matter is $897,984.50 as detailed below:

| Name | Hours | Rates | Total |
|------|-------|-------|-------|
| Attorney Zars | 1,620.9 | $475 | $769,927.50 |
| Attorney Dutton | 46 | $240 | $11,040 |
| Attorney Newman | 50.3 | $225 | $11,317.50 |
| Attorney Hays | 163.4 | $390 | $63,726 |
| Attorney Melver | 114.8 | $305 | $35,014 |
| Attorney Barbanell | 9 | $325 | $2,925 |
| Paralegal Gallick | 111.1 | $20 | $2,222 |
| Paralegal Edwards | 12.5 | $145 | $1,812.5 |

### b.  Adjustments

Having calculated the lodestar at $897,984.50, the court must now determine whether this amount should be adjusted.  "[T]here is a strong presumption that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."[260]  Defendants argue the court should reduce UPHE's awarded fees under two such factors: (1) "what has been awarded in similar cases,"[261] and (2) their "inability to pay."[262]  For the reasons explained below, the court concludes that neither factor justifies reducing the lodestar.  Accordingly, UPHE is awarded $897,984.50 in reasonable attorney fees.

### i.  Case Comparisons

Defendants argue the court should reduce UPHE's fees because they are unreasonably high when compared to similar cases.[263]  UPHE never responds directly to Defendants'

---

[260] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (quotation marks omitted).

[261] *Clayton v. Steinagel*, 2012 WL 6624203, at *3 (D. Utah Dec. 19, 2012).

[262] *Roth v. Green*, 466 F.3d 1179, 1193–94 (10th Cir. 2006).

[263] *See* Dkt. 180 at 9–12.

argument.[264]  Nevertheless, the court has carefully reviewed the cases identified by Defendants and is unpersuaded that a downward adjustment is warranted.

Defendants compare this case to four others in an attempt to support their position: *Felders v. Bairett*; *Utah Republican Party v. Herbert*; *Animal Legal Defense Fund v. Herbert*; and *Cinemapub, L.L.C. v. Petilos*.[265]  The courts in *Utah Republican Party* and *Animal Legal Defense Fund* never ruled on the motions for attorney fees,[266] and the court in *Cinemapub* did not explain the reasons for its award.[267]  Accordingly, the only case with some persuasive value is *Felders*.  But this case is distinct from *Felders* in significant ways.

First, the factual record in this case was necessarily far broader than the limited facts relevant in *Felders*.  The plaintiffs in *Felders* sued the defendants for events that primarily revolved around a single traffic stop.[268]  Here, UPHE sued Defendants for hundreds of discrete CAA violations that occurred over many years.  Accordingly, UPHE's attorneys are justified in billing more hours because the research, organization, and planning required to effectively present and prove Defendants' CAA violations presented a monumental task.

Second, this case required resolution of numerous complex legal questions of first impression.  In contrast, the claims in *Felders* involved well-settled issues that have been extensively litigated, including claims for unreasonable searches and seizures and racial

---

[264] *See* Dkt. 183 at 2–9.

[265] Dkt. 180 at 10–12.

[266] There were two motions for attorney fees in *Utah Republican Party*.  *See* Case No. 2:14-cv-00876-DN, Dkts. 216, 226.  The first motion was withdrawn, *see id.* Dkt. 231, and the second was stricken because it was untimely. *See* Dkts. 228, 229.  The parties in *Animal Legal Defense* stipulated to an award of attorney fees, and the plaintiff withdrew its motion for attorney fees.  *See* Case No. 2:13-cv-00679-RJS, Dkt. 227.

[267] The *Cinemapub* court explained the reason for its award was "the evidence presented" and "the arguments and objections of the parties."  2018 WL 4621759, at *2 (D. Utah Sept. 26, 2018).

[268] *See* Case No. 2:08-cv-00993-CW, Dkts. 2, 57, 68.

profiling.[269]  This distinction also supports UPHE's attorneys billing more hours than the attorneys in *Felders*.

