Cole S. Cannon (UT #12053)
Jon Pfeifer (UT #16646)
Cannon Law Group, PLLC
124 South 600 East
Salt Lake City, Utah 84102
Telephone: 801-363-2999
Fax: 801-363-3013
cole@cannonlawgroup.com
jon@cannonlawgroup.com
*Attorneys for Defendants*

**IN THE UNITED STATES DISRICT COURT, DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT,<br><br>Plaintiff,<br><br>v.<br><br>DIESELSellerz.com, et al.,<br><br>Defendants. | **DEFENDANTS' MOTION FOR RELIEF FROM A JUDGMENT OR ORDER PURSUANT TO F.R.C.P. RULE 60 ON ATTORNEY'S FEES**<br><br>Case No. 2:17-CV-32RJS<br><br>Judge: Hon. Robert Shelby |

Pursuant to Rule 60 of the Federal Rules of Civil Procedure, Defendants, Diesel Power Gear, B&W Auto d/b/a Sparks Motors, David Sparks, and Joshua Stuart (collectively, "Defendants") hereby move the Court for relief from its order granting Plaintiff Utah Physicians for a Healthy Environment's ("UPHE") attorney's fees and costs (the "Fees") issued on January 26, 2021 (Dkt. 230). Defendants seek reconsideration on the grounds that the Fees are not reasonable, proportional, and substantially related to the causes of action UPHE prevailed on. This is particularly true in light of the significant reduction of penalties to be assessed pursuant to

1

the Tenth Circuit Court of Appeals Decision, attached hereto as Exhibit "A", and cited as *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, (10th Cir. 2021).

**I. INTRODUCTION**

UPHE's Fees are not reasonable, proportional, and substantially related to the causes of action UPHE prevailed on. Although UPHE was the prevailing party in the original district court case, on appeal, the Tenth Circuit affirmed in part and reversed in part, stating that the case would be remanded to the district court "for additional proceedings because (1) UPHE lacks Article III standing to complain of conduct by Defendants that has not contributed to air pollution in Utah's Wasatch Front and (2) the district court needs to reevaluate the seriousness of Defendants' violations of the Utah plan's anti-tampering provision." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC* (10th Cir. 2021). Considering that UPHE sued for $117 million and will likely prevail on only a small subset of trucks and parts, Defendants contend that the penalty in light of the Tenth Circuit Court of Appeal's order could conceivably be less than $150,000 (from a birds-eye view consider a maximum of twenty-seven to thirty-one trucks (on the high end – notwithstanding Defendants' reservations in the Stipulation (Dkt. 246, p. 2 – 3, ¶ 3)) at the maximum CAA penalty of ~$3,500 plus a $27,546 stipulation on the parts (Dkt. 246, p. 1 – 2, ¶ 2)). Defendants assert that UPHE's attorney fee award should be reduced to reflect the disproportionate amount of fees to the penalties actually imposed, as well as the significant amount of attorney fees incurred to pursue claims that were unsuccessful in light of the 10th Circuit Court of Appeal's decision. UPHE incurred the vast majority of its attorney fees in pursuing claims for which it lacked standing, for which the penalties were disproportionate to the time spent on such claims, and for claims of which the vast majority failed. Importantly, the award of attorney fees fails to break out the award by Defendants and imposes the entire sum to

all Defendants jointly and severally, without regard to time spent on claims pertaining to each separate defendant.  As such, UPHE's Fees are excessive and disproportional to their degree of success and imposed on Defendants without regard to which claims upon which UPHE actually succeeded. Therefore, Defendants assert that the Fees must be reduced and adjusted accordingly to reflect UPHE's limited success against each Defendant on each separate claim.

## II.  PROCEDURAL POSTURE AND PROVISIONS OF RULES

Rule 60(b) of the Federal Rules of Civil Procedure provides that,

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons… (4) the judgment is void; (5) … it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

F.R.C.P. 60.  Under the Tenth Circuit Court of Appeal's decision, the judgment for attorney fees was based upon an earlier judgment that has been reversed or vacated in part.  *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC* (10th Cir. 2021), p. 52.  Pursuant to F.R.C.P. 60(c), "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." F.R.C.P. 60(c).  The mandate from the Court of Appeals was issued to this Court on January 19, 2022.  Dkt. 238.  This court held a status conference on March 2, 2022, and following such hearing, established April 1, 2022, as the deadline to file a motion to reconsider the Fees. (Dkt. 244). As such, this motion is filed within a reasonable time as contemplated by F.R.C.P. 60.

