IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DIESEL POWER GEAR, LLC; 4X4 ANYTHING, LLC; B&W AUTO, LLC d/b/a SPARKS MOTORS, LLC; DAVID W. SPARKS; AND JOSHUA STUART,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER ASSESSING REASONABLENESS OF PLAINTIFF'S ATTORNEYS' FEES REQUEST FOR FEES INCURRED ON APPEAL**<br><br>Case No. 2:17-cv-00032-RJS<br><br>Chief Judge Robert J. Shelby |

This matter is before the court on remand from the United States Court of Appeals for the Tenth Circuit.[1] Among other issues to be resolved on remand, this court is directed to "determine the amount of fees that were reasonably and necessarily incurred" by Plaintiff Utah Physicians for a Healthy Environment (UPHE) in connection with the proceedings on appeal.[2] For the reasons stated below, UPHE is entitled to recover $90,535.00 in reasonable attorneys' from Defendants Diesel Power Gear, LLC; 4X4 Anything, LLC; B&W Auto, LLC, d/b/a Sparks Motors, LLC; David W. Sparks; and Joshua Stuart.[3]

---

[1] *See generally Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229 (10th Cir. 2021).

[2] Tenth Circuit Order Ruling on UPHE's Motion for Attorneys' Fees (Dkt. 241) at 2 [hereinafter Tenth Circuit Attorneys' Fees Order].

[3] These Defendants are not the same group that has appeared in the captions of prior orders in this case. As noted by the Court of Appeals in its Opinion, some originally named defendants were dismissed long before the case was appealed. *See Utah Physicians for a Healthy Env't*, 21 F.4th at 1239 n.8. Defendant Keaton Hoskins had initially joined the Notice of Appeal, *see* Notice of Appeal (Dkt. 172), but, while the appeal was pending, "Hoskins settled with UPHE and the United States," and the Court of Appeals therefore dismissed his portion of the appeal, *see Utah Physicians for a Healthy Env't*, 21 F.4th at 1239 n.8; *see also* Order Confirming Defendant Keaton Hoskins' Satisfaction of Civil Penalty and Costs and Fees Liability, and Retention of Permanent Injunction (Dkt. 237). Consequently, when the court uses the "Defendants" moniker throughout this Order, it is generally referring to the parties named in the caption of this Order.

1

## BACKGROUND[4]

UPHE brought this action against Defendants in January 2017, alleging a litany of Clean Air Act (CAA) violations.[5] Both sides filed cross-motions for summary judgment and, after hearing oral argument, the court issued an Order on March 12, 2019 finding Defendants liable for dozens of violations of six provisions of the CAA.[6] The court then held a bench trial over three days in November 2019 to determine unresolved issues of liability and appropriate civil penalties.[7] On March 6, 2020, the court issued an Order granting permanent injunctive relief against Defendants, imposing civil penalties among the various Defendants, and awarding UPHE the ability to collect reasonable attorneys' fees and costs incurred to that point.[8] The court then entered a corresponding Judgment.[9]

Defendants appealed the Judgment on April 7, 2020,[10] presenting the Court of Appeals with several arguments for review.[11] After hearing oral argument, the Court of Appeals issued an Opinion on December 28, 2021 in which it "largely affirm[ed] the judgment," but remanded for further factual findings on two issues.[12] First, it directed this court "to determine what adjustment, if any" should be made to the civil penalty assessment based on UPHE's potential lack of standing for certain of the CAA violations; and second, it ordered reconsideration of one

---

[4] Because this case has been heavily litigated, the background section is relatively brief. The court assumes the parties' familiarity with the extensive factual and procedural background.

[5] *See generally* Complaint (Dkt. 2).

[6] *See generally* Memorandum Decision and Order on Summary Judgment Motions (Dkt. 122). *See also* Bench Trial Order (Dkt. 168) at 4–5.

[7] Minute Entries for Proceedings held on November 5, 6, and 25, 2019 (Dkts. 149, 150, 157).

[8] Bench Trial Order (Dkt. 168) at 5, 57–58.

[9] *See* Judgment in a Civil Case (Dkt. 169).

[10] *See* Dkt. 172; *see also supra* note 3.

[11] *See Utah Physicians for a Healthy Env't*, 21 F.4th at 1240 (listing the "five challenges" raised on appeal).

