IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

|  |  |
|---|---|
| UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT INC.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DIESEL POWER GEAR LLC, et al.,<br><br>　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-00032-RJS-DBP<br><br>Chief Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

This case is on remand from the United States Court of Appeal for the Tenth Circuit.  The Tenth Circuit directed this court to reconsider the SIP tampering penalties assessed against Defendants B&W Auto LLC d/b/a Sparks Motors (B&W Auto) and David W. Sparks.[1]  The court reconsiders those penalties and reduces them by $25,000.

Also before the court is Defendants Diesel Power Gear LLC (DPG), B&W Auto, Sparks, and Joshua Stuart's Rule 60(b) Motion.[2]  In this Motion, Defendants seek relief from the court's Order granting Plaintiff UPHE its attorney fees and costs.[3]  For the reasons set forth below, Defendants' Rule 60(b) Motion is denied.

---

[1] *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1258–59 (10th Cir. 2021).  The Tenth Circuit also directed the court to exclude from the total liability any violations based on vehicles not driven in Utah, defeat parts sold to out-of-state customers, and defeat parts marketed but not sold.  *Id.* at 1259.  The court adopted the parties' Stipulation concerning these issues.  ECF 263, *Order Adopting Parties' Modified Stipulation on Facts Relating to UPHE's Standing*.

[2] ECF 248, *Defendants' Motion for Relief from a Judgment or Order Pursuant to F.R.C.P. 60 on Attorney's Fees* (*Defendants' Rule 60(b) Motion*).

[3] *Id.* at 1; ECF 230, *Memorandum Decision and Order Granting Plaintiff's Motion for Fees and Bill of Costs*.

## PROCEDURAL HISTORY

The court focuses on the facts most relevant to the SIP tampering penalties and the Rule 60(b) Motion.  A more thorough review is in the court's Bench Trial Order.[4]

**The Court Enters Judgment Against Defendants**

In January 2017, UPHE initiated this citizen suit, alleging Defendants had committed various violations of the Clean Air Act (CAA) and Utah's state implementation plan (SIP).[5] UPHE sought declaratory, injunctive, and monetary relief.[6]

Extensive litigation ensued, including a Motion to Dismiss and multiple Motions for Summary Judgment.[7]  UPHE also moved for a preliminary injunction enjoining B&W Auto and Sparks from violating the CAA.[8]  The parties stipulated to a preliminary injunction, and the court enjoined B&W Auto and Sparks from violating the CAA during the pendency of the action.[9]

After resolving the Motions for Summary Judgment, the court held a three-day bench trial.[10]  The court then issued the Bench Trial Order, detailing its findings of fact and conclusions of law.[11]  Among other things, the Order outlined Defendants' violations of the CAA and Utah's SIP, and calculated the maximum penalties for each violation.[12]  After identifying the maximum penalties, the court reduced the penalties by applying the statutory mitigating factors.[13]  The

---

[4] *See* ECF 168, *Bench Trial Order*; *see also Utah Physicians*, 21 F.4th at 1238–40.

[5] ECF 2, *Complaint*; ECF 49, *Amended Complaint*.

[6] *Amended Complaint* at 133–37.

[7] *See Bench Trial Order* at 3–4 (describing procedural history).

[8] ECF 95, *Physicians' Expedited Motion for Preliminary Injunctive Relief*.

[9] ECF 104, *Preliminary Injunction*.

[10] *See Bench Trial Order* at 4–6.

[11] *Id.* at 6–56.

[12] *Id.*

[13] *Id.* at 42–53; *see also* 42 U.S.C. § 7413(e)(1).

court's reductions resulted in the following penalties[14]:

|  | Liable Parties | Maximum Penalty | Reduced Penalty |
|---|---|---|---|
| CAA Tampering Violations | B&W Auto and Sparks | $30,000 | $25,000 |
| CAA Defeat Part Violations | B&W Auto and Sparks | $90,985 | $80,000 |
| CAA Defeat Part Marketing Violations | B&W Auto and Sparks | $111,290 | $90,000 |
|  | B&W Auto, Sparks, and DPG | $109,130 | $90,000 |
|  | DPG, Sparks, and Stuart | $1,136,090 | $227,218 |
| SIP Tampering Violations | B&W Auto and Sparks | $1,387,500 | $138,700 |
| SIP Owning or Operating Violations | B&W Auto | $114,425,625 | $114,426 |

The court entered judgment against Defendants and in UPHE's favor, reflecting the reduced penalties.[15]  The Judgment also permanently enjoined Defendants from, among other things, "removing or rendering inoperative federally-required emission control systems in diesel trucks."[16]  UPHE was awarded its litigation costs, including reasonable attorney fees.[17]

---

[14] *Bench Trial Order* at 42–53.  The court also assessed penalties against Hoskins, but he has since settled with UPHE and the United States.  ECF 237, *Order Confirming Defendant Keaton Hoskins' Satisfaction of Civil Penalty and Costs and Fees Liability, and Retention of Permanent Injunction*.  Accordingly, the court does list the penalties assessed against him.

[15] ECF 169, *Judgment in a Civil Case* ¶¶ 1–2.

[16] *Id.* ¶ 3.

[17] *Id.* ¶ 4.

**The Tenth Circuit Remands**

Defendants appealed, raising various challenges to this court's ruling.[18]  Most relevant here, they argued UPHE lacked Article III standing and this court erred in its penalty calculations.[19]  The Tenth Circuit "largely affirm[ed],"[20] but remanded for the court to consider two issues.[21]

The first issue on remand concerns Article III standing.[22]  The Circuit held UPHE lacked standing to pursue claims based on vehicles not operated in Utah, defeat parts sold to out-of-state customers, and defeat parts marketed but not sold.[23]  On remand, the parties have stipulated all trucks were operated in Utah.[24]  They have also stipulated to facts concerning the defeat parts sold to out-of-state customers or not sold.[25]  These stipulations have resolved the Article III standing issue, and they result in a reduced penalty.[26]  Specifically, the penalty assessed against DPG, Sparks, and Stuart for defeat part marketing violations is reduced from $227,218 to $27,546.[27]

The second issue on remand concerns the penalties assessed against B&W Auto and Sparks for their SIP tampering violations.[28]  The Circuit held this court "abused its discretion in weighing the seriousness-of-the-violation factor against Defendants in calculating penalties for

---

[18] *Utah Physicians*, 21 F.4th at 1240.

[19] *See id.*

[20] *Id.*

[21] *Id.* at 1259.

[22] *Id.* at 1241–49, 1259.

[23] *Id.*

[24] *Order Adopting Parties' Modified Stipulation on Facts Relating to UPHE's Standing* at 3.

[25] *Id.* at 2–3.

