IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT INC., <br><br> Plaintiff, <br><br> v. <br><br> DIESEL POWER GEAR LLC, et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER OF CONTEMPT** <br><br> Case No. 2:17-cv-00032-RJS-DBP <br><br> District Judge Robert J. Shelby <br><br> Chief Magistrate Judge Dustin B. Pead |

Over the course of this near decade-long litigation, Defendant David W. Sparks has repeatedly and willfully violated this court's orders. As the court explains below, the most recent two findings of contempt relate to Defendant Sparks's failure to pay fees owed to Plaintiff and his violations of subsequent orders seeking to coerce his compliance.[1] Based on the parties' submissions, the court finds Defendant Sparks has both failed to purge these prior contempt findings and engaged in new conduct warranting an additional finding of contempt. And having exhausted all other mechanisms to ensure his compliance with court orders, the court will order Defendant Sparks incarcerated until he complies with the specific requirements necessary to purge his contempt.[2]

---

[1] The court also found Defendant Sparks in contempt on November 11, 2019, for failure to attend trial. Dkt. 150, *Minute Entry*. But the court later found Defendant Sparks purged this instance of contempt by submitting evidence that a medical issue prevented him from attending trial. Dkt. 155, *Docket Text Order*. The court does not rely on the 2019 contempt finding for the purpose of this Memorandum Decision and Order of Contempt.

[2] This Memorandum Decision and Order of Contempt only concerns Defendant Sparks's conduct. The court notes that the other Defendants in this action—Diesel Power Gear LLC, B&W Auto LLC, and Joshua Stuart—also remain in contempt for their failures to comply. *See* Dkt. 388, *Memorandum Decision and Order* (*First Order of Contempt*).

# BACKGROUND

The court exercises ancillary jurisdiction to enforce its orders and Judgment.[3]  Given the complex history of this case, the court briefly recites the facts relevant to the misconduct currently at issue.

## First Contempt Finding

After entering Judgment against Defendants on March 10, 2020,[4] the court issued on January 26, 2021, an Order holding Defendants Sparks, Diesel Power Gear LLC, B&W Auto LLC, and Joshua Stuart jointly and severally liable to Plaintiff for fees and costs totaling $843,602.23 (Fees Order).[5]  Over three years later, after Defendants had failed to pay any amount to Plaintiff under the Fees Order, the court found all Defendants in contempt on June 24, 2024 for their noncompliance.[6]

---

[3] *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("Without jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" (quoting *Riggs v. Johnson County*, 6 Wall. 166, 187 (1868)).

[4] Dkt. 169, *Judgment in a Civil Case*.  On January 19, 2024, the court issued an Amended Judgment.  *See* Dkt. 318, *Amended Judgment*.

[5] Dkt. 230, *Memorandum Decision and Order Granting Plaintiff's Motion for Fees and Bill of Costs* (*Fees Order*). Originally, the court held all Defendants, including then-Defendant Keaton Hoskins, jointly and severally liable for $928,602.23.  *Id.* at 51.  However, Hoskins settled with Plaintiff, which resolved his liability and reduced the remaining Defendants' liability by $85,000.  Dkt. 237, *Order Confirming Defendant Keaton Hoskins' Satisfaction of Civil Penalty and Costs and Fees Liability, and Retention of Permanent Injunction*.

[6] *First Order of Contempt*.

<u>First Enforcement Order</u>

On January 23, 2025, Judge Pead entered an Order seeking to enforce the Fees Order

(First Enforcement Order).[7]  Sections A and B of the First Enforcement Order required

Defendants, including Defendant Sparks, to produce various documents and information to

Plaintiff.[8]  This included, under Section A:

1.  All current and former operating agreements, including all applicable amendments,
    for the following LLCs in which any Defendant has a financial interest:

    - 1955 Redwood LLC
    - 4X4 Anything LLC
    - Blue Collar Credit LLC
    - B&W Auto LLC
    - Da Rezz LLC
    - Diesel Power Gear LLC
    - Dieselsellerz.com LLC
    - FLT Services LLC
    - GI Sparks LLC
    - Heavydsparks LLC
    - Legion Holdings LLC
    - Sellerz LLC
    - SMCO Management Group LLC
    - Solid Choice LLC
    - Any other LLCs in which any Defendant has a financial interest

2.  All articles of incorporation, by-laws, and current shareholders of all corporations in
    which any Defendant has a financial interest, including:

    - EMBR Motors, Inc.

---

[7] Dkt. 417, *Order on Motion for Relief to Defendants' Established Contempt of Fees Order* (*First Enforcement Order*).  Defendants failed to timely object to the Enforcement Order but later moved to vacate it as unlawful.  Dkt. 440, *Emergency Motion for Relief from Orders in Dkt 417, 418, 426, 427, 431, and 432 as well as Staying Collection Efforts*.  This Motion failed to offer any compelling reasons to vacate the First Enforcement Order. However, the court modified First Enforcement Order to explicitly allow for Defendants to "incur reasonable living expenses" without the court's approval.  Dkt. 491, *Order* (*Second Enforcement Order*) at 3; Dkt. 505, *Memorandum Decision and Order* at 4–5 (same).  The court also provided Defendants an additional opportunity to brief why the modified First Enforcement Order remained unlawful.  *Second Enforcement Order* at 3.  Defendants' responsive submission again failed to offer any compelling reason to vacate the modified First Enforcement Order. *See* Dkt. 497, *Briefing Related to Dkt 417 and Related Orders*.

[8] *First Enforcement Order*.

