# SECOND AMENDMENT TO SECURED PROMISSORY NOTE

This SECOND AMENDMENT TO PROMISSORY NOTE ("**Second Amendment**") is entered into as of this 1st day of June, 2024 ("**Effective Date**"), by and among RIDGELINE CAPITAL, LC, a Utah limited company ("**Lender**"), on the one hand, and David Sparks, an individual ("**Dave**"), Ashley Sparks, an individual ("**Ashley**"), Atlas Aviation, LLC, a Utah limited liability company ("**Atlas**"), G.I. Sparks, LLC, a Utah limited liability company ("**GIS**"), and FLT Services, LLC, a Utah limited liability company ("**FLTS**") (collectively, "**Borrower**") on the other. Lender and Borrower are referred to herein as the "**Parties**" or individually as a "**Party**" as the case may be.

## Recitals

WHEREAS, Borrower entered into that certain Promissory Note dated August 1, 2020 in the amount of $100,000 payable to Lender with a maturity date of August 1, 2021 ("**Cow Loan**");

WHEREAS, Lender has made a series of advances for the Cow Loan and collateralized against Dave and Ashley's house (collectively, the "**Commercial Line of Credit**");

WHEREAS, the Commercial Line of Credit matured, pursuant to the First Amendment to Promissory Note, on September 1st 2023 (the "**Original Maturity Date**");

WHEREAS, Borrower failed to payoff the Commercial Line of Credit and failed to service interest payments on the note;

WHEREAS, the Borrower desires Lender to forebear certain remedies under the Commercial Line of Credit in exchange for the covenants outlined herein;

WHEREAS, the First Amendment and this Second Amendment is secured by that certain Assets Security Agreement ("**Security Agreement**") of approximately even date herewith and executed by Borrower;

WHEREAS, Lender and Borrower are opting to outline and modify some terms of the Cow Loan, Commercial Line of Credit, Aviation Loan, and Blackhawk Advance as further described herein.

## Agreement

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree to outline and modify the Cow Loan, Commercial Line of Credit, Aviation Loan, and Blackhawk Advance as follows:

1. **Recitals**. The Recitals above are explicitly made a part of this Second Amendment.

2. **Maturity Date**. The Maturity Date for the Cow Loan, Commercial Line of Credit, Aviation Loan, and Blackhawk Advance shall be September 1st 2024 (the "**Modified Maturity Date**").

3. **Forbearance Amount**. The Parties agree that Default Interest shall accrue (as per the Note) on the accrued balance as of the Original Maturity Date and that Lender will forebear a three percent (3%) extension fee on the accrued balance ($1,007,679 exclusive of attorney's fees as of the Effective Date) provided that Borrower complies with the terms of this Second Amendment.

4. **Consideration**. Lender shall, as consideration for the extension, shall obtain as additional collateral a Tesla Cybertruck with VIN #7G2CEHEE8RA005151 (the "**Truck**"). The Borrower will deliver the title to the Truck to Lender with the lender endorsement captioned as Ridgeline Capital, LC. HeavyDSparks, LLC agrees to pledge the Truck for the benefits outlined herein and acknowledges as common ownership (Ashley and Dave) to be the recipient of value for the pledge. The Truck collateral pledge will be governed by the same terms of the Security Agreement. Borrower agrees to cooperate with any title work necessary to perfect Lender's security interest. Should Borrower fail to deliver the title to the Truck to Lender within 10 days of the Effective Date, the forebearance fee will accrue and the loan will accelerate and immediately become due and payable.

5. **Interest Payments**. Borrower shall pay the following payments toward interest ("Interest Payments"):

   a. $25,000 on or before July 1, 2024; and
   b. $25,000 on or before May 1, 2024.
   c. Then regularly schedule interest (at the Default Rate) until the modified Maturity Date;

A failure to timely pay this amounts will result in a the forbearance amount (3% fee) being assessed.

6. **Balances**. Borrower agrees and does not dispute, and waives, and argument to the contrary.