Third, the *Felders* court awarded the plaintiffs their attorney fees after deducting various amounts from the initial request for time spent on unsuccessful claims, work with public relations, duplicate work, inherent inefficiencies, and the result achieved.[270]  Similarly, this court has reduced UPHE's fee based on the circumstances of this case.  This is sufficient and no further downward adjustment is required by *Felders*—a factually and legally distinct case.[271]

### ii. Defendants' Ability to Pay

A party's ability to pay is "a relevant factor for the district court to consider in determining *the amount* of the fee award."[272]  Defendants argue the court should exercise its discretion to reduce UPHE's fees because an award of "$1.4 [m]illion in attorneys' fees will effectively bankrupt Defendants."[273]  But this argument is moot because, as explained below, the court has reduced UPHE's total award to $928,602.23, and there is no evidence that Defendants cannot pay this amount.  Nevertheless, UPHE is conducting supplemental discovery concerning Defendants' assets in connection with efforts to collect the underlying judgment.  The evidence marshalled in that discovery may result in an evidentiary hearing.[274]  Defendants may raise ability to pay fees and costs following that discovery if there exists a reasonable basis for seeking

---

[269] *See id.*

[270] *See* 2017 WL 378467, at *3–4 (D. Utah Jan. 25, 2017).

[271] *Cf. Clayton*, 2012 WL 6624203 at *3 ("The similarity of these two cases justifies a downward adjustment of the lodestar amount.").

[272] *Roth*, 466 F.3d at 1194.

[273] Dkt. 180 at 29.

[274] *See* Dkt. 206.

further relief.  The court notes that Defendants have the burden to demonstrate their inability to pay the fees.

## II.    Costs and Expenses

In a CAA case, "[t]here are two separate sources of authority [the] court[] use[s] to award out-of-pocket expenses to a prevailing party."[275]  The first is 42 U.S.C. § 7604(d), which permits the court to award "costs of litigation (including reasonable . . . expert witness fees)."  To award those costs, the court applies "principles and case law" relevant under 42 U.S.C. § 1988 because the Supreme Court has directed courts to apply those principles in their § 7604(d) analysis.[276] The second is 28 U.S.C. §1920, which governs general costs.[277]  For the sake of clarity, the court refers to § 7604(d)'s costs as "expenses" and § 1920's costs as "costs."[278]

"Of course, the burden is on the prevailing plaintiffs to establish the amount of compensable costs and expenses to which they are entitled."[279]  UPHE asks for (1) $70,631.83 in expenses[280] and (2) $7,221.72 in costs.[281]  For the reasons explained below, UPHE is awarded $23,851.71 in expenses and $6,766.02 in costs.

---

[275] *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000).

[276] *Pa.*, 483 U.S. at 713 n.1.

[277] *Brown*, 227 F.3d at 1297.

[278] *See id.* (referring to costs awarded under § 1988 as "expenses").

[279] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1208 (10th Cir. 1986) (citations omitted).

[280] *See* Dkt. 228-2 (Zars 2d Decl.) at 6 (showing Attorney Zars's expenses total $59,887.13); Dkt. 176-3 (Hays Decl.) ¶ 9 ("My travel expenses for three round-trip flights between Seattle and Salt Lake City are $1,257.20."); Dkt. 176 at 9 (showing Haley's expert witness fee totals $9,487.50).

[281] Dkt. 228 at 1.

### a.   § 7604(d) Expenses

UPHE asks for an award of its expenses totaling $70,631.83, which consist of Attorney Zars's expenses of $59,887.13,[282] Attorney Hays's expenses of $1,257.20,[283] and Haley's expert witness fee of $9,487.50.[284]  Because the standard applicable to Attorneys Zars's and Hays's expenses differs from the standard applicable to Haley's expenses, the court addresses them separately.