## III. STANDARD OF REVIEW

To assess fees, the Tenth Circuit applies the Lodestar test. *In re Miniscribe Corp.*, 309 F.3d 1234, 1243 (10th Cir. 2002). "The lodestar, of course, is 'the number of hours reasonably

3

expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." *Anchondo v. Anderson, Crenshaw & Assoc., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010) (quoting *Hensley v. Exkerhart*, 461 U.S. 424, 433 (1983); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 120 S.Ct. 1662, 1672 – 73 (2010)). In determining the fee award, the Court must endeavor to exclude hours which are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 424. The court must ensure that the fee request does not compensate for "over litigation." *Cody v. Hillard*, 304 F.3d 767, 773 (8th Cir. 2002).

In determining the lodestar amount, the overriding consideration is whether the hours were necessary. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The court must "go line by line" through the billing records supporting the request and determine whether the number of hours spent by counsel for the party seeking fees was reasonable. *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998); *Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001). Of course, if the time records are inadequate to allow for meaningful review, the Court cannot determine whether the fee request is reasonable. Accordingly, "[c]ounsel for the party claiming the fees [must] provide meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks…." *Id*. And, the Court is justified in reducing the loadstar "if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." *Id*. (quoting *Jane L. v. Bangeter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

In cases such as this where a plaintiff has "achieved only limited success, the district court should award only that amount that is reasonable in relation to the results obtained." *Browder v. City of Moab*, 427 F.3d 717 (10th Cir. 2005); *Id.* (Tymkovich, J., concurring) ("The Supreme Court has instructed that the 'most critical factor' in assessing reasonableness is the 'degree of success obtained'"); *see also Friends of the Earth v. Eastman Kodak Co.*, 834 F.2d 295 (2nd Cir.1987) (*Hensley*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) "held that where only partial or limited success had been obtained, the lodestar may be excessive and the court should award only the amount of fees that is reasonable in relation to the results obtained."). Moreover, when a "plaintiff has failed to prevail on a claim that is distinct in all respect from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* Therefore, "the calculation for reasonable attorney's fees requires more than just determining 'the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate' because such 'may be an excessive amount.'" *Id.* (citing *Hensley*, 461 U.S. at 436)). Instead, the district court should focus on two questions: (1) "did the plaintiff fail to prevail on claims that were unrelated to the claim[] on which he succeeded?" and (2) "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.*

### III. ARGUMENT

With the Tenth Circuit's holding that UPHE lacked standing to maintain actions about the "marketing of parts" and the sale of parts and vehicles to out of state users, the scope of UPHE's case was much broader than what the law permitted. This is the epitome of "over litigation", and as such the attorney fees awarded should be reduced to reflect the expenditures of time and attorney fees on claims that could not be maintained by UPHE. What began as a

lawsuit for the imposition of $117 million in penalties has been narrowed to only a small subset of trucks and defeat parts—signifying that UPHE was only entitled to a minuscule fraction of what it originally sued over. This level of success cannot reasonably stand as a satisfactory basis for making a $928,602.23 attorneys' fee and costs award, and moreover, the massive disparity between $117 million and any newly calculated penalty will further support the contention that UPHE's Fees are excessive. Moreover, based upon the divisibility of UPHE's claims, any attorney's fees awarded should be apportioned accordingly between Defendants.

**A. This Court should significantly reduce UPHE's Fees because UPHE lacked Article III standing to bring a vast majority of its claims.**

Like previously stated, in cases such as this where a plaintiff has "achieved only limited success, the district court should award only that amount that is reasonable in relation to the results obtained." *Browder v. City of Moab*, 427 F.3d 717 (10th Cir. 2005); *Id*. (Tymkovich, J., concurring) ("The Supreme Court has instructed that the 'most critical factor' in assessing reasonableness is the 'degree of success obtained"); *see also Friends of the Earth v. Eastman Kodak Co.*, 834 F.2d 295 (2nd Cir.1987) (*Hensley*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) "held that where only partial or limited success had been obtained, the lodestar may be excessive and the court should award only the amount of fees that is reasonable in relation to the results obtained."). "[T]he calculation for reasonable attorney's fees requires more than just determining 'the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate' because such 'may be an excessive amount.'" *Id.* (citing *Hensley*, 461 U.S. at 436). As such, the district court should focus on two questions: (1) "did the plaintiff fail to prevail on claims that were unrelated to the claim[] on which he succeeded?" and (2) "did the

plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.*

When the answer to the first question is no, the district court should then "address the second question and 'focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Simmons v. Debottis*, 857 F.2d 1475 (6th Cir. 1988) (citing *Hensley*, 461 U.S. at 436). "Although the Supreme Court has disavowed a test of strict proportionality, it also suggested that a comparison of damages awarded to damages sought is required." *McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2008) (citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986)). The district court must consider "the excellence of the overall result" instead of "merely the amount of damages won." *Id*. The Supreme Court clarified that, "in judging the plaintiff's level of success and the reasonableness of hours spent achieving that success, a district court should 'give primary consideration to the amount of damages awarded as compared to the amount sought.'" *Id* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

In *Griffin v. Strong*, the plaintiff brought three causes of action but was only successful on one. 827 F.Supp. 683 (D. Utah 1993). The jury award Plaintiff $13,000 for that one successful claim, which was "quite small compared to the amount asked for (over $1 million). *Id*. Although the court calculated the lodestar figure to be $97,137.50, the court reduced the lodestar figure by 50% in order to reflect plaintiff's limited success. *Id*.

Here, UPHE sued for over $117 million on claims associated with claims of violations for over 200 defeat parts and 27 violating trucks. However, on appeal, the Tenth Circuit found that: (1) "UPHE lacks standing to pursue claims for civil penalties related to defeat parts marketed but not actually sold" (*UPHE v. Diesel Power Gear, supra,* p. 32) (2) "UPHE lacks

standing to seek penalties for violations that did not cause the emission of pollutants in the Wasatch Front", (*Id*. p. 14) and (3) the district court needs to reevaluate the seriousness criteria in light of the much reduced directive from the court of appeals requiring such consideration considers "the maximum penalty for tampering with a motor vehicle, no matter what the aggravating factors, was set by Congress at $2,500…" and "Such a clear signpost cannot be ignored." (*Id*. P. 51).  In more specific terms, the outcome of the Tenth Circuit's ruling resulted in: (1) UPHE not have standing to collect the civil penalty of $83,336 for the advertisement of 88 unsold defeat parts, (Dkt. 246, p. 1, ¶ 1) and (2) UPHE only having standing to collect a penalty for 9 defeat parts sold to independent in-state purchasers and arguably 23 aftermarket defeat parts sold to B&W Auto.  (Dkt. 246, p.1, ¶2).  Thus, the $227,218 penalty imposed by this court in its Bench Trial Order (Dkt. 168, p. 52) will be reduced AT LEAST to only $27,546 by virtue of the stipulation of the Parties (Dkt. 246, p.1, ¶ 2). Moreover, the Tenth Circuit's remand to the district court over the seriousness of Defendants' violations allows for the possibility that after further analysis the penalty could be reduced even further.

      Without a doubt, the Tenth Circuit's holding significantly impacted UPHE's lawsuit as it barred UPHE's ability to sue Defendants over the sale of out-of-state trucks/defeat parts and the advertising of out-of-state trucks/defeat parts and unsold defeat parts. Although Defendants maintain the position that the original penalty of over $700,000 and overall outcome of the case did not support an attorney's fee award of almost a million dollars, the Tenth Circuit's holding undoubtably demonstrates the need to adjust the Fees. More specifically, awarding almost a million dollars for the result of succeeding on a marginal amount of claims compared to those in which UPHE originally sued on cannot possibly qualify as an "excellent result" – especially

considering UPHE's success could have easily been achieved by significantly less hours had UPHE pursued an appropriately narrowed case.

UPHE's attorney's fees log supports this assertion. For example, more than sixty entries (equating to over $80,000 in attorney's fees) either entirely or partially relate to work performed regarding Defendants' penalties and advertising.  (Dkt. 176, throughout) (e.g., Declaration of Reed Zars: pg. 16, 9/19/16 ("draft and send research project to Melissa (web advertising liability)"); pg. 30, 7/21/17 ("set up tasks for Glen to organize defeat parts installed and defeat parts advertised"); pg. 31, 8/10/17 ("penalty calcs under Section 205"); Declaration of George Hays: pg. 12, 9/16 ("review Melver memo on penalty assessment"); Declaration of Naomi Melver: pg. 8, 9/9/19 – 9/12/19 ("Research caselaw on CAA assessing penalty factors"); pg. 8 9/12/19 – 915/19 ("Research and drafting Memo on CAA caselaw on assessing penalty factors"); pg. 8 9/22/19 – 9/23/19 ("Research cases on apportionment of penalties between defendants")). Although this is just one category out of many that should be adjusted to reflect UPHE's level of success, this category of entries directly pertains to the Tenth Circuit's holdings, which overturned a large portion of UPHE's success. With this in mind along with the overall outcome of the case, it is clear that UPHE's attorney's fee award is unreasonable. As such, Defendants ask that this Court decrease the Fees accordingly.  Although at this time further proceedings in reexamining the penalties imposed in this action remain to be held, Defendants assert that the attorney's fees awarded should be reduced proportionally in accordance with the degree of success attained by UPHE, with entries that involve claims for which it failed to be removed, and where entries are unclear (as such entries should be removed for potentially involving claims for which UPHE was unsuccessful).