[12] *Id.*

of the statutory penalty assessment criteria applied to one category of violations among the five total categories.[13] The Court of Appeals contemporaneously issued a Judgment remanding the case to this court for further proceedings,[14] and on January 19, 2022 issued a Mandate allowing its Judgment to take effect.[15]

On January 25, 2022, UPHE filed a Motion with the Court of Appeals to recover $91,095.00 in attorneys' fees for "substantially prevailing in th[e] appeal."[16] In Opposition, Defendants argued: (1) UPHE was "not the prevailing party in the appeal"; (2) "[e]ven if deemed the prevailing party, UPHE's request for $91,095.00 in attorneys' fees and costs for this appeal is not reasonable, proportional, or substantially related" to the claims it prevailed on; and (3) within UPHE's time entries, counsel had improperly included fees incurred in relation to "post-judgment collection efforts."[17] In Reply, UPHE maintained it was the prevailing party on appeal and that the amount it requested was reasonable.[18] However, UPHE conceded it had improperly included 1.2 hours counsel spent "secur[ing] and/or enforc[ing] the district court's judgment," and adjusted its fees request to $90,525.00.[19]

---

[13] *Id.*; *see also id.* at 1246–49 ("hold[ing] that UPHE has standing to challenge Defendants' violations that contributed to the unhealthy air in the Wasatch Front," but "that UPHE does not have standing to bring its claims based on vehicles never driven in Utah or defeat devices sold to persons outside Utah," nor "to pursue claims for civil penalties related to defeat parts marketed but not actually sold"); *id.* at 1257–59 (holding that the district court "abused its discretion in weighing the seriousness-of-the-violation factor against Defendants in calculating penalties for violations of the Utah SIP's anti-tampering provision," but concluding this was "the only respect in which we agree with Defendants' arguments regarding the penalties assessed against them").

[14] Dkt. 238-1.

[15] Mandate Letter (Dkt. 238-2).

[16] Appellee's Motion for Attorneys' Fees at 11, *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229 (10th Cir. 2021) (No. 20-4043) [hereinafter Motion].

[17] Appellants' Opposition to Appellee UPHE's Motion for Attorneys' Fees at 1–4, *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229 (10th Cir. 2021) (No. 20-4043) [hereinafter Opposition].

[18] Appellee's Reply in Support of its Motion for Attorneys' Fees at 1–8, *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229 (10th Cir. 2021) (No. 20-4043) [hereinafter Reply].

[19] *Id.* at 8–9; *see infra* note 40.

The Court of Appeals granted UPHE's Motion on February 16, 2022, concluding that "an award of attorneys' fees is appropriate," given that it had ultimately "affirmed the district court's determination that [Defendants] violated the CAA."[20] But although the Court of Appeals granted UPHE's request by finding UPHE was the prevailing party on appeal, it remanded the matter to this court for determination of "the amount of fees that were reasonably and necessarily incurred."[21] It also left this court "discretion" to "conduct any and all further proceedings it deems necessary and appropriate on the issue of appeal-related attorneys' fees."[22]

This court held a status conference on March 2, 2022, to review with the parties the several outstanding issues to be addressed on remand.[23] The court discussed the issue of appeal-related attorneys' fees with the parties and, applying the procedural discretion recognized in the Court of Appeals' Order,[24] decided that the most judicially efficient course would be to consider the reasonableness of the request based on the briefing the parties had already submitted to the Court of Appeals on UPHE's Motion.[25]

## LEGAL STANDARD

In the Tenth Circuit, the reasonableness of an attorneys' fees request is analyzed according to the lodestar method, which involves calculating "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,'" which yields "a

---

[20] Tenth Circuit Attorneys' Fees Order at 2 (citing *Pound v. Airosol Co., Inc.*, 498 F.3d 1089, 1101–02 (10th Cir. 2007) (concluding that a plaintiff achieving a judicial holding that a party violated the CAA is "some degree of success on the merits," warranting the award of fees and costs under 42 U.S.C. § 7604(d))).

[21] *Id.* (citing *Hoyt v. Robson Co., Inc.*, 11 F.3d 983, 985 (10th Cir. 1993)).

[22] *Id.*

[23] Minute Entry for Mar. 2, 2022 Status Conference (Dkt. 244) [hereinafter 3/2/22 Hearing Minute Entry]. Resolution of the additional legal issues the Court of Appeals directed to be resolved on remand is ongoing. *See* Minute Entry for May 31, 2022 Status Conference (Dkt. 261).

[24] Tenth Circuit Attorneys' Fees Order at 2.