[26] *See id.*

[27] *Id.*

[28] *Utah Physicians*, 21 F.4th at 1255–59.

violations of the Utah SIP's anti-tampering provision."[29]  The Circuit thus vacated the penalties associated with the SIP tampering violations ($138,700) and directed this court to consider the penalties established by Congress for CAA tampering violations.[30]  The parties have briefed this issue, providing their views on the seriousness of the violations.[31]

**Defendants Allege Financial Reverses**

On remand, the court may consider "any additional information" it deems relevant, including evidence of Defendants' financial reverses.[32]  Defendants argue their financial situation justifies further penalty reductions, so the court outlines relevant events.

The court ordered Defendants to satisfy the Judgment within 120 days of its entry.[33]  Defendants did not, and UPHE filed three motions in response.  First, UPHE filed a Motion for Supplemental Discovery, seeking "all relevant documents related to income, property and other financial resources" available to satisfy the Judgment.[34]  The court granted this Motion, permitting UPHE to proceed with supplemental discovery.[35]  UPHE also filed a Motion for Bond for Costs on Appeal,[36] which the court granted.[37]  Finally, UPHE requested the court issue an order to show cause why Defendants should not be held in contempt for failing to satisfy the

---

[29] *Id.* at 1258.

[30] *Id.*

[31] ECF 256, *Defendants' Brief Outlining Their Views of the Tenth Circuit Court of Appeals' Decision and Further Proceedings* (*Defendants' Brief*); ECF 257, *Plaintiff's Cross-Brief Regarding the Seriousness of Defendants' Utah SIP Tampering Violations* (*UPHE's Brief*); ECF 259, *Plaintiff's Response to Defendants' Brief on Their Views of the Tenth Circuit's Decision* (*UPHE's Response*); ECF 260, *Defendants' Response to Plaintiff's Cross-Brief Regarding the Seriousness of Defendants' Utah SIP Tampering Violations* (*Defendants' Response*).

[32] *Utah Physicians*, 21 F.4th at 1259.

[33] *Bench Trial Order* at 57–58.

[34] ECF 188, *Plaintiff's Motion for Discovery and Supplemental Proceeding*.

[35] ECF 206, *Order for Discovery and Supplemental Proceedings*.

[36] ECF 189, *Plaintiff's Motion for FRAP Rule 7 Bond for Costs on Appeal*.

[37] ECF 205, *Order Requiring Defendants to File a Bond in Favor of the Plaintiff for Its Costs on Appeal*.

Judgment.[38]  The court denied this request without prejudice, stating UPHE could refile its Motion after completing supplemental discovery.[39]

UPHE began other collection efforts, including obtaining writs of garnishment[40] and applying for a charging order.[41]  In response to these efforts, Defendants filed an Emergency Motion to Stay Execution of Judgment.[42]  The Motion was supported by declarations from Sparks, Stuart, and Hoskins, and they "paint[ed] a grim financial picture for the Defendants and their businesses due to the COVID-19 pandemic, tax liabilities, and UPHE's collection efforts."[43]  Defendants requested the court stay execution, and in exchange they offered to make certain payments.[44]  The court granted Defendants' Emergency Motion on the condition that DPG make an initial payment of $50,000 and Defendants make the following monthly payments: $7,500 from DPG, $1,000 from Sparks, and $1,000 from Stuart.[45]

In its Opinion, the Tenth Circuit noted the conditional stay and authorized this court to reconsider penalties in light of evidence concerning Defendants' financial reverses.[46]  After the Circuit issued its Opinion, DPG and B&W Auto filed a Notice of Reopening the Issue of Impecuniosity.[47]  They did not request any relief from the court, and they further stated other

---

[38] ECF 190, *Plaintiff's Motion for Order Requiring Defendants to Show Cause*.

[39] ECF 207, *Order Denying Without Prejudice Plaintiff's Motion for Order Requiring Defendants to Show Cause*.

[40] *See, e.g.*, ECF 198, *Aug. 11, 2020 Writ of Garnishment*.

[41] ECF 203, *Plaintiff's Application for Charging Order*.

[42] ECF 219, *Defendants' Emergency Motion to Stay Execution of Judgment*.

[43] ECF 222, *Memorandum Decision and Order Conditionally Granting Defendants' Emergency Motion to Stay Execution of Judgment* (*Order Conditionally Granting Stay*) at 3.

[44] *Defendants' Emergency Motion to Stay Execution of Judgment* at 8–10.

[45] *Order Conditionally Granting Stay* at 6.  There were also conditions specific to Hoskins and a condition that "Sparks and Stuart shall not take distributions beyond their ordinary and reasonable salaries from DieselSellerz.com, LLC, B&W, and DPG."  *Id.*

[46] *Utah Physicians*, 21 F.4th at 1259.

[47] ECF 245.

Defendants were not raising the issue of impecuniosity.[48]

DPG and B&W Auto also raised their financial reverses in their briefing on remand.[49] They "intend to demonstrate to this [c]ourt that their financial situation is dire," and they requested an evidentiary hearing.[50]  However, they did not provide any evidence of their alleged financial reverses.[51]

Meanwhile, UPHE has proceeded with supplemental discovery.  During an August 2023 hearing, UPHE questioned Sparks and Stuart about their assets and liabilities.[52]  And in November 2023, UPHE requested an order authorizing the withdrawal of $311,972 in sequestered civil penalties from the court's registry.[53]  The Motion noted Defendants had stopped making their court-ordered monthly payments towards the Judgment after January 2023.[54]

The court granted UPHE's Motion, authorizing the disbursement.[55]  The court also issued an Order to Show Cause why Defendants should not be held in contempt for failing to make the payments required by the Order Conditionally Granting Stay.[56]  Defendants responded, arguing the Order Conditionally Granting Stay applied only until the appeal resolved, and it resolved in

---

[48] *Id.* at 2 ("No action is requested of the Court at this time.") ("All other defendants do not intend to reopen the issue of impecuniosity.").

[49] *Defendants' Brief* at 14.

[50] *Id.*

[51] *See id.*; *see also Defendants' Response.*

[52] ECF 292, *Aug. 24, 2023 Minute Entry*; *see also* ECF 311, *Aug. 24, 2023 Hearing Transcript.*

[53] ECF 306, *Plaintiff's Motion for Release of $311,972 from the Court Registry.*

[54] *Id.* at 1 n.1.

[55] ECF 309, *Order for Release of $311,972 from the Court Registry.*  The funds have not yet been disbursed because the court is waiting on payment information.