3. Pictures and precise location (street address, lot, building, storage unit, slip, hanger, etc.) of all on- and off-road vehicles, trailers, motorcycles, watercraft and aircraft in which any Defendant has a financial interest, including but not limited to the following:

- 2007 Chevrolet Tahoe C1500/K15, VIN: 1GNFK13027R359479 Garaging Zip Code: 84087
- 2009 Kenworth T80, VIN: 1NKDX4EX69R939171 Garaging Zip Code: 84087
- 2016 Chevrolet Silverado C2500, VIN: 1GC2KUEG4GZ230663 Garaging Zip Code: 84087
- 2005 International 430, VIN: 1HTMIVIAAMX5H138332 Garaging Zip Code: 84087
- 1988 Ford CLT, VIN: 1FDYX91X4JVA47532 Garaging Zip Code: 84087
- 2005 Chevrolet Silverado C2500, VIN: 1GCHK29U55E162909 Garaging Zip Code: 84087
- 2020 FORD F350, VIN: 1FT7W3BT3LEC15076 Garaging Zip Code: 84087
- 2019 FORD F550, VIN: 1FDOW5HT3KED52615 Garaging Zip Code: 84087
- N801WT.  1981 Sikorsky UH-60A Black Hawk Medium Lift.  SN: 79-2331.
- N293SV.  1992 Eurocopter, AS 365 N2 Dauphin.  SN: 6408.
- N365SJ.  1982 Aerospatiale model SA365N airframe.  SN: 6018.
- Bell "Huey" helicopter. UH-1E. 1971.
- N8809W.  1983 Messerschmitt-Boelkow-B BO-105 P.  SN: 6209.
- N24LV.  2003 Johnson Robert Dean Comp SL 7.  Experimental.[9]

Section B required Defendants to provide:

1. The full legal name of all entities, including but not limited to Defendants, Defendants' family, friends and other third parties, corporations, partnerships and LLCs organized in any state, in which: (a) any Defendant holds any direct or indirect ownership interest as an LLC member, corporation shareholder or otherwise, or (b) any Defendant is an actual or potential recipient of income or distributions.  To the extent any interest is held by a corporation, partnership, LLC or other fictitious entity, the names of all real persons ultimately holding an interest shall be provided.

2. A complete list of all current owners, members, or shareholders of each entity listed in Paragraph 2,[10] their full name, email and physical addresses, and phone numbers, and the current dollar value interest of all such owners, members, or shareholders, the full name, email and physical addresses and phone number of each registered agent for each entity. To the extent any ownership interest is held by a trust, LLC or other inanimate entity the names and physical addresses of the real person owners shall be disclosed.

---

[9] *Id.* at 1–3.

[10] This reference to "Paragraph 2" is likely a typographical error.  In context, it appears to refer to the entities listed in the preceding paragraph.

3. A full and complete list and description of all real property, personal property (including cash), and intangible property with a value of $5,000 or more currently owned by each Defendant, in whole or in part, the date the property was acquired, the names and physical addresses of any co-owners, the current value of each such piece or article of property, the location and physical address of such property, and the current dollar amount of any lien, mortgage, security interest or other financial encumbrance applicable to each piece or article of property.

4. A full and complete list and legal description of all real and personal property with a value of $5,000 or more transferred by any Defendant to any entity since December 28, 2021, the date the property was transferred, the names and physical addresses of the transferee(s), the value of each such transfer, and the location and physical or virtual address of such property.

5. Copies and full descriptions of all current notes payable and receivable held by each entity identified in Paragraph 2.[11]

6. Copies of all current liens, mortgages, security interests and any other encumbrances, and all related balance sheets, applicable to each property interest.

7. Copies and full descriptions of all loans made to or from any entity in which a Defendant has an interest.

8. Copies and full descriptions of all electronic and hard copy writings between any Defendant and the IRS, Utah Department of Revenue and any other taxing entity regarding any alleged insufficient payment of taxes.

9. To the extent any property interest described above is a street or off-road motor vehicle, a boat or other watercraft, an airplane or helicopter, or any other vehicle or craft powered by gasoline, aviation fuel, diesel, electricity or any other energy source, provide their model year, model name, color, VIN, HIN, registration jurisdiction and tail number, current location including physical address, the dollar amount of (i) principal and (ii) interest currently owed on each lien, mortgage, security interest or other financial encumbrance applicable to each vehicle or craft, the current fair market value of each vehicle or craft and any related financial encumbrance, and whether the vehicle is in operating condition.[12]

Section D prohibited Defendants "from transferring or moving any real or personal property unless released by the court."[13] The First Enforcement Order concluded by warning Defendants

---

[11] *See supra* n.10.

[12] *First Enforcement Order* at 3–5.

[13] *Id.* at 5.

that failure "to comply with any provision of this Order" would subject Defendants "to arrest and incarceration upon proof of non-compliance."[14]

### Second Contempt Finding

Despite the First Enforcement Order's prohibition on transferring property, Defendant Sparks admitted to commencing an asset liquidation sale in late July 2025.[15]  As a result of the sale, the court again found Defendant Sparks in contempt and issued a warrant for his arrest on August 1, 2025.[16]  Before the warrant for his arrest was served, Defendant Sparks appeared at a hearing related to this finding of contempt on August 4, 2025.  The court then recalled the warrant and issued an Order delineating how Defendant Sparks could purge his contempt (Second Enforcement Order).[17]

### Second Enforcement Order

The Second Enforcement Order permitted Defendant Sparks to continue the liquidation sale but required him to deposit with the Clerk of Court, on three separate occasions, the sale's gross proceeds along with sworn accountings of all items sold.[18]  Each deposit date covered different periods of the sale: The first deposit, to occur on August 6, 2025, covered all proceeds from the sale's inception until the court paused the sale on August 1, 2025; the second, to occur on August 8, 2025, covered all proceeds from when the sale resumed until August 8, 2025; and

---

[14] *Id.*

[15] *See* Dkt. 482, *Plaintiff's Emergency Motion for Preliminary Injunction and Zoom Hearing*; Dkt. 483, *Order on Emergency Motion for Preliminary Injunction and Order to Show Cause*; Dkt. 485, *Defendant Dave Spark's* [sic] *Response to the Order to Show Cause Issued July 30, 2025*.