7. **Material Covenants**.

   a. *Insurance*. Per the Security Agreement securing the Truck and Aircraft, the Borrower will ensure the Aircraft retains commercially reasonable insurance as it has since its acquisition.

   b. *Interest Payments*. Borrower will timely pay the above-identified Interest Payments.

   c. Borrower will not operate the Blackhawk without comprehensive insurance covering at least $1,500,000 in coverage. Borrower will provide evidence of such policy to the Lender prior to any operation of the Blackhawk. Should Borrower desire to operate the Blackhawk but does not have sufficient funds to secure the

insurance policy, then Lender agrees to advance up to $12,000 per month, for up to four months, to finance an insurance policy.

8. **Commercial Line of Credit Extension Fee/APR**. The Commercial Line of Credit has risen to 17% per annum Default Interest per the terms of the original Note.

9. **Cross-Collateralization**. The Commercial Line of Credit and the Blackhawk Advance together will accrued interest and fees will remain cross collateralized with the Truck, Aircraft, the Blackhawk, and the real property owned by GIS and pledged to Lender by deed of trust.

10. **FAA Lien**. Lender's FAA lien on the Blackhawk remains in full force and effect and Borrower represents it will not permit any additional liens to be secured by the Blackhawk.

11. **Covenants and Representations**. In addition to all covenants and representations outlined in the Cow Loan, Commercial Line of Credit, and Aviation Loan, Borrower represents and warrants that:

   a. The Security Agreement is valid and enforceable;

   b. The Trust Deed of GIS remains valid and enforceable;

   c. The execution, delivery, and performance of this Second Amendment and the consummation of the transactions provided in this Second Amendment have been duly authorized by all necessary action of the respective entities and each person executing this Second Amendment on behalf of an entity has the full capacity to bind that entity; and

   d. Borrower has been represented by independent counsel of its choice in connection with the negotiation and execution of this Second Amendment, or Borrower has had the opportunity to do so, and the counsel of Borrower's choice (if any) has reviewed this Second Amendment and associated documents and instruments.

12. **Default Interest.** The Commercial Line of Credit are subject to default interest of 17% per annum compounded monthly in the event of a breach of a Material Covenant, a missed payment more than 10 days late including the Maturity Date.

13. **Release of Lender**. In exchange for the promises and covenants of Lender contained in this Second Amendment, Borrower and their successors and assigns, expressly waive, release, and discharge Lender including its affiliates, partners, officers, employees, agents, attorneys, insurers, accountants, successors from any and all claims, demands, causes of action, obligations, controversies, costs, fees, expenses, damages, and liabilities of whatever kind or nature at law, in equity, or otherwise, whether now known or unknown, that have existed or may have existed, up through the Effective Date of the Second Amendment and its associated documents whatsoever.

14. **DRAFTING FEES AND REPRESENTATION**. CANNON LAW GROUP REPRESENTS LENDER IN THIS TRANSACTION. IN THE EVENT CANNON LAW GROUP HAS HAD A PREEXISTING ATTORNEY-CLIENT RELATIONSHIP WITH BORROWER, BORROWER LISTED HEREIN HEREBY RECOGNIZES AND AGREES THAT ALTHOUGH CANNON LAW GROUP HAS HAD A PREEXISTING ATTORNEY-CLIENT RELATIONSHIP WITH THEM AND HAS THUS OBTAINED CONFIDENTIAL INFORMATION ABOUT THEM DURING THE COURSE OF THAT REPRESENTATION, THAT CANNON LAW GROUP HAS REPRESENTED THE LENDER IN THIS TRANSACTION AND THAT THEY HAVE BEEN ADVISED TO SEEK INDEPENDENT LEGAL COUNSEL TO REVIEW THIS DOCUMENT. IN THE EVENT OF A CONFLICT BETWEEN LENDER AND BORROWERS (SUCH AS FAILURE TO REPAY THE NOTE) THE CANNON LAW GROUP MAY REPRESENT THE LENDER ON COLLECTION MATTERS NOTWITHSTANDING CANNON LAW GROUP'S PREVIOUS, AND ONGOING REPRESENTATION OF THE BORROWER AND THEY HEREBY WAIVE ANY CLAIM TO CONFLICT OF INTEREST THAT CANNON LAW GROUP MAY HAVE IN THIS REGARD. BORROWER HAS BEEN ADVISED THE CANNON LAW GROUP MAY HAVE INFORMATION ABOUT THEM THAT WILL MAKE COLLECTION ON THE NOTE MORE TENABLE FOR THE LENDER. NOTWITHSTANDING THE FOREGOING, BORROWER AGREES TO PAY ALL DRAFTING FEES ASSOCIATED WITH PREPARING THIS DOCUMENT, RECORDING FEES, AND TITLE INSURANCE FEES, WHICH FEES WILL BE PAID AT CLOSING. BORROWER REPRESENTS THEY HAVE BEEN TOLD BOTH VERBALLY AND IN WRITING OF THE ADVICE TO SEEK INDEPENDENT COUNSEL ASSOCIATED WITH THE DRAFTING OF THIS AMENDMENT.