### i.   Attorney Expenses

The court should award expenses to the prevailing party if it shows they are (1) "reasonably necessary" to "furnishing effective and competent representation" and (2) "not normally absorbed as part of law firm overhead."[285]  Such expenses may include "long distance telephone charges, copying costs," and travel-related expenses.[286]  Application of this standard requires the court to engage in "a factual inquiry into the billing practices of law firms in the region" to "determine whether such expenses are usually charged separately in the area."[287]

The parties disagree about what constitutes reasonable expenses.  UPHE argues Attorney Zars's and Hays's expenses of $61,144.33 are reasonable and supports that amount with a declaration from Attorney Zars[288] and a table detailing his expenses,[289] a declaration from

---

[282] Dkt. 228-2 (Zars 2d Decl.) at 6.

[283] Dkt. 176-3 (Hays Decl.) ¶ 9.

[284] Dkt. 176 at 9.

[285] *Ramos*, 713 F.2d at 559 (citations omitted).

[286] *Id.*

[287] *Brown*, 227 F.3d at 1297 (quotation marks and citation omitted).

[288] *See* Dkt. 228-2 (Zars 2d Decl.).

[289] UPHE originally filed the table at Dkt. 176-1 (Zars Decl.), Ex. 3, but later filed an amended table distinguishing expenses from costs.  *See* Dkt. 228-2 (Zars 2d Decl.) at 3–6.  The court relies on the amended table for its analysis.

Attorney Hays,[290] and Haley's expert opinion.[291]  Defendants argue UPHE's expenses are unreasonable because they include non-compensable expenses for travel and "the acquisition, testing, storage and restoration" of the diesel truck used at trial.[292]  The court agrees with Defendants and, as explained below, reduces UPHE's expenses for unreasonable (1) travel-related expenses; (2) expenses incurred purchasing, licensing, storing, and restoring the diesel truck; (3) legal fees; and (4) office expenses.

First, as explained above, "because there is no need to employ counsel from outside the area in [this] case[]," travel-related expenses incurred solely because UPHE hired out-of-state attorneys and paralegals are not reasonable.[293]  Accordingly, the court excludes UPHE's expenses that were incurred because UPHE hired out-of-state counsel, which include charges for plane tickets,[294] bus tickets,[295] extra charges for Attorney Zars to bring his bike on the bus,[296] gas,[297] and hotel rooms.[298]

The court does not, however, exclude all travel-related expenses.  Rather, it credits UPHE expenses for travel within Utah[299] and travel to Colorado to conduct research[300] because they were incurred—according to Attorney Zars's billing record—as part of the research and

---

[290] *See* Dkt. 176-3 (Hays Decl.).

[291] *See* Dkt. 176-7 (Haley Decl.).

[292] Dkt. 180 at 27.

[293] *Ramos*, 713 F.2d at 559.

[294] *See* Dkt. 228-2 (Zars 2d Decl.) at 4 ("Glen flight to SLC—discovery); Dkt. 176-3 (Hays Decl.) ¶ 9.

[295] *See* Dkt. 228-2 (Zars 2d Decl.) at 3 ("Travel Greyhound LAR-SLC-LAR RT").

[296] *See id.* at 5 ("Greyhound bike charge").

[297] *See id.* at 4 ("Auto travel LAR-SLC-LAR (865 mi).").

[298] *See id.* at 6 ("Sheraton RZ and GH").

[299] *See id.* at 3 ("Travel SLC to Bountiful – SLC (32 mi.)"; "Taxi Layton to Davis Co diesel testing").

[300] *See id.* at 4 ("Travel LAR-DEN EPA SIP research (260 mi RT)").

discovery process.[301]  These expenses are reasonable and normally charged to a client.  UPHE is

therefore awarded $202.47[302] for these travel-related expenses.