**B. This Court should apportion Fees among Defendants because each Defendants' liability for each hour of legal work is unequal.**

*Corder v. Gates* mandates apportionment when time expended against each defendant is disproportionate to ensure that a defendant is not liable for a fee award greater than the actual fees incurred against that defendant. *Jones v. Espy*, 10 F.3d 690 (9th Cir. 1993) (citing *Corder v. Gates*, 947 F.2d 374 (9th Cir. 1991)). "The usual cause of disproportionate fee awards is a difference in the amount of time expended against each defendant (as in *Corder*, where the time was split 75/25 between the two defendants)." *Id*. However, in *Jones*, the Ninth Circuit found the "case present[ed] an unusual situation: though equal amounts of time were expended against each defendant, each defendant's liability for each hour of legal work was unequal." *Id*. The Ninth Circuit went on to specify that "[r]egardless of the reason, this still represents a disproportion in liability for fees; so, as in *Corder*, apportionment is appropriate." *Id*. The D.C. Circuit has likewise established that, "…if claims are not attributable to all defendants and are not 'centered on a set of common issues,' i.e., claims that are 'truly fractionable,' fees should be apportioned, 'in order to ensure that a defendant is not liable for a fee award greater than the actual fees incurred against that defendant.'" Citing *Jones v. Espy*, 10 F.3d 690, 691 (9th Cir.1993). *Turner v. D.C. Bd. of Elections and Ethics*, 354 F.3d 890, 359 U.S.App. D.C. 332 (D.C. Cir. 2004). In discussing the attorney fee provision of the Clean Air Act, the DC Court of Appeals declared that "[t]he purpose of an award of costs and fees is not mainly punitive. It is to allocate the costs of litigation equitably, to encourage the achievement of statutory goals." *Sierra Club v. Gorsuch*, 672 F.2d 33, 217 U.S.App.D.C. 180 (D.C. Cir. 1982) (Reversed on other grounds).

10

Despite the Court imposing the entire award of attorney fees and costs of $928,602.23 against all Defendants jointly and severally (Dkt. 230, 51), over no less than a years' time, counsel for Defendants has repeatedly requested (both verbally and in writing) that Plaintiff's counsel provide a breakdown of attorney's fees by defendant (*see* Exhibit A). However, Plaintiff's counsel has refused. While there is overlap in ownership, Defendants DPG and B&W Auto have different owners.  David Sparks is an owner of DPG and B&W Auto, but Mr. Stuart and Mr. Dave Kiley have an ownership interest only in DPG, not B&W Auto, and Mr. Hoskins had no ownership interest in either entity. Claims relating to the sale of parts are completely separate from claims relating to the sale and/or sweepstakes of trucks.  Yet, DPG, who was involved in the sale of parts, is liable for all attorney fees and costs associated with the sale of trucks done by B&W Auto, and B&W Auto, whose role was in removing emission control devices or installing defeat devices in trucks, is facing liability for all the sale of defeat parts in which it did not participate. (Dkt. 168, p. 9). Moreover, Defendant DPG was not responsible for any tampering of trucks quite simply because DPG does not own automobile tools or a shop. Instead, DPG operates strictly a marketing and apparel company. Thus, such a large award of attorney's fees and costs is undoubtedly a gross injustice when applied to each of the Defendants individually for their roles in the violations.

Take for example Defendant Keaton Hoskins, who was found to be in violation for: (1) removing parts and installing defeat devices in *two* trucks; (2) selling the same vehicles to B&W Auto, and (3) "own[ing] and operat[ing] numerous vehicles in Utah" without the appropriate emission control devices/systems.  (Dkt. 168, pp. 14, 17, 24). The Court imposed a total penalty on Hoskins (subject to revision following the Tenth Circuit Court of Appeals decision) of $86,107. However, when Hoskins tried to "pay what he owed," the issue of apportioning the

Fees among Defendants became particularly apposite as Hoskins could not get an answer for less than $1M. Ultimately, Hoskins settled with UPHE, which further necessitates a reduction of attorneys' fees for hours worked relative to Hoskins.