[25] *See* 3/2/22 Hearing Minute Entry.

presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances."[26]

The lodestar method thus involves two inquiries: first, the court assesses the reasonableness of the number of hours expended, and second, the court analyzes the reasonableness of the proposed hourly rate.[27] A party seeking an award of attorneys' fees should submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[28] "Where the documentation of hours is inadequate, the . . . court may reduce the award accordingly."[29] The court is also instructed to exclude hours that were not "reasonably expended," including, for example, "hours that are excessive, redundant, or otherwise unnecessary."[30] From that point, a court may adjust the fee award up or down based on the degree of success obtained by the prevailing party.[31]

A reasonable hourly rate is based on the "prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[32] The market rate inquiry is ultimately concerned not with "the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party."[33] Thus, legal services are

---

[26] *Anchondo v. Anderson, Crenshaw & Assoc., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[27] *See id.*

[28] *Case v. Unified Sch. Dist. No. 233, Johnson Cnty. Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998); *see also Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.").

[29] *Hensley*, 461 U.S. at 433.

[30] *Id.* at 434.

[31] *Id.* at 434–36.

[32] *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Case*, 157 F.3d at 1256.

[33] *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012); *see also id.* ("[A]n 'attorney fee' arises when a party uses an attorney, regardless of whether the attorney charges the party a fee; and the amount

valued at the prevailing market rate "regardless of whether [the] plaintiff is represented by private or non-profit counsel."[34]

## ANALYSIS

Pursuant to the Court of Appeals' Order on UPHE's fee request, and for the reasons stated on the record at the March 2, 2022 hearing, the court will assess the reasonableness of UPHE's request based on the parties' briefing that was submitted to the Court of Appeals.[35] In Opposition, Defendants challenge UPHE's request on multiple fronts, including that UPHE was not the "prevailing party on appeal."[36] However, as noted, the Court of Appeals has already determined that UPHE prevailed on appeal and is therefore entitled to the attorneys' fees it "reasonably and necessarily incurred" while defending the case on appeal.[37] Accordingly, this court will address only Defendants' arguments that relate to the reasonableness of UPHE's requested amount, not UPHE's underlying entitlement to fees as the prevailing party on appeal.

### A. Number of Hours Reasonably Expended

In support of its Motion, UPHE submitted affidavits from Reed Zars and George Hays, counsel of record for UPHE, detailing the hours they spent litigating the appeal.[38] UPHE also included an affidavit from Sean H. Donahue, an appellate litigation specialist who was brought

---

of the fee is the reasonable value of the attorney's services. . . . What the client pays or owes the attorney may not accurately reflect the reasonable value of the services.").

[34] *See Blum*, 465 U.S. at 895; *accord Centennial Archaeology*, 688 F.3d at 679.

[35] *See* 3/2/22 Hearing Minute Entry; Tenth Circuit Attorneys' Fees Order at 2.

[36] *See* Opposition at 1–2.

[37] *See* Tenth Circuit Attorneys' Fees Order at 1–2.

[38] *See* Motion at 7; Motion, Ex. A (Decl. of Reed Zars in Support of Appellee's Mot. for Attorneys' Fees) [hereinafter Ex. A]; Motion, Ex. B (Decl. of George E. Hays in Support of Appellee's Mot. for Costs and Attorneys' Fees) [hereinafter Ex. B].

on to help counsel prepare for oral argument.[39] UPHE seeks reimbursement for 134.9 hours of Mr. Zars's time, 43.3. hours of Mr. Hays's time, and 12.4 hours of Mr. Donohue's time.[40] The court has reviewed the time sheets included by UPHE in the supporting exhibits, and the documentation submitted supports these totals.

UPHE asserts the hours expended by each attorney are both "reasonable" and "justified."[41] Defendants challenge the reasonableness of UPHE's fees request based on a purported inadequacy in the attached records. Specifically, Defendants contend the "vast majority" of UPHE's submitted time sheets "utilize block billing" and should therefore be "excluded or substantially reduced."[42] As explained by Defendants, "block billing" has been defined as a "timekeeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."[43] Defendants argue block billing is insufficient to support a finding that the hours were reasonably expended because block billing does not meet the standard of "meticulous, contemporaneous time records that reveal . . . how those hours were allotted to specific tasks."[44]

There are two problems with this argument. First, what Defendants characterize as a blanket rule against block billing is not borne out in controlling precedent. In *Cadena v.*

---

[39] *See* Motion at 7, 10; Motion, Ex. C (Decl. of Sean H. Donahue in Support of Appellee's Mot. for Costs and Attorneys' Fees) [hereinafter Ex. C].