[56] ECF 310, *Dec. 26, 2023 Order to Show Cause.*

January 2022 when the Tenth Circuit issued its Mandate.[57]  They thus argue payments were not required after January 2022.[58]  Defendants did not acknowledge they requested the stay as an alternative to satisfying the Judgment or posting bond.[59]

In their Response, Defendants also state they "could not continue" to make the monthly payments.[60]  They explain that "DPG is no longer a functioning company" and "has filed articles of dissolution with the Utah Division of Corporations and is in the process of winding up its affairs."[61]  They also contend Sparks "has provided income information to Plaintiffs showing that his income is significantly reduced from when this case was initially filed."[62]  Defendants offered to discuss their financial situation at a hearing but also stated "no such hearing should be necessary."[63]

To demonstrate their financial distress, Defendants provided a declaration from Caleb Perkins, DPG's manager.[64]  Perkins states, "DPG faithfully paid the obligations of itself and the other Defendants to the [c]ourt treasury for as long as it reasonably could."[65]  He further states DPG "has been undergoing the process of bankruptcy" and cannot "presently make the payments required."[66]  Defendants did not provide other evidence of their alleged financial reverses,

---

[57] ECF 314, *Response to Order to Show Cause*.

[58] *Id.* at 2.

[59] *See id.*; *see also Defendants' Emergency Motion to Stay Execution of Judgment* at 2 (requesting stay "on the grounds that Defendants are unable to post the full supersedeas bond" and "will be irreparably harmed if current execution of judgment efforts [are] allowed to proceed").

[60] *Response to Order to Show Cause* at 3.

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] ECF 314-1, *Response to Order to Show Cause: Exhibit A* (*Caleb Perkins Declaration*).

[65] *Id.* ¶ 1.

[66] *Id.* ¶¶ 4, 6.

beyond DPG's statement of dissolution.[67]

Uncertain whether Defendants still wanted an evidentiary hearing, the court set a deadline for Defendants to request a hearing.[68]  Defendants responded by moving for an evidentiary hearing so they could present evidence of their financial conditions.[69]

**Defendants Seek Relief Under Rule 60(b)**

As explained, the Judgment awarded UPHE its litigation costs, including reasonable attorney fees.[70]  UPHE filed a Motion for Costs and Fees[71] and a Bill of Costs.[72]  The court granted both in part, awarding UPHE $928,602.23 in fees and costs.[73]

After the Tenth Circuit remanded, Defendants filed a Rule 60(b) Motion, seeking relief from this court's order granting UPHE its attorney fees.[74]  They argue UPHE's fees must be reduced "to reflect UPHE's limited success against each Defendant on each separate claim."[75]  This Motion is fully briefed and ripe for review.[76]

---

[67] ECF 314-2, *Response to Order to Show Cause: Exhibit B* (*Statement of Dissolution*).

[68] ECF 315, *Jan. 5, 2024 Docket Text Order*.

[69] ECF 316, *Motion for Evidentiary Hearing*.

[70] *Judgment* ¶ 4.

[71] ECF 176, *Plaintiff's Motion for Costs and Fees*.

[72] ECF 228, *Bill of Costs*.

[73] *Memorandum Decision and Order Granting Plaintiff's Motion for Fees and Bill of Costs* at 51.

[74] ECF 248, *Defendants' Rule 60(b) Motion*.  Defendants do not challenge the costs award.  *See id.*

[75] *Id.* at 3.

[76] *Defendants' Rule 60(b) Motion*; ECF 249, *Plaintiff's Opposition to Defendants' Rule 60 Motion for Relief from the Court's Judgment on Attorney's Fees* (*UPHE's Rule 60(b) Opposition*); ECF 253, *Reply Memorandum in Support of Defendants' Motion for Relief from a Judgment or Order Pursuant to F.R.C.P. Rule 60 on Attorney's Fees* (*Defendants' Rule 60(b) Reply*).

## ANALYSIS

The court first reconsiders the SIP tampering penalties.  The court then resolves Defendants' Rule 60(b) Motion.

## I.   SIP Tampering Penalties

As an initial matter, Defendants argue for an expansive reconsideration of all penalties, but the court will limit its review to the SIP tampering penalties.

Defendants argue this court "must review its imposition of penalties under both the CAA and the Utah SIP following a holistic analysis."[77]  The court disagrees.  The Circuit was explicit that its "remand for reconsideration of the SIP anti-tampering penalties . . . represent[ed] the only respect in which [it] agree[d] with Defendants' arguments regarding the penalties assessed against them."[78]  While the Circuit authorized this court to consider additional information, there was no directive to reconsider all penalties.[79]

Defendants' argument rests on their interpretation of the Opinion's final sentence, which instructs the court "to reassess appropriate penalties under the CAA and Utah's SIP in a manner consistent with this opinion."[80]  According to Defendants, this is a command to reconsider all CAA and SIP penalties.[81]  But the phrase "consistent with this opinion" clarifies the Circuit's point—the court should reconsider the SIP tampering penalties as previously described.[82]

---

[77] *Defendants' Brief* at 7.

[78] *Utah Physicians*, 21 F.4th at 1259.  Defendants appear to contend the Circuit also vacated the SIP owning or operating penalties.  *See Defendants' Brief* at 6 (stating "the Tenth Circuit Decision vacated the Utah SIP penalty assessment," including "penalties of $114,426 against B&W and $28,607 against Hoskins for owning and operating violations").  That is a misstatement of the Tenth Circuit's holding.  *Utah Physicians*, 21 F.4th at 1259.

[79] *See Utah Physicians*, 21 F.4th at 1259.  The Circuit also remanded for the court to make findings concerning standing, but as explained, that issue has been resolved through the parties' Stipulation.  *See Order Adopting Parties' Modified Stipulation on Facts Relating to UPHE's Standing*.

[80] *Defendants' Brief* at 7 (quoting *Utah Physicians*, 21 F.4th at 1259).

[81] *Id.* at 7–8.

[82] *See Utah Physicians*, 21 F.4th at 1259.

For these reasons, the court reconsiders only the SIP tampering penalties, and it begins by explaining how it arrived at its original penalty.  It will then reconsider the penalty in view of the parties' arguments and the Circuit's Opinion.  As explained below, a $25,000 reduction is warranted.

### A.  The Original Penalty

The court concluded B&W Auto violated Utah's SIP by causing the removal of 37 emission control devices or elements of emission control design from 8 trucks.[83]  The court then calculated the maximum penalty for those violations.[84]  Under the SIP, each emission control device or part removed constitutes a separate violation.[85]  Violations that occurred between January 12, 2009, and November 2, 2015, carry a penalty of $37,500 per day of violation.[86]  The court was unable to make factual findings concerning the number of days each violation occurred, so it imposed a penalty for one day for each violation.[87]  The resulting maximum penalty was $1,387,500.[88]

After calculating the maximum penalty, the court considered that penalty in light of the statutory mitigating factors.[89]  The mitigating factors are

> the size of the business, the economic impact of the penalty on the business, the violator's full compliance history and good faith efforts to comply, the duration of the violation as established by any credible evidence (including evidence other than the applicable test method), payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the

---

[83] *Bench Trial Order* at 40.  Sparks is liable as a responsible corporate officer because he was aware of the violations, had the ability to prevent them, and failed to take preventative or corrective action.  *Id.*

[84] *Id.* at 38–40.