[16] Dkt. 486, *Order of Contempt* (*Second Order of Contempt*).

[17] *Second Enforcement Order.*

[18] *Id.*  Defendant Sparks represented to the court that the liquidation sale included assets owned by non-Defendants. The Second Enforcement Order only required Defendant Sparks to deposit with the Clerk of Court the gross proceeds from assets in which any Defendant had an ownership interest.  *See id.*

6

the third, to occur on August 14, 2025, covered all proceeds from August 8, 2025, until August 14, 2025.[19]

The Second Enforcement Order also required Defendants to "provide to Plaintiff's counsel all documents, information, and disclosures required by Sections A and B of [the First Enforcement Order]" and "a sworn declaration explaining all efforts taken to comply with Sections A and B of [the First Enforcement Order]."[20]  The court further noted: "Defendant Sparks remains in contempt of this court's orders.  Strict compliance with the terms of this Order is necessary to purge his contempt.  If Defendant Sparks does not comply with this Order, the court intends to reissue the warrant for his arrest and incarceration until such time as he complies."[21]

<u>Subsequent Conduct</u>

On August 14, 2025, Defendant Sparks submitted a sworn Declaration detailing the efforts he made to comply with the First and Second Enforcement Orders.[22]  In this Declaration, Defendant Sparks states he and his associates have dedicated around eight hours per week since January 2025 "to locating, compiling, and organizing records responsive to Sections A and B" of the First Enforcement Order,[23] an effort complicated by the unexpected death of Defendants' accountant in December 2024.[24]  According to Defendant Sparks, he and his associates have been unable to access the accountant's "password-protected computer, electronic records, or

---

[19] *Id.* at 1–2.

[20] *Id.* at 2–3.

[21] *Id.* at 4.

[22] Dkt. 498, *Declaration of Dave Sparks Regarding 07.30.2025 Order to Show Cause* (*Compliance Declaration*).

[23] *Id.* ¶ 1.

[24] *Id.* ¶ 2.

cloud accounts."[25]  Other compliance efforts allegedly include, from January 2025 through July 2025:

1. Contacting current and former banks to request archived statements for both personal and business accounts.

2. Searching every known storage location for banker's boxes, binders, and offsite records storage containers that might contain relevant files.

3. Reviewing past accounting software subscriptions to determine if any historical data could still be accessed.

4. Coordinating with former business partners to request any financial documents they may still have in their possession.

5. Reviewing physical receipt logs and expense ledgers for large-dollar transactions.

6. Consulting with an outside bookkeeping service (retained in February 2025) to reconstruct available transaction histories from partial records.

7. Searching old email accounts and archived messages for scanned receipts, invoices, or bank communications.

8. Manually comparing VIN numbers, serial numbers, and registration data in state records to match them with purchase and sale documents.[26]

Defendant Sparks details "intensified" efforts in early August 2025.[27]  The Declaration concludes by describing additional information and documents Defendant Sparks allegedly provided to Plaintiff in connection with the Declaration:

1. "[C]omplete paper copy bank statements for the B&W Auto account covering the period from August 2023 through the present;"[28]

---

[25] *Id.*

[26] *Id.* ¶ 3.

[27] *Id.* ¶¶ 5–9.

[28] *Id.* ¶ 12.

2. An "annotated spreadsheet of B&W Auto transactions of $5,000 or more from August 2023 through present;"[29]

3. "[A] master spreadsheet . . . , which lists all real, personal, and intangible property with a value of $5,000 or more currently owned by [him] in whole or in part, excluding real estate;"[30]

4. An "inventory list" related to his ownership interest in EMBR Motors;[31] and

5. "[P]otentially relevant" miscellaneous paperwork.[32]

Defendant Sparks also states he has "not attached a separate list of real estate holdings to this production because" Plaintiff supposedly "already has this information."[33]  According to Defendant Sparks, his Declaration and the accompanying and prior productions constitute "a full and complete response to Sections A and B" of the First Enforcement Order.[34]

<u>First Notice of Noncompliance</u>

On August 18, 2025, Plaintiff filed a Notice of Noncompliance (First Notice of Noncompliance).[35]  Plaintiff alleges Defendant Sparks failed to provide the following as required by the First and Second Enforcement Orders:

1. The current status of all real property that any Defendant owns, in whole or in part, or in which any Defendant holds a financial interest, including . . . all applicable mortgages, liens and current equity in each property;

2. A certified listing of the legal names of all entities in which any Defendant holds an ownership interest or is an actual or potential recipient of income or distributions;

---

[29] *Id.* ¶¶ 9, 22.  Defendant Sparks states earlier transactions are unavailable because the accounts "were either too old, had been closed for over a year, or could not be located by the banks due to lack of active account status or absence of archival records."  *Id.* ¶ 9.

[30] *Id.* ¶ 17.

[31] *Id.* ¶¶ 18–21.

[32] *Id.* ¶¶ 13–16.

[33] *Id.* ¶¶ 10–11.

[34] *Id.* ¶ 27.

[35] Dkt. 501, *Plaintiff UPHE'S Notice of Defendant Sparks's Substantial Noncompliance with the Court's August 5, 2025 Order, ECF No. 491* (*First Notice of Noncompliance*).

3. A certified listing of all on- and off-road vehicles, boats, airplanes and helicopters,
   including the current status of all applicable liens and other encumbrances, owned in
   whole or in part by any Defendant or by any entity in which any Defendant has an
   interest;

4. A certified identification and listing of all transfers of Defendants' properties over $5,000
   in value since December 28, 2021.[36]

Defendants responded to the First Notice of Noncompliance on September 3, 2025.[37]

Second Notice of Noncompliance

On September 4, 2025, Plaintiff filed a Second Notice of Noncompliance describing

additional conduct by Defendant Sparks in violation of the Enforcement Orders.[38]  Plaintiff

contends Defendant Sparks:

1. Failed to make the second and third deposits, or submit a sworn accounting for the third
   period of the liquidation sale, as required by the Second Enforcement Order;[39]

2. Transferred his Tesla Cybertruck, VIN 7G2CEHEE8RA005151, and Defendant Diesel
   Power Gear LLC's 2019 Dodge Ram 5500, VIN 3C7WRNFLXKG535613, to private
   parties without authorization from the court;[40] and

3. Failed to provide "all of the balance sheets applicable to each piece of [real] property and,
   as a specific example, the August 13, 2022 'Assets Security Agreement' central to an
   understanding of the Ridgeline Capital/Bateman August 1, 2020 Promissory Note
   applicable to [] Defendant Sparks's Bountiful properties."[41]

---

[36] *Id.* at 2–3.