15. Inflation Protection. All amounts payable by the Borrower under the Cow Loan, Commercial Line of Credit, Aviation Loan, and Blackhawk Advance are calculated in United States Dollars (USD). However, the Lender shall be protected from unusually high inflation as follows: In any month where the Average Monthly Inflation Rate (AMIR) is greater than a Monthly Trigger Inflation Rate (MTIR) of 0.25%, any amount due pursuant to the Note shall be increased ("Inflation Adjustment") by a percentage equal to the AMIR, minus the MTIR.

For example, if the annual inflation rate for a particular year is found to be 5%, that corresponds to approximately 0.41% monthly inflation, accumulating over a 12-month period. Therefore, any payment would be increased by 0.16% during each month of that year.

For purposes of this contract, inflation rates will be computed based on the Consumer Price Index for Urban consumers (CPI-U) as published by the United States Bureau of Labor Statistics. The MTIR is defined as that monthly rate which, when applied for 12 consecutive months, would cumulatively produce the annual CPI-U rate published for the applicable calendar year. Lender may compute Inflation Adjustments using the published monthly CPI-U rate, in lieu of the AMIR, for any months, or pro-rated portions of months, as they occur throughout the year. Then, if the indebtedness under the Cow Loan, Commercial Line of Credit, Aviation Loan, and Blackhawk Advance is still outstanding, the Lender shall true-up the effect of the estimated monthly adjustments once a final, annual CPI-U rate is available to use in computing the AMIR for that period.

If at any time the CPI-U is discontinued, modified, or economic conditions occur such that Lender deems the CPI-U no longer fairly represents the actual effect of inflation on the purchasing power of the USD, Lender may propose to instead use any other such index or computation found to be mutually agreeable by the parties. If Borrower does not agree to such method as proposed, Lender, may, at its option, choose to use the change in the market price of MCI bullion as a substitute for the CPI-U for any given computation period as outlined above.

If at any time during the course of the Cow Loan, Commercial Line of Credit, Aviation Loan, and Blackhawk Advance, inflation occurs over any period at a rate which, if continuing, would accumulate to an annualized inflation rate in excess of 8%, Lender may demand, and Borrower shall henceforth be required to make any and all payments in MCI, to be computed at the market rate of MCI on the day the said payment is made.

16. All other provisions of the Cow Loan, Commercial Line of Credit, and Aviation Loan not expressly modified herein shall remain the same. The signers below hereby affirm all of the loan covenants, representations, pledges of collateral, and promises outlined in the Cow Loan, Commercial Line of Credit, and Aviation Loan as herein modified.

*Signature page to follow.*

SIGNED and DATED as of the Effective Date above.

BORROWER:                                         LENDER:

_____                   _____
David Sparks                                      Ridgeline Capital, LC
                                                  By: Kyle Bateman
                                                  Its: Manager

_Ashley Sparks_
_____
Ashley Sparks

_____
G.I. Sparks, LLC
By: David Sparks
Its: Manager

FLT Services, LLC
By: __Dave Sparks__
Its: __Manager__

Heavy D Sparks, LLC
By: __Dave Sparks__
Its: __Manager__