Second, Attorney Zars's expenses include $23,630.40 for purchasing,[303] licensing,[304]

storing,[305] and restoring[306] a diesel truck Defendants had illegally modified.  The only evidence

UPHE submits to support the reasonableness of this expense is testimony from its expert:

> As part of his request for costs Zars is seeking the difference in value for what he
> paid for the truck and what it is currently valued at plus the cost of restoring the
> pollution control devices that were missing when it was sold by the defendants.
> This seems to me to be a reasonable cost incurred in support of the case, including
> providing the court with a view of the truck and its emission control devices at trial,
> and should be reimbursed by the defendants as part of the award of costs.[307]

But this testimony neither demonstrates the necessity of these expenses nor that these are the

types of expenses typically charged to a paying client.  For example, UPHE never explains why

the Federal Rules of Civil Procedure governing discovery that permit the inspection of

Defendants' illegally modified vehicles (including by video) were insufficient.  Accordingly,

these expenses are excluded because the court cannot conclude they were reasonably necessary

to competently represent UPHE and are the kinds of expenses generally charged to a client.

---

[301] *See* Dkt. 176-1 (Zars Decl.), Ex. 2 at 9 ("Meet with Executive Director Tim Wagner at UPHE in a.m. re: case, facts, options"); *Id.* at 19 ("Travel to Denver, research Utah SIP dox at EPA, meet with EPA on same").

[302] This total comes from five expenses: (1) $16 for "Travel SLC to Bountiful – SLC," (2) $10 for "Taxi Layton to Davis Co diesel testing," (3) $130 for "Travel LAR-DEN EPA SIP research," (4) $21.40 for "Travel to SLC Health Dept.," and (5) $25.07 for "SLC-Davis Co Diesel-SLC."  Dkt. 228-2 (Zars 2d Decl.) at 3–4, 6.

[303] These expenses include: (1) $6,261 for "Purchase truck ($43,000 reduced by $36,739)"; (2) $2,580 for "Albany County sales tax on F250"; and (3) $1,605.47 for "Nat Dyke hours and expenses (truck purchase)."  *Id.* at 3.

[304] These expenses include: (1) $497.22 for "Albany County license and registration F250"; (2) $40 for "Albany County title F250"; (3) $354.98 for "F250 license fees"; and (4) $310.61 for "F-250 tags."  *Id.* at 3–5.

[305] These expenses include: (1) $800 for "F-250 storage total for calendar year"; (2) $1,200 for "F-250 storage total for year"; and (3) $1,380 for "F-250 storage total for year."  *Id.* at 4–5.

[306] These expenses include: (1) $28.34 for "Travel SLC to Ford Dlr"; and (2) $8,572.78 for "Kenley Ford F-250 restoration."  *Id.* at 5.

[307] Dkt. 176-7 (Haley Decl.) at 9.

The court will award UPHE its other discovery-related expenses.  Specifically, Attorney Zars incurred expenses retaining an expert opinion concerning the modifications to the diesel truck and conducting tests on the truck,[308] retaining expert assistance concerning Defendants' financials,[309] conducting CarFax searches for Defendants' illegally modified vehicles,[310] and paying the transcriber's fee when a witness twice failed to show for his deposition.[311]  Having reviewed these expenses, the court concludes they were necessary to the successful representation of UPHE and the type generally charged to a client.  Accordingly, UPHE is awarded $17,028.54 for these expenses.

Third, Attorney Zars's expenses include two items that are more properly categorized as legal fees: (1) $1,250 for "Brit Harmssen – legal research,"[312] and (2) $1,351.80 for "Legal fees – SD subpoena enforcement."[313]  UPHE, however, does not submit billing records for either of these items.  There is also no further description of these tasks, including how much time was spent performing them.  Indeed, UPHE never explains who "Brit Harmssen" is, what her credentials are, or what her rate was.  It likewise never details what "subpoena enforcement"