"Lumping" all Defendants together as jointly and severally liable for attorneys' fees is in direct contravention of the *Jones* and *Coder* rulings. Considering Defendant Joshua Stuart was not held liable for any actions of Defendant B&W (as he had no ownership in B&W nor did he have management authority over the same), holding Stuart as jointly and severally liable for the fees associated with causes of action he was not even sued for (much less held liable for) is exactly the type of inequality *Coder* sought to avoid, and against which F.R.C.P. 60 is designed to protect. Defendants maintain the position that the vast majority of Fees lies with DPG since the majority of the litigation revolved around its offering of trucks as sweepstake prizes and selling of aftermarket defeat parts. The attorney's fees incurred relative to Sparks and Stuart personally were nothing more than a footnote to the entire trial and should be minimal as a result. The "heavy lifting" in the case was proving the liability of B&W and DPG, followed by a short analysis done to prove who was the "responsible party." This analysis encompassed nothing more than a few questions on direct examination, which resulted in the Court holding Stuart liable for DPG actions and Sparks liable for DPG and B&W.

Although Defendants maintain that UPHE expended a disproportionate amount of time against each defendant, its time entries are block billed and vaguely drafted—making it difficult to ascertain exactly which task correlated to which defendant or claim. With over 900 entries, roughly 50 time entries directly reference B&W Auto/Sparks Motors/B&W and DPG/DieselSellerz. (Dkt. 176). The remaining time records mostly provide generic descriptions like "review proposed findings of fact and discuss w/ RZ, call w/ RZ re use of health impacts

12

testimony, edit conclusions of law" (Declaration of George Hays, pg. 12, 10/21), "research on injunctions" (Declaration of Naomi Melver, pg. 8, 9/30/19), or "spend morning reviewing and writing down the course of the mediated settlement discussions, confer and compare notes with UPHE on same, send summary of all discussions to UPHE for review" (Declaration of Reed Zars, pg. 47, 4/19/19). (Dkt. 176). Therefore, instead of evaluating the disproportionality by time, this Court should follow the Ninth Circuit's approach in *Jones* where the court apportioned fees amongst the Defendants by each defendant's liability. As demonstrated by the penalties assessed, B&W Auto's penalty (and therefore, liability) was disproportionately large compared to DPG's penalty, therefore, illustrating both the basis and solution to how the Court may apportion the Fees. Even if UPHE expended the same amount of time for all Defendants, Defendant's degree of liability noticeably varies—subsequently making each hour of UPHE's legal work unequal among the Defendants.

In reviewing Defendants' own billing records in a very meticulous fashion, Defendants suggest the allocation among Defendants is fairly apportioned as follows:

| Defendant | Percentage of Fees: |
| --- | --- |
| DPG: | 63% |
| B&W: | 21% |
| Sparks, Stuart, Hoskins, DieselSellerz.com LLC, & David Kiley. | 16% |

Although an equitable division of the Fees can be based upon penalties, ultimately, the burden resides on the party seeking attorney's fees to properly allocate fees per defendant. *Jones*, 10 F.3d at 691. Nonetheless, Defendants offer the above as a basis for allocating fees based upon its

own analysis, and for these reasons stated, Defendants respectfully request that the Court apportion the Fees accordingly.

## IV. CONCLUSION

Although UPHE is technically the prevailing party in this case, UPHE's Fees are excessive compared to its level of success in the lawsuit, and this is particularly true considering the anticipated reduction in penalties that will occur in further proceedings. Essentially, the scope of this lawsuit was far broader than what UPHE should have been able to maintain, resulting in costs being incurred that should not be reasonably borne by Defendants.  Moreover, this Court should apportion Fees among Defendants because each Defendants' liability for each hour of legal work is unequal, and as such, it is simply not fair to require each Defendant to pay for fees and costs spent on claims of violations they did not commit. For the reasons stated above, Defendants respectfully request that the Court reduce UPHE's request for fees accordingly and apportion the Fees among Defendants.