[40] Motion at 6–7. In the Motion, UPHE originally sought reimbursement for 136.1 hours of Mr. Zars's time. *Id.* However, as noted above, UPHE conceded in its Reply that it had improperly included in its time sheets work "where one of the identified aims was to secure and/or enforce the district court's judgment." Reply at 8–9. Based on Attachment 1 to the Reply, which appears to be an excerpt from the time sheet for Mr. Zars included in Exhibit A to the Motion, the 1.2 hours was apparently part of Mr. Zars's time. *See* Reply, Attachment 1. Accordingly, the court has subtracted 1.2 hours from the amount of time UPHE originally attributed to Mr. Zars in the Motion. *See* Motion at 7.

[41] Motion at 9–10.

[42] Opposition at 12.

[43] *Id.* at 12–13 (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)).

[44] *Id.* at 13 (quoting *Case*, 157 F.3d at 1250).

*Pacesetter Corporation*[45]—a case Defendants cite[46]—the court noted the Tenth Circuit "has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block billing."[47] While block billing is generally discouraged, what ultimately matters is whether "the records sufficiently allow[] the [reviewing] court to determine the time allotted . . . to specific tasks and the reasonableness of that time."[48] Thus, even if an entry is block-billed, if the reviewing court is ultimately able to discern the specific tasks performed during that entry, and assess that those tasks were reasonable for the allotted time, then the block-billed entry can be deemed reasonable.

The second (and more serious) problem is that, despite Defendants' characterization of widespread block billing in UPHE's submitted timesheets, they fail to identify any actual instances of block billing. Defendants only specifically point to a single entry as being problematic: the 7.9 hours Mr. Zars spent on September 6, 2020.[49] The description for this entry reads, "Full day drafting statutory and geographic standing sections."[50] In Reply, UPHE explains that the entry "refers only to time spent by Mr. Zars drafting the statutory and geographic standing sections of [UPHE's appellate] brief."[51] UPHE also points out that this is not actually block billing because there is a separate entry on that same day for 0.8 hours that Mr. Zars spent researching waiver and forfeiture of arguments and working with Mr. Hays to revise

---

[45] 224 F.3d 1203 (10th Cir. 2000).

[46] Opposition at 13 (citing *Cadena*, 224 F.3d at 1214).

[47] *Cadena*, 224 F.3d at 1215.

[48] *Id.*

[49] Opposition at 13–14.

[50] Ex. A at 9.

[51] Reply at 8; *see* Ex. A at 9.

the appellate brief accordingly.[52] Both points are well-taken. Together, the statutory and geographic standing sections of UPHE's appellate brief span roughly seventeen pages.[53] A competent attorney could reasonably take 7.9 hours to draft seventeen pages of briefing for appeal on complex standing-related issues. And moreover, the mere fact that there is an additional entry for other work completed on September 6, 2020 makes the 7.9-hour entry, by definition, not block billing, since that term generally refers to "enter[ing] the total daily time spent working on a case,"[54] whereas here there are separate entries for two distinct tasks that were completed on September 6.

Aside from pointing to the September 6, 2020 entry, Defendants assert only generally that "[a]lmost all of the time entries from UPHE are daily block entries," without citing any examples.[55] After reviewing the affidavits and time sheets attached to UPHE's Motion,[56] the court cannot locate a single instance of block billing. All counsel kept "meticulous, contemporaneous time records"[57] and—aside from the hours UPHE later removed relating to securing or enforcing the district court judgment[58]—none of the entries appear to contain tasks that that are "excessive, redundant, or otherwise unnecessary."[59] Thus, the number of hours UPHE claims for reimbursement is reasonable.

---

[52] Reply at 8; *see* Ex. A at 9.

[53] *See* Brief for Appellee Utah Physicians for a Healthy Environment at 19–36, *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229 (10th Cir. 2021) (No. 20-4043).

[54] *See Harolds Stores*, 82 F.3d at 1554 n.15.

[55] Opposition at 14.

[56] *See* Ex. A at 6–10; Ex. B at 4–5; Ex C at 4.

[57] *Case*, 157 F.3d at 1250.

[58] *See* Reply at 8–9; *see also supra* note 40.

[59] *Hensley*, 461 U.S. at 434.