[85] Utah Admin. Code R307-201-2; *see also Utah Physicians*, 21 F.4th at 1238 n.6; 42 U.S.C. § 7413(b).

[86] 42 U.S.C. § 7413(b); *id.* § 7413(e)(2); 40 C.F.R. § 19.4 tbl.1.

[87] *Bench Trial Order* at 40.

[88] *Id.* (37 × $37,500 = $1,387,500).

[89] *Id.* at 42–48, 52.

seriousness of the violation.[90]

The court considered these factors and concluded two weighed in favor of mitigation.[91] First, B&W Auto and Sparks likely could not pay the full penalty along with the other penalties assessed.[92] Second, B&W Auto and Sparks received a relatively small direct economic benefit from the violations.[93]

The remaining factors weighed against mitigation, including seriousness of the violations.[94] When evaluating the seriousness of the violations, the court weighed the following factors: "(1) the number of violations; (2) the duration of noncompliance; (3) the significance of the violation (degree of exceedance and relative importance of the provision violated); and (4) the actual or potential harm to human health and the environment."[95]

Considering all mitigating factors together, the court reduced the penalty from $1,387,500 to $138,700 (a 90 percent reduction).[96]

## B. Reconsidering the Penalty

The Tenth Circuit directed this court to reconsider the seriousness of the SIP tampering violations, with particular attention to the penalty authorized by Congress for CAA tampering violations.[97] The court may also consider "any additional information" it deems relevant.[98] Below, the court reconsiders the SIP tampering violations—starting with the CAA framework

---

[90] 42 U.S.C. § 7413(e)(1).

[91] *Bench Trial Order* at 52.

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.* at 47 (quoting *United States v. Gulf Park Water Co.*, 14 F. Supp. 2d 854, 859 (S.D. Miss. 1998)).

[96] *Id.* at 52.

[97] *Utah Physicians*, 21 F.4th at 1258.

[98] *Id.* at 1259.

and then moving to additional arguments raised by the parties.  Although the court is reconsidering the penalty it will impose, the maximum starting penalty remains the same: $1,387,500.[99]

### 1. CAA Tampering Penalty

The Tenth Circuit directed this court to consider "the judgment of Congress regarding the severity of the tampering violations."[100]  The Circuit explained that the penalty authorized by Congress is an important signpost "of the seriousness with which society regards the offense."[101]

In the CAA, Congress set the maximum penalty for tampering with a motor vehicle at $2,500 per motor vehicle.[102]  The penalty has been adjusted for inflation to $3,750 per motor vehicle.[103]  If the court adopted this framework for the SIP tampering violations, the maximum penalty would be $30,000.[104]  This is significantly less than the $1,387,500 maximum penalty under the SIP.  However, the court notes the reduced penalty it assessed ($138,700) is much closer to the maximum CAA penalty than the maximum SIP penalty.[105]

A notable difference between the CAA and Utah's SIP is that the SIP considers each

---

[99] Although the Tenth Circuit remanded for this court to reconsider mitigating factors, nothing in the Opinion suggests this court erred in its initial calculation of the maximum penalty.  *See id.* at 1258–59.  Moreover, the SIP has the force of federal law, so the court cannot disregard its penalty structure.  *See id.* at 1237.

[100] *Id.* at 1258.

[101] *Id.* (quoting *Frank v. United States*, 395 U.S. 147, 148 (1969)).

[102] 42 U.S.C. § 7524(a).

[103] 40 C.F.R. § 19.4 tbl.1.  The Tenth Circuit identified $2,500 as the penalty set by Congress.  *Utah Physicians*, 21 F.4th at 1258.  Here, the court will use the inflation-adjusted amount as that is what it would use if it were calculating CAA tampering violations.  *See Bench Trial Order* at 34 (calculating CAA tampering penalties using the inflation-adjusted amount).  Defendants also used the inflation-adjusted amount when arguing the court should apply the CAA framework.  *See, e.g.*, *Defendants' Brief* at 6–7, 9–10.

[104] 8 × $3,750 = $30,000.  The 37 tampering violations stemmed from 8 trucks.  *Bench Trial Order* at 40.

[105] The difference between the maximum CAA penalty and the penalty imposed is $108,700, while the difference between the maximum SIP penalty and penalty imposed is $1,248,800.

device or part removed a violation.[106]  So under the SIP, a vehicle with multiple devices removed results in a higher penalty than a vehicle with one device removed.[107]  In the court's judgment, the SIP's deliberate instruction to view each device removed as a separate violation should not be overlooked.  Accordingly, the court also considers the CAA penalty applied per device, as opposed to per motor vehicle.[108]  Applying the CAA penalty per device, the penalty would be $138,750—$50 more than the penalty actually imposed.[109]  This weighs against further reduction.

Importantly, the Tenth Circuit's instruction to consider the CAA penalty reflects its observation that the EPA is primarily responsible for mobile sources of pollution (e.g., motor vehicles), while the states are primarily responsible for stationary sources (e.g., factories).[110]  Given these differences, the Circuit commented, "One might infer that when Congress set the penalty for violation of a SIP, it was contemplating violations by power plants and factories, not motor vehicles."[111]

The differences between mobile and stationary sources may very well justify imposing

---

[106] Utah Admin. Code R307-201-2.

[107] *Id.*

[108] Defendants argue the Circuit instructed this court to apply the CAA penalty per vehicle, not per device. *Defendants' Brief* at 8.  But the Tenth Circuit did not order this court to adopt a specific framework. *Utah Physicians*, 21 F.4th at 1258.  Rather, it directed this court to consider the CAA tampering penalties. *Id.*  For the reasons explained above, the court concludes it is appropriate to consider the CAA penalties applied both per vehicle and per device.

[109] $37 \times \$3,750 = \$138,750$.  The court effectively imposed a $3,749 penalty per device ($138,700 \div 37 = \$3,748.65$).

[110] *Utah Physicians*, 21 F.4th at 1235.  Although the EPA is primarily responsible for mobile sources, states may "control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles."  42 U.S.C. § 7543(d); *see also Utah Physicians*, 21 F.4th at 1257 ("To be sure, a SIP may, as Utah's does, establish further requirements on motor vehicles (although only after sale to the ultimate purchaser), but the CAA does not generally require them to.").