[37] Dkt. 511, *Response Regarding Alleged Failure to Comply* (*Response*).

[38] Dkt. 515, *Plaintiff UPHE's Notice of Defendant Sparks's Additional Noncompliance with the Court's August 5, 2025 Order, ECF No. 491* (*Second Notice of Noncompliance*).

[39] *Id.* ¶¶ 1–2.  The court notes Defendant Sparks, in his August 8, 2025 Declaration, represented the second period of the liquidation sale resulted in $15,545.00 in gross proceeds, which he "anticipate[d] being able to deliver . . . to the court" within a week. Dkt. 496, *Declaration of Dave Sparks Regarding 07.30.2025 Order to Show Cause* ¶¶ 11–12. As the docket reflects, Defendant Sparks never deposited those funds with the Clerk of Court.  Nor did he deposit funds for the third and final period of the liquidation sale due on August 14, 2025.

[40] *Second Notice of Noncompliance* ¶¶ 3–4.  Plaintiff additionally provided Constable Travis Reitz's sworn Declaration. Dkt. 515-1, *Declaration of Constable Reitz*.  Constable Reitz states he spoke to Defendant Sparks on August 27, 2025.  *Id.* ¶¶ 4–8.  In that conversation, Defendant Sparks represented that he transferred possession of the Tesla Cybertruck and Dodge Ram to other individuals.  *Id.*  But Constable Reitz states a subsequent ownership search revealed the Tesla Cybertruck remains registered in Defendant Sparks's name, and the Dodge Ram remains registered in Diesel Power Gear LLC's name.  *Id.*

[41] *Second Notice of Noncompliance* ¶ 5.

Defendants have not responded to the Second Notice of Noncompliance. On September 19, 2025, Plaintiff filed a Motion seeking relief related to Defendant Sparks's noncompliance.[42] Defendants opposed this Motion on October 1, 2025.[43]

## LEGAL STANDARD

"The district court has inherent power to enforce compliance with its lawful orders through civil contempt."[44] A court may hold a party in civil contempt when there is clear and convincing evidence: (1) a valid court order existed; (2) the party had knowledge of the order; and (3) the party disobeyed the order.[45] The party may overcome this showing by producing clear and convincing evidence he has complied with the order or compliance with the order is presently impossible.[46] However, in raising the impossibility defense, the party "must establish by facts (and not just assertions) that he or she has made all reasonable and good faith efforts to comply with the order."[47] The court may order a party's imprisonment until he complies or establishes compliance is impossible.[48]

---

[42] Dkt. 516, *Plaintiff's Motion for Relief*. The court will issue a ruling on this Motion in a subsequent decision.

[43] Dkt. 518, *Opposition to Dkt. 516, Motion for Miscellaneous Relief* (*Opposition*).

[44] *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)) (citation modified); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("It is firmly established that the power to punish for contempt is inherent in all courts." (citation modified)); Fed. R. Civ. P. 70(e) (stating a court may hold a party in contempt for disobeying a judgment).

[45] *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

[46] *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008); *United States v. Rylander*, 460 U.S. 752, 757 (1983).

[47] *In re Aramark Sports and Ent. Serv., LLC*, 725 F. Supp. 2d 1309, 1316 (D. Utah 2010) (citation omitted); *see also Rylander*, 460 U.S. at 757 (holding party raising impossibility defense has burden of production).

[48] *See* 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, . . . as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."); *Ford*, 514 F.3d at 1050–53 (permitting a district court's imprisonment of a party until he complied with the court's order); *Rylander*, 460 U.S. at 757 ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action.").

## ANALYSIS

The court begins by considering whether to find Defendant Sparks in civil contempt. Finding sufficient evidence exists to do so, the court then turns to how Defendant Sparks may purge the findings of contempt.

### I.    The Court Finds Defendant Sparks in Civil Contempt for Four Violations of the Court's Orders.

Clear and convincing evidence establishes each of the three elements necessary to find Defendant Sparks in civil contempt.  As the court will explain, for each of the four violations set out below, Defendant Sparks has failed to provide clear and convincing evidence establishing he has complied or that compliance is impossible.

First, the court finds the Fees Order, the First Enforcement Order (both as initially issued and as modified), and the Second Enforcement Order are valid.  Second, there is no question Defendant Sparks had actual knowledge of each of these Orders, given his presence at the August 4, 2025 hearing and subsequent Declarations submitted to the court.[49]  Third, clear and convincing evidence exists to find Defendant Sparks has violated and continues to violate these Orders as follows:

#### A.  Defendant Sparks has failed to pay the amount due under the Fees Order.

As an initial matter, Defendant Sparks does not dispute he has failed to pay Plaintiff the $843,602.23 due under the Fees Order.[50]  The court construes Defendant Sparks to argue compliance is impossible because he is insolvent.[51]  But given Defendant Sparks's failure to

---

[49] *See Second Enforcement Order*; *Compliance Declaration*; Dkt. 493, *Declaration of Dave Sparks Regarding 07.30.2025 Order to Show Cause*; Dkt. 496, *Declaration of Dave Sparks Regarding 07.30.2025 Order to Show Cause*.

[50] *See, e.g.*, *Briefing Related to Dkt 417 and Related Orders*.