---

[308] These expenses include: (1) $1,050 for "MSD-Revecorp/SGS truck testing"; (2) $7,719.20 for "MSD-Revecorp/SGS truck testing"; (3) $962.50 for "MSD-Revecorp-testing consulting"; (4) $437.50 for "MSD-Revecorp-summary judgment consult"; (5) $175 for "MSD-Revecorp-F250 diesel testing"; (6) $262.50 for "MSD-Revecorp-finalize expert report"; (7) $171.98 for "Red Lion – MSD"; and (8) $5,099.88 for "MSD-Revecorp trial expert witness fee."  Dkt. 228-2 (Zars 2d Decl.) at 3–6.  The initials "MSD" stand for Dr. Michael St. Denis, who testified as an expert witness at trial concerning, among other things, the design elements in diesel trucks that are designed to reduce air pollution, the testing his company ReveCorp conducted on UPHE's truck that Defendants had illegally modified, and the negative health effects caused by illegally modified vehicles.  *See* Dkt. 161 at 9–75.  His testimony was necessary to the success of UPHE's claims.

[309] This expense was $850 for "CBIZ consulting – examination of financials."  Dkt. 228-2 (Zars 2d Decl.) at 4.

[310] These expenses include: (1) $49.99 for "CarFax 5 VIN searches – DieselSellerz," and (2) $49.99 for "Carfax- 5 VIN searches."  *Id.* at 3.

[311] These expenses include: (1) $100 for "Prairie reporting – VDB no show," and (2) $100 for "Prairie reporting – VDB no show #2."  *Id.* at 4.

[312] *Id.* at 3.

[313] *Id.* at 5.

entailed.  The court therefore excludes these amounts, totaling $2,601.80, because they are not supported with sufficient records.

Fourth, Attorney Zars includes $1,773.57 for various office-related expenses, including copying expenses,[314] rent for Attorney Dutton's office,[315] a "[l]egal team lunch,"[316] mailing and serving letters,[317] and purchasing supplies for trial exhibits.[318]  The court excludes the expenses for Attorney Dutton's office space and the team lunch because they are clearly expenses that should be "absorbed in a private firm's general overhead and for which the firm would not bill a client."[319]  The expenses for serving UPHE's notice letters on Defendants are also excluded because it was unnecessary for UPHE to serve these letters, particularly after it had sent them via certified mail.[320]  The remaining expenses, $643.57, are reasonable and awarded to UPHE.

In sum, the court awards UPHE $17,874.58 as its reasonable expenses incurred in this case.

### ii.   Fees for Fees—Haley's Expert Witness Fee

"The Tenth Circuit generally allows recovery of fees for an attorney's work in seeking attorney's fees."[321]  This extends to expert fees incurred as part of the fee litigation because they

---

[314] These expenses include: (1) $56 for "FedEx copies of diesel exhibits"; (2) $19.33 for "FedEx notice letter copies"; and (3) $205.16 for "EPA UT SIP copies." *Id.* at 3–4.

[315] This expense was $600 for "Dutton office rental." *Id.* at 3.

[316] This expense was $50 for a "[l]egal team lunch." *Id.* at 4.

[317] These expenses include: (1) $105.63 for "USPS notice letter certified"; (2) $45.29 for "USPS supp notice letter certified"; (3) $280 for "Constable Reitz notice letter service"; and (4) $200 for "Constable Reitz 2d notice letter service." *Id.* at 3–4.

[318] These expenses include: (1) $75 for "Walmart – Ace truck exhibit supplies"; and (2) $137.16 for "Exhibits-supplies." *Id.* at 6.

[319] *Ramos*, 713 F.2d at 554.

[320] Dkt. 228-2 (Zars 2d Decl.) at 3–4.

[321] *Cummins v. Campbell*, 44 F.3d 847, 855 (10th Cir. 1994).

are necessary to satisfy the burden imposed on a prevailing party seeking attorney fees.[322]

"However, the award of fees for the preparation of the fee application is not without limits."[323]

The court should award fees for fee litigation "*if the fee petitioner is successful and his claim as to a reasonable fee is vindicated*, since it is the adversary who made the additional work necessary."[324]  That is, "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."[325]