Exhibit A

Exhibit A

**From:** Reed Zars <reed@zarslaw.com>
**Sent:** Thursday, February 11, 2021 3:09 PM
**To:** Cole cannon <cole@cannonlawgroup.com>
**Cc:** George Hays <georgehays@mindspring.com>; Sam Goble <sam@byingtongoble.com>
**Subject:** costs and fees

Cole,

The starting point on the apportionment issue that you raise is our May 8, 2020 motion for costs and fees. In that motion and proposed order we asked the award to be assessed jointly and severally. Although you expended twice as many pages in your response as allowed by the local rule, you did not object to that method. It was subsequently ordered by the court.

You now ask that we consider another method, one based on the time you claim you spent defending each defendant. We have reviewed your proposal and data. We do not find in workable or fair. First, due to the common issues litigated by all of the defendants, disaggregating our time to each defendant individually is not possible. Second, we do not believe it fairly assigns responsibility.

We expect you know we told Sam we would resolve Mr. Hoskins' fee and costs liability based on the percentage of Mr. Hoskins' penalty liability.

On a separate matter, do you intend to withdraw as counsel for Mr. Hoskins in the 10th Circuit? If so, when?

Sincerely,

Reed & George


On Feb 1, 2021, at 4:12 PM, Cole cannon <cole@cannonlawgroup.com> wrote:

Hi Reed,

Please see attached. This is what my clerk came up with. I had just copied and pasted you the pie chart from it.

Thanks,

C

**From:** Reed Zars <reed@zarslaw.com>
**Date:** Thursday, January 28, 2021 at 2:47 PM
**To:** Cole cannon <cole@cannonlawgroup.com>
**Cc:** George Hays <georgehays@mindspring.com>, Sam Goble <sam@byingtongoble.com>
**Subject:** Re: message

Cole,

The actual data, presumably in a spreadsheet, would be more useful.

R

On Jan 27, 2021, at 9:17 PM, Cole cannon <cole@cannonlawgroup.com> wrote:

Understood on settlement and discovery.

He pulled all the invoices from two systems and looked at every time entry, and allocated them based on what was being worked on. Then if there were overlap issues he'd look at the pleadings to know which party was moving (eg DPG on "sale" versus "giveaway" issue). As another example, Sparks individually was minimal, basically at trial prep. I'm not saying your allocation has to exactly match mine but I figured it's close.

Hope that's useful .

C

Sent from my iPhone

> On Jan 27, 2021, at 5:44 PM, Reed Zars <reed@zarslaw.com> wrote:
>
> Cole,
>
> First, as you know, any settlement discussions will have to be preceded by your yet-to-be-satisfied compliance with the discovery order.
>
> Second, please tell us how your clerk arrived at the percentages shown in the pie chart. We would need that before commenting on your proposed allocation scheme.
>
> Best,
>
> Reed

17

> On Jan 26, 2021, at 6:44 PM, Cole cannon <cole@cannonlawgroup.com> wrote:
>
> HI Reed,
>
> Following up on the allocation of attorneys' fees we've asked for several months. Interesting timing, I haven't yet read the 51 page order from Judge Shelby but if the court doesn't break down the "per defendant" then we'll ask for clarification on what the price per defendant. I assume you'd agree that Keaton should not be jointly and severally liable for $900K in fees when he neither manager, owned or was involved in the DPG/BW trucks.
>
> You were unable to provide an allocation and you asked me to provide ours. Below what my clerk came up with for an allocation of our time as a percentage of the work. As stated in our briefing our total dollar amount was a lot less than yours, but the percentages should approximate each other. This is important so we can assess what each party actually owes. Obviously DPG was the heavy lifting with all the fun on the summary judgment, the trial, 4X4 anything, the parts, the giveaways, and the total causes of action. Sparks is low because he didn't "have any trucks" and he was only liable by virtue of the being the manager. My clerk went into painful detail to try and allocate each category. Given we were fighting on different sides of the same battlefield I assume your allocation is the same. Please confirm if you agree or don't agree, and if the latter, please let me know your allocation.
>
> Sam represents Keaton as you know. I'm sure his client would like to know how much he owes, something he's wondered for eight months. If you are not willing to provide an allocation, as has been your historical position, please so state. For what it's worth, I'm glad the picture is becoming yet a little clearer with the court's order. Still optimistic for a non-court resolution.
>
> <image001.png>
>
>
> Thanks,
>
>
>
> Cole S. Cannon Esq., LLM-Tax, MPP, Principal
> Cannon Law Group, PLLC
> 124 South 600 East
> Salt Lake City, UT 84102
> Cell. 714.362.1087
> Off. 801.363.2999
> Fax. 801.606.7341
> Cole@cannonlawgroup.com