### B. Reasonable Hourly Rate

UPHE contends $475 is a reasonable hourly rate to apply to the hours submitted by all three counsel.[60] UPHE notes that this court previously recognized $475 as a reasonable hourly rate for Mr. Zars and $390 as a reasonable hourly rate for Mr. Hays in its Order ruling on UPHE's post-trial attorneys' fees request.[61] In that Order, the court recognized that Mr. Hays "is indisputably a CAA specialist," but found he was entitled to a lower hourly rate than Mr. Zars because he served as "second chair attorney in this case, having begun work on the case during its final stages and participating in the trial."[62] In the present Motion, UPHE asserts that, during the appeal, "where both Mr. Zars and Mr. Hays drafted the brief, this distinction is inapplicable," and therefore the two are entitled to the same hourly rate.[63] Defendants give no argument in their Opposition as to what constitutes a reasonable hourly rate for UPHE's counsel.[64]

Upon reviewing the submitted time sheets, the court agrees with UPHE that the earlier "second chair" rationale regarding Mr. Hays is not applicable to the work he completed during the appeal because, even though there is more time on Mr. Zars's time sheet, based on the task descriptions it appears they both played an equal role in drafting and editing their respective portions of the brief. And, as the court found in its previous Order awarding UPHE fees post-trial, $475 per hour falls within "the going rate for CAA specialists in Salt Lake City."[65]

---

[60] Motion at 10–11.

[61] *Id.*; *see* Memorandum Decision and Order Granting Plaintiff's Motion for Fees and Bill of Costs (Dkt. 230) at 35–36 [hereinafter Post-Trial Fees & Cost Order].

[62] Post-Trial Fees & Cost Order at 36.

[63] Motion at 11.

[64] *See generally* Opposition.

[65] *See* Post-Trial Fees & Cost Order at 32.

Accordingly, for the work completed on the appellate stage of the case, $475 is a reasonable hourly rate for the services performed by Mr. Hays as well as Mr. Zars.

As to Mr. Donahue, because he was brought on to "assist[] the team in its preparation for oral argument" on appeal,[66] this court has not had occasion to assess the appropriate reasonable hourly rate for his services. UPHE contends Mr. Donahue "is also entitled to the same Clean Air Act specialist rate given his peerless experience as an appellate environmental lawyer."[67] After considering the materials UPHE submitted detailing Mr. Donahue's credentials, the court agrees.

The reasonableness of a proposed hourly rate is assessed according to the "prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[68] It is plainly apparent from Mr. Donahue's affidavit and resume that his experience is indeed considerable as an appellate environmental lawyer in venues across the country.[69] Although UPHE submitted no new evidence supporting the rate that a nationally renowned appellate and environmental legal expert would be entitled to in *this* community, UPHE did submit multiple testimonials as to what the prevailing local rates were for each of its attorneys and paralegals in connection with its post-trial motion for attorney fees.[70] In particular, UPHE submitted testimony of an expert indicating that, among attorneys in the Salt Lake City area who regularly perform CAA work, the typical rates "range from $390/hour to $475/hour."[71] UPHE has attached the same expert testimony to the present Motion for appellate attorneys'

---

[66] *See* Motion at 11.

[67] *Id.*

[68] *Blum*, 465 U.S. at 895 n.11.

[69] *See* Ex. C.

[70] *See* Post-Trial Fees & Cost Order at 30–32, 34–39.

[71] *Id.* at 31 (quoting Haley Decl. (Dkt. 176-7) at 6).

fees.[72] Because UPHE included no new evidence of a reasonable hourly rate within the exhibits attached to the instant Motion, the court will use the prior expert testimony to determine what a reasonable hourly rate is for Mr. Donahue's services as an appellate environmental specialist contributing to UPHE's appeal in a support capacity. In his declaration, the expert opined that "the rates typically charged in the Salt Lake legal market . . . range from $200/hour to $650/hour" for complex commercial litigation.[73] After considering the expert testimony and the evidence submitted by Defendants, the court previously found the following: "[a] reasonable hourly range for a CAA specialist is between $390 and $475," and "the hourly rate for senior attorneys ranges between $250 and $550."[74]

UPHE asserts a reasonable hourly rate for Mr. Donahue is $475, which falls within the ranges listed above. Mr. Donahue has extensive experience in environmental law and undoubtedly qualifies as a "senior attorney" for the purposes of this analysis.[75] Although Mr. Donahue came in at a relatively late stage of the appellate proceedings, Mr. Zars averred that Mr. Donahue's assistance was "particularly helpful" to "preparing [Zars] for the oral argument."[76] As noted, Mr. Donahue is a nationally renowned appellate environmental attorney who has practiced law for close to thirty years, with his career including stints in both private and government practice.[77] He also teaches courses in environmental law and related fields, and has represented parties in environmental disputes before several circuits of the federal courts of

---

[72] See Motion, Ex. D [hereinafter Ex. D].