[111] *Utah Physicians*, 21 F.4th at 1257.

higher penalties for stationary-source violations.[112]  However, those differences do not necessarily justify punishing mobile-source violations per vehicle and not per device.  And as explained, if the CAA penalty is applied per device, the resulting amount is slightly larger than the reduced penalty imposed.  Accordingly, while the court considers the differences between mobile and stationary sources, in its view, the reductions already accounted for those differences.

Having considered the CAA tampering penalty authorized by Congress, the court concludes it alone does not warrant further reduction.[113]

### 2.  Penalty Authorized by Utah Legislature

UPHE argues the court should increase the SIP tampering penalties because the Utah Legislature authorized a "$10,000 maximum penalty for violations of the state's anti-tampering rule."[114]  While an upward adjustment is not warranted, the court does consider the penalty authorized by the Utah Legislature.

---

[112] *Id.* at 1258 ("But the fact that a factory or an industrial plant contaminating the atmosphere (and it cannot be gainsaid that such stationary polluters are the bread-and-butter of a SIP) may merit a much higher penalty is hardly ground for imposition of similar penalties for tampering with an automobile emission system.").

[113] Although somewhat unclear, Defendants appear to argue their total maximum penalty for all violations should be $112,500.  *See Defendants' Brief* at 9–10 (contending their calculation "would bring a maximum penalty of $112,500, 'no matter what the aggravating factors,' which is obviously a tremendous reduction from the $851,451 initially imposed").  Defendants arrive at this amount by applying the CAA tampering penalty to the number of trucks B&W Auto and Sparks owned or operated with inoperable emission control systems. *Id.* ($3,750 × 30 = $112,500).  As explained, the court is not reconsidering all penalties.  Furthermore, nothing in the Tenth Circuit's Opinion suggested the court should reduce all violations to the number of vehicles with inoperable emission control systems and then blanketly apply the CAA tampering penalties.

[114] *UPHE's Brief* at 5.

Under Utah law, the maximum penalty for SIP tampering violations is "$10,000 per day for each violation."[115]  Applying that framework here, the maximum penalty would have been $370,000[116]—$231,300 more than the reduced penalty imposed.  This suggests further reduction is not warranted.

Defendants argue the Tenth Circuit did not direct this court to consider state law and state law is irrelevant because the SIP is federal law.[117]  Defendants are correct that the Circuit did not direct this court to consider state law.  But the Circuit did authorize this court to consider "any additional information" it deems relevant.[118]  So this court is not prohibited from considering state law if relevant, and the state penalty is relevant because it indicates the seriousness of Defendants' violations.

The Tenth Circuit held that Congress's authorized penalty is an objective indicator "of the seriousness with which society regards the offense."[119]  Likewise, the Utah Legislature's authorized penalty objectively indicates the seriousness of Defendants' violations.  Although SIPs are federal law, they are first adopted and submitted by the states for EPA approval.[120]

---

[115] Utah Code § 19-2-115(2)(a).  In its Opinion, the Tenth Circuit explained, "Utah state law also provides for penalties of up to $5,000 per day for any violation of the State's Environmental Quality Code or the lawful orders or rules adopted thereunder."  *Utah Physicians*, 21 F.4th at 1238 (citing Utah Code § 19-1-303); *see also Defendants' Response* at 3.  However, the $5,000 penalty does not apply to other chapters that "provide for other specific enforcement procedures and penalties."  Utah Code § 19-1-303(4).  Title 19, Chapter 2 (the Air Conservation Act) states, "A person who violates this chapter, or any rule, order, or permit issued or made under this chapter is subject in a civil proceeding to a penalty not to exceed $10,000 per day for each violation."  *Id.* § 19-2-115(2)(a).  The Air Conservation Act authorizes Utah's Air Quality Board to adopt the SIP.  *Id.* § 19-2-104(1)(a); *see also* Utah Admin. Code R307-110-2 (stating the SIP was amended "pursuant to Section 19-2-104").  Thus, the court considers the penalty permitted by Utah's Air Conservation Act.

[116] 37 × $10,000 = $370,000.

[117] *Defendants' Response* at 3–5.

[118] *Utah Physicians*, 21 F.4th at 1259.

[119] *Id.* at 1258 (quoting *Frank*, 395 U.S. at 148).

[120] 42 U.S.C. § 7410; *see also Utah Physicians*, 21 F.4th at 1235.

Thus, each SIP reflects the submitting-state's individual needs.[121]  This process accomplishes Congress's directive that "[e]ach State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State."[122]  Because Utah's SIP is designed by Utah to address Utah's air quality, the Utah Legislature's authorized penalty for violating its SIP is a relevant signpost.  Accordingly, the state penalty merits at least some consideration.

Nevertheless, the court agrees with Defendants that an upward adjustment is not warranted.  Although the state penalty is a helpful indicator, it is not federal law.  Nor is it compelling enough to justify an increased penalty, especially given the CAA penalty the court must also consider.

### 3.  Double Penalties

So far, the court has concluded no adjustment to the reduced penalty is justified.  But as explained below, the court concludes a $25,000 reduction is warranted because the CAA and SIP tampering violations arose from the same conduct.

After trial, Defendants objected to the court penalizing them for SIP tampering violations, arguing the penalties were "duplicative of the penalties imposed for their [CAA] tampering violations."[123]  The court rejected this argument.[124]  Defendants raised this argument on appeal, and the Circuit did not resolve the issue.[125]  Defendants have presented the argument again on

---

[121] *See* 42 U.S.C. § 7407(a); *see also US Magnesium, LLC v. EPA*, 690 F.3d 1157, 1159 (10th Cir. 2012) ("States create their own SIPs to bring nonattainment areas into compliance with the NAAQS and to prevent deterioration of air quality in attainment areas.").

[122] 42 U.S.C. § 7407(a).

[123] *Bench Trial Order* at 39.

[124] *Id.*

[125] *Utah Physicians*, 21 F.4th at 1257 (declining to resolve this issue because of the remand on other grounds).

remand, contending the CAA penalties "should be the only fine imposed" because the "SIP represents an alternate theory of recovery."[126]

The Tenth Circuit did not reverse this court's determination that the SIP penalty is not a double penalty.[127] Nor did it direct this court to reconsider that issue. Accordingly, this court is not going to revisit its prior ruling. Nevertheless, the court does consider—as a mitigating factor—that the CAA and SIP tampering violations arose from the same conduct. Because they arose from the same conduct, the court concludes it is appropriate to reduce the SIP tampering penalties by $25,000—the penalty already imposed for the CAA tampering violations. But to be clear, the court is not deciding as a matter of law that it cannot impose both CAA and SIP tampering penalties.