[51] *See Response*.

provide the necessary documents, records, and other information necessary to assess his solvency—as required by the First and Second Enforcement Orders—the court finds Defendant Sparks has failed to provide clear and convincing evidence establishing impossibility.  The court therefore finds Defendant Sparks remains in violation of the Fees Order because he has not made any attempt to pay Plaintiff the $843,602.23 due under the Order.

### B.  Defendant Sparks failed to make the required second and third deposits with the Clerk of Court and submit a third sworn accounting to the court.

Clear and convincing evidence exists to find Defendant Sparks violated the Second Enforcement Order when he (1) failed to deposit the $15,545.00 in gross proceeds from the second period of the liquidation sale, (2) failed to deposit any amount from the third period of the liquidation sale, and (3) failed to provide a sworn accounting for assets sold during the third period of the liquidation sale.[52]  The Second Enforcement Order required the deposits to occur by August 8, 2025, and August 14, 2025, respectively, with the third accounting to be filed contemporaneously with the third deposit.[53]  Defendant Sparks offers no evidence suggesting he complied or that compliance is impossible.[54]  Accordingly, the court finds Defendant Sparks violated the Second Enforcement Order by failing to make the second and third deposits and by failing to submit a third sworn accounting.

---

[52] *See generally Docket*; *see also* Dkt. 494, *Receipt #11003* (reflecting receipt of the first deposit by the Clerk of Court).

[53] *Second Enforcement Order* at 2.

[54] *See Response*.  In the Opposition to Plaintiff's Motion for Relief, Defendant Sparks's counsel states: "It is counsel's understanding, upon information and belief, that no further sales occurred following [the second] accounting that would make a further accounting necessary or possible."  *Opposition* at 4.  Counsel's argument, without supporting evidence, is insufficient to establish impossibility.

### C.  Defendant Sparks transferred two vehicles in violation of the First and Second Enforcement Orders.

Plaintiff produced clear and convincing evidence Defendant Sparks violated the First and Second Enforcement Orders by transferring the Tesla Cybertruck and Dodge Ram to private parties without the court's leave to do so.[55]  And the two sworn accountings provided to the court contain no entries suggesting either of these vehicles were sold as a part of the liquidation sale.[56]  Defendant Sparks failed to produce any evidence, let alone clear and convincing evidence, that these transfers did not occur.  The court therefore finds the transfers occurred in violation of the First and Second Enforcement Orders.

### D.  Defendant Sparks has failed to substantially comply with the First and Second Enforcement Orders' information and document disclosure requirements.

Clear and convincing evidence exists to find Defendant Sparks has failed to provide substantially all the information and documents required by the First and Second Enforcement Orders except as otherwise described below.  The court previously described the scope of disclosures necessary to satisfy the Orders.[57]  The court relies on the following documents to determine the extent of Defendant Sparks's compliance: (1) Defendant Sparks's Compliance Declaration,[58] (2) an accompanying Table of Documents describing the disclosures provided to

---

[55] *See Second Notice of Noncompliance*; *Declaration of Constable Reitz.*

[56] *See* Dkt. 493-1, *Exhibit A*; Dkt. 496-1, *Exhibit A.*

[57] *See supra Background.*

[58] *Compliance Declaration.*

Plaintiff that day,[59] (3) Plaintiff's First Notice of Noncompliance,[60] (4) Defendants' Response,[61]

and (5) Plaintiff's Second Notice of Noncompliance.[62]

In particular, the court finds clear and convincing evidence exists to establish Defendant

Sparks has failed to provide the following to Plaintiff:

1. The current status of all real property that any Defendant owns, in whole or in part, or in
   which any Defendant holds a financial interest, including all applicable mortgages, liens
   and current equity in each property;[63]

2. A certified listing of the legal names of all entities in which any Defendant holds an
   ownership interest or is an actual or potential recipient of income or distributions;[64]

3. A certified listing of all on- and off-road vehicles, boats, airplanes and helicopters,
   including the current status of all applicable liens and other encumbrances, owned in
   whole or in part by any Defendant or by any entity in which any defendant has an
   interest;[65] and

4. A certified identification and listing of all transfers of Defendants' properties over $5,000
   in value since December 28, 2021.[66]

This finding shifts the burden to Defendant Sparks to establish by clear and convincing evidence

either that compliance has occurred or is impossible.

---

[59] Dkt. 498-1, *08.14.2025 Table of Documents*.

[60] *First Notice of Noncompliance*.

[61] *Response*.

[62] *Second Notice of Noncompliance*.

[63] *See First Enforcement Order* ¶¶ (B)(3), (6).

[64] *See id.* ¶¶ (A)(1)–(2), (B)(1)–(2), (5)–(7).

[65] *See id.* ¶¶ (A)(3), (B)(3)–(4), (6), (9).

[66] *See id.* ¶ (B)(4).

### 1.  Defendant Sparks has failed to provide to Plaintiff the required information related to Defendants' real property interests.[67]

The First Enforcement Order required Defendants to produce a "full and complete list and description of all real property . . . with a value of $5,000 or more currently owned by each Defendant,"[68] a requirement reiterated by the Second Enforcement Order.[69]  Plaintiff argues Defendants failed to disclose any of the required real property information.[70]  Defendant Sparks admitted as much in his August 14, 2025 Declaration, reasoning he did not need to provide it because Plaintiff supposedly "already has this information."[71]  In their Response, Defendants argue Plaintiff "previously received all real estate documents in possession of Defendants" and "[t]o the extent such documents have not been produced, they are not in the possession or control of Defendants."[72]  Defendants also provide two emails previously sent to Plaintiff's counsel. One of the emails outlines loans against Defendant Sparks's home and "discusses other real property owned by non-party to this case, GI Sparks, LLC," and the other provides as attachments "documents related to [Defendant Sparks's] cabin, as well as deeds and notes related to debt obligations associated with real property of Defendants."[73]  In its Second Notice of Noncompliance, Plaintiff argues Defendants' Response is insufficient because Defendants have

---

[67] The court finds Defendant Sparks has established his compliance with the First Enforcement Order's requirement to disclose his personal and intangible property interests.  In his Declaration, Defendant Sparks states he produced "a master spreadsheet" listing "all . . . personal, and intangible property with a value of $5,000 or more currently owned by [him] in whole or in part."  *Compliance Declaration* ¶ 17.  Given Plaintiff does not appear to contest the validity of this representation by Defendant Sparks in the Second Notice of Noncompliance, the court finds Defendant Sparks has produced sufficient evidence to establish his compliance.  However, the court notes this evidence is insufficient to establish compliance by the other Defendants.