UPHE asks for $9,487.50 as the expense paid to Haley for his opinion.[326]  Instead of challenging the reasonableness of Haley's fee,[327] Defendants argue it should be reduced because Haley's "declaration does not adequately support Plaintiff's request regarding either the reasonableness of the fees or costs requested in this matter."[328]  The court recognizes some validity to this argument for the reasons explained above, and reduces Haley's fee pro rata with the overall reductions addressed above for UPHE's attorney fees, paralegal fees, and expenses.[329]

The court reduces Haley's fee by the same percent as UPHE's failure to vindicate its claim for a reasonable fee.  That is, UPHE asked for $1,444,512.83 in attorney fees, paralegal

---

[322] *See Blum*, 465 U.S. at 895 n.11 ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."); *Guardian Life Ins. Co. of Am. v. Wilds*, 2014 WL 5293706, at *13 (D. Colo. Oct. 16, 2014) (awarding fees to the prevailing party for the expenses incurred hiring an expert to opine on the reasonableness of their fee request).

[323] *Cummins*, 44 F.3d at 855.

[324] *Id.* (citation omitted).

[325] *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990).

[326] *See* Dkt. 176 at 9.

[327] Haley did not submit a billing record, but he explains that he carefully reviewed the docket and compared it to UPHE's billing records, that he discussed the case with Attorneys Zars and Hays, and reviewed fee awards in other cases. Dkt. 176-7 (Haley Decl.) at 6.  He also explains he charged an hourly rate of $575 for his services. *Id.* at 6–7.  This information shows Haley billed approximately 16.5 hours formulating his opinion.  This is reasonable given the complexity of the case.

[328] Dkt. 180 at 28.

[329] Costs are not included in this analysis because UPHE is awarded its costs below without reduction.

fees, and expenses.[330]  The court ultimately awarded UPHE $915,859.08 for these fees and

expenses—a 37% reduction.  Accordingly, because UPHE vindicated only 63% of its fee claim,

the court awards it 63% of Haley's fee, or $5,977.13.

### b. § 1920 Costs

"For items not reimbursable as attorney's fees under § 1988, the general costs statute, 28

U.S.C. § 1920, is controlling."[331]  Together Federal Rule of Civil Procedure 54(d) and § 1920

define the scope of "costs" that are taxable to the losing party.[332]  Specifically, "Rule 54(d)

provides that costs—other than attorneys' fees—should be allowed to the prevailing party," and

"§ 1920 *defines* the term 'costs' as used in Rule 54(d)."[333]  Under § 1920, there are six categories

of taxable costs:

> (1) clerk and marshal fees, (2) fees for recorded transcripts necessarily obtained
> for use in the case, (3) expenses for printing and witnesses, (4) expenses for
> exemplification and necessary copies, (5) docket fees, and (6) compensation of
> interpreters and court-appointed experts.[334]

As noted above, "[a] prevailing party bears the burden of establishing the costs to which

it is entitled" and that the amount is reasonable.[335]  If the prevailing party meets its burden, "the

burden shifts to the non-prevailing party to overcome the presumption that these costs will be

---

[330] UPHE originally asked for $1,376,236.50 in attorneys' fees; $7,132 in paralegal fees; and $67,910.35 in costs. *See* Dkt. 176 at 9.  The $67,910.35 figure does not differentiate between expenses and costs.  *See id.*  When the court accounts for the difference between costs and expenses, UPHE's request was for $61,144.33 in expenses and $6,766.02 in costs.  *See* Dkt. 228-2 (Zars 2d Decl.) at 6 (showing Zars's expenses total $59,887.13); Dkt. 176-3 (Hays Decl.) ¶ 9 (showing Hays's expenses total $1,257.20); Dkt. 228-1 at 3 (indicating the original costs were $6,766.02).

[331] *Ramos*, 713 F.2d at 560.

[332] *See Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 941 (10th Cir. 2020).

[333] *Id.* (quotation marks and citations omitted).

[334] *Id.* (quotation marks and citations omitted).