[73] Ex. D at 5.

[74] Post-Trial Fees & Cost Order at 32.

[75] See generally Ex. C.

[76] See Ex. A at 2.

[77] See generally Ex. C.

appeal.[78] Thus, there is little doubt that Mr. Donahue's skills and experience easily justify a rate at least in the amount requested by UPHE—at the high end of the already-established $390/hour-to-$475/hour specialist range.[79] The court concludes the requested rate of $475 per hour represents a reasonable rate for Mr. Donahue.

### C. Bankruptcy Non-dischargeability

In the concluding paragraph of its Motion, UPHE "further moves that [its requested fee] award be identified as not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(6) because: (1) [Defendants'] violations were intentional and caused harm to UPHE and the public, and (2) UPHE's attorneys' fees were necessary and essential to proving [Defendants'] violations and thus were ancillary to [Defendants'] nondischargeable debt."[80] Defendants challenge this request on two grounds. First, Defendants cite UPHE's lack of authority to support "the proposition that attorney fees awarded in a Clean Air Act case should be nondischargeable," and aver that, as far as they are aware, "no court has held" as such.[81] Second, Defendants contend that, even if this argument is not rejected outright, it should "at the very least" be deemed "premature and unripe" at this time, and left for a bankruptcy court to determine at some future point if it becomes necessary.[82]

In Reply, UPHE does not meaningfully engage with either argument, asserting simply that Defendants' arguments in opposition to the non-dischargeability request "are not well taken for the reasons set forth in UPHE's opening motion."[83] Yet whatever those reasons are is not

---

[78] *See id.* at 6–9.

[79] *See* Post-Trial Fees & Cost Order at 32.

[80] Motion at 11 (citing *In Re Florida*, 164 B.R. 636 (9th Cir. BAP 1994)).

[81] Opposition at 14.

[82] *Id.*

[83] Reply at 9 n.11.

entirely clear from the Motion. The only authority UPHE cited in support of its request was a general citation to *In Re Florida*, 164 B.R. 636 (9th Cir. BAP 1994), with no pincite to what part of that case supposedly supports its position.[84] A review of *In Re Florida* reveals that, generally speaking, attorneys' fees can be deemed "[a]ncillary obligations" that "may attach to the primary debt" and, "consequently, their status depends on that of the primary debt."[85] Because there are currently no bankruptcy matters pending before this court on any debt that Defendants have, Defendants' second point—that any issue of dischargeabilty of the appellate attorneys' fees is not ripe for this court's review—is well-taken.

The court, however, declines to endorse Defendants' first argument, as it is certainly within the universe of possibilities that an obligation to pay attorneys' fees for CAA violations could be deemed non-dischargeable debt in a bankruptcy action. Just like any other attorneys' fees award, the status will generally depend on the status of the underlying primary debt.[86] But, as stated, this issue is not properly before the court and, in any event, UPHE has not met its burden in demonstrating it is entitled to a premature ruling declaring any fee award to be non-dischargeable in bankruptcy.

## CONCLUSION

For the reasons stated above, as well as the Court of Appeals' Order awarding attorneys' fees,[87] UPHE is entitled to recover for the reasonable time its counsel spent litigating this case on appeal: 134.9 hours of Mr. Zars's time, 43.3 hours of Mr. Hays's time, and 12.4 hours of Mr.

---

[84] *See* Motion at 2, 11.

[85] 164 B.R. at 639 (citations and internal quotations omitted).

[86] *See, e.g., id.*; *cf. In re. Shalid*, 254 B.R. 40, 43–44 (10th Cir. BAP 2000) (recognizing the general principle that, "in a § 523 non-dischargeability action," attorneys' fees can "be recovered by the creditor to the extent the fees were ancillary to that portion of the underlying debt deemed nondischargeable," but declining to extend that rationale to "actions seeking to deny a debtor's discharge under [11 U.S.C.] § 727").

[87] *See* Tenth Circuit Attorneys' Fees Order.

Donohue's time.  The reasonable rate at which the fees will be assessed is $475 per hour for work completed by all three attorneys.  Thus, UPHE is entitled to $90,535.00 in total for appellate attorneys' fees.  Defendants are jointly and severally liable for this amount.[88]

        SO ORDERED this 6th day of July, 2022.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[88] This pronouncement refers only to the Defendants named in the caption of this Order. *See supra* note 3.