Because of the $25,000 reduction, B&W Auto and Sparks are jointly and severally liable for their Utah SIP tampering violations in the amount of $113,700.

### 4.   Specific Versus General Penalties

Defendants ask the court to consider "that the Utah SIP penalties, which encompass a broader area of pollution and are primarily targeted at stationary source pollution, should not be imposed where the CAA imposes more specific penalties for the tampering violations at issue in this case."[128]

---

[126] *Defendants' Brief* at 12.

[127] *Utah Physicians*, 21 F.4th at 1257.

[128] *Defendants' Brief* at 12.

Defendants raised this argument on appeal, but the Tenth Circuit did not reverse on this ground.[129]  Nor did the Circuit instruct this court to reconsider the issue.[130]  Accordingly, the court declines to revisit this issue.

### 5.  CAA Penalties and Standing

Defendants also argue this court should reduce the penalties "to account for the nominal amount of driving of vehicles that occurred within the Wasatch front, as those are the only vehicles for which UPHE has standing to pursue."[131]  For the reasons explained below, this argument does not merit further reduction.

It is unclear whether Defendants are arguing *all* penalties need to be reevaluated for standing based on how much the vehicles were driven.[132]  If that is their argument, the court declines to reconsider all penalties because that is not required by the Tenth Circuit's Opinion. The Circuit directed this court to exclude from the total liability any penalties based on vehicles not driven in Utah.[133]  In doing so, it explained UPHE has established standing "[i]f the vehicle was driven, however little, in the Salt Lake City area."[134]  But there was no directive to reconsider standing based on how frequently the vehicles were driven in Utah.[135]  So the court declines to reconsider all penalties based on how frequently the vehicles were driven.

However, Defendants may be arguing the vehicles' limited mileage demonstrates their SIP tampering penalties were not serious.  If that is their argument, it still does not warrant

---

[129] *Utah Physicians*, 21 F.4th at 1257.

[130] *See id.*

[131] *Defendants' Brief* at 13.

[132] *See id.* at 12–13.

[133] *Utah Physicians*, 21 F.4th at 1259.

[134] *Id.* at 1248.

[135] *See id.* at 1241–49, 1259.

further reduction.  When this court calculated the SIP tampering penalties, it assumed each violation had occurred for one day only.[136]  So the court did not impose the SIP tampering penalties "for the entire life of the vehicles or parts in question," as Defendants argue.[137]  And regardless, the Tenth Circuit did not instruct this court to reconsider the seriousness of the SIP tampering violations in view of how frequently Defendants drove the vehicles.[138]  Accordingly, the vehicles' limited mileage does not merit further reduction.

### 6.  Environmental Impact

Defendants ask this court to further reduce the penalties because their trucks at most "contributed less than one pound of particulate matter into the environment."[139]  Conversely, UPHE argues the SIP tampering penalty should "substantially increase" given the "substantial excess emissions caused by Defendants' tampering."[140]

The court previously found Defendants' "violations were numerous, occurred over a long period of time, significantly increased the toxic pollutants emitted by diesel trucks, and pose a serious risk to human health."[141]  It also found "Defendants' actions caused a dramatic increase in the NOx and particulate matter emitted by certain diesel trucks along the Wasatch Front."[142]  The Tenth Circuit did not disturb these findings or otherwise suggest the court needed to

---

[136] *Bench Trial Order* at 40 ("Although a penalty of $37,500 should be assessed 'per day for each violation,' the court is unable to make a factual finding concerning the number of days each violation occurred.  The court therefore imposes the $37,500 penalty for *one day* of thirty-seven (37) separate Utah SIP tampering violations." (emphasis added)).

[137] *Defendants' Brief* at 13.  Defendants also argue "the Trial Court Order failed to consider the amount of miles driven by Defendants of the applicable vehicles within the Wasatch Front, not including any discussion of that fact in its opinion."  *Id.*  That is incorrect—the court reduced the SIP owning or operating penalties in part because B&W Auto "did not operate the tampered trucks for long periods of time."  *Bench Trial Order* at 53.

[138] *Utah Physicians*, 21 F.4th at 1257–1258.

[139] *Defendants' Brief* at 10.

[140] *UPHE's Brief* at 7–8.

[141] *Bench Trial Order* at 49.

[142] *Id.* at 55.

reevaluate the environmental impact of Defendants' violations.[143]   The court thus declines to reassess the environmental impact of Defendants' violations.

### 7.   Financial Reverses

Finally, DPG and B&W Auto argue their financial situation merits further penalty reduction.[144]   In the supplemental briefing, they requested a court hearing, stating they "intend to demonstrate to this [c]ourt that their financial situation is dire, particularly in light of the ongoing payments ordered by this [c]ourt."[145]   Since making that request in May 2022, DPG and B&W Auto have not actively pursued a hearing.[146]   There was a hearing before Judge Pead in August 2023, but UPHE requested that hearing because Defendants had not provided court-ordered financial information.[147]   Moreover, the court observes that at the hearing, Defendants' answers were often incomplete or vague.[148]

For these reasons, the court has little financial information to review from DPG and B&W Auto.   And reviewing the information it currently has—namely Defendants' supplemental briefing, testimony at the August 2023 hearing, and Response to the Order to Show Cause—the court is not persuaded further reduction is merited.   This is particularly true with respect to B&W Auto because the court already discounted penalties after considering its ability to pay.[149]

---

[143] *See Utah Physicians*, 21 F.4th at 1258–59; *see also id.* at 1259 ("In all other respects, the district court's careful evaluation of the factors evinced the essence of judicial discretion.").

[144] *Defendants' Brief* at 14.

[145] *Id.*

[146] Although Defendants recently requested an evidentiary hearing, they did so at the court's prompting.  *See Jan. 5, 2024 Docket Text Order*; *Motion for Evidentiary Hearing*.

[147] ECF 281, *Plaintiff's Motion for Oral Examination*; ECF 284, *Order Re Plaintiff's Motion for Oral Examination*.

[148] *See, e.g.*, *Aug. 24, 2023 Hearing Transcript* at 23, 28–29, 39, 75–77.

[149] *Bench Trial Order* at 52–53.

But the Tenth Circuit did authorize this court to reconsider Defendants' financial reverses, and DPG and B&W Auto have requested an opportunity to provide relevant information.  Thus, in a separate Order, the court sets a timeline for DPG and B&W Auto to provide relevant documents.  If they satisfy the Order's conditions, the court will hold an evidentiary hearing and reconsider penalties[150] assessed against DPG and B&W Auto in view of the evidence presented.[151]

*   *   *

In sum, B&W Auto and Sparks are jointly and severally liable for their SIP tampering violations in the amount of $113,700.  The court does not reduce any other penalties based on the factors discussed above.