[68] *First Enforcement Order* ¶ (B)(3).

[69] *Second Enforcement Order* at 2–3.

[70] *First Notice of Noncompliance* at 2.

[71] *Compliance Declaration* ¶¶ 10–11.

[72] *Response* ¶ 1.

[73] *Id.* ¶¶ 2–3.

failed to provide *all* real estate documents required by the Enforcement Orders.[74]  Defendants have not responded to the Second Notice of Noncompliance.

The court agrees with Plaintiff.  Defendant Sparks's productions related to Defendants' real property interests are facially insufficient to demonstrate compliance with the Enforcement Orders.  The Orders do not permit Defendant Sparks to rely on selective, piecemeal productions of information and documents from periods over the past decade; the First Enforcement Order requires "true, accurate, and complete" disclosure of all required documents and information "in both electronic and hard copy form."[75]  It is not "common sense," as Defendant Sparks's counsel suggests, that incomplete disclosures occurring in response to the Second Enforcement Order are remedied by some unidentified prior disclosures to which counsel does not point with particularity.[76]  And given the lack of specificity with which counsel discusses the documents provided in the emails attached to their Response,[77] the court finds Defendant Sparks has failed to meet his burden to demonstrate compliance.

### 2. Defendant Sparks has failed to provide to Plaintiff the required information related to his interests in other legal entities.

Plaintiff next argues Defendant Sparks has failed to provide "a certified listing of the legal names of all entities in which any Defendant holds an ownership interest or is an actual or potential recipient of income or distributions."[78]  Beyond providing an "inventory list" for

---

[74] *Second Notice of Noncompliance* ¶ 5.

[75] *First Enforcement Order* at 1, 3.

[76] *Response* ¶ 5.

[77] *See id.*

[78] *First Notice of Noncompliance* at 3.

EMBR Motors, neither Defendant Sparks's Declaration nor Defendants' Response addresses this failing.[79]  The court therefore finds Defendant Sparks has failed to establish compliance.

### 3. Defendant Sparks has failed to provide to Plaintiff the required information related to transfers of Defendants' property.

Plaintiff next argues Defendant Sparks has failed to provide "a certified identification and listing of all transfers of Defendants' properties over $5,000 in value since December 28, 2021" except for transfers by Defendant B&W Auto.[80]  Defendant Sparks has not produced any evidence suggesting otherwise.[81]  Accordingly, the court finds Defendant Sparks has failed to comply with the Enforcement Orders' requirement to disclose all transfers of his properties over $5,000 in value since December 28, 2021.

### 4. Defendant Sparks has failed to establish by clear and convincing evidence that disclosure of the documents and information required by the Enforcement Orders is impossible.

Having concluded that Defendant Sparks failed to comply with certain disclosure requirements of the Enforcement Orders, the court now considers whether he has proven by clear and convincing evidence that compliance is impossible because he has "made all reasonable and good faith efforts to comply."[82]  In his August 14, 2025 Declaration, submitted under penalty of perjury, Defendant Sparks describes certain efforts he and his associates allegedly undertook to

---

[79] *See Compliance Declaration* ¶¶ 18–21; *Response*.  Defendant Sparks states he owns a 50% interest in EMBR Motors.  *See Compliance Declaration* ¶¶ 18–21.  But he has failed to produce the necessary documentation to support this statement.  The EMBR Motors "inventory list" does not comply with the First Enforcement Order's command to provide "all articles of incorporation, by-laws and current shareholders of all corporations in which any Defendant has a financial interest, including . . . EMBR Motors, Inc."  *First Enforcement Order* (A)(2).

[80] *First Notice of Noncompliance* at 3.

[81] *See Compliance Declaration*; *Response*.

[82] *In re Aramark Sports*, 725 F. Supp. 2d at 1316 (citation omitted).

locate and identify information and documents responsive to the First and Second Enforcement
Orders.[83]  As the court will explain, these representations lack credibility.

Defendant Sparks contends he contacted "current and former banks to request archived
statements for both personal and business accounts."[84]  But he failed to provide any evidence
detailing the substance of those conversations or even establishing that they actually occurred,
such as by providing emails or phone records.  As far as the court can tell, there is no evidence
concerning which banks Defendant Sparks contacted or for which accounts he sought
information.  Defendant Sparks also posits he or his associates searched "every known storage
location for banker's boxes, binders, and offsite records storage containers that might contain
relevant files."[85]  But Defendant Sparks does not provide more specific information, such as the
address of those facilities, which would allow Plaintiff or the court to verify they exist.  He states
he coordinated "with former business partners to request any financial documents they may still
have in their possession,"[86] but he does not provide these individuals' identities or any evidence
of the substance of those conversations.  He claims to have consulted "with an outside
bookkeeping service" retained earlier this year "to reconstruct available transaction histories
from partial records,"[87] but he fails to provide the identity of the bookkeeping service or any
subsequent findings related to its supposed reconstruction.  Defendant Sparks also describes
some additional searches of electronic records allegedly made by him or his associates,[88] but—

---

[83] *See Compliance Declaration.*

[84] *Id.* ¶ 3(a); *see also id.* ¶¶ 8–9 (describing efforts allegedly taken by one of Defendant Sparks's associates to
contact and visit banks).