[335] *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1288 (10th Cir. 2012) (citations omitted).

taxed."[336]  The court has "broad discretion in awarding costs"[337] but denying costs to the prevailing party "is a severe penalty" and must be supported by "some apparent reason."[338]  Such reasons include "when the prevailing party was only partially successful, when damages were only nominal, when costs were unreasonably high or unnecessary, when recovery was insignificant, or when the issues were close or difficult."[339]

UPHE originally asked for $6,766.02 in costs.[340]  Because UPHE did not comply with the court's Local Rules by submitting a Bill of Costs, the court ordered it to "file a bill of costs" but "not [to] submit new costs or fees as part of its bill of costs."[341]  Nevertheless, UPHE submitted a Bill of Costs for $7,221.72.[342]  Attorney Zars explains the difference in amounts: "[A]s a result of undersigned counsel's oversight, several subpoena service fees and copy charges were not included in UPHE's original table of costs at Dkt. 176-1.  The amount of undercharge was $455.70."[343]  The court excludes the additional $455.70 because the request is untimely and submitted against the court's order.[344]

Turning to the propriety of the remaining $6,776.02, UPHE's Bill of Costs appropriately categorizes them under § 1920 and supports them with evidence, including invoices, receipts,

---

[336] *Id.* (quotation marks and citation omitted).

[337] *Griffin v. Strong*, 827 F. Supp. 683, 689 (D. Utah 1993) (citation omitted).

[338] *Bryant v. Sagamore Ins. Co.*, 618 F. App'x 423, 425 (10th Cir. 2015) (unpublished) (citation omitted).

[339] *Id.* (citation omitted).

[340] This amount is the difference between Attorney Zars's original table, which included expenses and costs, and his amended table submitted with the Bill of Costs, which excluded costs.  *See* Dkt. 228-2 (Zars 2d Decl.) at 6.

[341] Dkt. 227.

[342] Dkt. 228 at 1.

[343] Dkt. 228-1 at 3.

[344] UPHE recognized this possibility: "Undersigned counsel is aware, however, that these costs may be deemed by the court to be tardy or new and therefore disallowed."  *Id.*

and declarations from process servers.[345]  The court has carefully reviewed UPHE's costs and evidence, and concludes the costs are reasonable given the scope and complexity of this case.  In short, UPHE has met its burden.

Although Defendants challenge the reasonableness of UPHE's expenses, they never challenge UPHE's costs and therefore have not rebutted the presumption that UPHE should receive its costs.[346]  Accordingly, the court awards UPHE its costs of $6,776.02.

## CONCLUSION

For the reasons explained above, UPHE's Motion[347] and Bill of Costs[348] are GRANTED IN PART.  In total, UPHE is awarded $928,602.23 in fees and costs, and Defendants are jointly and severally liable for this amount.[349]

SO ORDERED this 26th day of January 2021.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[345] *See* Dkt. 228.  The court observes there are two discrepancies with UPHE's evidence.  First, UPHE shows a cost of $1,784.85 for "Trial transcripts," Dkt. 228 at 12, but the invoice for the transcripts shows they cost $1,430.80.  *Id.* at 22.  Second, UPHE shows a cost of $150 for "Cheyenne Lord service fees – Valleywide – AZ," *id.* at 23, but the declarations for serving Lord subpoenas add up to $210.  *See id.* at 32, 36–37.  Accounting for these variances, UPHE's costs should be reduced by $294.05.  The court does not do this, however, because it construes these expenses as part of the $455.07 reduction addressed above.

[346] *See* Dkt. 180 at 27.

[347] Dkt. 176.

[348] Dkt. 228.

[349] With the court's permission, UPHE submitted a Supplemental Reply in Further Support of its Motion for Costs and Fees.  *See* Dkt. 185; Dkt.186.  In the Supplemental Reply, UPHE moved the court to order that the awarded fees and costs be "nondischargeable in bankruptcy."  Dkt. 186 at 4.  The court denies UPHE's request because UPHE did not raise the issue in its Motion, and the request is procedurally improper.  *See* DUCivR 7-1(b)(1)(A) ("No motion . . . may be included in a response or reply memorandum.").