## II.   Rule 60(b) Motion

Defendants seek relief under Rule 60(b) from the court's Order Granting Plaintiff's Motion for Fees and Bill of Costs.[152]  That Order held Defendants jointly and severally liable for $928,602.23 in fees and costs.[153]

Under Rule 60(b) of the Federal Rules of Civil Procedure, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding."  As the moving party, Defendants bear the burden of showing they are entitled to this extraordinary relief.[154]

---

[150] Although this Memorandum Decision and Order is limited to reconsidering the SIP tampering penalties, the court will reconsider all penalties assessed against DPG and B&W Auto in light of their alleged financial reverses.  But it will not hear other arguments concerning the penalties.

[151] Concurrent with this Memorandum Decision and Order, the court is issuing an Amended Judgment.  If DPG and B&W Auto later persuade the court further reductions are warranted because of their financial reverses, the court will further amend the Judgment.

[152] *Defendants' Rule 60(b) Motion*.

[153] *Memorandum Decision and Order Granting Plaintiff's Motion for Fees and Bill of Costs* at 51.

[154] *See Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990).

Defendants move under Rule 60(b)(5), arguing "the judgment for attorney fees was based upon an earlier judgment that has been reversed or vacated in part."[155]  They present two arguments.  First, they contend the attorney fee award should be reduced because it is excessive compared to UPHE's success.[156]  Second, they argue the court should apportion fees among Defendants by liability.[157]  The court addresses each argument in turn, concluding neither justifies relief.

### A.  Reduced Fee Award

Defendants first argue the court should reduce the fee award to reflect UPHE's results obtained post appeal.[158]  For the reasons explained below, Defendants have not shown they are entitled to this relief.

Determining whether a fee award is proportionate to the results obtained involves two steps.[159]  First, the court must decide whether the plaintiff's successful and unsuccessful claims are related.[160]  If they are unrelated, they should "be treated as if they had been raised in separate lawsuits," and no fee should be awarded for the unsuccessful claims.[161]  If the claims are related, the court then decides if "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."[162]

---

[155] *Defendants' Rule 60(b) Motion* at 3; *see also* Fed. R. Civ. P. 60(b)(5).  Defendants also quote Rule 60(b)(4) in their Motion.  *Defendants' Rule 60(b)(6) Motion* at 3.  Rule 60(b)(4) applies when "the judgment is void."  "For a judgment to be void under Rule 60(b)(4), it must be determined that the rendering court was powerless to enter it."  *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir. 1979).  Defendants have not argued this court was powerless to enter any judgment.  Accordingly, Rule 60(b)(4) is inapplicable.

[156] *Defendants' Rule 60(b) Motion* at 6–9.  Defendants do not ask the court to reduce the cost award.  *See id.*

[157] *Id.* at 10–14.

[158] *Defendants' Rule 60(b) Motion* at 6–9.

[159] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

[160] *Id.*

[161] *Id.* at 435.

[162] *Id.* at 434.

Turning to the first question, all claims are related, even those UPHE did not succeed on. The Tenth Circuit held UPHE did not have standing to collect penalties based on vehicles not driven in Utah, defeat parts marketed but not sold, and defeat parts sold to out-of-state customers.[163]  These penalties have been excluded, resulting in a $199,672 penalty reduction.[164]  But as UPHE points out, these penalties "are simply subsets of Defendants' penalties for selling defeat parts violations . . . that UPHE does have standing to collect."[165]  Moreover, "the defeat parts violations were pled in the same three causes of action, relied on the same statutory prohibition, and were based on a common set of facts."[166]  So although UPHE does not have standing to collect some of its penalties, those penalties are plainly related to UPHE's successful claims.[167]

Because UPHE's claims are related, the court must next decide whether the fee award is reasonable compared to UPHE's success.[168]  "Where a plaintiff has obtained excellent results, [its] attorney should recover a fully compensatory fee."[169]  In this scenario, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in

---

[163] *Utah Physicians*, 21 F.4th at 1241–49.  The Tenth Circuit also remanded for this court to reconsider the seriousness of Defendants' SIP tampering violations.  *Id.* at 1258–59.  As explained, the court determined a $25,000 reduction of those penalties is warranted.  *See supra* Section I.  Despite that reduction, UPHE was still successful on its claim—Defendants' penalties were merely reduced based on mitigating factors.

[164] $227,218 – $27,546 = $199,672.

[165] *UPHE's Rule 60(b) Opposition* at 6.

[166] *Id.*; *see also Hensley*, 461 U.S. at 434–35 (explaining "distinctly different claims" as those "based on different facts and legal theories"); *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) (holding claims were related "because they involved a common core of facts as well as closely linked legal theories").

[167] Defendants do not appear to argue the claims are unrelated.  *See Defendants' Rule 60(b) Motion* at 7 (outlining the two questions and then explaining how to proceed "[w]hen the answer to the first question is no"); *see also id.* at 7–9 (focusing on proportionality, not whether the claims were related); *but see id.* at 2 ("UPHE's Fees are not reasonable, proportional, and substantially related to the causes of action UPHE prevailed on.").

[168] *See Hensley*, 461 U.S. at 434.

[169] *Id.* at 435.

the lawsuit."[170]  But if the "plaintiff has achieved only partial or limited success," a full fee

award may be excessive.[171]

UPHE has achieved an excellent result, even considering the reduced penalties on

remand.  At trial, UPHE pursued nineteen causes of action, obtaining penalty and injunctive

relief on eighteen of them.[172]  The penalties totaled $851,451, and Defendants are permanently

enjoined from

> (1) removing or rendering inoperative federally-required emission control systems
> in diesel trucks; (2) installing parts or components in diesel trucks that bypass,
> defeat, or render inoperative federally-required emission control systems;
> (3) offering to sell or selling defeat parts; (4) removing or making inoperable the
> federally-required emission control system, device, or any part thereof; and
> (5) owning or operating vehicles with disabled emission-control systems."[173]

Although the Tenth Circuit remanded, there has been no effect on the permanent

injunction.  UPHE has thus "achieved its fundamental objective in this case: permanently

stopping Defendants' illegal tampering of vehicles, illegal sales of defeat parts, and illegal

operation of tampered vehicles."[174]  Defendants' penalties have decreased by $224,672,[175] but

$25,000 of that reduction was to account for UPHE's success on other claims—not because

UPHE was unsuccessful.[176]  And finally, UPHE's success has conferred public benefits,

including "advancing enforcement of the [Clean Air] Act," "deterring others from following

---

[170] *Id.*

[171] *Id.* at 436.

[172] *See Bench Trial Order.*

[173] *Id.* at 57–58.