[85] *Id.* ¶ 3(b).

[86] *Id.* ¶ 3(d).

[87] *Id.* ¶ 3(f).

[88] *Id.* ¶¶ 3(c), (e), (g)–(h).

again—he does not describe which specific information or documents, if any, each search yielded or provide further evidence establishing the searches even occurred. The court is left with the distinct impression that Defendant Sparks has at best failed to accurately and completely describe his efforts to comply with the Enforcement Orders.

Because Defendant Sparks's representations are incomplete and not credible, the court is unconvinced that he has "made all reasonable and good faith efforts to comply" with the Enforcement Orders.[89] The court therefore finds Defendant Sparks has failed to meet his burden to establish by clear and convincing evidence that compliance with the document and information disclosure requirements of the Enforcement Orders is impossible. Accordingly, Defendant Sparks remains in contempt for his failures to comply with the information and document disclosure requirements of the Enforcement Orders as set forth above.

At bottom, while the Orders require Defendant Sparks to make expansive disclosures to Plaintiff, they do so for an important reason: where compliance with the court's orders is possible, compliance is not optional. It is simply insufficient for Defendant Sparks to maintain that compliance is impossible without *proof* of the same. And while the court is sympathetic to Defendant Sparks's complaints regarding the broad scope of disclosures necessary to comply with the Enforcement Orders, these disclosures are necessary to establish the reality of his financial condition.

## II.    Acts Necessary to Purge Contempt

Ordering a civil contemnor's incarceration is a last resort. The court's first inclination is to provide notice of a contempt finding and clear guidance for how the contemnor may purge that finding without taking him into custody. Notably, the court has done so here at least twice:

---

[89] *In re Aramark Sports*, 725 F. Supp. 2d at 1316 (citation omitted).

The First Enforcement Order, after setting out clear instructions for compliance, warned Defendant Sparks that his failure to comply would subject him "to arrest and incarceration upon proof of non-compliance,"[90] and the Second Enforcement Order contained a similar warning along with its instructions.[91]  The court has provided ample opportunities for Defendant Sparks to purge his contempt.  Moreover, Defendant Sparks has appeared before this court, represented he would comply with the Enforcement Orders, and failed to do so.[92]  The court has exhausted all means short of incarceration to obtain Defendant Sparks's compliance and therefore must order the U.S. Marshal to take him into custody until he complies.

But Defendant Sparks "holds the proverbial keys to the prison door."[93]  Having found him in contempt, the court now turns to how he can purge this finding.  The court offers two methods for Defendant Sparks to do so.[94]

*First*, payment in full of the $843,602.23 due under the Fees Order would be sufficient on its own to purge Defendant Sparks's contempt in its entirety.

*Second*, if Defendant Sparks elects not to pay the amount due under the Fees Order, he must carry out each of the following acts to purge his contempt:

1.    **Second and third deposits and sworn accounting.**  Defendant Sparks must make both the second and third deposits required by the Second Enforcement Order with the

---

[90] *First Enforcement Order* at 5.

[91] *Second Enforcement Order* at 5.

[92] Dkt. 492, *Minute Entry*.

[93] *Ford*, 514 F.3d at 1053.

[94] To the extent Defendant Sparks is unable to comply with any of the requirements to purge his contempt, he must, under penalty of perjury, (1) point with particularity to the specific requirement and (2) explain why he is unable to comply and what reasonable efforts he undertook to comply.  In evaluating Defendant Sparks's compliance, the court cannot accept general assertions lacking specific facts.  For example, Defendant Sparks represents he is unable to access his accountant's computer.  *Compliance Declaration* ¶ 2.  To demonstrate the veracity of this assertion, Defendant Sparks may provide the computer to Plaintiff for examination.

Clerk of Court and certify under penalty of perjury that the third deposit represents the gross proceeds received from the liquidation sale from August 8, 2025 to August 14, 2025. Defendant Sparks must also file on the docket a sworn accounting of all items sold during the third period of the liquidation sale.[95]

     **2.**     **Vehicle transfers.**  Defendant Sparks must reverse the unlawful vehicle transfers by recovering and retaining possession of the Tesla Cybertruck, VIN 7G2CEHEE8RA005151, and 2019 Dodge Ram 5500, VIN 3C7WRNFLXKG535613.[96]

     **3.**     **Disclosures.**  Defendant Sparks must either (a) provide to Plaintiff a signed copy of the Consent Directive[97] filed contemporaneously on the docket with this Memorandum Decision and Order of Contempt, or (b) make certain disclosures to Plaintiff.

        a.  *Consent Directive.*  By signing and providing the Consent Directive to Plaintiff, Defendant Sparks authorizes all financial institutions at which he has or had an account where he has or had the right of withdrawal to disclose to Plaintiff all information related to such accounts.[98]  A Consent Directive is a lawful means of obtaining discoverable information.[99]

        b.  *Documents and information.*  As an alternative to signing the Consent Directive, Defendant Sparks must disclose:

---

[95] If, as counsel represents to the court in the Opposition to Plaintiff's Motion for Relief, "no further sales occurred following [the second] accounting that would make a further accounting necessary or possible," *Opposition* at 4, Defendant Sparks must so state under penalty of perjury to establish impossibility. Regardless, Defendant Sparks remains obligated to deposit the $15,545.00 in gross proceeds from the second period of the liquidation sale with the Clerk of Court.

[96] Defendants argue that the court may not order Defendants to take certain affirmative acts related to personal property under federal and Utah state law governing judgment collection. *See id.* at 2–4. But in a contempt proceeding, the court may act on its inherent authority to compel compliance with its lawful orders. *See Acosta*, 884 F.3d at 1238. This is such a proceeding. Here, the court has found Defendant Sparks unlawfully transferred two vehicles in violation of the court's orders. To purge his contempt, Defendant Sparks must either unwind the transfers or establish with evidence that compliance is impossible.