[174] *UPHE's Rule 60(b) Opposition* at 4; *see also Robinson*, 160 F.3d at 1282–84 (concluding plaintiffs achieved
their principal goal—removing a religious emblem from the city's seal—and reversing the district court for reducing
plaintiffs' fees, despite the fact that they failed on three claims and received only $1 in nominal damages against
each defendant).

[175] $25,000 + $199,672 = $224,672.

[176] *See supra* Section I.

Defendants' example," and contributing $90,000 toward a related mitigation project.[177]  For these reasons, UPHE has obtained an excellent result, and its success is proportional to the fee award.

Nevertheless, Defendants argue UPHE's success is not excellent compared to the amount UPHE sought in its complaint—$117 million.[178]  Quoting *Farrar v. Hobby*, they contend the court must "give primary consideration to the amount of damages awarded as compared to the amount sought."[179]  However, Defendants overlook the fact that their penalties were substantially reduced based on mitigating factors, notably their inability to pay.[180]  For example, the court first calculated B&W Auto's SIP owning or operating penalties at $114,425,625, and that was the reduced amount the court applied because the literal penalties were "astronomical."[181]  The court then reduced that amount further, recognizing "a $114 million penalty would be ruinous for B&W Auto."[182]  Consequently, the difference between the penalties assessed and the amount sought is not sufficient reason to reduce the fee award here.

Defendants also fault UPHE for failing "to mention that all injunctive relief was essentially conceded by Defendants upon [UPHE's] initiation of this lawsuit."[183]  But over 60 days before filing suit, UPHE notified Defendants of the alleged violations and their intent to sue.[184]  This did not resolve the dispute, so UPHE filed suit and moved for a preliminary

---

[177] *UPHE's Rule 60(b) Opposition* at 2; *Bench Trial Order* at 57.

[178] *Defendants' Rule 60(b) Motion* at 7–9.

[179] *Id.* at 7 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *see also Defendants' Rule 60(b) Reply* at 2.

[180] *See Bench Trial Order* at 52–53.

[181] *Id.* at 42.

[182] *Id.* at 53.

[183] *Defendants' Rule 60(b) Reply* at 3.

[184] *Amended Complaint* ¶¶ 5–7; ECF 85, *Defendants' Answer to Amended Complaint* ¶¶ 4–5.  Notice is required by 42 U.S.C. § 7604(b)(1)(A).

injunction, which Defendants eventually stipulated to.[185]  Given UPHE's efforts, Defendants'

stipulation does not negate UPHE's success in obtaining a permanent injunction.

And finally, Defendants contend UPHE over-litigated the case because it ultimately

stipulated it did not have standing to pursue some of the defeat part marketing violations.[186]

However, UPHE pursued those claims in good faith, and the majority of the penalties were

unaffected by the Tenth Circuit's ruling on standing.[187]  UPHE thus did not over-litigate the

case.[188]

For these reasons, Defendants have not shown they are entitled to relief under Rule

60(b)(5), and fee award is not reduced.[189]

### B.  Apportioned Fees

Defendants argue the court should apportion fees among them, rather than holding them

jointly and severally liable for the fee award.[190]  As explained below, Defendants have not

shown they are entitled to this relief.

As an initial matter, Defendants' argument is unpersuasive because they could have

raised it previously but did not.  A "Rule 60(b) motion is not an appropriate vehicle to advance

---

[185] *Physicians' Expedited Motion for Preliminary Injunctive Relief*; *Preliminary Injunction*.

[186] *Defendants' Rule 60(b) Motion* at 5; *Defendants' Rule 60(b) Reply* at 4.

[187] *See Hensley*, 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.").

[188] *See Robinson*, 160 F.3d at 1283 ("[W]hen a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award.").

[189] Defendants quoted Rule 60(b)(6) once, but they made no effort to argue the catchall provision applies.  *See Defendants' Rule 60(b)(6) Motion* at 3.  "Parties moving for relief under Rule 60(b) cannot simply throw in subsection (6) without any new arguments and expect to obtain" relief.  *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1293 (10th Cir. 2005).  For this reason, Defendants are not entitled to relief under Rule 60(b)(6).  And regardless, a Rule 60(b)(6) motion may not be "premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)."  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988).  Because Defendants argue "the judgment for attorney fees was based upon an earlier judgment that has been reversed or vacated in part," their Motion was properly brought under only Rule 60(b)(5).  *See Defendants' Rule 60(b)(6) Motion* at 3.

[190] *Defendants' Rule 60(b)(6) Motion* at 10–13.

new arguments or supporting facts that were available but not raised at the time of the original argument."[191]  In its Motion for Costs and Fees, UPHE requested "an order finding the Defendants jointly and severally liable."[192]  Defendants opposed the Motion, but they did not object to joint and several liability.[193]  Because Defendants could have argued against joint and several liability earlier but did not, that argument does not justify relief now.[194]

However, Defendants argue apportioning UPHE's fees "did not even become an issue until Keaton Hoskins settled," which happened after the fee award.[195]  But Defendants would have known the disadvantages of joint and several liability before, and they could have argued for apportionment even if no Defendant had settled.  Furthermore, Defendants ask the court to apportion fees among the various Defendants—not just between Hoskins and all other Defendants.[196]  This suggests Defendants are not opposing joint and several liability simply because Hoskins settled.[197]

Regardless, Defendants are not entitled to relief under Rule 60(b)(5).  Defendants did not appeal the fee award, and the Tenth Circuit's Opinion did not in any way affect Defendants' joint and several liability.  So although the Circuit remanded for reconsideration of some issues, Defendants have not justified revisiting this aspect of the fee award.[198]

---

[191] *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016).

[192] *Plaintiff's Motion for Fees and Costs* at 10.

[193] *See* ECF 180, *Defendants' Opposition to UPHE's Motion for Fees and Costs*.

[194] *See Lebahn*, 813 F.3d at 1306.

[195] *Defendants' Rule 60(b) Reply* at 4–5.

[196] *Defendants' Rule 60(b) Motion* at 13.

[197] *See id.* at 11 (making arguments concerning DPG, B&W Auto, Sparks, and Stuart).

[198] *See Manzanares v. City of Albuquerque*, 628 F.3d 1237, 1241 (10th Cir. 2010) ("The district court need not, however, set aside a judgment simply because it was based on a prior judgment that has later been reversed.").  Defendants are not entitled to Rule 60(b)(6) relief based on this argument either, for the same reasons previously discussed.  *See supra* note 189.

**CONCLUSION**

For the reasons provided, B&W Auto and Sparks are jointly and severally liable for their SIP tampering violations in the amount of $113,700.  Defendants' Rule 60(b) Motion[199] is DENIED.

SO ORDERED this 19th day of January 2024.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[199] ECF 248.