[97] *See* Dkt. 520, *Consent Directive.*

[98] *See id.*

[99] *See In re Mastro*, 585 B.R. 587, 595 (B.A.P. 9th Cir. 2018) (discussing courts' authority to compel consent directives in civil cases); *see also Doe v. United States*, 487 U.S. 201, 219 (1988) (holding in a criminal case that a district court does not violate a defendant's Fifth Amendment rights by ordering him to sign a consent directive); *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138 (2014) ("The rules governing discovery in postjudgment execution proceedings are quite permissive.").

i.   The full legal name of all entities, including but not limited to Defendant Sparks, his family, friends, other third parties, corporations, partnerships and LLCs organized in any state, in which: (a) Defendant Sparks holds any direct or indirect ownership interest as an LLC member, corporation shareholder or otherwise, or (b) Defendant Sparks is an actual or potential recipient of income or distributions.  To the extent any interest is held by a corporation, partnership, LLC or other fictitious entity, the names of all real persons ultimately holding an interest shall be provided.

ii.   For each entity in the preceding paragraph:

   1.   A complete list of all current owners, members, or shareholders of each entity listed in the previous paragraph, their full name, email and physical addresses, and phone numbers, and the current dollar value interest of all such owners, members, or shareholders, the full name, email and physical addresses and phone number of each registered agent for each entity.  To the extent any ownership interest is held by a trust, LLC or other inanimate entity the names and physical addresses of the real person owners shall be disclosed;

   2.   Copies and full descriptions of all current notes payable and receivable held by each entity; and

   3.   Copies and full descriptions of all loans made to or from any entity.

iii.   All current and former operating agreements, including all applicable amendments, for the following LLCs in which Defendant Sparks has a financial interest:

   - 1955 Redwood LLC
   - 4X4 Anything LLC
   - Blue Collar Credit LLC
   - B&W Auto LLC
   - Da Rezz LLC
   - Diesel Power Gear LLC
   - Dieselsellerz.com LLC
   - FLT Services LLC
   - GI Sparks LLC
   - Heavydsparks LLC
   - Legion Holdings LLC
   - Sellerz LLC
   - SMCO Management Group LLC
   - Solid Choice LLC
   - Any other LLCs in which Defendant Sparks has a financial interest

    iv.  All articles of incorporation, by-laws and current shareholders of all corporations in which Defendant Sparks has a financial interest, including:

- EMBR Motors, Inc.

    v.  A full and complete list of all on- and off-road vehicles, boats, airplanes and helicopters, which includes photographs, their model year, model name, color, VIN, HIN, registration jurisdiction and tail number, and current location including physical address and, where applicable, lot, building, storage unit, slip, hanger, etc.  The list must also provide, for each vehicle or craft, the current status of all applicable liens and other encumbrances, including the dollar amount of (i) principal and (ii) interest currently owed on each lien, mortgage, security interest or other financial encumbrance applicable to each vehicle or craft, the current fair market value of each vehicle or craft, and whether the vehicle is in operating condition.  The list shall include, but is not limited to, the following:

- 2007 Chevrolet Tahoe C1500/K15, VIN: 1GNFK13027R359479 Garaging Zip Code: 84087
- 2009 Kenworth T80, VIN: 1NKDX4EX69R939171 Garaging Zip Code: 84087
- 2016 Chevrolet Silverado C2500, VIN: 1GC2KUEG4GZ230663 Garaging Zip Code: 84087
- 2005 International 430, VIN: 1HTMIVIAAMX5H138332 Garaging Zip Code: 84087
- 1988 Ford CLT, VIN: 1FDYX91X4JVA47532 Garaging Zip Code: 84087
- 2005 Chevrolet Silverado C2500, VIN: 1GCHK29U55E162909 Garaging Zip Code: 84087
- 2020 FORD F350, VIN: 1FT7W3BT3LEC15076 Garaging Zip Code: 84087
- 2019 FORD F550, VIN: 1FDOW5HT3KED52615 Garaging Zip Code: 84087
- N801WT.  1981 Sikorsky UH-60A Black Hawk Medium Lift.  SN: 79-2331.
- N293SV.  1992 Eurocopter, AS 365 N2 Dauphin.  SN: 6408.
- N365SJ.  1982 Aerospatiale model SA365N airframe.  SN: 6018.
- Bell "Huey" helicopter. UH-1E. 1971.
- N8809W.  1983 Messerschmitt-Boelkow-B BO-105 P.  SN: 6209.
- N24LV.  2003 Johnson Robert Dean Comp SL 7.  Experimental.

    vi.  A full and complete list and description of all real property with a value of $5,000 or more currently owned by Defendant Sparks, in whole or in part, the date the property was acquired, the names and physical addresses of any co-owners, the current value of each such piece or article of property, the location and physical address of such property, and the current dollar

amount of any lien, mortgage, security interest or other financial
encumbrance applicable to each piece or article of property.

vii.    A full and complete list and legal description of all real property, personal
property, and intangible property with a value of $5,000 or more transferred
by Defendant Sparks to any entity since December 28, 2021, the date the
property was transferred, the names and physical addresses of the
transferee(s), the value of each such transfer, and the location and physical
or virtual address of such property.

## CONCLUSION

For the reasons explained above, the court finds Defendant Sparks remains in civil

contempt for his ongoing violations of the Fees Order and the First Enforcement Order.  The

court also finds Defendants Sparks in civil contempt for his violations of the Second

Enforcement Order.  The U.S. Marshal is hereby COMMANDED to arrest and incarcerate

Defendant Sparks until such time as the court finds he has purged his contempt and orders his

release from custody.  The court hereby sets a hearing for 10:30 AM on Wednesday, October 8,

2025, to consider whether Defendant Sparks has purged his contempt.  The court further

ORDERS Defendant Sparks to self-surrender to this court at that time if the warrant for his arrest

has not yet been served.

SO ORDERED this 2nd day of October 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

25